# EXHIBIT F

## Law Offices of
# JOHN E. SHARP
24 Professional Center Parkway, Suite 110
San Rafael, CA 94903

John E. Sharp  
john@johnsharplaw.com

Telephone: (415) 479-1645  
Facsimile: (415) 295-7020

July 10, 2020

Brian E. Washington, Marin County Counsel  
P.O Box 4988  
3501 Civic Center Drive, Room 275  
San Rafael, CA 94913

Via email and USPS

**RE: The County's Impermissible Shutdown of Seaplane Adventures**

Dear Mr. Washington,

This office represents Seaplane Adventures, and its owner, Aaron Singer, (hereinafter "Seaplane Adventures"), the permittees and lessees of 242 Redwood Hwy, Mill Valley at Commodore Marine, LLC.

Recently, the Sheriff informed Seaplane Adventures that it would receive a $1,000.00 citation for each flight out of the subject property. As such, Seaplane Adventures has been "grounded," despite the fact that it is permitted (and encouraged) by the FAA to continue flights; and that it has at all times complied with both the conditions of the Marin County Public Health Order; and the conditions of its use permit, which was originally granted in 1953. While Seaplane disputes the County's authority to ground its operations, it has, for the moment, suspended operations, in the hope the County will rethink its position.

It has come to my attention that you advised the Information Officer from the Sheriff's Department that Seaplane Adventures' operations violate the current Marin County Public Health Order. For the reasons set forth below, the County's suspension of Seaplane's use permit are without legal merit and should be withdrawn.

<u>**THE PREEMPTION DOCTRINE CONTROLS—EVEN IN TIMES OF COVID-19.**</u>

Preliminarily, it must be noted that Seaplane Adventures is regulated by 11 federal, state, and local agencies including, without limitation, the following:

- Federal Aviation Administration

1

- Federal Drug Testing and Abatement Division
- US Dept. of Transportation
- California Public Utilities Commission
- US National Parks Service
- US Dept. of Fish & Game
- Bay Area Conservation District Commission
- US Army Corp of Engineers
- CA Office of Tourism
- CA Dept of Public Works

Specifically, the Federal Aviation Administration (FAA) regulates and promulgates policies with regard to the regulation of said aircraft. Without limitation, the regulations pursuant to which Seaplane Adventures operates are set forth at 14 Code of Federal Regulations Parts 91, 61, 119, 135, and 141. Where the federal government has promulgated a pervasive scheme to regulate an area of activity, local governments are precluded from interfering. (see the seminal decision of *City of Burbank v. Lockheed Air Terminal*, 411 U.S. 624 (1973)). Further, the Federal Aviation Act of 1958 provides in pertinent part at Section 1108(a) "The United States of America is declared to possess and exercise complete and exclusive national sovereignty in the air space of the United States..."

**Seaplane Adventures is an *airline*** which is licensed under part 135 of the FAA regulations. Throughout the past few months, the FAA has issued many exemptions and guidelines to ensure that business aviation operators will be able to *continue flying* through this unprecedented and challenging situation arising from COVID-19.

For example, the FAA issued Exemption No. 18515, pertaining to the validation of medical certificates required for pilots. Although that exemption does not directly pertain to Seaplane Adventures, the FAA specifically stated that it "...finds that granting this exemption supports the continuity of air transportation, **which is essential in this national emergency**." (see page 4 of Exemption No. 18515; emphasis added). As such, the federal government continues to occupy the field of aviation, thus invoking the preemption doctrine. This is only one of *many* exemptions and guidelines issued by the FAA to ensure that business aviation operators will be able to *continue flying* through this unprecedented and challenging situation arising from COVID19.

In fact, the FAA circumvented the typical publication process in the Federal Register to issue the exemptions, stating that "delaying action would have an adverse and potentially immediate impact on [the] continuity of **critical aviation operations essential to the public interest**." (emphasis added).

Your position that the Marin County Public Health Order restricts Seaplane Adventures' operations is thus without legal authority and flies in the face of the Federal Preemption doctrine.

<u>**SEAPLANE ADVENTURES IS AN "ESSENTIAL BUSINESS" PER THE MARIN COUNTY PUBLIC HEALTH ORDER.**</u>

2

However, even if the Marin County Public Health Order (the "Order") does prevail, Seaplane Adventures is without a doubt an "essential business," such that its operation is in full compliance with the Order.

Pursuant to section 15(f)(xx) of the Order: " 'Essential Businesses' are...**Airlines**, taxis, rental car companies, rideshare services....and other private transportation providers providing transportation services necessary for Essential Activities and other purposes expressly authorized in this Order..." (emphasis added). As noted above, Seaplane Adventures is an airline licensed under Part 135 of the FAA regulations.

As an essential business, Seaplane Adventures provides, among other things, the following essential services: charter to California destinations; fire spotting; search and rescue; bay conservation research support; marine conservation support; and emergency cargo transport to remote locations.

It is my understanding, per the County's enforcement of the Order, that essential businesses are permitted to operate—not just for the essential services provided, but for all activities. For example, Target is considered an "essential business" because it provides groceries, but it was also permitted to continue selling clothing, shoes, sports equipment, video games, etc.

In the same manner, Seaplane Adventures as an *essential business* should also be permitted to remain open in full operation.

### SEAPLANE ADVENTURES HAS A COVID-19 SITE SPECIFIC PROTECTION PLAN

Seaplane Adventures takes the responsibility for health and safety of employees and customers at the utmost seriousness—and has put strict health and safety guidelines in place. This includes, but is not limited to, a COVID-19 Site Specific Protection Plan, as per the Marin County Health Department and the U.S. Centers for Disease and Control. These guidelines include the following:

1. All employees and customers are required to wear facial masks or facial coverings at all times when on Seaplane Adventures premises or on Seaplane Adventures aircraft.
2. All customers are required to maintain the recommended six feet of social distancing while inside the reception office and/or while on the docks;
3. Seaplane Adventures has installed plexiglass barriers in the reception area which separate employees from customers;
4. All customers are required to submit to having their temperatures taken prior to embarking on a seaplane;
5. Aircraft interior surfaces and seating are thoroughly wiped down with CDC recommended disinfectants prior to and directly after every flight;
6. Seaplane Adventures has reduced the seating capacity on its aircraft to create maximum social distancing between passengers (which is ell below the 10 passengers allowed under charter operator guidelines);

3

7. Authorized Seaplane Adventures personnel direct all embarkation and disembarkation of passengers;
8. Hand sanitizer is available to all employees and customers.

As a final note, I would like to emphasize that there is absolutely no evidence that Seaplane Adventures has violated either the conditions of the Marin County Public Health Order or the conditions of its use permit. In order for Seaplane's use to be affected, due process, including findings, supported by substantial evidence, of violation applicable permits or law would need to be demonstrated. No such violation exists.

Seaplane Adventures has suffered substantial financial loss in the wake of this impermissible attempted shutdown of its business—with its situation getting more dire daily. Seaplane Adventures has already lost approximately $33,945.00 as a result of being grounded since July 2, and anticipates losses of over $146,000 should the attempted shutdown of its business continue through the month of July.

If the County continues to attempt to restrict Seaplane Adventures operations, my client will be forced to seek all appropriate legal recourse, including, with out limitation, declaratory and injunctive relief and monetary damages.

Please feel free to call with any questions or comments.

Very truly yours,

LAW OFFICES OF JOHN E. SHARP

John E. Sharp




Brian E. Washington
COUNTY COUNSEL

Renee Giacomini Brewer
ASSISTANT COUNTY COUNSEL

Jenna J. Brady
CHIEF DEPUTY COUNTY COUNSEL

Patrick M. K. Richardson
Stephen R. Raab
Steven M. Perl
Brian C. Case
Kerry L. Gerchow
Tarisha K. Bal
Deidre K. Smith
Brandon W. Halter
Sarah B. Anker
Jacy C. Dardine
Kate K. Stanford

DEPUTIES

Colleen McGrath
ADMINISTRATIVE SERVICES
OFFICER

Marin County Civic Center
3501 Civic Center Drive
Suite 275
San Rafael, CA 94903
415 473 6117 T
415 473 3796 F
415 473 2226 TTY
www.marincounty.org/cl

July 15, 2020

John Sharp
24 Professional Center Parkway, Suite 110
San Rafael, CA 94903
*Via email to john@johnsharplaw.com and US Mail*

Dear Mr. Sharp,

On behalf of the County of Marin, I am writing in response to your July 10, 2020 letter to County Counsel Brian Washington entitled "The County's Impermissible Shutdown of Seaplane Adventures." I write to (1) provide further context and background regarding the County's May 15, 2020 Shelter-in-Place Order (or "Order"); (2) clarify that the County hasn't entirely "shut down" Seaplane Adventures operations; (3) provide legal authority to refute your federal preemption argument; and (4) state the County's position that is irrelevant that Seaplane Adventures is registered with the FAA as an "airline."

### The Health Officer Order

I noticed that you refer to a "shutdown" of Seaplane Adventures three separate times in you July 10, 2020 letter. Based on my understanding of the enforcement history between Marin County Sheriff's Office and your client, there hasn't been any sort of complete "shutdown." Thus, I seek to clarify the enforcement history.

Rather, the Marin County Sheriff's Office issued a written warning to Mr. Singer on June 15, 2020. In that warning, the Sheriff's Office was clear that certain "essential travel" flights could continue under the order.

Specifically, Sgt. Brenton Schneider explained, "to the extent your business provides flights for limited, authorized travel purposes (i.e. not sightseeing or leisure travel to Lake Tahoe), you can provide passengers with flights that allow for 'essential travel' under the County's May 15, 2020 Shelter in place order." Here is the Order's definition of "essential travel," which Sgt. Schneider already supplied to your client:

    i.    Travel related to the provision of or access to Essential Activities, Essential Governmental Functions, Essential Businesses, Minimum Basic Operations, Outdoor Activities, Outdoor Businesses, Additional Activities, and Additional Businesses.

    ii.    Travel to care for any elderly, minors, dependents, or persons with disabilities.

iii. Travel to or from educational institutions for purposes of receiving materials for distance learning, for receiving meals, and any other related services.
iv. Travel to return to a place of residence from outside the County.
v. Travel required by law enforcement or court order.
vi. Travel required for non-residents to return to their place of residence outside the County. Individuals are strongly encouraged to verify that their transportation out of the County remains available and functional prior to commencing such travel.
vii. Travel to manage after-death arrangements and burial.
viii. Travel to arrange for shelter or avoid homelessness.
ix. Travel to avoid domestic violence or child abuse.
x. Travel for parental custody arrangements.
xi. Travel to a place to temporarily reside in a residence or other facility to avoid potentially exposing others to COVID-19, such as a hotel or other facility provided by a governmental authority for such purposes.

You mention in your letter that Seaplane Adventures operates "charter flights." I further observe that Seaplane Adventures website advertises charter service from Sausalito to Tahoe City. The screenshot below from your client's website (seaplane.com) was downloaded on July 13, 2020, advertising charter service from "Sausalito to Tahoe City":



As such, under the current Shelter in Place Order, Mr. Singer could fly doctors and health care professionals to Tahoe City to assist with treating the pandemic. That is just one hypothetical example of "essential travel." There are several other categories of "essential travel," set forth above.

You also state that "the County's suspension of Seaplane's use permit are [sic] without legal merit and should be withdrawn." As you know, no suspension of the Seaplane's use permit has occurred. The Sheriff has directed that the operator cease flights that violate the Public Health Officer's Order.

Furthermore, you mention that Seaplane Adventures conducts "fire spotting; search and rescue; bay conservation research support; marine conservation support; and emergency cargo transport to remote locations." From what I understand, Mr. Singer has never been told that he cannot do any of the items on this list. Mr. Singer was only told that he couldn't do "leisure travel" or sightseeing flights.

Finally, the fact that Mr. Singer may fly a number of allowed flights (hypothetically, for example, flying a group of doctors to Lake Tahoe) does not save his sightseeing operations. You have analogized to Target being allowed to sell video games. Your analogy is factually dissimilar and overlooks the text of the order. While Paragraph 15(f)(2) governs stores like Target, Paragraph 6 of the Order more generally requires businesses to "scale down" to their allowed operations.[1]

### The Federal Aviation Act and Preemption

In claiming that the Shelter in Place Order in question is aimed at the regulation of the federal government's "pervasive scheme to regulate an area of activity," you rely in great measure on the implied preemption holding of *City of Burbank v. Lockheed Air Terminal*, 411 U.S. 624 (1973). But, *City of Burbank* does not extend to local laws which, like the Shelter-in-Place Order, regulate the containment of a global pandemic and not the flight or noise of aircraft. In other, similar contexts, courts have limited the application of *City of Burbank*.

To name one, in *Gustafson v. City of Lake Angelus*, 76 F.3d 778 (6th Cir., 1996) the plaintiff claimed that ordinances which prohibited the operation of seaplanes on a lake near his home were preempted by the Federal Aviation Act. The district court agreed and granted summary judgment in favor of the plaintiff on the basis of *City of Burbank*. The Sixth Circuit reversed:

> *[I]n the present case, an examination of the Federal Aviation Act and regulations concerning seaplanes and aircraft landing sites indicates that*

---

[1] Establishments like Target that sell "multiple categories" of products are specifically addressed in Paragraph 15(f)(2) of the Order: "Grocery stores, certified farmers' markets, farm and produce stands, supermarkets, food banks, convenience stores, and other establishments engaged in the retail sale of unprepared food, canned food, dry goods, non-alcoholic beverages, fresh fruits and vegetables, pet supply, fresh meats, fish, and poultry, as well as hygienic products and household consumer products necessary for personal hygiene or the habitability, sanitation, or operation of residences. **The businesses included in this subparagraph (ii) include establishments that sell multiple categories of products provided that they sell a significant amount of essential products identified in this subparagraph, such as liquor stores that also sell a significant amount of food.**" Thus, as expressly authorized by the Order, a store like Target can sell video games. More generally, and as applicable to a business like Seaplane Adventures, Paragraph 6 of the Order requires businesses to scale down to their allowed components *only*: "Except as otherwise provided in Appendix C-1, businesses that include an Essential Business or Outdoor Business component at their facilities alongside other components must, to the extent feasible, scale down their operations to the Essential Business and Outdoor Business components only; provided, however, mixed retail businesses that are otherwise allowed to operate under this Order may continue to stock and sell non-essential products.

COUNTY OF MARIN         OFFICE OF THE COUNTY COUNSEL 3501 Civic Center Drive · Suite 275 · San Rafael, CA 94903

*the designation of plane landing sites is not pervasively regulated by federal law, but instead is a matter left primarily to local control.* In contrast to the pervasive scheme of federal regulation of aircraft noise found in *Burbank*, we fail to identify any language in the Act, the regulations promulgated pursuant to the Act, or the legislative history of the Act, which by implication preempts enforcement of the City's ordinances....

*Id.*, 76 F.3d at 784 (emphasis added).

Here too, just like the local regulation of seaplane landing sites in *Gustafson*, the local regulation of businesses to prevent the spread of COVID-19 is a "mater left primarily to local control." A California Public Health Officer has broad authority to order activities within the County to stop in order to prevent the spread of the pandemic. (Cal. Health and Safety Code Sections 101040, 101085, and 120175.) You cite the fact that the FAA has issued a number of exemptions and guidelines to facilitate air transportation during the COVID-19 pandemic. While true, this doesn't change the preemption analysis, which is mainly rooted in the text of the Federal Aviation Act itself. The Shelter-In-Place order has nothing to do with the pervasive scheme for regulating aircraft flight or noise found in *Burbank*.

### Seaplane Adventures as "Airline"

Even if Seaplane Adventures is considered an "airline" under the Order (which it is not), it wouldn't change the result here. Paragraph 15(f)(xx) allows for the continued operation of "Airlines, taxis, rental car companies, rideshare services (including shared bicycles and scooters), and other private transportation providers *providing transportation services* necessary for Essential Activities and other purposes expressly authorized in this Order [emphasis added]."

When running sightseeing tour flights above the Bay Area, Seaplane Adventures isn't providing "transportation services." Patrons return to the same place they took off from – Sausalito; they are not transported. Thus, the scenic tours aren't an allowed activity under the Order. To the extent Seaplane Adventures runs charter flights to Tahoe, those flights would be allowed so long as they are done for authorized purposes (i.e. for "essential travel").

Please contact me if you would like to further discuss this matter.

Sincerely,

Brian Case
Deputy County Counsel

**EXHIBIT G**

**COVID-19 Status Update for 08/04/2020**  ✕

The status update for August 4, 2020 includes information about the disparity between state and local counts, information about a telephone town hall tomorrow and updated COVID-19 activity. Note:... **Read More (/covid-19-status-update-08042020)**

# Outdoor Businesses

Can an adult sports league operate?

Can a youth sports league (baseball, softball, volleyball, football, tennis, basketball, soccer, swimming, etc.) operate?

I run a charter boat company. What guidelines must I follow when I reopen my business?

Are charter boats allowed to operate?

Yes, as of June 5, 2020, charter boats may operate in the County. Charter boats include boats available for rent or charter for fishing, memorial services at sea, sightseeing, and other activities. All charter boat operations must follow all existing Health Officer Orders, including the Facial Coverings Order (https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/Guidance-for-Face-Coverings_06-18-2020.pdf), and implement a Site-Specific Protection Plan (https://marinrecovers.com/documents/covid-19-site-specific-protection-plan-spp/). Additionally, all charter boat operations must abide by the following Industry-Specific Guidelines of the Health Officer: Charter Boat Operators (https://marinrecovers.com/parks-outdoor-recreation/), Outdoor Recreation Activity Businesses (https://marinrecovers.com/parks-outdoor-recreation/), Recreational Equipment Rental Businesses (https://marinrecovers.com/parks-outdoor-recreation/), and Childcare Establishments (https://marinrecovers.com/summer-camps-youth-activities/), Summer Camps and Sports Camps (https://marinrecovers.com/summer-camps-youth-activities/).

Last Updated 07/08/2020 - 11:12

type to search FAQs  ⟳  🔍 Search

## FAQ Categories

About COVID-19 ▼ (/faq/79)

Business & Economy ▼ (/faq/108)

Community ▼ (/faq/114)

Emotional Health & Wellbeing ▼ (/faq/104)

Food & Supplies ▼ (/faq/99)

Prevention ▼ (/faq/85)

Shelter in Place & Quarantine ▼ (/faq/91)

Specific Populations ▼ (/faq/83)

Symptoms, Treatment & Testing ▼ (/faq/80)



© 2020 County of Marin. All rights reserved.

Accessibility (https://www.marincounty.org/main/accessibility)

Disclaimers (https://www.marincounty.org/main/disclaimers)

Terms of Use (https://www.marincounty.org/main/terms-and-conditions)

Notice of Nondiscrimination (https://www.marinhhs.org/node/2237)

▶ YouTube (https://www.youtube.com/playlist?list=PLEJhSDW-n-8nqgP2DkvOF872lgO_OLWhP)

● Facebook (https://www.facebook.com/CountyOfMarin)

🐦 Twitter (https://twitter.com/maringov)

🏠 Nextdoor (https://nextdoor.com/agency-detail/ca/san-rafael/marin-county)

Enter your email        Subscribe

Be the first to find out about updates and the latest news in Marin County.

If you are a person with a disability and require an accommodation to participate in a County program, service, or activity, requests may be made by calling (415) 473-4381 (Voice), Dial 711 for CA Relay, or by email (mailto:disabilityaccess@marincounty.org) at least five business days in advance of the event. We will do our best to fulfill requests received with less than five business days' notice. Copies of documents are available in alternative formats upon request.

# EXHIBIT H

⚠ COVID-19 Status Update for 09/01/2020                                                                                                                                         ✕

The status update for September 1, 2020 includes a video update from Dr. Willis; a public health order enforcement update; new COVID-19 activity; and a quick summary of other major events from the day. ... Read More

Translate

# Appendix C-1: Additional Businesses Permitted to Operate

# [August 31, 2020]

## Table of Contents:

- General Requirements (overview)
- Retail Stores and Retail Supply Chain Businesses
- Pet Grooming
- Childcare Establishments, Summer Camps and Sports Camps
- Office Space
- Seated Outdoor Dining
- Library for Curbside Pickup
- Outdoor Recreation Activity Businesses
- Faith-Based and Cultural Ceremony Organizations
- Cleaning and Janitorial Services
- Gyms and Fitness Centers (including dance, yoga, martial arts -type classes)
- Hair Salons and Barbershops
- Personal Care Services
- Hotels and Short-Term Lodging
- Music, Film and TV Production
- Campgrounds and Recreational Vehicle Parks
- Public Transit

Please note that this Appendix C-1 supersedes and rescinds the Appendix C-1 issued August 24, 2020. On August 28, 2020, the State of California issued the Blueprint for a Safer Economy, a new tiered system, that provides that as of August 31, 2020, counties in the purple tier, which includes the County of Marin may open some businesses with modifications, including shopping centers and hair salons. This Appendix C-1 is revised to allow such additional businesses to operate in the County of Marin and also to allow for the operation of all aviation related services subject to the guidance set forth herein.

## General Requirements

The "Additional Businesses" listed below may begin operating, subject to the requirements set forth in the Order and to any additional requirements set forth below or in separate industry-specific guidance by the Health Officer. These businesses were selected to implement an initial measured expansion of commercial activity based on health-related considerations including the risks of COVID-19 transmission associated with types and modes of business operations, the ability to substantially mitigate transmission risks associated with the operations, and related factors, such as the following:

- **Increase in mobility and volume of activity**—the overall impact the reopening will have on the number of people leaving their homes and traveling to work at or access the business;
- **Contact intensity**—the type (close or distant) and duration (brief or prolonged) of the contact involved in the business;
- **Number of contacts**—the approximate number of people that will be in the setting at the same time;
- **Modification potential**—the degree to which mitigation measures can decrease the risk of transmission.

To mitigate the risk of transmission to the greatest extent possible, before resuming operations, each Additional Businesses must:

1. Prepare, post, implement, and distribute to their Personnel a <u>Site-Specific Protective Plan</u> as specified in Section 15.h of the Order for each of their facilities in the County frequented by personnel or members of the public; and
2. Prepare, post, implement, and distribute to their Personnel a written health and safety plan that addresses all applicable best practices set forth in relevant Health Officer directives.

As used in this Appendix C-1, "Personnel" means the following people who provide goods or services associated with the Additional Business in the County: employees; contractors and sub-contractors (such as those who sell goods or perform services onsite or who deliver goods for the business); independent contractors (such as "gig workers" who perform work via the Additional Business's app or other online interface); vendors who are permitted to sell goods onsite; volunteers; and other individuals who regularly provide services onsite at the request of the Additional Business.

Also, each Additional Business must comply with Social Distancing Requirements as well as all relevant state guidance and local directives. Where a conflict exists between the state guidance and local public heath directives related to the COVID-19 pandemic, the most restrictive provision controls.

# List of Additional Businesses

For purposes of the Order, Additional Businesses include the following based on the summarized health risk related rationale:

# (1) Retail Stores and Retail Supply Chain Businesses - UPDATED August 31, 2020

**INDOOR MALLS ORDERED TO CLOSE PER STATE DIRECTIVE AND THIS APPENDIX C-1**

- **Basis for Addition.** Curbside pickup and outdoor retail have low contact intensity and a moderate number of contacts where interaction between the businesses' Personnel (as defined below) and customers occur in the outdoors. Businesses that involve outdoor interactions carry a lower risk of transmission than most indoor businesses. Also, curbside pickup and outdoor retail at these stores should result in only a relatively modest increase in the number of people reentering the workforce and the overall volume of commercial activity and mitigation measures can meaningfully decrease the resulting public health risk. Indoor retail has been allowed by the State of California, and operating this service should result in a limited increase in the number of people reentering the workforce and mitigation measures can meaningfully decrease the resulting public health risk. As of August 31, 2020, the State of California permits indoor shopping centers to operate at 25% capacity, but common areas and food courts must remain closed.
- **Description and Conditions to Operate.** Effective July 13, 2020, the following businesses are permitted to operate, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding <u>Required Best Practices for Non-Essential Retailers</u>, as well as the following stated limitations and conditions:

Retail stores may operate subject to the following limitations:

1. Retail stores may operate for curbside/outside pickup and may display merchandise or create an outdoor retail location with permission from the local jurisdiction;
2. Retail stores must ensure that any curbside or outside retail activity does not block pedestrian access or cause pedestrian or vehicle congestion; and
3. Retail stores may allow customers to enter their stores to engage in indoor shopping by appointment and/or on a first come first served basis so long as 50% or less of the maximum allowable occupancy of the store is utilized at any given time.
4. **<u>Effective August 31, 2020, indoor shopping centers are permitted to operate at 25% capacity, but common areas and food courts must remain closed pursuant to the State of California guidelines.</u>**

- Businesses that manufacture the goods sold at retail stores covered in category (i) above and have no more than 50 Personnel on site in the facility at any time.
- Businesses that provide warehousing and logistical support to the retail stores covered in category (i) above and have no more than 50 Personnel on site in the facility at any time.

# (2) Pet Grooming

- **Basis for Addition.** The State of California has determined that it would be appropriate to allow these businesses to resume operation. In addition, such services have low contact intensity. Opening these services should result in a limited increase in the number of people

reentering the workforce and the overall volume of commercial activity and mitigation measures can meaningfully decrease the resulting public health risk.
- **Description and Conditions to Operate.** Pet grooming businesses are permitted to operate, beginning at 10:00 a.m. on May 22, 2020, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Pet Grooming Businesses.

# (3) Childcare Establishments and Youth Programs – UPDATED August 31, 2020

- Childcare Establishments and Youth Programs are permitted to operate consistent with State of California Guidance including the following: https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/contact-management-childcare-facilities.aspx and https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/small-groups-child-youth.aspx and https://files.covid19.ca.gov/pdf/guidance-youth-sports--en.pdf

# (4) Office Space – UPDATED JULY 15, 2020

**OFFICES FOR NON-ESSENTIAL SECTORS ORDERED CLOSED PER STATE DIRECTIVE ON JULY 13, 2020 AND THIS APPENDIX C-1**

- **Change in Status.** Indoor office spaces for non-essential sectors are not permitted to operate. These offices may continue to engage in telework and minimum basic operations.
- **Basis for Addition.** Due to County's placement on the State Monitoring List for more than three consecutive days, the State has determined that indoor office spaces for non-essential sectors must close.
- **Description and Conditions to Operate.** Effective July 13, 2020, indoor offices spaces for non-essential sectors are not able to operate. These offices may continue to engage in minimum basic operations, as specified in the May 15, 2020 Shelter-in-Place Order and telework. The State's list of essential sectors is available at https://covid19.ca.gov/img/EssentialCriticalInfrastructureWorkers.pdf. Office spaces for essential sectors may continue to operate, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Office Spaces.

# (5) Restaurants – OUTDOOR DINING, CURBSIDE PICK-UP, AND DELIVERY ONLY PERMITTED AT THIS TIME

- **Change in Status.** Restaurants, brewpubs, breweries, bars, pubs, craft distilleries, and wineries that provide sit-down food services themselves, or can contract with another vendor to do so, and where alcohol is only served with the order of a meal, are permitted to operate for take-out/curbside pickup and outdoor dining only at this time. Indoor dining at restaurants remains prohibited.
- **Basis for Addition.** The State of California has determined that restaurants may operate and provide take-out and outdoor dining. Indoor dining is currently prohibited due to the County's placement on the State Monitoring List for three consecutive days.
- **Description and Conditions to Operate.** These businesses are permitted to operate only for take-out/curbside pickup and outdoor dining, beginning at 11:59 p.m. on July 5, 2020, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Seated Outdoor Dining.

# (6) Library for Curbside Pickup

- **Basis for Addition.** Curbside library services have low contact intensity and a moderate number of contacts where interaction between Personnel and customers occur in the outdoors. Businesses that involve outdoor interactions carry a lower risk of transmission than most indoor businesses. Also, curbside library services should result in only a relatively modest increase in the number of people reentering the workforce and mitigation measures can meaningfully decrease the resulting public health risk.
- **Description and Conditions to Operate.** These businesses are permitted to operate immediately upon issuance of this Appendix C-1, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Curbside Library Services.

# (7) Outdoor Recreation Activity Businesses

- **Change in Status.** A business able to provide its customers with recreational activities, opportunities and/or instruction occurring exclusively outside, as allowed by the local jurisdiction, are able to operate pursuant to this Appendix C-1. Recreational activities, opportunities and/or instruction are activities such as recreation, arts and crafts, musical, dramatic and cultural.
- **Basis for Addition.** Businesses that involve outdoor interactions carry a lower risk of transmission than most indoor businesses. Opening these services should result in a limited increase in the number of people reentering the workforce and mitigation measures can meaningfully decrease the resulting public health risk.
- **Description and Conditions to Operate.** These businesses are permitted to operate, beginning at 7:00 a.m. on June 5, 2020, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Outdoor Recreation Activity Businesses.

# (8) Faith-Based and Cultural Ceremony Organizations – Outdoor Operations Only

- **Change in Status.** Faith-based Organizations and Cultural Ceremony Organizations that are able to provide services, weddings – including similar commitment ceremonies – or funeral or wake services outdoors as allowed by the local jurisdictions are able to operate pursuant to this Appendix C-1.
- **Basis for Addition.** Businesses that involve outdoor interactions carry a lower risk of transmission than most indoor businesses. Opening these services should result in a limited increase in the number of people reentering the workforce and mitigation measures can meaningfully decrease the resulting public health risk.
- **Description and Conditions to Operate.** These businesses are permitted to operate, beginning at 7:00 a.m. on June 5, 2020, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices For Organizations Or Individual Organizers Providing Outdoor Faith-Based Or Cultural Ceremonies.

# (9) Cleaning and Janitorial Services

- **Change in Status.** All businesses or individuals that provide cleaning or janitorial services for residential and/or commercial spaces are now able to operate pursuant to this Appendix C-1.
- **Basis for Addition.** The State of California has determined that it would be appropriate to allow these businesses to resume operation. Opening these services should result in a limited increase in the number of people reentering the workforce and mitigation measures can meaningfully decrease the resulting public health risk.
- **Description and Conditions to Operate.** Cleaning and Janitorial Services are permitted to operate, beginning at 7:00 a.m. on June 12, 2020, subject to the stated limitations and conditions:
  - Cleaning and Janitorial Services shall follow all applicable state and federal guidelines, including the COVID-19 Industry Guidance: Limited Services and the safer cleaning methods set forth by the California Department of Public Health and all applicable recommendations for sanitizing, ventilating, cleaning and disinfecting spaces set forth by the Centers for Disease Control and Prevention;
  - Cleaning and Janitorial Services shall complete a COVID-19 Site-Specific Protection Plan ("SPP") and shall have a copy of the same with them whenever performing services. Cleaning and Janitorial Services shall show their SPP to any client upon request;
  - For residential properties, residents will not be present in the home during cleaning; and
  - For commercial properties, no tenant or member of the public will be present in the immediate office or space during cleaning.

# (10) Gyms and Fitness Centers – Outdoor Operations Only

- Basis for Addition. The State of California has determined that gyms and fitness centers may operate to the extent they can be modified to operate outdoors.
- Description of Conditions to Operate. To the extent businesses may shift their operations outdoors, these businesses are subject to the stated limitations and in strict compliance with the Health Officer of the County of Marin Public Health Order—Outdoor Recreation Activity and Best Practices—Outdoor Recreation Activity Businesses found at: https://marinrecovers.com/parks-outdoor-recreation.

## (11) Hair Salons and Barbershops – UPDATED AUGUST 31, 2020

- Change in Status. The State of California has determined that as of August 31, 2020, hair salons and barbershops may open indoors with modifications.
- Description of Conditions to Operate. Hair Salons and Barbershops are permitted to operate indoors effective August 31, 2020 pursuant to the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Hair Salons/Barbershops and State of California Guidance located at https://files.covid19.ca.gov/pdf/guidance-hair-salons.pdf.

## (12) Personal Care Services – Outdoor Operations Only

**Shops that offer tattoos, piercings and electrolysis may not be operated outdoors and must remain closed.**

- Basis for Addition. The State of California has determined that most personal care services may operate to the extent they can be modified to operate outdoors.
- Description of Conditions to Operate. To the extent businesses may shift their operations outdoors, these businesses are subject to the stated limitations and in strict compliance with State of California Covid-19 Industry Guidance: Expanded Personal Care Services Provided Outdoors https://files.covid19.ca.gov/pdf/guidance-outdoor-personal-care--en.pdf.

## (13) Hotels and Short-Term Lodging – Updated August 24, 2020

- The enactment of this Appendix C-1 hereby rescinds the May 29, 2020 Order of the Health Officer of the County of Marin Continuing Restrictions on the Use of Short-Term Lodging Facilities. Hotels and Short-Term Lodging may operate, subject to and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Hotels, Lodging, and Short-Term Rentals.

## (14) Music, Film, and TV Production – UPDATED JULY 15, 2020

- Basis for Addition. The State of California has determined that music, film, and TV production may resume operations.
- Description of Conditions to Operate. These businesses are permitted to operate, beginning at 7:00 a.m. on June 29, 2020, subject to the completion of a site-specific protection plan and the safety protocols agreed upon by labor and management. Back office operations must cease indoor operations. Please see Paragraph (4) "Office Space."

## (15) Campgrounds and Recreational Vehicle Parks – Updated July 15, 2020

- **Basis for Addition.** The State of California has determined that campgrounds and recreational vehicle (RV) parks may operate. Camping and recreational vehicle (RV) parks are outdoor activities that can occur with members of one's own household without generating substantial risk of contact with other households. Risks associated with this activity can be mitigated through measures that provide for adequate social distancing.
- **Description of Conditions to Operate.** Campgrounds and RV parks are permitted to operate, beginning at 7:00 a.m. on June 29, 2020, subject to the applicable guidance issued by the State of California (https://covid19.ca.gov/pdf/guidance-campgrounds.pdf). In addition to following the applicable state guidance, these businesses must adhere to the following limitations:

- Only designated camping/RV spots may be used.
- Each camping/RV spot may be occupied by only one household or living unit at a time.
- If camping/RV spots are immediately adjacent to one another, there must be at least one closed camping spot between each open spot to maintain adequate distance between households or living units.

# (16) Public Transit

- **Basis for Addition.** The State of California issued guidance for public transit agencies on May 12, 2020.
- **Description of Conditions to Operate.** Notwithstanding Section 8 of the Order, public transit shall comply with the State of California COVID-19 Industry Guidance (https://covid19.ca.gov/pdf/guidance-transit-rail.pdf).

# (17) Aviation Services

- **Basis for Addition.** Such services have low contact intensity. Opening these services should result in a limited increase in the number of people reentering the workforce and the overall volume of commercial activity and mitigation measures can meaningfully decrease the resulting public health risk.
- **Description of Conditions to Operate.** Notwithstanding Sections 8 and 15.f.xx of the Order, aviation-based services are permitted to operate subject to the implementation of a Site-Specific Protection Plan and in compliance with any State of California industry guidelines.

Updated August 31, 2020 by:

Matt Willis, MD, MPH
Health Officer of the County of Marin


COUNTY OF MARIN

Accessibility

Disclaimers

Terms of Use

Notice of Nondiscrimination

YouTube

Facebook

Twitter

Nextdoor

Enter your email

Subscribe

Be the first to find out about updates and the latest news in Marin County.

© 2020 County of Marin. All rights reserved.

If you are a person with a disability and require an accommodation to participate in a County program, service, or activity, requests may be made by calling (415) 473-4381 (Voice), Dial 711 for CA Relay, or by email at least five business days in advance of the event. We will do our best to fulfill requests received with less than five business days' notice. Copies of documents are available in alternative formats upon request.