BRIAN E. WASHINGTON, COUNTY COUNSEL
Brandon W. Halter, Deputy, SBN 289687
3501 Civic Center Drive, Ste. 275
San Rafael, CA 94903
Tel.: (415) 473-6117
Fax: (415) 473-3796
bhalter@marincounty.org

Attorneys for Defendant
COUNTY OF MARIN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAPLANE ADVENTURES, LLC, a California Limited Liability Company<br><br>     Plaintiff,<br><br>  v.<br><br>COUNTY OF MARIN, CALIFORNIA; AND DOES 1 THROUGH 10, Inclusive,<br><br>     Defendant. | Case No.: 20-cv-06222-WHA<br><br>**DEFENDANT COUNTY OF MARIN'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Complaint filed: September 2, 2020<br><br>Date:  October 7, 2021<br>Time:  8:00 AM<br>Judge:  Honorable William Alsup<br>Dept:  Courtroom 12, 19th Floor |

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES .............................................................................................. ii

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ....................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 3

I.    INTRODUCTION ................................................................................................. 3

II.   BACKGROUND .................................................................................................. 6

    A.   The COVID-19 Pandemic ............................................................................ 6

    B.   County's Initial Response to the COVID-19 Pandemic ................................ 6

    C.   County's Phased Approach to Reopening .................................................... 7

    D.   County's Outreach and Enforcement Efforts ............................................... 9

        1. County's Enforcement Efforts Against Skydive Golden Gate ............... 11

        2. County's Enforcement Efforts Against Seaplane Adventures ................. 12

        3. County's Enforcement Efforts Against San Francisco Helicopters ........ 14

    E.   This Lawsuit ................................................................................................ 14

III.  ARGUMENT ...................................................................................................... 15

    A.   Legal Standard ............................................................................................. 15

        1. Standard for Evaluating a Motion for Summary Judgment ................... 15

        2. Required Elements of an Equal Protection Claim ................................. 16

    B.   There Is No Evidence That County Violated Plaintiff's Right to Equal Protection ............... 16

        1. Plaintiff Is Only Similarly-Situated To Other Indoor Recreation or Recreational Travel Businesses ................................................................................................. 17

        2. There Is No Evidence That County Intentionally Treated Plaintiff Differently Than Other Indoor Recreation or Recreational Travel Businesses ..................... 19

        3. Plaintiff Is Not Similarly-Situated to Businesses In Other Industries .................. 20

        4. Even If Plaintiff Could Be Considered Similarly-Situated To Businesses In Other Industries, County Had A Rational Basis For Treating Other Industries Differently ........ 21

IV.   CONCLUSION .................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Aleman v. Glickman*,
  217 F.3d 1191 (9th Cir. 2000) .................................................................................. 22

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).................................................................................................. 16

*Angelotti Chiropractic, Inc. v. Baker*,
  791 F.3d 1075 (9th Cir. 2015) .................................................................................. 21

*Best Supplement Guide, LLC v. Newsom*,
  No. 2:20-cv-00965-JAM-CKD, 2020 WL 2615022 (E.D. Cal. May. 22, 2020).................................. 16

*Brach v. Newsom*,
  6 F.4th 904 (9th Cir. 2021) ....................................................................................... 22

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).............................................................................................. 15, 16

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985).................................................................................................. 16

*Clubside, Inc. v. Valentin*,
  468 F.3d 144 (2d Cir .2006)....................................................................................... 17

*Disbar Corp. v. Newsom*,
  508 F. Supp. 3d 747 (E.D. Cal. 2020)................................................................... 22, 23

*Engquist v. Oregon Dep't of Agric.*,
  478 F.3d 985 (9th Cir. 2007) .................................................................................... 17

*FCC v. Beach Commc'ns, Inc.*,
  508 U.S. 307 (1993).................................................................................................. 16

*Gerhart v. Lake Cnty., Mont.*,
  637 F.3d 1013 (9th Cir. 2011) .................................................................................. 16

*Heller v. Doe*,
  509 U.S. 312 (1993).................................................................................................. 22

*JDC Mgmt., LLC v. Reich*,
  644 F. Supp. 2d 905 (W.D. Mich. 2009) .................................................................. 17

*Maynard v. U.S. Dist. Court for the Cent. Dist. Of Calif.*,
  701 F. Supp. 738 (1988) ........................................................................................... 16

*Net Connection LLC v. Cnty. of Alameda,*
  No. C 13–1467 SI, 2013 WL 3200640 (N.D. Cal. June 24, 2013) .......................................... 16

*Soremekun v. Thrifty Payless, Inc.,*
  509 F.3d 978 (9th Cir. 2007) ....................................................................................... 15, 16

*Thornton v. City of St. Helens,*
  425 F.3d 1158 (9th Cir. 2005) ............................................................................................ 17

*U.S. v. Moore,*
  543 F.3d 891 (7th Cir. 2008) .......................................................................... 4, 17, 18, 20

*United States v. Navarro,*
  800 F.3d 1104 (9th Cir. 2015) ............................................................................................ 21

*United States v. Padilla-Diaz,*
  862 F.3d 856 (9th Cir. 2017) .............................................................................................. 22

*Warkentine v. Soria,*
  152 F. Supp. 3d 1269 (E.D. Cal. 2016) ......................................................................... 4, 17

*Witt v. Dept. of Air Force,*
  527 F.3d 806 (9th Cir. 2008) .............................................................................................. 21

**Federal Statutes**

42 U.S.C.. § 1983 ................................................................................................................. 14

**Federal Rules**

Fed. R. Civ. P. 56 ..................................................................................................................... 1

Fed. R. Civ. P. 56(a) ............................................................................................................. 15

Fed. R. Civ. P. 56(c)(1) ......................................................................................................... 15

Fed. R. Civ. P. 56(c)(2) ......................................................................................................... 16

iii

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

TO ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on the above captioned date and time, or as soon thereafter as the matter may be heard, in Courtroom 12 of this court located at 450 Golden Gate Avenue, 19th Floor, San Francisco, California 94102, Defendant COUNTY OF MARIN ("County" or "Defendant") will and hereby does move for summary judgment in its favor, and against Plaintiff Seaplane Adventures, LLC ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 56. The grounds for County's motion for summary judgment is that Plaintiff's only pending claim is a claim for a violation of the Equal Protection Clause of the U.S. Constitution, but there is no genuine dispute of material fact that County did not intentionally against Plaintiff without a rational basis. First, there is no genuine dispute that there is a rational basis for County's decision to treat recreational air travel differently from other types of business activities in connection with the health orders that it issued to slow the spread of COVID-19, because scientific evidence and the expert judgment of health professionals including County's public health officer show that recreational air travel involves different risks with respect to the spread of COVID-19 than certain other types of business activities. Second, there is no genuine dispute that County did not intentionally treat Plaintiff differently from other types of businesses offering recreational air travel services because with respect to all such businesses, County enforced the terms of the health orders against such businesses in the same way.

The County's motion will be and is based on this notice of motion and motion; the memorandum of points and authorities; the accompanying declarations of Brandon W. Halter, Marin County Public Health Officer Dr. Matthew Willis, Marin County Airport Manager Dan Jensen, Sergeant Brenton Schneider, Deputy Robert Heilman, Legal Secretary Rachael Porter, and Chief Deputy County Counsel Jenna Brady, as well all exhibits to these declarations; and all the papers, pleadings, and records on file in this action, and any further material and argument presented to the Court prior to or at the time of the hearing.

//

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

Whether there is a genuine dispute of material fact as to whether County is entitled to summary judgment as to Plaintiff's equal protection claim.

DATED:  September 2, 2021

BRIAN E. WASHINGTON
COUNTY COUNSEL

By:  _____

Brandon W. Halter
Attorneys for Defendant
COUNTY OF MARIN

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Beginning in early 2020, the COVID-19 pandemic affected nearly every aspect of life in the United States.  To minimize the death and destruction from COVID-19, governments at every level instituted measures to curb transmission.  For its part, defendant County of Marin (at the direction of its Public Health Officer, Dr. Matthew Willis) instituted a series of emergency health orders, industry-specific guidance, and other measures.  These efforts were based on the most up-to-date scientific evidence possible, as well as the judgment of public health experts like Dr. Willis.  The scientific evidence and expert analysis showed that one of the most common ways in which COVID-19 is transmitted is through close contact with an infected individual.  In addition, the probability of infection increases with the proximity and duration of the contact, and also increases if the contact occurs indoors.  Further, the evidence showed that a significant percentage of the people infected by COVID-19 were asymptomatic (and as a result could be unaware that they carry the virus), but could still potentially transmit the disease to others.

The first sets of public health orders issued by County as well as state and federal authorities beginning in March 2020 significantly restricted community activity, due to the need to combat what was at that time a potentially catastrophic increase in the transmission of COVID-19.  As transmission rates and other factors related to the threat of COVID-19 changed over next few months, however, County (like other governments) revised the terms of its health orders.  County's revisions, through Dr. Willis, were issued pursuant to a careful evaluation of the best way to balance the restrictions on individuals and businesses in the community that were still necessary to mitigate the threat of COVID-19 against the need to allow for individuals and businesses to return to normal activities as soon as practicable.  As a result, restrictions were revised on an industry-by-industry basis, depending on the characteristics of each industry as they related to the factors relevant to COVID-19 transmission, such as how that industry's activity would affect the volume of community activity (i.e., the number of people leaving their homes and traveling), contact intensity (i.e., the type and duration of contacts between people), and the number of contacts (i.e., the number of people in contact with one another), as well as

the degree to which mitigation measures could decrease the risk of community transmission for that industry.

Plaintiff in this case, Seaplane Adventures, LLC ("Plaintiff"), operates an air travel business, including seaplane tours and charter flights. In June 2020, County received reports that Plaintiff was operating in violation of the health orders. In response, County informed Plaintiff that pursuant to the health orders in effect at that time, its operations related to essential travel were permissible, but its operations related to indoor recreation (i.e., sightseeing tours) and/or recreational travel (i.e., recreational charter flights) were not. Under protest, Plaintiff ceased all its operations in July and August 2020, and brought this lawsuit. Now, Plaintiff's sole pending claim[1] is that County violated Plaintiff's constitutional right to equal protection, based on two different theories: (1) that County intentionally enforced its health orders more strictly against Plaintiff than it did against other recreational air travel businesses that were classified the same way under the health orders; and (2) that County had no rational basis to classify Plaintiff's operations any differently than businesses in other industries, such as charter boats. But as discussed herein, there is no evidence to support either claim.

*First*, there is no evidence that County enforced the health orders against Plaintiff any differently than it did against other "similarly-situated" businesses. To "be considered similarly-situated, the class of one challenger and his comparators must be prima facie identical in all relevant respects or directly comparable in all material respects." *Warkentine v. Soria*, 152 F. Supp. 3d 1269, 1294 (E.D. Cal. 2016) (*quoting U.S. v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008)). Here, the only other businesses that could be considered "prima facie identical" to Plaintiff are those that were classified the same way under the health orders. In other words, businesses that provided the same type of indoor recreation and/or recreational travel operations as Plaintiff, and that similarly did not fall within some other exception to the restrictions in the health orders.

Plaintiff has identified several other air travel businesses that it believes meet this requirement. However, with respect to all but two of these businesses (i.e., Plaintiff and SF Helicopters), there is no evidence that they provided any recreational flights (as compared with flights for essential travel) at all

---

[1] As discussed below, the Court dismissed all of Plaintiff's other claims at the motion to dismiss stage, except for Plaintiff's preemption claim, regarding which claim County's motion to dismiss remains pending.

4

during the period at issue. As a result, they are not similarly-situated to Plaintiff. Moreover, even if any of these businesses could be considered similarly-situated, there is no evidence that County enforced the health orders any differently against any of them. Instead, the evidence shows that with respect to each business, including Plaintiff, County's approach with respect to enforcing the health orders followed the same process. First, County publicized the orders and conducted community outreach to maximize the chance that all businesses would be informed of their terms. Second, County relied on all individuals and businesses in the community to comply in good faith with the terms of the orders—which the vast majority did. Third, County responded to reports of potential health order violations by contacting the individual or business involved, explaining the terms of the health orders as applied to that business, and following up as necessary to ensure compliance. And, though Plaintiff claimed in the FAC that County took a stricter approach with Plaintiff, there is no evidence to support Plaintiff's claim. In fact, County received reports of potential health order violations by three separate recreational air travel companies—Plaintiff, Skydive Golden Gate, and SF Helicopters—and responded to each company the same way: i.e., make contact, provide information about the terms of the health orders, and follow up as necessary to ensure compliance. There is simply no evidence to support Plaintiff's allegations that County allowed other similarly-situated businesses to operate freely, but "shut down" Plaintiff.

**Second**, there is no evidence that businesses in other industries were "similarly-situated" to Plaintiff, and even if there was such evidence, County's decision to treat these other industries differently under the health orders had a rational basis. As discussed, County's restrictions on Plaintiff were based on the fact that its operations were considered under the health orders as either indoor recreation (i.e., sightseeing flights) or non-essential travel (recreational charter flights). But the other industries to which Plaintiff compares itself—e.g., charter boats, kayak rentals, indoor retail, etc.—were classified separately under the terms of the orders, and subject to different restrictions. As a result, they were not similarly-situated to Plaintiff. Moreover, even if they were, each of these industries also involves a different type of operation than Plaintiff, with a different risk profile from the perspective of limiting transmission of COVID-19. County's decision to treat these industries differently, which was based on an evaluation of the unique attributes of each industry as they relate to COVID-19 transmission

according to scientific evidence and expert analysis, is supported by far more evidence than necessary to satisfy the rational basis standard that applies to Plaintiff's claim.

In summary, there is no genuine dispute as to any fact material to Plaintiff's equal protection claim, and County respectfully submits that summary judgment should be entered in its favor.

## II.     BACKGROUND

### A.     The COVID-19 Pandemic

COVID-19 is a potentially fatal and highly infectious disease.  *See* Declaration of Marin County Public Health Officer Dr. Matthew Willis ("Willis Decl.") ¶ 6, Ex. 1 (2020.03.16 Health Order) ¶ 6.  It spreads easily, and even people without symptoms can transmit it.  Willis Decl. ¶ 5.  When the disease first emerged domestically in early 2020, officials at all levels of government responded by declaring states of emergency.  For example, Governor Gavin Newsom issued a Proclamation of a State of Emergency on March 4, 2020, and the Board of Supervisors of the County of Marin declared a local emergency on March 10, 2020.  Willis Decl. ¶ 4, Ex. 1 ¶ 8.

### B.     County's Initial Response to the COVID-19 Pandemic

On March 16, 2020, County (as well as five other Bay Area counties) issued a shelter-in-place order ("March 16 Health Order").  Willis Decl. ¶ 6, Ex. 1 (2020.03.16 Health Order).  As the March 16 Health Order states, its intent was to "slow the spread of COVID-19 to the maximum extent possible" by ordering people to, among other things, maintain physical distance from others as much as reasonably possible at all times.  Willis Decl. ¶ 6, Ex. 1 ¶ 1.  All businesses within the County except Essential Businesses were ordered to cease activities except for Minimum Basic Operations.  Willis Decl. ¶ 1, Ex. 1 ¶ 1.  In addition, all travel except Essential Travel was prohibited.  Willis Decl., Ex. 1 at 5.  "Essential Businesses" was defined to include "Airlines, taxis, and other private transportation providers providing transportation services necessary for Essential Activities and other purposes expressly authorized in this Order."  Willis Decl., Ex. 1 ¶ 10.f.xvii.  "Essential Activities" included tasks "essential to [individuals'] health and safety," obtaining "necessary services or supplies," engaging in "outdoor activity" provided Social Distancing Requirements are met, and performing "work providing essential products and services at an Essential Business."  Willis Decl., Ex. 1 ¶ 10.a.  "Essential Travel" included travel for

Essential Activities, to care for dependents or other vulnerable persons, to educational institutions, and as required by laws." Willis Decl., Ex. 1 ¶ 10.h.

On May 15, 2020, County issued another shelter-in-place order ("May 15 Health Order"). Willis Decl. ¶ 7, Ex. 2 (2020.05.15 Health Order). The May 15 Health Order "continue[d] to restrict most activity, travel, and governmental and business functions to essential needs." *Ibid.* Notably, however, the May 15 Health Order added a new mechanism by which County could designate a "limited number of Additional Businesses and Additional Activities" to reopen going forward, in phases, depending on "progress achieved in slowing the spread of COVID-19." *Ibid.* Specifically, it gave County Health Officer Dr. Matthew Willis the authority to add new types of businesses to the list of businesses that could operate in the County in the future (i.e., Appendix C-1), based on Dr. Willis's "ongoing evaluation of the COVID-19 Indicators and other data." Willis Decl. ¶ 7, Ex. 2 ¶ 11. Under the order, COVID-19 Indicators included factors such as "the capacity of hospitals and the health system in the County and region … to provide care for COVID-19 patients," "the supply of personal protective equipment (PPE) available for hospital staff," "the ability and capacity to quickly and accurately test persons to determine whether they are COVID-19 positive," and "the ability to conduct case investigation and contact tracing." Willis Decl. ¶ 7, Ex. 2 ¶ 11.

### C. County's Phased Approach to Reopening

Pursuant to the May 15 Health Order, County added new types of businesses to the list of Additional Businesses (Appendix C-1), in phases, over the ensuing months. Per the May 15 Health Order, County's approach in determining how and when to add specific industries to Appendix C-1 was driven by evidence of the occurrence of COVID-19 throughout the region, scientific evidence and best practices regarding the most effective approaches to slow the transmission of COVID-19, and evidence that the age, condition, and health of a significant portion of the population of the County placed it at risk for serious health complications, including death, from COVID-19. Willis Decl. ¶ 8. County's approach also incorporated an evaluation of how essential the industry at issue was to the community in general. Willis Decl. ¶ 8. In addition, County's decision-making was guided by an evaluation of the risk of COVID-19 transmission from the specific activity at issue. Willis Decl. ¶ 8. This evaluation relied on evidence that some individuals who contract COVID-19 have no symptoms or mild symptoms,

7

which means they may not be aware they carry the virus.  Willis Decl. ¶ 8.  The evidence also showed that because even people without symptoms can transmit the disease, and because the disease is easily spread, gatherings of people can result in preventable transmission of the virus.  Willis Decl. ¶ 8.  This transmission risk is especially high with respect to gatherings indoors or in other areas with more limited air circulation.  Willis Decl. ¶ 8.  So, as a general matter, those industries that could resume operations in a way that better achieved the public health goals of limiting interactions (especially indoors) and maintaining social distance were generally added to Appendix C-1 earlier.  And those industries for which it was more difficult to achieve these goals of limiting interactions and maintaining social distancing were generally added later, as the trends regarding the threat of COVID-19 to the community (identified in the May 15 Health Order) improved enough to allow for riskier activities to take place.  Willis Decl. ¶ 8.

The industries that County added to Appendix C-1 in the weeks following the adoption of the May 15 Health Order demonstrate this approach.  For example, by June 1, 2020, County had revised Appendix C-1 to allow for the limited reopening of certain outdoor retail facilities, office space (but only for individuals who cannot telework), outdoor dining, curbside library services, childcare facilities, and summer/sports camps.  Willis Decl. ¶ 9.  Because of the nature of these industries' operations— either exclusively outdoors or indoors in a way that close contact would be limited—they could operate in ways that better achieved public health goals related to limiting the spread of COVID-19.  Willis Decl. ¶ 9.  In addition, they remained subject to continuing restrictions such as face covering, social distancing, and capacity requirements.  Willis Decl. ¶ 9.

Ensuing revisions to Appendix C-1 continued to follow this approach.  For example, on June 5, 2020, County revised Appendix C-1 to allow for the limited reopening of outdoor religious and cultural services (for groups of less than 100 people), as well as charter boat operators, and limited use of swimming pools and dog parks.  Willis Decl. ¶ 10.  Consistent with prior revisions, however, these industries remained subject to various restrictions intended to limit the risk of community transmission. For example, each organization was required to complete a Site-Specific Protection Plan to identify how it would reopen in a safe and clean manner for patrons and employees, and mandate precautions including social distancing and face coverings.  Willis Decl. ¶ 10.  In addition, County issued industry-

8

specific guidance that required additional measures with respect to individual industries. For example, the industry-specific guidance for charter boat operators required best practices including limited capacity and equipment spacing, and also required that charter boat operators follow the industry-specific guidance applicable to other industries, including Outdoor Recreation Activity Businesses (which required that patrons remain outdoors). Willis Decl. ¶ 10, Ex. 3 (Industry-Specific Guidance for Charter Boat Operators), Ex. 4 (Industry-Specific Guidance for Outdoor Recreation Activity).

Over the ensuing weeks, County continued to revise Appendix C-1 as circumstances related to COVID-19 allowed. Willis Decl. ¶ 11. For example, COVID-19 threat indicators such as hospitalization and positive test rates in this period improved, which allowed County to add additional industries to Appendix C-1, such as limited capacity camping/RV parks (June 29, 2020) and indoor non-essential office space at limited capacity (July 13, 2020). Willis Decl. ¶ 11; see also *id.* at Ex. 7 (2020.08.31 Order re C-1 Update). On August 31, 2020, County further revised Appendix C-1 to add aviation services, as well as add other industries with similar profiles related to COVID-19 transmission (e.g., outdoor gym and fitness center operations, indoor hair salons and barbershops), and revise existing guidance on industries that had been added earlier (e.g., increased capacity for indoor retail). Willis Decl. ¶ 11, Ex. 7 (2020.08.31 Order re C-1 Update). Again, County's phased approach to allowing individual industries to reopen was at all times based on available evidence regarding best practices for limiting COVID-19 transmission in the community and the evaluation of public health experts including Dr. Willis. Willis Decl. ¶ 12.

### D. County's Outreach and Enforcement Efforts

As County continued to revise its COVID-19-related health orders over time, it also continued to engage in community outreach and communication with both individuals and businesses to ensure the public was informed about the status of such orders. Declaration of Brandon W. Halter ("Halter Decl.") Ex. 9 (Korten Dep. Tr.) at 15:3-20:12. Specifically, County posted new orders to its website, and County Public Information Officer Laine Hendricks also created the "Marin Recovers" site at which County posted guidance for specific business sectors. Halter Decl. Ex. 9 (Korten Dep. Tr.) at 19:15-20:12; Willis Decl. ¶ 14. In addition, County worked with community partners such as the Chamber of

Commerce and local cities and towns to help publicize the terms of these orders. Halter Decl. Ex. 9 (Korten Dep. Tr.) at 15:3-20:12; Willis Decl. ¶ 14.

As discussed, the COVID-19 related health orders affected every individual and business in Marin County in some way—either through face covering mandates, social distancing mandates, or in some other fashion. Willis Decl. ¶ 16. However, County did not (and does not) have the resources to individually inform and then actively monitor every individual and business in Marin County to ensure compliance with these orders. Willis Decl. ¶ 16. As a result, to maximize the effectiveness of these health orders, County relied on the outreach and publicity efforts described above. Willis Decl. ¶ 16. In addition, County relied on individuals and business throughout Marin County to comply in good faith with the terms of these orders—which they largely did. Willis Decl. ¶ 16. Finally, County relied on reports from the general public and/or businesses to identify potential violations of these orders. Willis Decl. ¶ 17. When County received reports regarding potential violations, it made efforts to contact the individuals or businesses at issue to inform them of the terms of the orders and confirm compliance. Willis Decl. ¶ 17.

The County department that would respond to a given alleged violation would typically be determined by the County department with responsibility for overseeing the business or individual at issue. Willis Decl. ¶ 18. For example, Environmental Health Services would typically respond to complaints regarding industries that it generally oversees, such as restaurants. Willis Decl. ¶ 18. And the Marin County Sheriff's Office would typically respond to complaints regarding members of the general public or businesses that were not generally overseen by another County department. Willis Decl. ¶ 18. Regardless of which County department responded, however, County's approach to each potential violation was the same: make contact, inform the potential violator about the terms of the order, and follow up as necessary to ensure compliance, up to and including (if necessary) issuing written citations. Willis Decl. ¶ 18.

In this case, Plaintiff alleges that County treated Plaintiff differently with respect to enforcement of the health orders than it did other air travel businesses. Dkt. 21 ¶ 86. However, the undisputed evidence shows that County treated each of these businesses equally with respect to enforcement. For example, County provided general notice of the terms of the health orders to the community, and relied

10

on individual air travel businesses to comply in good faith with the terms of the orders. Willis Decl. ¶ 19. Air travel businesses in Marin County appear to have largely done so—County never received any reports of violations with respect to most of the businesses operating in the area. Willis Decl. ¶ 19; Declaration of Marin County Airport Manager Dan Jensen ("Jensen Decl.") ¶¶ 4-6. Indeed, in the time period between the issuance of the initial March 15 Health Order and the addition of Aviation Services to Appendix C-1 on August 31, 2020, County received reports of potential violations by only three air travel businesses. However, contrary to Plaintiff's allegations, and as further discussed below, County's response with respect to each of these three businesses—Skydive Golden Gate, San Francisco Helicopters ("SF Helicopters"), and Seaplane Adventures (i.e., Plaintiff)—was the same as its response to all other potential violations. In other words, in each case, County made contact, informed the potential violator about the terms of the order, and followed up as necessary to ensure compliance.

### 1. County's Enforcement Efforts Against Skydive Golden Gate

On May 28, 2020, Michael Knight of Skydive Golden Gate emailed County representatives and asked for additional information about how to resume skydiving operations at Gnoss Field in compliance with County regulations. Declaration of Jenna Brady ("Brady Decl.") at ¶ 3, Ex. 8 (2020.05.28-2020.06.19 Email Chain) at COM008011-12. County staff initially responded that they believed Skydive Golden Gate could reopen pursuant to the terms of the health orders related to outdoor recreation. *Id.* at COM 008010. However, staff then consulted with Dr. Willis and County Counsel to confirm, and informed Mr. Knight that Skydive Golden Gate's flight operations would not comply with the terms of the existing health orders. *Id.* at COM008009-10; Willis Decl. ¶ 19. As Chief Deputy County Counsel Jenna Brady explained to Mr. Knight on June 11, 2020:

> *At this time, the County of Marin does not permit indoor recreational activities unless it is related to summer camps for youth. Transportation, however, that is not recreational in nature was deemed essential by the local Public Health Officer and the State at the start of the Shelter In Place Order. If the flight school is related to essential travel, then that may be how they are operating. For businesses that have individuals inside the plane together and are for recreational purposes, this is not yet permitted by the County. The County's public health team continues to review businesses that may be opened safely and have a low risk of transmission and I have passed your email onto that group for consideration.*

1  *Id.* at COM008008.  After Mr. Knight responded by complaining that it was unfair for County to prevent

2  Skydive Golden Gate from reopening because Seaplane Adventures was currently offering recreational

3  air tours, Ms. Brady responded that "individuals inside a plane for recreational activities is not

4  permitted" and that "Seaplane Adventures have also been instructed to cease operations related to

5  recreational activities."  *Id.* at COM008007.  County did not receive any additional reports regarding

6  potential violations by Skydive Golden Gate.  *See* Jensen Decl. ¶¶ 5-6.

7          **2.  County's Enforcement Efforts Against Seaplane Adventures**

8         County began receiving reports from members of the public that Plaintiff was offering

9  recreational flights on June 5, 2020—the same day that Plaintiff states it resumed full operations after

10  voluntarily ceasing operations on March 17, 2020.  Willis Decl. ¶ 19; Halter Decl. Ex. 10 (2021.08.04

11  Singer Dep. Tr.) at 91:23-25.  Following internal discussions, including with Dr. Willis, County

12  determined that some of Plaintiff's operations—i.e., recreational air travel—were not allowed under the

13  current health orders because they did not fall within the definition of essential travel or any other

14  allowable activity (just as County had determined with respect to Skydive Golden Gate).  Willis Decl. ¶

15  19.  As a result, Sergeant Brenton Schneider of the Marin County Sheriff's Office contacted Plaintiff on

16  June 11, 2020 and informed it that it "needs to cease any operations related to commercial sight-seeing

17  flights."  Declaration of Sergeant Brenton Schneider ("Schneider Decl.") ¶ 4, Ex. 12 (2020.06.11-

18  2020.06.25 Email Chain); Halter Decl. Ex. 10 (2021.08.04 Singer Dep. Tr.) at 111:12-112:15

19  (confirming receipt).  On June 12, 2020, Plaintiff's CEO Aaron Singer responded to Sgt. Schneider that

20  Plaintiff "was never required to shut down" any of its operations, including recreational flights, because

21  it is "an essential air transportation business."  Schneider Decl. Ex. 12.  So, on June 15, 2020, Sgt.

22  Schneider responded Mr. Singer with additional explanation regarding how Plaintiff's operations were

23  governed under the health orders in effect at that time.  In summary, Sgt. Schneider explained that while

24  some of Seaplane's operations could be considered "essential travel" and therefore allowable under the

25  orders, other operations did not meet that definition and therefore were not currently allowed:

26         *Seaplane scenic tours and/or leisure travel services are not expressly called-out as an*
       *allowed "additional business" under the June 5 modification to Appendix C-1*

27         *([hyperlink])[.]  However, to the extent your business provides flights for limited,*

28         *authorized travel purposes (i.e., not sightseeing or leisure travel to Lake Tahoe), you can*

12

*provide passengers with flights that allow for "essential travel" under the County's May 15, 2020 Shelter in place order.*

Schneider Decl. ¶ 4, Ex. 12.

Unlike Skydive Golden Gate, however, Plaintiff's operations continued to be the subject of complaints submitted to County. Willis Decl. ¶ 19. This was because, as Mr. Singer explained at deposition, Plaintiff did not restrict any of its operations in response to the communications from Sgt. Schneider. Halter Decl., Ex. 10 (2021.08.04 Singer Dep. Tr.) at 115:2-7. As a result, on July 3, 2020, Deputy Robert Heilman of the Marin County Sheriff's Office visited Plaintiff and spoke with Mr. Singer. Declaration of Deputy Robert Heilman ("Heilman Decl.") at ¶ 4, Ex. 14 (bodycam footage); Declaration of Legal Secretary Rachael Porter ("Porter Decl."), Ex. 16 (certified transcript of bodycam footage). Deputy Heilman explained that the County health orders, as discussed in prior correspondence with Mr. Singer, prohibited Plaintiff from conducting certain activities; i.e., recreational flights. Heilman Decl. ¶ 4, Ex. 14; Porter Decl. Ex. 16. In addition, Deputy Heilman explained that as discussed in prior correspondence from County, if Plaintiff continued to conduct such flights, County would issue it written citations:

> *Deputy Heilman:* *[…] I've been directed to come down and inform you, **as per the emails you guys have been exchanging back and forth, that if you do take off with passengers on – on your flight plans or whatever you have for your tours and whatnot**, that each time you land, you will be cited. That's all I've been told to tell you.*
>
> *Mr. Singer:* *So as of now you're letting me know that?*
>
> *Deputy Heilman:* *I am telling you now that if you take off with passengers in your plane and land, that you will be cited.*

Heilman Decl. Ex. 14; Porter Decl. Ex. 16 at 8:11-24 (emphasis added).

Following this interaction, Plaintiff ceased commercial operations. However, County continued to communicate with Plaintiff regarding the details of the health orders as applied to Plaintiff's operations. Specifically, in response to a July 10, 2020 letter from Plaintiff's counsel (Dkt. 21 ¶ 22; Dkt. 21-2, Ex. F), County Counsel sent Plaintiff a letter on July 15, 2020 which further explained how the health orders prohibited Plaintiff from conducting recreational (non-essential) travel but allowed for essential travel (Dkt. 21 ¶ 23; Dkt. 21-1, Ex. E). Plaintiff did not resume its commercial operations until

13

after County added Aviation Services to Appendix C-1 on August 31, 2020.  Halter Decl. Ex. 10 (2020.08.04 Singer Dep. Tr.) at 116:2-7, 167:1-168:10.

### 3.  County's Enforcement Efforts Against San Francisco Helicopters

On June 28, 2020, County received a complaint from a member of the public that San Francisco Helicopters ("SF Helicopters")—which conducts certain charter and sightseeing flights in Marin County including at the same facility used by Plaintiff—was also conducting recreational non-essential flights in violation of the health orders.  Willis Decl. ¶ 19.  So, on July 2, 2020, Deputy Heilman and two other deputies visited SF Helicopters' offices and discussed the terms of the health orders with representatives of SF Helicopters.  Heilman Decl. ¶¶ 2-3, Ex. 13 (bodycam footage); Porter Decl. Ex. 15 (certified transcript of bodycam footage).  As the deputies explained, they also intended to speak with representatives of Plaintiff (which they did, the next day), but the same orders that prohibited Plaintiff from operating recreational sight-seeing flights also prohibited SF Helicopters from conducting recreational sight-seeing flights.  Heilman Decl. ¶ 3, Ex. 13; Porter Decl. Ex. 15.  As one of the deputies explained:

> *[County's] argument is … if you're taking passengers on a tourist trip, you're not, in other words, transporting them to another location, that it's not essential travel and that it's a violation of the health order.  I know you guys have got a green light from the FAA. I understand that, but it is a different thing, and we are being told that – that if we, you know, observe the helicopter to take off and come back, that we are to try to attempt contact with the pilot basically on the – on the return and issue one of these tickets.*

Heilman Decl. Ex. 13; Porter Decl. Ex. 15 at 13:25-14:11.  County did not receive any reports of violations by SF Helicopters after this interaction.  Willis Decl. ¶ 19.

### E.  This Lawsuit

Plaintiff filed its complaint in this matter on September 2, 2020, three days after County added aviation services to Appendix C-1.  Dkt. 1.  Plaintiff filed its first amended complaint ("FAC") on December 2, 2020.  Dkt. 21.  The FAC asserted six claims:  (1) deprivation of due process; (2) deprivation of equal protection; (3) uncompensated taking; (4) preemption; (5) violation of 42 U.S.C. § 1983; and (6) declaratory relief.  Dkt. 21.  The County moved to dismiss them all on January 6, 2021. Dkt. 24.  Before hearing the County's motion, the Court invited the FAA to provide input as *amicus curiae* on Plaintiff's certifications related to aviation as well as whether the health order was preempted

14

by federal law.  Dkt. 35.  Then, the Court dismissed all Plaintiff's claims except for the preemption claim (because it was awaiting input from the FAA) and the equal protection claim (because the FAC stated a claim).  Dkt. 36.  The Court's consideration of County's motion to dismiss the preemption claim remains pending, so the only claim currently pending against County is the claim based on an alleged violation of equal protection.

In support of its equal protection claim, Plaintiff alleges, in summary, that County intentionally discriminated against Plaintiff without a rational basis by applying and enforcing the terms of the health orders against Plaintiff more strictly than it did against other similarly-situated businesses.  But as described herein, there is no evidence to support Plaintiff's claim.  As a result, County respectfully submits that summary judgment should be entered in its favor.

## III.    ARGUMENT

### A.    Legal Standard

#### 1.    Standard for Evaluating a Motion for Summary Judgment

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof.  *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  Here, since the nonmoving party (i.e., Plaintiff) will have the burden of proof

15

at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex*, 477 U.S. at 323). Once the moving party has met its burden, the nonmoving party must point to "specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

Only admissible evidence may be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*, 509 F.3d at 984.

## 2. Required Elements of an Equal Protection Claim

The Equal Protection Clause prohibits the government from drawing "arbitrary distinctions between individuals based solely on differences that are irrelevant to a legitimate governmental objection." *Best Supplement Guide, LLC v. Newsom*, No. 2:20-cv-00965-JAM-CKD, 2020 WL 2615022, at *6 (E.D. Cal. May 22, 2020) (citing *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985)). However, equal protection claims only garner strict scrutiny when a law "disadvantages a suspect class or impinges upon a fundamental right." *Maynard v. U.S. Dist. Court for the Cent. Dist. Of Calif.*, 701 F. Supp. 738, 742 (1988). Here, Plaintiff is not a member of a suspect class and does not allege that the health orders impinge on a fundamental right. Therefore, Plaintiff's claim is a so-called "class of one" theory, subject to rational basis review. *See FCC v. Beach Commc'ns, Inc.* 508 U.S. 307, 313 (1993).

"A 'class of one' claim requires a showing that the government '(1) intentionally (2) treated [plaintiffs] differently than other similarly-situated [businesses], (3) without a rational basis.' " *Net Connection LLC v. Cnty. of Alameda*, No. C 13–1467 SI, 2013 WL 3200640, at *4 (N.D. Cal. June 24, 2013) (quoting *Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011)).

## B. There Is No Evidence That County Violated Plaintiff's Right to Equal Protection

Here, there is no evidence that County violated the Equal Protection Clause with respect to its application of the health orders to Plaintiff's operations. First, courts interpret the definition of "similarly-situated" extremely narrowly, and there is no evidence that County intentionally treated Plaintiff differently from the few businesses that can potentially be considered "similarly-situated" under the health orders. Second, even if Plaintiff could be considered similarly-situated to the broader array of

16

review is highly deferential to government decision-making, and the differences between the way County treated Plaintiff and businesses in other industries was sufficiently supported by scientific evidence regarding the best ways to limit the damage to the community from COVID-19 to satisfy such review.

### 1. Plaintiff Is Only Similarly-Situated To Other Indoor Recreation or Recreational Travel Businesses

Courts "should enforce the similarly-situated requirement with particular strictness when the plaintiff invokes the class-of-one theory rather than the more settled cognizable-group theory." *Warkentine v. Soria*, 152 F. Supp. 3d 1269, 1294 (E.D. Cal. 2016) (*quoting JDC Mgmt., LLC v. Reich*, 644 F. Supp. 2d 905, 926 (W.D. Mich. 2009). Class-of-one plaintiffs "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir .2006); *see also Thornton v. City of St. Helens*, 425 F.3d 1158 (9th Cir. 2005) ("Evidence of different treatment of unlike groups does not support an equal protection claim"). As the Seventh Circuit has observed, to "be considered similarly-situated, the class of one challenger and his comparators must be prima facie identical in all relevant respects or directly comparable in all material respects." *U.S. v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008). Strict "enforcement of the similarly-situated requirement is a vital way of minimizing the risk that, unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision" made by state actors. *Reich*, 644 F. Supp. 2d at 927; *see also Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 993 (9th Cir. 2007) ("[U]nless constrained, the class-of-one theory of equal protection claim could provide a federal cause of action for review of almost every … administrative decision.") (internal quotation omitted).

Here, Plaintiff's equal protection claim is based on its allegation that County applied and enforced the health orders differently with respect to Plaintiff than other similarly-situated businesses. However, as discussed above, the only businesses that can be considered "similarly-situated" to Plaintiff for the purpose of its equal protection claim are those businesses that are "prima facie identical in all relevant respects." *See U.S. v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008). Since the health orders at issue in this case were all focused on limiting the spread of COVID-19 to the extent practicable, the only

businesses to which Plaintiff can be considered similarly-situated are those that were "prima facie identical" with respect to the way in which their operations potentially increased the spread of COVID-19—and therefore the way in which their operations were governed under the terms of the health orders. *See U.S. v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008).

As discussed in County's communications with Plaintiff, County asserted that the health orders prohibited certain of Plaintiff's operations but permitted others (at least until Appendix C-1 was revised on August 31, 2020 to add Aviation Services). Schneider Decl. Ex. 12; Heilman Decl. Ex. 14; Porter Decl. Ex. 16; Dkt. 21-1, Ex. E (2020.07.15 Ltr). On the one hand, County explained that the health orders did not prohibit Plaintiff from conducting operations related to "essential travel," such as travel related to the provision of Essential Activities. *E.g.*, Schneider Decl. Ex. 12; Dkt. 21-1, Ex. E. On the other hand, County explained that indoor recreation activities, such as Plaintiff's scenic aircraft tours, and non-essential travel, such as Plaintiff's recreational charter flights, were not yet allowed as an Additional Business, and did not otherwise fall within any other exception to the health orders' restrictions on non-essential activities. *E.g.*, Schneider Decl., Ex. 12; Dkt. 21-1, Ex. E. So, the only other businesses that could be considered "similarly-situated" are those that also performed services related to indoor recreation and/or non-essential travel that were not yet allowed as an Additional Business, and did not otherwise fall within any other exception to the health orders' restrictions on non-essential activities.

In the FAC, Plaintiff alleges that it was similarly-situated to a number of air travel companies operating in Marin County that provided the same services that Plaintiff provided. Dkt. 21 ¶ 86. At deposition, Plaintiff testified that its CEO personally observed several of these companies conducting flights in the time period between March and September, 2020. Halter Decl. Ex. 11 (2021.08.11 Singer Dep. Tr.) at 242:3-245:23, 249:9-254:7, 254:20-255:7, 258:16-259:3. However, Plaintiff's CEO conceded that these companies offered different services (i.e., potentially including essential travel), and the information that he had about these companies' operations in this period was limited to his observations of aircraft taking off and landing from time to time. Halter Decl., Ex. 11 (Singer Dep. Tr.) at 254:8-19, 255:19-256:13, 259:15-269:2. Plaintiff's CEO had no information about whether the planes were carrying passengers, or if so, where such passengers were traveling, or for what purpose. *Id.* As a

result, Plaintiff has no evidence that any of these companies were operating in violation of the health orders by conducting indoor recreation activities, like Plaintiff's scenic aircraft tours, or non-essential travel, such as Plaintiff's recreational charter flights. As far as Plaintiff knew, all of these operations could have been in compliance with the health orders. In other words, Plaintiff has conceded that it has no evidence any of these businesses were similarly-situated to Plaintiff with respect to the health orders. As a result, even if Plaintiff **had** evidence that County treated these businesses differently, its equal protection claim would fail.

### 2. There Is No Evidence That County Intentionally Treated Plaintiff Differently Than Other Indoor Recreation or Recreational Travel Businesses

In any event, there is no evidence that County treated any of these companies differently than Plaintiff. As described above, County's efforts with respect to applying and enforcing the health orders involved three steps. First, it conducted outreach and publicity efforts when first issuing its orders, to maximize the chances that businesses were notified if their terms. Willis Decl. ¶¶ 14-16. Second, County relied on businesses in the community to comply in good faith with the terms of these orders— which they largely did. Willis Decl. ¶ 16. Third, County relied on reports from the general public and/or businesses to identify potential violations of these orders. Willis Decl. ¶ 17. When County received reports regarding potential violations, it made efforts to contact the individuals or businesses at issue to inform them of the terms of the orders and confirm compliance. Willis Decl. ¶ 17. And, County followed these steps with respect to all the air travel businesses Plaintiff identified. Willis Decl. ¶ 19.

County's response to the reports it received regarding potential health order violations by these businesses further illustrates the point. Again, the evidence shows that County only received reports of potential health order violations by three businesses providing recreational air travel—Skydive Golden Gate, SF Helicopters, and Plaintiff. And County used the same approach with respect to each of these three businesses. As to Skydive Golden Gate, County explained to representatives of the business that recreational air travel was not yet permitted, and County did not receive any more reports of potential violations. Brady Decl. Ex. 8; Jensen Decl. ¶ 6. As to SF Helicopters, County explained to representatives of the business that recreational air travel was not yet permitted (and that if it continued to fly recreational tours, it would be cited and fined), and County did not receive any more reports of potential violations. Heilman Decl. Ex. 13; Porter Decl. Ex. 15; Willis Decl. ¶ 19. And as to Plaintiff,

19

County followed the same process. It explained to Plaintiff's CEO that recreational air travel was not yet permitted. Schneider Decl. Ex. 12. Then, after Plaintiff refused to comply, County visited Plaintiff and notified it (just as County had notified SF Helicopters the day before) that if it continued to fly recreational tours, it would be cited and fined. Heilman Decl. Ex. 14; Porter Decl. Ex. 16. In summary, there is no evidence to support Plaintiff's allegation that County intentionally treated any similarly-situated business differently under the health orders.

### 3. Plaintiff Is Not Similarly-Situated to Businesses In Other Industries

As an alternative, Plaintiff claims that it is similarly-situated not just to certain other air travel businesses, but to businesses in a number of other industries as well. Specifically, Plaintiff claims that it is similarly-situated to charter boat operators, kayak/sea tour operators, malls, indoor restaurants, indoor retailers, and bus tour operators. Halter Decl. Ex. 11 (2021.08.11 Singer Dep. Tr.) at 271:22-275:9. But there is no evidence to support this argument, because the operations of these other businesses were not classified like the operations of Plaintiff under the health orders.

As discussed, the only businesses that can be considered "similarly-situated" to Plaintiff for the purpose of its equal protection claim are those businesses that are "prima facie identical in all relevant respects." *See U.S. v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008). Here, County's restrictions on Plaintiff were based on the fact that some of its operations were prohibited under the health orders because they constituted either indoor recreation (i.e., sightseeing flights) or non-essential travel (recreational charter flights). *E.g.*, Schneider Decl. Ex. 12. But the operations of these other industries were classified differently under the health orders. For example, charter boat operators and other outdoor businesses were specifically added to Appendix C-1 as Additional Businesses in June 2020 (and therefore allowed to operate outdoors, subject to certain restrictions), and County issued industry-specific guidance as to each industry. Willis Decl. ¶ 10, Exs. 3 and 4. Indoor and outdoor retailers, as well as restaurants, were also separately added to Appendix C-1, and subject to different restrictions including occupancy restrictions and reopening dates. Willis Decl. ¶ 13. Indeed, with respect to the dining industry, the health orders had added indoor dining as an Additional Business (with restrictions) on June 29, 2020, but then re-closed indoor dining a week later pursuant to a State directive after an outbreak in the area

worsened County's community transmission indicators. *Ibid.*; *Id.* Exs. 5 (2020.06.29 Appendix C-1 update adding indoor dining) and 6 (rescinding addition of indoor dining to Appendix C-1).

Finally, tour bus operations were also potentially classified differently, depending on the details of the specific operation at issue (e.g., "Essential Business" if providing transportation to Additional Businesses or Additional Activities (Willis Decl. ¶ 13, Ex. 2 (May 15 Health Order) at § 15.f.xx; 15.i) or "Outdoor Business" if operating an open-air tour bus). Tour bus operations were also classified differently in the sense that they could comply with social distancing requirements in ways that Plaintiff and other air travel businesses could not. Willis Decl. ¶ 13. In summary, these industries cannot be considered similarly-situated for the purpose of Plaintiff's equal protection claim.

### 4. Even If Plaintiff Could Be Considered Similarly-Situated To Businesses In Other Industries, County Had A Rational Basis For Treating Other Industries Differently

Finally, even if Plaintiff could be considered similarly-situated to the businesses in other industries to which it compares itself (as discussed above, it cannot), Plaintiff has no evidence that the differences in the way County treated these businesses versus Plaintiff lacked a rational basis.

As an initial matter, Plaintiff identifies only a single difference between the way County treated these other industries and the way County treated Plaintiff: different restrictions with respect to the health orders. In other words, Plaintiff does not identify any evidence that County treated these other industries differently with respect to enforcement; i.e., that County received reports that businesses in these industries were potentially violating the health orders but intentionally declined to make any effort to secure compliance. Instead, Plaintiff's complaint with respect to these industries is that the health orders classified them differently in terms of certain restrictions, such as reopening dates and/or types of allowable operations. However, County's decision to classify these industries differently under the health orders was based on more than enough evidence to satisfy rational basis review.

"Under rational basis review, legislation that does not draw a distinction along suspect lines such as race or gender passes muster under the Equal Protection Clause as long as 'there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1085 (9th Cir. 2015) (citation omitted). As the Ninth Circuit has explained, rational basis review affords only "minimal protections," and a violation can only be

21

found where "governmental action is so arbitrary that a rational basis for the action cannot even be conceived *post hoc*." *Witt v. Dept. of Air Force*, 527 F.3d 806, 816, 817 (9th Cir. 2008); *see also United States v. Navarro*, 800 F.3d 1104, 1114 (9th Cir. 2015) ("[R]ational-basis review allows for decisions based on rational speculation unsupported by evidence or empirical data.") (citation and internal quotation marks omitted).

In addition, "[t]he government 'has no obligation to produce evidence to sustain the rationality of a statutory classification.' " *Disbar Corp. v. Newsom*, 508 F. Supp. 3d 747, 754 (E.D. Cal. 2020) (*citing Aleman v. Glickman*, 217 F.3d 1191, 1201 (9th Cir. 2000) (citation omitted)). Rather, "the challenger of a classification bears the burden of negating every conceivable basis which might support it." *United States v. Padilla-Diaz*, 862 F.3d 856, 862 (9th Cir. 2017) (*citing Heller v. Doe*, 509 U.S. 312, 320 (1993)).

Here, County's treatment of each of these industries under the health orders was rationally based on its evaluation of how the operations of such industry affected the goal of minimizing the transmission of COVID-19 in the community, balanced against how essential such industry is to the community at large. County's evaluation of these factors was based on scientific evidence and the expert judgment of public health experts including Dr. Willis. *See* Willis Decl. ¶ 13. As discussed above, this scientific evidence showed that COVID-19 transmission in the community increased with the frequency of close interactions among people in the community. *Id.* ¶ 5. In addition, transmission occurred more easily when such interactions were indoors or in areas with poor air circulation, and less easily when such interactions were outdoors. *Ibid.* Based on this evidence, County's health orders permitted the reopening of industries that could limit close interactions, especially indoors, earlier than the reopening of industries that could not. *Id.* ¶¶ 5, 13. For example, the health orders generally permitted the reopening of outdoor industries (such as charter boats and other outdoor tour operators) earlier than indoor industries (such as Plaintiff). *Id.* at ¶¶ 8, 13. The health orders also permitted indoor operations that could institute better social distancing measures and that were more essential to the community (such as restaurants and retailers) sooner than industries that could not institute sufficient social distancing measures and that were less essential to the community (such as recreational air travel businesses, like Plaintiff). *Id.* at ¶¶ 8, 13. In summary, the treatment of different industries under the

22

health orders was supported by a rational basis, and Plaintiff's equal protection claim must therefore fail. *See, e.g.*, *Brach v. Newsom*, 6 F.4th 904 (9th Cir. 2021) (affirming summary judgment in State's favor on equal protection claim because State's "classification between public schools and other facilities such as camps and childcare centers permissibly and rationally chooses to address an important problem in an 'incremental fashion'"); *Disbar Corp. v. Newsom*, 508 F. Supp. 3d 747, 755 (E.D. Cal. 2020) (finding that differences in classification for restaurants and hair salons open to the public versus hair and makeup services for the entertainment industry would likely survive rational basis review).

## IV.    CONCLUSION

For the foregoing reasons, County respectfully requests that summary judgement be entered in its favor as to Plaintiff's equal protection claim.

DATED:  September 2, 2021

BRIAN E. WASHINGTON
COUNTY COUNSEL

By: _____

Brandon W. Halter
Attorneys for Defendant
COUNTY OF MARIN