BRIAN E. WASHINGTON, COUNTY COUNSEL
Brandon W. Halter, Deputy, SBN 289687
3501 Civic Center Drive, Ste. 275
San Rafael, CA 94903
Tel.: (415) 473-6117
Fax: (415) 473-3796
bhalter@marincounty.org

Attorneys for Defendant
COUNTY OF MARIN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAPLANE ADVENTURES, LLC, a California Limited Liability Company<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF MARIN, CALIFORNIA; AND DOES 1 THROUGH 10, Inclusive,<br><br>Defendant. | Case No.: 20-cv-06222-WHA<br><br>**DECLARATION OF LEGAL SECRETARY RACHAEL PORTER IN SUPPORT OF DEFENDANT COUNTY OF MARIN'S MOTION FOR SUMMARY JUDGMENT**<br><br>Complaint filed: September 2, 2020<br><br>Date: October 7, 2021<br>Time: 8:00 AM<br>Judge: Honorable William Alsup<br>Dept: Courtroom 12, 19th Floor |

I, RACHAEL PORTER, declare as follows:

1. I am a Legal Secretary in the Office of the County Counsel, attorneys of record for Defendant County of Marin ("County"). I submit this declaration in support of County's motion for summary judgment. I have personal knowledge of the contents of this declaration, except as to any matters stated on information and belief, and as to those matters, I am informed and believe them to be true. If called as a witness, I could and would competently testify to the matters set forth in this declaration.

2. I have assisted attorney Brandon W. Halter in connection with his representation of County in this matter. At Mr. Halter's direction, I downloaded video files from a link that Mr. Halter

and I received from the Marin County Sheriff's Office that I understand are related to this case. Also at Mr. Halter's direction, I sent the video files that I downloaded from the link sent by the Sheriff's Office to Plaintiff in this case, along with other documents in County's production of documents in this case. Separately, I also sent two of these video files, produced to Plaintiff with filenames "Adv.mp4" and "Misc_Advisement.mp4," to Cal-Pacific Reporting, Inc., and asked that they be transcribed by a certified court reporter. Cal-Pacific Reporting, Inc. later sent me back transcripts of these two files. A true and correct copy of the transcript of "Adv.mp4" is attached hereto as Exhibit 15. A true and correct copy of the transcript of "Misc_Advisement.mpf" is attached hereto as Exhibit 16. I also recently sent these same two video files to Deputy Robert Heilman, for his review in connection with this motion.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and accurate to the best of my knowledge

Executed on August 27, 2021, in San Rafael, California.

By: _____
Rachael Porter

2

DECLARATION OF LEGAL SECRETARY RACHAEL PORTER IN SUPPORT OF DEFENDANT COUNTY OF MARIN'S MOTION FOR SUMMARY JUDGMENT
USDC Case No. 20-cv-06222-WHA

EXHIBIT 15



# Cal-Pacific Reporting, Inc.

Certified Transcript of Video Recording of:

## Body-Worn Camera Footage - Adv.mp4
(July 2, 2020)

**Transcribed:** July 29, 2021

**Case:** Seaplane Adventures, LLC v. County of Marin
Case No. 20-cv-06222-WHA

*Reporter: Michelle Barbante, CSR 12601*
*45 Mitchell Blvd., Suite 12*
*San Rafael, CA 94903*
Phone: 415.578.2480
Fax: 415.952.9451
Email: support@calpacificreporting.com

Seaplane Adventures, LLC v. County of Marin
Case No. 20-cv-06222-WHA
Video of: Body-Worn Camera Footage - Adv.mp4 (July 2, 2020)
Transcribed: July 29, 2021

## Page 1

SEAPLANE ADVENTURES, LLC v. COUNTY OF MARIN
Body-worn camera footage
Adv.mp4

Case No. 20-cv-06222-WHA
July 2, 2020

TRANSCRIBED BY:
MICHELLE D. BARBANTE, CSR NO. 12601

CAL-PACIFIC REPORTING
45 Mitchell Boulevard, Suite 12
San Rafael, California 94903
(415) 578-2480
Support@CalPacificReporting.com

## Page 2

1   -oOo-
2   FEMALE VOICE: Right about now.
3   MR. CARTER: You know, and that's what she was
4   saying. Mine probably just hasn't updated, but -- mine
5   hasn't updated. But let me call you right back, all
6   right? Okay, I'll call you back. All right.
7   Hey, Phil? Phil? Phil? Hey, Phil, let me
8   call you back. Okay. All right. Bye.
9   DEPUTY SCHLIEF: Are you Aaron?
10  MR. CARTER: I'm sorry?
11  DEPUTY SCHLIEF: Are you Aaron?
12  MR. CARTER: No.
13  DEPUTY SCHLIEF: Is Aaron -- is Aaron here.
14  Aaron Singer?
15  MR. CARTER: No. They're with the Seaplane,
16  though.
17  DEPUTY HEILMAN: Are you the helicopter pilot?
18  MR. CARTER: Yeah.
19  DEPUTY SCHLIEF: Okay. So we're going to talk
20  to Aaron about a matter, but we'll talk with -- to you
21  as well --
22  MR. CARTER: Okay.
23  DEPUTY SCHLIEF: -- with the hell -- are you
24  the pilot or are you --
25  MR. CARTER: Yeah, I'm the pilot.

## Page 3

1   DEPUTY SCHLIEF: Do you run the business as
2   well?
3   MR. CARTER: No. Just the pilot.
4   DEPUTY SCHLIEF: Okay. So with the all the
5   COVID-19 ordinances in the county --
6   MR. CARTER: Okay.
7   DEPUTY SCHLIEF: -- the -- the tours are
8   against the ordinance.
9   MR. CARTER: Okay.
10  DEPUTY SCHLIEF: And if you continue to log
11  flights, with passengers obviously, you will be in
12  violation of the ordinance, which is about $1,000 fine.
13  MR. CARTER: Okay.
14  DEPUTY SCHLIEF: And you can be issued a
15  citation for every single flight that you conduct.
16  MR. CARTER: Okay.
17  DEPUTY SCHLIEF: I don't know how much -- if
18  you've been warned of that yet or not.
19  MR. CARTER: Okay.
20  DEPUTY SCHLIEF: Air -- Aaron has, and that's
21  why we're here, just to talk to him again, make sure he
22  understands.
23  MR. CARTER: Okay.
24  DEPUTY SCHLIEF: Do you know when he's
25  typically in?

## Page 4

1   MR. CARTER: No. Two separate companies.
2   DEPUTY SCHLIEF: Yeah.
3   MR. CARTER: So I -- I don't track him.
4   DEPUTY SCHLIEF: Okay.
5   DEPUTY HEILMAN: Let's not -- let's not worry
6   about the Seaplane part. Let's talk about the -- the
7   helicopter part.
8   DEPUTY SCHLIEF: Yeah.
9   MR. CARTER: Okay. So, uh, yeah, I'm just the
10  pilot, so can I give you information that you can pass
11  on to the owners, or how do you want to --
12  SERGEANT GARRETT: It's -- it's difficult to
13  even say, you know. The laws on it, it's pretty
14  confusing for us. We just got a five-page
15  dissertation --
16  MR. CARTER: All right.
17  SERGEANT GARRETT: -- from county counsel about
18  it, right?
19  MR. CARTER: Okay.
20  SERGEANT GARRETT: And in reading that, it is a
21  little bit difficult for us to follow.
22  MR. CARTER: Okay.
23  SERGEANT GARRETT: I cannot say that you, as
24  the pilot, wouldn't be cited over -- whoever's with the
25  aircraft is the person that's going to be cited.

1 (Pages 1 to 4)

Page 5

1  MR. CARTER: Right.
2  SERGEANT GARRETT: So -- but if you look at
3  what they declare essential travel versus not, it's --
4  it's not the clearest thing I've ever read in my life.
5  MR. CARTER: Right. And we checked with the
6  FAA, and we got a green light from them.
7  SERGEANT GARRETT: The problem is, is that the
8  FAA and the county are two different things. The county
9  sent out violation of the health order itself.
10 MR. CARTER: I understand. I understand.
11 SERGEANT GARRETT: And you've got to understand
12 that this is not our idea by a long shot.
13 MR. CARTER: I understand.
14 SERGEANT GARRETT: But they are directing us,
15 because of all the complaints, that we are to cite for
16 every revolution, every cycle --
17 MR. CARTER: Right.
18 SERGEANT GARRETT: You know, and they're going
19 to cite whosoever with the aircraft.
20 MR. CARTER: Right. Okay. Um, yeah, we got an
21 email from the guy over there at Strawberry Point.
22 That's probably where you guys got it from, but, um --
23 SERGEANT GARRETT: Well, we got an email from
24 county counsel and from --
25 MR. CARTER: Yeah, that's --

Page 6

1  SERGEANT GARRETT: -- our boss.
2  MR. CARTER: -- that's where -- he -- he's been
3  a, I guess, a constant complainer --
4  SERGEANT GARRETT: And that -- yeah.
5  MR. CARTER: -- beyond -- outside of the -- the
6  COVID. Um, sorry, I will -- I will pass this on to the
7  owners, and --
8  DEPUTY HEILMAN: Do you have any flights
9  scheduled today?
10 MR. CARTER: Um, I may at 3:00 o'clock.
11 DEPUTY HEILMAN: And are you flying somewhere
12 and coming back with those same people?
13 MR. CARTER: Yes.
14 DEPUTY HEILMAN: Just to let you know that,
15 even though we don't want to, that if that does happen,
16 you will be cited.
17 MR. CARTER: Okay. All right. Can -- I
18 mean --
19 SERGEANT GARRETT: And this doesn't mean we
20 don't -- just so we're really clear here, so, I mean, I
21 don't know if you got a speeding ticket, but when you
22 get a speeding ticket on the road, you're not
23 automatically guilty. You get your day in court.
24 MR. CARTER: Yeah.
25 SERGEANT GARRETT: You would with this as well.

Page 7

1  And I'm not saying that we agree or disagree with this
2  thing at all. I'm just telling that we're being told to
3  do this.
4  DEPUTY SCHLIEF: Yeah, right.
5  MR. CARTER: Right. Okay.
6  SERGEANT GARRETT: So --
7  MR. CARTER: So what -- what I'd like from
8  you -- I hear you loud and clear.
9  DEPUTY HEILMAN: Yeah. Yeah, I mean --
10 MR. CARTER: What I'd like from you is when you
11 say, "You'll get cited," where -- you know, under what
12 authority is that? I mean --
13 SERGEANT GARRETT: Well, you get a ticket. It
14 looks like a speeding ticket, all right?
15 MR. CARTER: Okay.
16 SERGEANT GARRETT: And it will have a court
17 date on it, and it will have a Health and Safety Code --
18 MR. CARTER: Okay.
19 SERGEANT GARRETT: -- you know, code on.
20 MR. CARTER: So and then -- and does that go to
21 the company or to me?
22 SERGEANT GARRETT: Well, they can't cite a
23 company. They would cite you with the aircraft for
24 being in violation of that health ordinance.
25 MR. CARTER: Okay. So let's -- let's do this

Page 8

1  here.
2  DEPUTY HEILMAN: We're trying to head it off at
3  the pass. We're trying to work with you and --
4  DEPUTY SCHLIEF: Yeah.
5  SERGEANT GARRETT: You know, and I'm not saying
6  that if you were to take this to court that you wouldn't
7  win. I -- I don't -- I don't really know. But I'm just
8  telling you that we're being ordered to do this.
9  DEPUTY HEILMAN: And if you had, too, some type
10 of recourse where you decided to go after through the
11 county, county counsel, for making us tell you to stop
12 and stay, the whole thing's a big mess, and we're trying
13 to head it off --
14 MR. CARTER: Yeah.
15 DEPUTY HEILMAN: -- at the pass now.
16 MR. CARTER: Okay.
17 SERGEANT GARRETT: So, I mean, if you -- if you
18 think you're legally allowed to do this by FAA, I think
19 you're probably right.
20 MR. CARTER: Well, before -- before we
21 started --
22 DEPUTY HEILMAN: Yeah.
23 MR. CARTER: -- because the FAA is who we're
24 governed by, and that's the higher authority of any
25 local, but --

Page 9

1    SERGEANT GARRETT: Of aviation, sure.
2    MR. CARTER: Right. Okay.
3    SERGEANT GARRETT: They're talking about this
4  basically having people sitting next to each other in
5  an -- in an enclosed place.
6    MR. CARTER: Okay.
7    DEPUTY HEILMAN: Like a Bell helicopter.
8    MR. CARTER: Right. But what we're doing it
9  like families, so, like there's four --
10   SERGEANT GARRETT: Well, that's a good --
11  that's a good argument.
12   MR. CARTER: You know.
13   SERGEANT GARRETT: I think that's a reasonable
14  argument.
15   MR. CARTER: And nobody's up front with me.
16   SERGEANT GARRETT: Or someone could be your
17  uncle.
18   MR. CARTER: So -- so and it's --
19   SERGEANT GARRETT: I mean, you know.
20   MR. CARTER: -- so that's that. And we tell
21  the people, even when they book, that that's our
22  criteria, and --
23   SERGEANT GARRETT: That's a pretty good
24  argument.
25   MR. ROWE: -- we do sanitation, we disinfect,

Page 10

1  and so I would normally have a mask on here, but I was
2  eating my lunch, so --
3    DEPUTY SCHLIEF: No worries.
4    MR. CARTER: -- so anyway that's -- that's what
5  we're doing --
6    DEPUTY SCHLIEF: Yeah.
7    MR. CARTER: -- and so when we talked about
8  that, the analysis was, okay, so if -- if they know each
9  other as a family, they came out of the same car,
10  they're in the same household. So but at any rate,
11  that's -- that's above my pay grade. I'm not going to
12  argue that point, so --
13   SERGEANT GARRETT: Do you know if he's trying
14  to do that, too?
15   MR. CARTER: Aaron?
16   SERGEANT GARRETT: Yeah.
17   MR. CARTER: No idea. No idea.
18   SERGEANT GARRETT: I mean, that's a pretty
19  reasonable argument.
20   MR. CARTER: Right.
21   SERGEANT GARRETT: I think if -- if I were in
22  your shoes, that would probably be the one I would use.
23   MR. CARTER: Well, that's what we do here.
24  That's what --
25   SERGEANT GARRETT: Yeah, I mean that's --

Page 11

1    MR. CARTER: -- we tell them. You know, the
2  people today, this morning, I flew at 10:00, they're all
3  one family, they took pictures, the whole nine yards.
4    SERGEANT GARRETT: Yeah.
5    MR. CARTER: So anyway, let me do this here.
6    SERGEANT GARRETT: If you wanted a portal into
7  the people that we deal with, you and I can exchange
8  emails --
9    MR. CARTER: Okay.
10   SERGEANT GARRETT: -- and I can help you with
11  that.
12   MR. CARTER: Hey, Jeff. Okay. Um, you have a
13  minute? Um, so I've -- I have three Marin County
14  Sheriffs here. And so there's a concern/discussion
15  about our operation and the Seaplane's operation, and
16  so, at any rate, it -- you know, the long and short is
17  that if we continue to -- to fly, I would be issued a
18  citation.
19   So a couple options here. If you can -- we're
20  going to put you on speakerphone, and they can explain
21  what the issue is. You can talk to -- they could -- we
22  could exchange emails, but they're all here with guns,
23  so --
24   SERGEANT GARRETT: Well, they're holstered.
25   MR. CARTER: Guns and rifles.

Page 12

1    SERGEANT GARRETT: Are you leaving a voice
2  mail, or are you talking to him?
3    MR. CARTER: Correct. Correct. Correct.
4    DEPUTY SCHLIEF: All right.
5    DEPUTY HEILMAN: Oh, he's talking to someone.
6    DEPUTY SCHLIEF: Yeah.
7    MR. CARTER: You want me to put them on the
8  speakerphone and they can kind of give you kind a
9  thumbnail sketch of what they're here to enforce? Okay.
10  Hang on.
11   Hey, Jeff?
12   MR. ROWE: Hey.
13   MR. CARTER: Okay. So I have Officers Garrett,
14  "Sh-lif"?
15   DEPUTY HEILMAN: "Sh-life."
16   MR. CARTER: Schlief and Heilman here. So this
17  is Jeff Rowe. He's my boss.
18   SERGEANT GARRETT: Okay.
19   MR. CARTER: You know, manager.
20   SERGEANT GARRETT: Hi Jeff. My -- my name is
21  Greg Garrett. I'm the supervisor with the Sheriff's
22  Office. We were directed this morning to come here by
23  our boss and by the county counsel over numerous
24  complaints, mostly dealing with the Seaplane.
25  They've -- they've already warned the Seaplane owner and

Page 13

1  been going back and forth with him. We haven't talked
2  to -- to your guy yet, but we were told to -- to
3  basically warn them that they could be potentially cited
4  for every -- for every cycle, for every take off and
5  landing, if they have -- if they have passengers going
6  on a tourist trip.
7       I -- I -- I told your guy here the same thing
8  I'll tell you is that this was not our idea. I think
9  the law is somewhat confusing. Your -- what's your
10 name, sir?
11      MR. CARTER: Ron Carter.
12      SERGEANT GARRETT: Ron Carter's argument is
13 that -- is that you're basically bringing families that
14 are already together in an aircraft and putting them
15 together. They were in a car together when they got
16 here, so what -- what difference does it make? And I --
17 I think that's a pretty reasonable argument.
18      But that being said, the county attorneys have
19 reviewed this at length, and they feel that the -- the
20 violation of the health order exists and are directing
21 us to enforce it, whether we like it or not.
22      MR. ROWE: Okay. And that's the County of
23 Marin, correct?
24      SERGEANT GARRETT: Right. And so their --
25 their argument is, is that if -- if -- if you're taking

Page 14

1  passengers on a tourist trip, you're not, in other
2  words, transporting them to another location, that it's
3  not essential travel and that it's a violation of the
4  health order.
5       I know you guys have got a green light from the
6  FAA. I understand that, but it is a different thing,
7  and we are being told that -- that if we, you know,
8  observe the helicopter to take off and come back, that
9  we are to try and attempt contact with the pilot
10 basically on the -- on the return and issue one of these
11 tickets.
12      And he would get a court date, and he could --
13 you guys can go to court and make your argument. I
14 just -- I don't know if that's worth it, but essentially
15 you could get a ticket. If you -- if you have
16 seven flights planned this weekend, you can get cited
17 for each and every one of them. I don't know that you
18 wouldn't prevail in court or would prevail in court.
19 I'm not -- I'm not really sure. I'm just telling you
20 that --
21      MR. ROWE: So --
22      SERGEANT GARRETT: -- that's what we're being
23 told to do by our bosses, whether we -- we like it or
24 not.
25      MR. ROWE: Okay. And so just so I can explain

Page 15

1  to the owners with -- with some, you know, reason
2  about -- reasonality here, what is the citation? Is
3  there -- what is the citation for? Is it just for --
4       SERGEANT GARRETT: Well, there's a --
5       MR. ROWE: -- for violating the county order;
6  would that be what --
7       SERGEANT GARRETT: Yeah, exactly.
8       MR. ROWE: -- it is? Okay. And does that --
9  does that carry a normal -- a normal fine, or is that
10 just assessed when you go to court?
11      SERGEANT GARRETT: We have never been to court
12 on this. This is new -- new territory for us, but I --
13 I do believe there is a set fine, and it's around
14 $1,000.
15      MR. ROWE: Oh, okay. Oh, yes. Just -- okay.
16 That's good. Just so I can list -- let them know, and
17 okay.
18      SERGEANT GARRETT: I -- I don't know exactly,
19 but that -- that is what they're telling me. This is a
20 new thing for us totally. You know, it's not -- it's
21 not a running-a-stop-sign ticket.
22      MR. ROWE: Right.
23      SERGEANT GARRETT: So that -- that is where we
24 stand. I guess Mr. Carter here's telling that there's
25 somebody in the neighborhood who is a longtime

Page 16

1  complainer about the aviation here, and -- and he might
2  be behind some of this. I don't know that's true or
3  untrue, I just --
4       MR. ROWE: Right. I believe he -- yeah, I
5  believe he did send an email last week, and he's -- I
6  think we've -- we've been in contact with him over the
7  many years, and, you know, we always try to be very
8  neighborly and -- and even with everybody over in that
9  area, and if there's an issue with somebody, we try
10 to -- to, you know, modify things to work it out with
11 everybody, and --
12      SERGEANT GARRETT: Well, you can't believe how
13 much time as deputy sheriffs we spend on -- on -- on
14 neighborhood disputes over sometimes minor -- minor
15 things as trimming trees or the fence maintenance, you
16 know.
17      MR. ROWE: Actually, I could believe that.
18 That's -- yeah. Oh, boy.
19      Well, yeah, I know you guys just have to do --
20 do your jobs, so what I'll have to do is I'll have to
21 get in contact with the two owners and explain all this
22 to them, and then, you know, my -- my -- my gut thought
23 is, is that we'll probably just most likely cease to do
24 it, but I -- you know, we have to put that in their
25 hands, explain to them. Did -- did -- are the airplanes

Page 17

1  going to continue to go or are you --
2      SERGEANT GARRETT: Well, we're going to --
3      MR. ROWE: -- just --
4      SERGEANT GARRETT: -- give the same -- the same
5  warning to Mr. Singer, it's just that, you know, it is
6  difficult to enforce. We're not going to sit here and
7  watch all the time, but, I mean, you know, the -- the
8  flight following on the computer is pretty easy to look
9  up after the fact.
10     MR. ROWE: Right. Correct.
11     SERGEANT GARRETT: So, you know, and any police
12 reports that we generate -- and this would be a police
13 report. So you get a speeding ticket on the freeway,
14 there's generally not a speeding ticket -- not a report.
15 So these guys, they'll write a report. They'll
16 interview whoever they cite. If the person agrees to
17 speak with them, they'll interview any -- any passengers
18 that agree to speak with them, take their statements,
19 and also include the flight following in the report.
20     So all of that would go to the district
21 attorney's office. The district attorney's office
22 decides whether or not they want to go to court with it
23 or not. If they do, then -- then they would show up in
24 court and subpoena us and we would testify to what we
25 saw and did, and that would be the end of that. And you

Page 18

1  guys would tell your side, and the judge would hear
2  that, as well as ours, and they decide what they want to
3  do.
4      I -- I don't know how much revenue you have
5  planned for the weekend and how many flights and how big
6  a deal it is to cancel. Maybe it is a big deal, and the
7  loss plus, you know, people would be very disappointed,
8  so that's the decision you've got to make.
9      MR. ROWE: Right.
10     SERGEANT GARRETT: But I'm just trying to be as
11 transparent as I possibly can. That's exactly how we
12 would do it. We're not going to sit here and watch this
13 place. I don't know that, you know, we would be
14 100 percent successful, but I mean, you know, it is
15 pretty obvious when the helicopters come and go.
16     MR. ROWE: Oh, yeah. Yeah, for sure. Well,
17 no, you guys have been very -- very helpful. I
18 explained -- you know, you explained it very well, so
19 thank you.
20     Well, yeah, I mean, you know, it's basically,
21 you know, we're just getting back into the swing of this
22 thing, so like everybody, we're running on kind of a
23 modified status. You know, we're running with less
24 passengers, trying to keep, you know, people more
25 separated and -- and kind of adhere to, you know, the

Page 19

1  standards, doing the temperature checks and masks, and
2  so we're -- we're -- yeah, if you get anything -- it
3  does get -- if we end up with a thousand bucks per --
4  per landing, that completely negates the profit.
5      SERGEANT GARRETT: Yeah, no, I'm sure. You
6  know, but, I mean, if -- if -- I can't say that we would
7  be so perfect in our enforcement. We -- we have other
8  things to be doing. It's just we are being directed.
9  My -- my -- the captain is two ranks above me is just
10 saying, you know, that I'm being told to do this. I --
11 I don't have the right to refuse really.
12     MR. ROWE: Right.
13     SERGEANT GARRETT: I have to keep my job.
14     So I think that's about really all I can tell
15 you about it.
16     MR. ROWE: Okay. Well, thank you. Appreciate
17 it. And we'll just -- we'll go from here. I think we
18 have one more flight for today, so I think we'll have to
19 figure out what we're going to do there.
20     So but, yeah. Well, like I say, I will get in
21 touch with the two owners, and I'll put this, you know,
22 in their court, and then we'll go from there. But --
23 and how long -- does this -- is there a -- do you know
24 if there's a specified amount of time that this order
25 expires, or is it just -- is it just, you know, kind of

Page 20

1  in the wind?
2      SERGEANT GARRETT: I've not gotten a clear
3  answer on that.
4      MR. ROWE: Okay. Okay. All righty. Well,
5  thank you very much.
6      SERGEANT GARRETT: All right. Thank you for
7  being understanding.
8      MR. ROWE: All right. Take care, guys.
9      MR. CARTER: Okay. Talk to you later.
10     MR. ROWE: Okay. Bye.
11     DEPUTY HEILMAN: So, you know, we -- we -- you
12 know, we really -- we're in kind of a catch-22. I mean,
13 you guys are trying to make -- you know, make your
14 money, do your business, and --
15     MR. CARTER: Right.
16     DEPUTY HEILMAN: -- you know, it's not
17 something that we really want to do. It's kind of on
18 both sides of it, but, you know --
19     MR. CARTER: I understand.
20     DEPUTY HEILMAN: It's just a difficult
21 situation. So we just kind of want to touch base with
22 you and let you know kind of what's been --
23     MR. CARTER: Right.
24     DEPUTY HEILMAN: -- handed down to us.
25     MR. CARTER: So if -- if -- if there was a

Page 21

1  charter, someone comes here and they want to go to
2  Sacramento, that's not an issue, right?
3       SERGEANT GARRETT: Well, I mean, so if you read
4  the thing on essential travel, and it -- it's -- I think
5  it's on the county website right now. We -- we have a
6  written copy of it, but --
7       MR. CARTER: That would be essential travel?
8       SERGEANT GARRETT: That would be essential
9  travel.
10      MR. CARTER: Right. Right. Okay.
11      SERGEANT GARRETT: So, I mean, there's a whole
12 list of essential travels. But they're just basically
13 saying that to take off and land at the same location --
14      MR. CARTER: Right.
15      SERGEANT GARRETT: -- for sightseeing is not.
16      MR. CARTER: Right. Yeah.
17      SERGEANT GARRETT: I get the argument. I mean,
18 they're allowing outdoor businesses to operate again.
19      MR. CARTER: Right.
20      SERGEANT GARRETT: And they're -- and the
21 county counsel's argument is that, if you are renting
22 kayaks and people are going out there kayaking, that
23 would be different than putting somebody in an enclosed
24 space of the -- the Bell helicopter there, so --
25      MR. CARTER: Right.

Page 22

1       SERGEANT GARRETT: But when -- when -- your
2  argument as well, if people drove here, get in a car --
3       MR. CARTER: That's what they tell me --
4       SERGEANT GARRETT: -- with their family and --
5       MR. CARTER: -- is that would cancel a flight
6  because it was you two and you two.
7       SERGEANT GARRETT: Yeah.
8       MR. CARTER: You know, and they said, "No, it's
9  a family." My -- it's -- just the other day I had two
10 adults, two children, all a family.
11      SERGEANT GARRETT: Okay.
12      MR. CARTER: Sat in the back and so --
13      SERGEANT GARRETT: No. I -- I think your
14 business is great. I mean, you know, I wish I could go.
15      DEPUTY SCHLIEF: Yeah.
16      MR. CARTER: You should.
17      SERGEANT GARRETT: I used to fly every once in
18 a while with the news helicopters --
19      MR. CARTER: Oh, yeah.
20      SERGEANT GARRETT: -- here would take us on
21 flights every once in a while, you know, so a long time
22 ago, but --
23      MR. CARTER: Okay. Well, again, it's a -- it's
24 a husband and wife ownership. Actually, it's Jeff's
25 sister --

Page 23

1       SERGEANT GARRETT: Mm-hm.
2       MR. CARTER: -- and -- and the brother-in-law,
3  so it's their call, but I -- I --
4       SERGEANT GARRETT: The problem with their call
5  is that -- and it sounds like they're -- he's pretty
6  supportive of you. You're the one that's writing up a
7  ticket --
8       MR. CARTER: Well, I was going to say, it's
9  their call, comma --
10      SERGEANT GARRETT: Yeah.
11      MR. CARTER: -- it ain't [inaudible] baby.
12      SERGEANT GARRETT: So --
13      MR. CARTER: You know, I -- I mean, I just --
14 you know, I did 26 years with Oakland -- Oakland Fire,
15 so --
16      SERGEANT GARRETT: Yeah.
17      MR. CARTER: -- I retired as deputy chief, so I
18 understand the -- the ramifications of --
19      SERGEANT GARRETT: Yeah. This is not a bad
20 little second job then, huh?
21      MR. CARTER: Uh, no. No.
22      DEPUTY HEILMAN: It's -- it's --
23      MR. CARTER: But, you know, I've got a daughter
24 in medical school, so --
25      SERGEANT GARRETT: Yeah.

Page 24

1       MR. CARTER: -- you know, it's -- it helps.
2  But at any rate, no, I -- I understand and appreciate
3  it, and you guys did a good job of presenting it, and --
4       SERGEANT GARRETT: Yeah. You tell us --
5       MR. CARTER: I heard that, on Aaron's side, I
6  think his kind of foundation was the vessels. You know,
7  that the Seaplane is technically a vessel.
8       SERGEANT GARRETT: It's a flying vessel, yeah,
9  okay.
10      MR. CARTER: But -- but again, the counter --
11      SERGEANT GARRETT: I saw some of his arguments,
12 and they're not ridiculous at all.
13      MR. CARTER: Yeah, the counter is that may --
14 that may help with traveling.
15      SERGEANT GARRETT: Yeah.
16      MR. CARTER: So they're -- hopefully it -- it
17 all goes away. As some people say, it's just going to
18 disappear.
19      SERGEANT GARRETT: Yeah. I -- I think this
20 is -- unfortunately, we're going to be stuck with
21 this thing --
22      DEPUTY HEILMAN: Do you know where they're at
23 today, or if they're going to be around?
24      MR. CARTER: No. I -- I don't know. They had
25 said that they were going to be Wednesday, Thursday,

Page 25

1    Friday, Saturday, but they weren't.
2        DEPUTY SCHLIEF: I think --
3        MR. CARTER: In fact, I had to call the -- the
4    secretary to try to get in here because they changed the
5    lock -- the top key worked, but --
6        DEPUTY SCHLIEF: What I saw was --
7        MR. CARTER: -- the dock or --
8        DEPUTY HEILMAN: We've been here for alarms all
9    the time.
10       DEPUTY SCHLIEF: -- they're open Friday,
11   Saturday, Sunday. We'll have better luck talking to
12   them tomorrow.
13       SERGEANT GARRETT: Yeah, we'll come by in the
14   morning, you know.
15       DEPUTY HEILMAN: Well, we do appreciate your
16   understanding.
17       MR. CARTER: Yeah.
18       DEPUTY HEILMAN: We're just here to give you
19   our side and --
20       MR. CARTER: Sure.
21       DEPUTY HEILMAN: -- we -- we totally get your
22   side and --
23       MR. CARTER: Sure. Sure. And I suspect, maybe
24   not directly to your office, but to the county counsel,
25   whatever, it's the guy at Strawberry Point. In fact,

Page 26

1    the email that he sent us says, "Yes, you guys are
2    legal, and I already stopped a Seaplane. I'm going to
3    stop you." And it does -- you know, we fly at a
4    thousand feet, it's just never. It's kind of, "Oh, I
5    hear a helicopter."
6        SERGEANT GARRETT: Oh.
7        MR. CARTER: That was CHP. And we get -- you
8    know, it's just, they're locked in, they're focused
9    and they --
10       SERGEANT GARRETT: Okay.
11       MR. CARTER: -- you know, they drank the
12   Kool-Aid and they won't -- it doesn't matter what we do.
13   We offer them rides for them, but -- so --
14       SERGEANT GARRETT: Well, I mean, we've had
15   neighborhood disputes that just, you can't imagine --
16       MR. CARTER: Yeah.
17       SERGEANT GARRETT: -- how upset -- you know,
18   the thing with a basketball hoop over -- over in
19   Strawberry there. I mean, God, you know.
20       MR. CARTER: Yeah.
21       SERGEANT GARRETT: You -- you would think that
22   they were --
23       MR. CARTER: Yeah.
24       SERGEANT GARRETT: -- going to put in a new
25   sanitary facility on the street --

Page 27

1        MR. CARTER: Yeah.
2        SERGEANT GARRETT: -- the way the neighbor was
3    over it. Back and forth and video cameras and --
4        MR. CARTER: Right, right, right.
5        SERGEANT GARRETT: -- over, basically, a
6    basketball hoop and some parking.
7        MR. CARTER: Yeah. Yeah, well, until this is
8    cleared, it won't be me. That's all I can say. I mean
9    if he wants, he's a pilot, he can -- you know, the owner
10   can do it and say, "Fuck it, I'll just take the dive."
11       SERGEANT GARRETT: Yeah.
12       MR. CARTER: But it's not going to be me, you
13   know.
14       SERGEANT GARRETT: All right. Well, good
15   talking to you.
16       DEPUTY HEILMAN: All right.
17       DEPUTY SCHLIEF: All right, sir. Have a good
18   one.
19       MR. CARTER: Have a good day. Bye now.
20       (End of body-worn camera footage)
21       -oOo-
22
23
24
25   ///

Page 28

1    State of California   )
                           )
2    County of Sonoma      )
3
4
5
6           CERTIFICATE OF REPORTER
7    I hereby certify that the foregoing recorded
8    proceedings in the within-entitled cause were
9    transcribed by me, MICHELLE BARBANTE, a Certified
10   Shorthand Reporter and disinterested person, and were
11   thereafter transcribed into typewriting.
12
13
14   Dated: July 29, 2021
15
16
17
18
19           _Michelle Barbante_
20           Michelle Barbante
             CSR NO. 12601
21
22
23
24
25

EXHIBIT 16



# Cal-Pacific Reporting, Inc.

Certified Transcript of Video Recording of:

## Body-Worn Camera Footage - Misc_Advisement.mp4 (July 3, 2020)

**Transcribed:** August 16, 2021

**Case:** Seaplane Adventures, LLC v. County of Marin
Case No. 20-cv-06222-WHA

*Reporter: Michelle Barbante, CSR 12601*

*45 Mitchell Blvd., Suite 12*
*San Rafael, CA 94903*
*Phone: 415.578.2480*
*Fax: 415.952.9451*
*Email: support@calpacificreporting.com*

COM008438

Page 1

SEAPLANE ADVENTURES, LLC v. COUNTY OF MARIN
Body-worn camera footage
Misc_Advisement.mp4

Case No. 20-cv-06222-WHA
July 3, 2020

TRANSCRIBED BY:
MICHELLE D. BARBANTE, CSR NO. 12601

---

CAL-PACIFIC REPORTING
45 Mitchell Boulevard, Suite 12
San Rafael, California 94903
(415) 578-2480
Support@CalPacificReporting.com

Page 2

1                    -oOo-
2        MALE SPEAKER 1: You too? Hello.
3        DEPUTY HEILMAN: Yeah.
4        MALE SPEAKER 1: Hi.
5        DEPUTY HEILMAN: Hi. So just to let you know,
6   County Counsel has hand -- handed down a directive
7   through our sheriff's office that if you keep continuing
8   your business --
9        MALE SPEAKER 1: Yeah.
10       DEPUTY HEILMAN: -- that you will be cited for
11  every time that you take off with passengers on your
12  plane.
13       MALE SPEAKER 1: Can you give me the reason for
14  it? What do they base it on, their authority over us?
15       DEPUTY HEILMAN: Over the -- over the --
16       MALE SPEAKER 1: Wait. Come over here.
17       DEPUTY HEILMAN: Yeah.
18       MALE SPEAKER 1: Go ahead.
19       MALE SPEAKER 2: Perfect.
20       DEPUTY HEILMAN: So have you been given the
21  emails and stuff back and forth?
22       MALE SPEAKER 1: I've read them, and he's been
23  answering -- it's not you, of course.
24       DEPUTY HEILMAN: No, I know. I totally get it.
25  I totally get it.

Page 3

1        MALE SPEAKER 1: Answering the sheriff's
2   office, and City Council has no authority over us,
3   because we are regulated by the FAA.
4        DEPUTY HEILMAN: Okay.
5        MALE SPEAKER 1: Okay. That's what I know.
6        DEPUTY HEILMAN: Okay. I just -- I was just
7   told that we were coming to tell you that --
8        MALE SPEAKER 1: Okay.
9        DEPUTY HEILMAN: -- every time you take off and
10  land, that you will be cited for --
11       MALE SPEAKER 1: Okay.
12       DEPUTY HEILMAN: -- for every incident that you
13  do.
14       MALE SPEAKER 1: Okay.
15       DEPUTY HEILMAN: And then just -- just like a
16  speeding ticket, that you have your day in court and you
17  can bring it before them and let them do it. It's not
18  something that I would like to do personally. It was
19  just something that was handed down from our command
20  staff --
21       MALE SPEAKER 1: Oh, yeah, I understand.
22       DEPUTY HEILMAN: -- through the chain of
23  command to come talk to you, so, that's all.
24       MALE SPEAKER 1: The owner's right there.
25       DEPUTY HEILMAN: Uh-huh.

Page 4

1        MALE SPEAKER 1: Can you hold on for
2   five minutes and talk to him, too?
3        DEPUTY HEILMAN: Sure.
4        MALE SPEAKER 1: I mean, you know, Aaron
5   because he does the --
6        DEPUTY HEILMAN: No, I don't know him, but --
7        MALE SPEAKER 1: Okay.
8        DEPUTY HEILMAN: I've -- I've heard of his
9   name, so --
10       MALE SPEAKER 1: Okay.
11       DEPUTY HEILMAN: I know his name's in the
12  emails and whatnot.
13       MALE SPEAKER 1: All right. He's the guy in
14  the red shirt right over there.
15       DEPUTY HEILMAN: Okay. And what was your name
16  again?
17       MALE SPEAKER 1: I'm Jerome.
18       DEPUTY HEILMAN: Jerome, okay.
19       MALE SPEAKER 1: There he comes. Explain the
20  citation. It's like a --
21       DEPUTY HEILMAN: It's a ticket. It's like a
22  speeding ticket.
23       MALE SPEAKER 1: Okay.
24       DEPUTY HEILMAN: It's a thousand dollar fine.
25       MALE SPEAKER 1: And -- and what does it say on

Page 5

1  the ticket?
2      DEPUTY HEILMAN: It's for a violation of the
3  shelter-in-place order I guess or something. As -- as
4  you know it's --
5      MALE SPEAKER 1: Okay.
6      DEPUTY HEILMAN: -- the Health and Safety Code
7  I guess.
8      MALE SPEAKER 1: Okay. So --
9      DEPUTY HEILMAN: I don't have it with me right
10 now. There's paperwork. We came yesterday and spoke to
11 the pilot from the --
12     MALE SPEAKER 1: Helicopter.
13     DEPUTY HEILMAN: -- helicopter.
14     MALE SPEAKER 1: Yeah.
15     DEPUTY HEILMAN: And talked to him about the
16 same exact thing.
17     MALE SPEAKER 1: Yeah.
18     DEPUTY HEILMAN: My supervisor came down here,
19 I came down here with another guy, and they were
20 understanding. I understand there's a lot of -- between
21 you and whoever.
22     MALE SPEAKER 1: It's not personal. It's not
23 personal.
24     DEPUTY HEILMAN: No, no, I know. It's fine.
25 That's why I'm not yelling at you. I'm just like -- I'm

Page 6

1  just the messenger, so --
2      MALE SPEAKER 1: Yeah. So he's the guy to talk
3  to.
4      DEPUTY HEILMAN: And they're -- they're aware,
5  because they're -- they're monitoring -- I guess there's
6  some website you can go on and see what planes take off
7  and land.
8      MALE SPEAKER 1: Oh, yeah, absolutely.
9      DEPUTY HEILMAN: And they -- you know, they're
10 aware of your -- that you're -- you have stuff booked,
11 so --
12     My boss just happened to say, "Hey, the plane
13 landed." I'm like, "Okay." He's all, "Can you go by
14 and just advise them that what's going to happen?" I'm
15 like, "Okay," so --
16     MALE SPEAKER 1: Yeah.
17     DEPUTY HEILMAN: Hi.
18     MR. SINGER: Hi.
19     DEPUTY HEILMAN: I'm -- I'm Robert. Hi. I'm
20 with the sheriff's office. I tried to come by yesterday
21 and talk to you guys. As I was explaining to him that I
22 guess you guys have been exchanging emails back and
23 forth with County Counsel and all that kind of stuff
24 related to ceasing and flying and all that stuff.
25     MR. SINGER: Well, we're federally regulated.

Page 7

1  We're --
2      DEPUTY HEILMAN: I --
3      MR. SINGER: -- Part 135 carrier, so --
4      DEPUTY HEILMAN: And I've -- I've seen copies
5  of the emails exchanged between and -- and was it
6  Renee Giacomini and all that from the County Counsel's
7  office?
8      MR. SINGER: Mm-hm.
9      DEPUTY HEILMAN: So we tried to come by
10 yesterday and let you guys know that -- that they're --
11 they're directing us to enforce that Health and Safety
12 Code violation or violation of the COVID-19 order, so
13 any time you guys take off and --
14     MR. SINGER: What -- what order?
15     DEPUTY HEILMAN: The one that says you can't
16 operate your business. I don't know.
17     MR. SINGER: There's -- there's --
18     DEPUTY HEILMAN: Have you seen the emails that
19 have been going back and forth?
20     MR. SINGER: Well, there's no guidance
21 whatsoever for aircraft --
22     DEPUTY HEILMAN: Mm-hm. Uh-huh.
23     MR. SINGER: -- because we're federally
24 regulated.
25     DEPUTY HEILMAN: I get it.

Page 8

1      MR. SINGER: We -- we were always an essential
2  business. We never shut down.
3      DEPUTY HEILMAN: Mm-hm.
4      MR. SINGER: We're Part 135 carriers, so we
5  have --
6      DEPUTY HEILMAN: Okay.
7      MR. SINGER: -- federal --
8      DEPUTY HEILMAN: Okay. I understand that.
9      MR. SINGER: -- authority to regulate -- to
10 operate.
11     DEPUTY HEILMAN: I -- I totally understand
12 that. Like I told him, I am just the messenger. It's
13 not -- has been for me to -- I've been directed to come
14 down and inform you, as per the emails you guys have
15 been exchanging back and forth, that if you do take off
16 with passengers on -- on your flight plans or whatever
17 you have for your tours and whatnot, that each time you
18 land, you will be cited. That's all I've been told to
19 tell you.
20     MR. SINGER: So as of now you're letting me
21 know that?
22     DEPUTY HEILMAN: I am telling you now that if
23 you take off with passengers in your plane and land,
24 that you will be cited.
25     MR. SINGER: And so --

Page 9

1  DEPUTY HEILMAN: I was just driving by --
2  MR. SINGER: -- what --
3  DEPUTY HEILMAN: I was just driving by on a
4  parking complaint. My other partner's the one who's
5  more abrupt -- more abreast of this. I was just told
6  to, hey, come by and tell you guys, so --
7  MR. SINGER: And -- and what is -- what is --
8  what kind of citation are you --
9  DEPUTY HEILMAN: It's just like a speeding
10 ticket. You have your day in court, which you can go
11 and talk to the judge, explain your side of things with
12 what you just told me, because you're more up that than
13 I am.
14 MR. SINGER: Aren't -- aren't interior
15 restaurants allowed right now? Aren't tour bus
16 businesses allowed right now?
17 DEPUTY HEILMAN: I understand that. I'm just
18 telling you, I --
19 MR. SINGER: You're -- you're -- you're
20 acknowledging that they are allowed?
21 DEPUTY HEILMAN: I may -- I'm acknowledging
22 that, so --
23 MR. SINGER: Okay. So why are you guys picking
24 on us?
25 DEPUTY HEILMAN: I am not. I'm just told what

Page 10

1  we were told that was handed down -- that was passed
2  over from County Counsel through our chain of command
3  from our captain to Sergeant Schneider, who I'm sure you
4  guys have been exchanging emails with back and forth,
5  and I was told to come tell you guys that if you do,
6  that you'll be each -- each time you do this, you'll be
7  cited for the Health and Safety code violation.
8  MALE SPEAKER 1: Is there a judgment against us
9  for that? Is there any kind of paperwork -- not you but
10 the sheriff's office has to prove that we're violating
11 it?
12 DEPUTY HEILMAN: I don't have that on me. All
13 I know is as part of the COVID, what's going on. So,
14 like I said, you would be given a ticket each time it
15 happens, you'll be given a court date where you can show
16 up in person, and if there's any kind of sanction or you
17 can say, "Hey, you're wasting my time because, you know,
18 we feel like that we're operating totally within our --
19 within our -- what we're allowed, I think we should be
20 able to seek some kind of retribution and, you know,
21 monetary value."
22 MR. SINGER: Okay.
23 DEPUTY HEILMAN: So --
24 MR. SINGER: I appreciate you saying that.
25 DEPUTY HEILMAN: Yeah. Yeah. I mean, I would

Page 11

1  think that if -- if -- if it's found out you did nothing
2  wrong, or if you had -- we had to cancel flights because
3  of what they tell you, you know, "Hey, I missed out on
4  all these different flights. I should be compensated."
5  MR. SINGER: This is one of the biggest
6  weekends of the year.
7  DEPUTY HEILMAN: Oh, I totally get that.
8  MR. SINGER: And we're -- you know --
9  DEPUTY HEILMAN: Uh-huh.
10 MR. SINGER: -- you're safe in your job. You
11 get a paycheck. We're barely getting by here.
12 DEPUTY HEILMAN: I totally hear you. I totally
13 hear you. So, like I said, I mean, I'm just the
14 messenger. I -- I totally understand. I'm like --
15 MR. SINGER: I appreciate it.
16 DEPUTY HEILMAN: I'm trying to stay neutral.
17 I -- I don't want to argue. I -- I'm not going to
18 arrest you. It's going to be a ticket, and that's what
19 happens from there, so --
20 MR. SINGER: Okay.
21 DEPUTY HEILMAN: All right?
22 MR. SINGER: All right. Well --
23 DEPUTY HEILMAN: And my name's Robert. I
24 didn't catch your first name.
25 MR. SINGER: Aaron.

Page 12

1  DEPUTY HEILMAN: Aaron. What's your last name?
2  MR. SINGER: Singer.
3  DEPUTY HEILMAN: Okay. I think I've seen your
4  name copied in the emails.
5  MR. SINGER: Yes.
6  DEPUTY HEILMAN: Okay. So you're -- you're
7  aware of the emails and stuff like that?
8  MR. SINGER: Yes.
9  DEPUTY HEILMAN: Okay. All right. Well,
10 hopefully we can work things out. I totally get where
11 you're coming from. I totally understand. And I'm --
12 I'm thinking to myself, "Well, this is kind of silly,"
13 but I understand that, that what is handed down from
14 powers that be higher than me that said, "Hey, they're
15 in violation."
16 MR. SINGER: No, I understand.
17 DEPUTY HEILMAN: I go, "Okay."
18 MR. SINGER: I'm not mad at you.
19 DEPUTY HEILMAN: Yeah, no, I get it. It's
20 like --
21 MR. SINGER: I mean -- I mean, I'm mad that
22 you're here, but I'm not mad at you.
23 DEPUTY HEILMAN: I -- I know. I get it. So I
24 was talking to the pilot of the helicopter yesterday,
25 and he goes, "What's the difference if we have a family"

Page 13

1  -- he goes -- he goes, "I kind of get it if there's
2  multiple people from different families that show up
3  here to go on a trip, but these people are families that
4  are coming in the same Uber car, same everything, they
5  live together, and they're going on my helicopter."
6      MR. SINGER: Well, it doesn't matter that -- I
7  mean, a tour bus can drive around with people on it now.
8      DEPUTY HEILMAN: I haven't seen that, but okay.
9      MR. SINGER: I mean, you can -- you can go
10 into -- inside a restaurant.
11     DEPUTY HEILMAN: Uh-huh.
12     MR. SINGER: I don't understand why we're
13 getting picked on except for there's complainers over
14 here that have a lot of money.
15     DEPUTY HEILMAN: Okay.
16     MR. SINGER: And they're, you know, well --
17     DEPUTY HEILMAN: Uh-huh. I know. I just
18 thought I'd come tell you.
19     MR. SINGER: All right.
20     DEPUTY HEILMAN: So, you know, we'll -- we'll
21 work it out, so --
22     MR. SINGER: Okay.
23     DEPUTY HEILMAN: Like I said, you know, worst
24 to worst, you'll have your day in court. You can go and
25 say, "Hey, look, you guys did X, Y and Z, you made me

Page 14

1  lose business. I think I should be compensated."
2      MR. SINGER: Mm-hm.
3      DEPUTY HEILMAN: So -- okay?
4      MR. SINGER: I certainly agree with that.
5      DEPUTY HEILMAN: All right. Take care.
6      MR. SINGER: All right, sir. Thank you.
7      (End of recordings)
8           -oOo-
25 ///

Page 15

1  State of California  )
                         )
2  County of Sonoma     )
3
4
5
6           CERTIFICATE OF REPORTER
7      I hereby certify that the foregoing recorded
8  proceedings in the within-entitled cause were
9  transcribed by me, MICHELLE BARBANTE, a Certified
10 Shorthand Reporter and disinterested person, and were
11 thereafter transcribed into typewriting.
12
13
14     Dated: August 16, 2021
15
16
17
18
19     _Michelle Barbante_
20          Michelle Barbante
            CSR NO. 12601