BRIAN E. WASHINGTON, COUNTY COUNSEL
Brandon W. Halter, Deputy, SBN 289687
3501 Civic Center Drive, Ste. 275
San Rafael, CA 94903
Tel.: (415) 473-6117
Fax: (415) 473-3796
bhalter@marincounty.org

Attorneys for Defendant
COUNTY OF MARIN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAPLANE ADVENTURES, LLC, a California Limited Liability Company<br><br>          Plaintiff,<br><br>v.<br><br>COUNTY OF MARIN, CALIFORNIA; AND DOES 1 THROUGH 10, Inclusive,<br><br>          Defendant. | Case No.: 20-cv-06222-WHA<br><br>**DECLARATION OF PUBLIC HEALTH OFFICER DR. MATTHEW WILLIS IN SUPPORT OF DEFENDANT COUNTY OF MARIN'S MOTION FOR SUMMARY JUDGMENT**<br><br>Complaint filed: September 2, 2020<br><br>Date:     October 7, 2021<br>Time:    8:00 AM<br>Judge:   Honorable William Alsup<br>Dept:    Courtroom 12, 19th Floor |

I, MATTHEW WILLIS, M.D., M.P.H., declare as follows:

1.     I am currently employed by the County of Marin ("County") as the Marin County Public Health Officer. I make this declaration in support of County's motion for summary judgment in the above-captioned matter. I have personal knowledge of the facts stated herein, except to as any matters stated on information and belief, and as to those matters, I am informed and believe them to be true. If called as a witness in this matter, I could and would competently testify to the facts set forth below.

2.     I earned a master's degree in Public Health from Harvard University in 2000, and a medical degree from Temple University in 2001. After completing my residency at Harvard's Cambridge Hospital, I spent six years in the United States Public Health Service, including service as

the director of Ambulatory Care for Indian Health Service, and as an Epidemic Intelligence Officer at the Centers for Disease Control. I am board-certified in Internal Medicine, and have over 20 years of experience in the fields of medicine, public health, and epidemiology.

3. I was selected by the Marin County Board of Supervisors to serve as the Marin County Public Health Officer on November 13, 2012. As the Public Health Officer, I am responsible for planning, organizing, implementing, and evaluating a variety of programs related to public health, and for working with other local, state, and national agencies, and the local medical community, to promote and protect public health. Also, during a local health emergency related to communicable disease, I (like other local public health officers in California) have the authority under California law to, among other things, enact such measures as may be necessary in my judgment to prevent the spread of the disease.

## I. County's Initial Response to COVID-19

4. COVID-19 is a potentially fatal and highly infectious disease. When COVID-19 first emerged domestically in early 2020, officials at all levels of government responded by declaring states of emergency. For example, California Governor Gavin Newsom issued a Proclamation of a State of Emergency on March 4, 2020, and the Board of Supervisors of the County of Marin declared a local emergency on March 10, 2020.

5. Even in the early stages of the pandemic, the evidence showed that COVID-19 spreads easily, in a variety of ways. The threat of COVID-19 to the public was and is exacerbated by this contagiousness. The ease with which COVID-19 spread was due to a number of factors. For example, the evidence showed that a significant percentage of individuals infected with COVID-19 have no symptoms or mild symptoms, which means infected individuals may not be aware that they carry the virus but are still able to transmit it to others. In addition, the transmission risk is especially high with respect to gatherings indoors or in other areas with more limited air circulation, as well as with interactions involving close physical proximity. As a result, efforts to reduce transmission of the disease within the community necessarily focused significant attention on the need to reduce or otherwise modify specific activities according to factors related to transmission, including the impact the activity would have on the number of people leaving their homes and interacting with others, the

2

contact intensity of the activity (i.e., the type and duration of the contacts involved), the number of contacts involved in the activity, and the degree to which mitigation measures could be implemented to decrease the risk of transmission from the activity.

6. The first sets of public health orders issued by County as well as state and federal authorities beginning in March 2020 significantly restricted community activity, due to the need to combat what was at that time a potentially catastrophic increase in COVID-19 infections. For example, on March 16, 2020, I issued a shelter-in-place order ("March 16 Health Order"), a true and correct copy of which order is attached hereto as Exhibit 1. As the March 16 Health Order states, I issued it to "slow the spread of COVID-19 to the maximum extent possible" by ordering people to, among other things, maintain social distance as much as practicable at all times. The March 16 Health Order ordered all businesses within the County except Essential Businesses to cease activities except for Minimum Basic Operations. In addition, it ordered businesses that offered a mix of Essential and non-Essential operations to scale back to only Essential operations. The definition of Essential Businesses and other terms related to determining which activities could continue to take place were informed, as they were throughout ensuing orders and other guidance, by an evaluation of the degree to which such activities were essential to the health and welfare of the community.

7. As transmission rates and other factors related to the threat of COVID-19 changed over next few months, however, County (like other governments) revised the terms of its health orders. On May 15, 2020, I issued another shelter-in-place order ("May 15 Health Order"), a true and correct copy of which order was previously filed by Plaintiff in this litigation as Exhibit B to the first amended complaint, and which is also attached hereto as Exhibit 2 for reference. The May 15 Health Order "continue[d] to restrict most activity, travel, and governmental and business functions to essential needs." Notably, however, the May 15 Health Order added a mechanism by which County could designate a "limited number of Additional Businesses and Additional Activities" to reopen going forward, in phases, depending on "progress achieved in slowing the spread of COVID-19." Specifically, it allowed County to add new types of businesses to the list of businesses that could operate in the County in the future (i.e., Appendix C-1), based on my ongoing evaluation of the "COVID-19 Indicators" and other data. COVID-19 Indicators included factors such as "the capacity of

3

hospitals and the health system in the County and region … to provide care for COVID-19 patients," "the supply of personal protective equipment (PPE) available for hospital staff," "the ability and capacity to quickly and accurately test persons to determine whether they are COVID-19 positive," and "the ability to conduct case investigation and contact tracing."

8.    Pursuant to the May 15 Health Order, I approved the addition of new types of businesses to the list of Additional Businesses (Appendix C-1), in phases, over the ensuing months.  Per the May 15 Health Order, my approach in determining how and when to add specific industries to Appendix C-1 was driven by the COVID-19 Indicators and other data, including evidence of the occurrence of COVID-19 throughout the region, scientific evidence and best practices regarding the most effective approaches to slow the transmission of COVID-19, and evidence that the age, condition, and health of a significant portion of the population of the County placed it at risk for serious health complications, including death, from COVID-19.  My approach also incorporated an evaluation of how essential the industry at issue was to the health and welfare of the community in general.  In addition, my decision-making was guided by an evaluation of the risk of COVID-19 transmission from the specific activity at issue.  As discussed above, the risk of COVID-19 transmission from a given activity was driven by scientific evidence about the ways COVID-19 spread.  This evidence included the fact that asymptomatic individuals remained contagious, that gatherings of people can result in preventable transmission of the virus, and that transmission risk is especially high with respect to gatherings indoors or in other areas with poor air circulation, as well as with interactions involving close physical proximity.  So, for example, I generally added to Appendix C-1 earlier in time (i.e., when COVID-19 Indicators were more precarious) those industries that were more essential to public health and welfare and that could resume operations in a way that better maintained limitations on interactions (especially indoors) as well as social distancing.  And I generally added to Appendix C-1 later in time (i.e., as COVID-19 Indicators improved) those industries that were less essential to public health and welfare and that could not resume operations with as many limitations on interactions and social distancing requirements.

9.    The industries that I added to Appendix C-1 in the weeks following the adoption of the May 15 Health Order exemplified this approach.  For example, by June 1, 2020, I had revised

4

Appendix C-1 to allow for the limited reopening (i.e., reopening subject to restrictions necessary to minimize community spread to the extent practicable) of certain outdoor retail facilities, office space (but only for individuals who cannot telework), outdoor dining, curbside library services, childcare facilities, and summer/sports camps. Because of the nature of these industries' operations—either exclusively outdoors or indoors in a way that close contact would be limited—I determined they could operate (with restrictions) in ways that furthered public health goals related to limiting the spread of COVID-19. In addition, it is important to note that every business that I added to Appendix C-1 remained subject to continuing restrictions such as face covering and social distancing requirements.

10. Ensuing revisions to Appendix C-1 continued to follow this approach. For example, on June 5, 2020, I revised Appendix C-1 to allow for the limited reopening of outdoor religious and cultural services (for groups of less than 100 people), as well as charter boat operators, and limited use of swimming pools and dog parks. Consistent with prior revisions, however, these industries remained subject to various restrictions intended to limit the risk of community transmission. For example, each business or operator was required to complete a Site-Specific Protection Plan to identify how it would reopen in a safe and clean manner for patrons and employees, and mandate precautions including social distancing and face coverings. In addition, I issued industry-specific guidance that required additional measures with respect to specific industries. For example, the industry-specific guidance for charter boat operators required measures including capacity limitations and equipment spacing, and also required that charter boat operators follow the industry-specific guidance applicable to other industries, including Outdoor Recreation Activity Businesses (which, in turn, required that patrons remain outdoors). True and correct copies of the industry-specific guidance for charter boat operators and outdoor recreation activity that I issued are attached hereto as Exhibits 3 and 4, respectively.

11. Over the ensuing weeks, I continued to revise Appendix C-1 as circumstances related to COVID-19 allowed. For example, certain COVID-19 Indicators such as hospitalization and positive test rates in this period generally improved, which allowed me to add additional industries to Appendix C-1, such as limited capacity camping/RV parks (June 29, 2020) and indoor non-essential office space at limited capacity (July 13, 2020). However, there were also periods in which there were setbacks related to COVID-19 Indicators that forced us to restore restrictions that had previously been lifted.

5

For example, I added indoor dining (with certain restrictions) to Appendix C-1 as of June 29, 2020 based on my evaluation of the factors described above. A true and correct copy of this revision is attached hereto as Exhibit 5. However, on July 3, 2020, the State placed County on its COVID-19 watchlist due to an outbreak at San Quentin Prison, increased community transmission among essential workers, and outbreaks in congregate settings and certain neighborhoods. Pursuant to State directives, County was forced to close certain indoor activities that had previously been permitted, including indoor dining, on July 5, 2021. A true and correct copy of this revision is attached hereto as Exhibit 6.

12. On August 31, 2020, I further revised Appendix C-1 pursuant to the approach discussed above to add aviation services, as well as add other industries with similar profiles related to COVID-19 transmission (e.g., outdoor gym and fitness center operations, indoor hair salons and barbershops), and revise existing guidance on industries that had been added earlier (e.g., increased capacity for indoor retail). A true and correct copy of my August 31, 2020 revision to Appendix C-1 is attached hereto as Exhibit 7. Again, County's phased approach to allowing individual industries to reopen was at all times based on available evidence regarding best practices for limiting COVID-19 transmission in the community as well as my expert judgment and the expert judgment of other public health professionals throughout the region, nation, and world.

13. In this case, I understand that one of the claims being made by Plaintiff is that County had no rational basis to impose different restrictions on recreational air travel businesses like Plaintiff than on certain other kinds of industries, such as charter boat operators, outdoor recreation activity operators, indoor retailers, indoor restaurants, and bus tour operators. I respectfully disagree. As an initial matter, some of the terms of the health orders applied equally to all businesses in Marin County, such as the requirement that each business prepare a Site-Specific Protection Plan and the requirement that everyone wear a face covering when indoors. But to the extent the health orders imposed different terms on different industries, each such difference in treatment was a result of the process outlined above; i.e., an evaluation of how best to approach the operation of such business given the available evidence and expert public health guidance regarding COVID-19, and the degree to which such business was essential to the public health and welfare of the community. The difference between how the health orders classified Plaintiff's recreational air travel operations versus these other industries was

6

consistent with this.  For example, charter boat operators and other outdoor recreation activity operators were able to keep patrons outdoors, with social distancing measures in place, and were added to Appendix C-1 on June 5, 2020.  Indoor retailers operate indoors, but have relatively low contact intensity, and can limit capacity and utilize spacing to ensure appropriate social distancing.  They were therefore allowed to operate at up to 50% capacity soon after outdoor recreation activities, on June 12, 2020.  Indoor restaurants have relatively higher contact intensity, but are similarly able to limit capacity and utilize spacing to ensure appropriate social distancing.  Thus, indoor restaurants were permitted to operate later than retailers, but before certain other types of industries that lacked the ability to mandate social distancing (such as recreational air travel businesses).  Bus tour operations, depending on the specific type, could have been classified several different ways.  For example, bus operations that provided Essential Travel or travel related to accessing Additional Businesses provided services that were more essential to the health and welfare of the community, and could utilize spacing to ensure social distancing.  Therefore, such operations were allowed at an earlier point in time.  In contrast with all of these industries, Plaintiff's recreational air travel operations were not allowed until later, when COVID-19 Indicators further improved, because in accordance with the evaluation process described above we took into account the fact that such operations were purely recreational in nature, were conducted indoors in a confined space without the ability to socially distance, and provided services that were not as essential to the health and welfare of the community in general.

## II.    County's Approach to Enforcement of the COVID-19 Health Orders

14.    As I continued to revise the COVID-19-related health orders over time, myself and other County employees also continued to engage in community outreach and communication with both individuals and businesses to ensure the public was informed about the terms of such orders. Specifically, County posted new orders to its website, and County Public Information Officer Laine Hendricks also created the "Marin Recovers" site at which County posted guidance for specific business sectors.  In addition, County worked with community partners such as the Chamber of Commerce and local cities and towns to help publicize the terms of these orders.

15.    To coordinate these outreach and communication efforts, as well as to help manage other issues related to implementing, revising, and enforcing the health orders, we formed a working group of

7

County employees.  This working group, which we referred to internally as the "Marin Recovers" group, included me, Marin County Parks Director Max Korten, Public Information Officer Laine Hendricks, Emergency Operations Director Angela Nicholson, Marin County Parks Principal Planner Kevin Wright, and attorneys from the County Counsel's office.

16.     As discussed, the COVID-19 related health orders affected every individual and business in Marin County in some way—either through face covering mandates, social distancing mandates, travel restrictions, or in some other fashion.  However, County did not (and does not) have the resources to individually inform and then actively monitor every individual and business in Marin County to ensure compliance with all the various terms of these orders.  Given this limitation, County relied on the outreach and publicity efforts described above to maximize the effectiveness of these health orders.  In addition, County relied on individuals and business throughout Marin County to comply in good faith with the terms of these orders.  Judging by County's relatively successful efforts against COVID-19 over time, at least as compared with other jurisdictions, the vast majority of individuals and businesses were compliant with these orders, and I believe that their actions saved lives.

17.     Finally, as a third component of its outreach efforts, County relied on reports from the public and/or businesses to identify potential violations of these orders.  County's general approach to responding to reports of potential violations depended on the nature of the reported violation.  For reports regarding relatively clear and simple violations, such as failures to wear face coverings or obvious violations of capacity restrictions, County employees generally proceeded (without internal discussion) to either refer the matter to local law enforcement (if it was within the jurisdiction of a local town or city) or inform the individual or business of the health order restriction at issue and followed up as necessary to ensure compliance (if it was within unincorporated County jurisdiction).  For reports that were more novel or complex, or that otherwise required more involved interpretation of the existing guidance, County employees brought the report at issue to the Marin Recovers group, and we discussed as a group how the alleged behavior fit within the terms of the orders in effect at that time.  If the alleged behavior was a violation of the orders, then staff would (just as with all other violations) refer the matter to local law enforcement (if applicable) or inform the individual or business of the

8

health order restriction at issue and follow up as necessary to ensure compliance. In no event, however, was any County employee authorized to allow any individual or business to act in violation of the health orders—and I am not aware of any evidence that any County employee ever did so.

18. The County department that would respond to a given alleged violation would typically be determined by the County department with responsibility for overseeing the business or individual at issue. For example, Environmental Health Services would typically respond to complaints regarding industries that it generally oversees, such as restaurants. And the Marin County Sheriff's Office would typically respond to complaints regarding members of the general public or businesses that were not generally overseen by another County department. Regardless of which County department responded, however, County's approach to each potential violation was the same: make contact, inform the potential violator about the terms of the order, and follow up as necessary to ensure compliance, up to and including (if necessary) issuing written citations.

19. I understand that in this case, Plaintiff claims that County enforced the health orders more strictly against Plaintiff, and allowed other air travel businesses to operate in violation of the health orders. Again, I respectfully disagree. County used the same approach to publicize the terms of the health orders with respect to all air travel businesses, including Plaintiff. Also, to my knowledge, County only received reports of potential violations as to three specific air travel businesses: Skydive Golden Gate (a skydiving business operating out of Gnoss Field), San Francisco Helicopters (a helicopter tour business that operates largely out of the same facility used by Plaintiff in Sausalito, about which we received complaints of potential health order violations on June 28, 2020), and Plaintiff (about which we began receiving complaints of potential health order violations on June 5, 2020). The Marin Recovers group discussed the operations of each of these businesses in June 2020, and reached the same conclusion as to each one. Specifically, that operations related to recreational travel inside an aircraft that did not meet the definition of Essential Travel were not allowable under the health orders in effect at that time, and that the operations of these businesses that met that description would have to cease (or, in the case of Skydive Golden Gate, not resume). Pursuant to that conclusion, I understand that County staff informed each business of the terms of the health orders as applied to these operations, and followed up as necessary to ensure compliance. With respect to Skydive Golden Gate

9

and SF Helicopters, I understand that staff's initial efforts to communicate the terms of the health orders were successful in gaining compliance, because to my knowledge we did not receive further reports of potential violations regarding these businesses. With respect to Plaintiff, I understand that Plaintiff did not comply with the terms of the Health Orders following initial outreach in mid-June, because we continued to receive complaints of potential violations. As a result, I understand that a deputy from the Sheriff's Office visited Plaintiff on July 3, 2020, and that effort was successful in convincing Plaintiff to comply with the terms of the orders.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and accurate to the best of my knowledge.

Executed on August 31, 2021, in San Rafael, California.

By: _____
Matthew Willis, M.D., M.P.H.

10

EXHIBIT 1

# ORDER OF THE HEALTH OFFICER
## OF THE COUNTY OF MARIN DIRECTING
## ALL INDIVIDUALS LIVING IN THE COUNTY TO SHELTER AT THEIR PLACE OF RESIDENCE EXCEPT THAT THEY MAY LEAVE TO PROVIDE OR RECEIVE CERTAIN ESSENTIAL SERVICES OR ENGAGE IN CERTAIN ESSENTIAL ACTIVITIES AND WORK FOR ESSENTIAL BUSINESSES AND GOVERNMENTAL SERVICES; EXEMPTING INDIVIDUALS EXPERIENCING HOMELESSNESS FROM THE SHELTER IN PLACE ORDER BUT URGING THEM TO FIND SHELTER AND GOVERNMENT AGENCIES TO PROVIDE IT; DIRECTING ALL BUSINESSES AND GOVERNMENTAL AGENCIES TO CEASE NON-ESSENTIAL OPERATIONS AT PHYSICAL LOCATIONS IN THE COUNTY; PROHIBITING ALL NON-ESSENTIAL GATHERINGS OF ANY NUMBER OF INDIVIDUALS; AND ORDERING CESSATION OF ALL NON-ESSENTIAL TRAVEL

## DATE OF ORDER: <u>MARCH 16, 2020</u>

**Please read this Order carefully. Violation of or failure to comply with this Order is a misdemeanor punishable by fine, imprisonment, or both. (California Health and Safety Code § 120295, *et seq.*)**

UNDER THE AUTHORITY OF CALIFORNIA HEALTH AND SAFETY CODE SECTIONS 101040, 101085, AND 120175, THE HEALTH OFFICER OF THE COUNTY OF MARIN ("HEALTH OFFICER") ORDERS:

1. The intent of this Order is to ensure that the maximum number of people self-isolate in their places of residence to the maximum extent feasible, while enabling essential services to continue, to slow the spread of COVID-19 to the maximum extent possible. When people need to leave their places of residence, whether to obtain or perform vital services, or to otherwise facilitate authorized activities necessary for continuity of social and commercial life, they should at all times reasonably possible comply with Social Distancing Requirements as defined in Section 10 below. All provisions of this Order should be interpreted to effectuate this intent. Failure to comply with any of the provisions of this Order constitutes an imminent threat to public health.

2. All individuals currently living within Marin County (the "County") are ordered to shelter at their place of residence. To the extent individuals are using shared or outdoor spaces, they must at all times as reasonably possible maintain social distancing of at least six feet from any other person when they are outside their residence. All persons may leave their residences only for Essential Activities, Essential Governmental Functions, or to operate Essential Businesses, all as defined in Section 10. Individuals experiencing

Order of the County Health Officer of the
County of Marin to Shelter in Place

COM000015

homelessness are exempt from this Section, but are strongly urged to obtain shelter, and governmental and other entities are strongly urged to make such shelter available as soon as possible and to the maximum extent practicable (and to utilize Social Distancing Requirements in their operation).

3. All businesses with a facility in the County, except Essential Businesses as defined below in Section 10, are required to cease all activities at facilities located within the County except Minimum Basic Operations, as defined in Section 10. For clarity, businesses may also continue operations consisting exclusively of employees or contractors performing activities at their own residences (i.e., working from home). All Essential Businesses are strongly encouraged to remain open. To the greatest extent feasible, Essential Businesses shall comply with Social Distancing Requirements as defined in Section 10 below, including, but not limited to, when any customers are standing in line.

4. All public and private gatherings of any number of people occurring outside a household or living unit are prohibited, except for the limited purposes as expressly permitted in Section 10. Nothing in this Order prohibits the gathering of members of a household or living unit.

5. All travel, including, but not limited to, travel on foot, bicycle, scooter, motorcycle, automobile, or public transit, except Essential Travel and Essential Activities as defined below in Section 10, is prohibited. People must use public transit only for purposes of performing Essential Activities or to travel to and from work to operate Essential Businesses or maintain Essential Governmental Functions. People riding on public transit must comply with Social Distancing Requirements as defined in Section 10 below, to the greatest extent feasible. This Order allows travel into or out of the County to perform Essential Activities, operate Essential Businesses, or maintain Essential Governmental Functions.

6. This Order is issued based on evidence of increasing occurrence of COVID-19 within the County and throughout the Bay Area, scientific evidence and best practices regarding the most effective approaches to slow the transmission of communicable diseases generally and COVID-19 specifically, and evidence that the age, condition, and health of a significant portion of the population of the County places it at risk for serious health complications, including death, from COVID-19. Due to the outbreak of the COVID-19 virus in the general public, which is now a pandemic according to the World Health Organization, there is a public health emergency throughout the County. Making the problem worse, some individuals who contract the COVID-19 virus have no symptoms or have mild symptoms, which means they may not be aware they carry the virus. Because even people without symptoms can transmit the disease, and because evidence shows the disease is easily spread, gatherings can result in preventable transmission of the virus. The scientific evidence shows that at this stage of the emergency, it is essential to slow virus transmission as much as possible to protect the most vulnerable and to prevent the health care system from being overwhelmed. One proven way to slow the transmission is to limit interactions among people to the greatest extent practicable. By

reducing the spread of the COVID-19 virus, this Order helps preserve critical and limited healthcare capacity in the County.

7. This Order also is issued in light of the existence of 10 cases of COVID-19 in the County, as well as at least 258 confirmed cases and at least three deaths in the seven Bay Area jurisdictions jointly issuing this Order, as of 5 p.m. on March 15, 2020, including a significant and increasing number of suspected cases of community transmission and likely further significant increases in transmission. Widespread testing for COVID-19 is not yet available but is expected to increase in the coming days. This Order is necessary to slow the rate of spread and the Health Officer will re-evaluate it as further data becomes available.

8. This Order is issued in accordance with, and incorporates by reference, the March 4, 2020 Proclamation of a State of Emergency issued by Governor Gavin Newsom, the March 3, 2020 Proclamation by the Assistant Director of Emergency Services Declaring the Existence of a Local Emergency in the County, the March 3, 2020 Declaration of Local Health Emergency Regarding Novel Coronavirus 2019 (COVID-19) issued by the Health Officer, the March 10, 2020 Resolution of the Board of Supervisors of the County of Marin Ratifying and Extending the Declaration of a Local Health Emergency, and the March 10, 2020 Resolution of the Board of Supervisors of the County of Marin Ratifying and Extending the Proclamation of a Local Emergency.

9. This Order comes after the release of substantial guidance from the County Health Officer, the Centers for Disease Control and Prevention, the California Department of Public Health, and other public health officials throughout the United States and around the world, including a variety of prior orders to combat the spread and harms of COVID-19. The Health Officer will continue to assess the quickly evolving situation and may modify or extend this Order, or issue additional Orders, related to COVID-19.

10. <u>Definitions and Exemptions</u>.

    a. For purposes of this Order, individuals may leave their residence only to perform any of the following "Essential Activities." But people at high risk of severe illness from COVID-19 and people who are sick are urged to stay in their residence to the extent possible except as necessary to seek medical care.

        i. To engage in activities or perform tasks essential to their health and safety, or to the health and safety of their family or household members (including, but not limited to, pets), such as, by way of example only and without limitation, obtaining medical supplies or medication, visiting a health care professional, or obtaining supplies they need to work from home.

        ii. To obtain necessary services or supplies for themselves and their family or household members, or to deliver those services or supplies to others, such as, by way of example only and without limitation, canned food, dry goods, fresh fruits and vegetables, pet supply, fresh meats, fish, and

poultry, and any other household consumer products, and products necessary to maintain the safety, sanitation, and essential operation of residences.

    iii. To engage in outdoor activity, provided the individuals comply with Social Distancing Requirements as defined in this Section, such as, by way of example and without limitation, walking, hiking, or running.

    iv. To perform work providing essential products and services at an Essential Business or to otherwise carry out activities specifically permitted in this Order, including Minimum Basic Operations.

    v. To care for a family member or pet in another household.

b. For purposes of this Order, individuals may leave their residence to work for or obtain services at any "Healthcare Operations" including hospitals, clinics, dentists, pharmacies, pharmaceutical and biotechnology companies, other healthcare facilities, healthcare suppliers, home healthcare services providers, mental health providers, or any related and/or ancillary healthcare services. "Healthcare Operations" also includes veterinary care and all healthcare services provided to animals. This exemption shall be construed broadly to avoid any impacts to the delivery of healthcare, broadly defined. "Healthcare Operations" does not include fitness and exercise gyms and similar facilities.

c. For purposes of this Order, individuals may leave their residence to provide any services or perform any work necessary to the operations and maintenance of "Essential Infrastructure," including, but not limited to, public works construction, construction of housing (in particular affordable housing or housing for individuals experiencing homelessness), airport operations, water, sewer, gas, electrical, oil refining, roads and highways, public transportation, solid waste collection and removal, internet, and telecommunications systems (including the provision of essential global, national, and local infrastructure for computing services, business infrastructure, communications, and web-based services), provided that they carry out those services or that work in compliance with Social Distancing Requirements as defined this Section, to the extent possible.

d. For purposes of this Order, all first responders, emergency management personnel, emergency dispatchers, court personnel, and law enforcement personnel, and others who need to perform essential services are categorically exempt from this Order. Further, nothing in this Order shall prohibit any individual from performing or accessing "Essential Governmental Functions," as determined by the governmental entity performing those functions. Each governmental entity shall identify and designate appropriate employees or contractors to continue providing and carrying out any Essential Governmental Functions. All Essential Governmental Functions shall be performed in compliance with Social Distancing Requirements as defined in this Section, to the extent possible.

e. For the purposes of this Order, covered businesses include any for-profit, non-profit, or educational entities, regardless of the nature of the service, the function they perform, or its corporate or entity structure.

f. For the purposes of this Order, "Essential Businesses" means:
   i. Healthcare Operations and Essential Infrastructure;
   ii. Grocery stores, certified farmers' markets, farm and produce stands, supermarkets, food banks, convenience stores, and other establishments engaged in the retail sale of canned food, dry goods, fresh fruits and vegetables, pet supply, fresh meats, fish, and poultry, and any other household consumer products (such as cleaning and personal care products). This includes stores that sell groceries and also sell other non-grocery products, and products necessary to maintaining the safety, sanitation, and essential operation of residences;
   iii. Food cultivation, including farming, livestock, and fishing;
   iv. Businesses that provide food, shelter, and social services, and other necessities of life for economically disadvantaged or otherwise needy individuals;
   v. Newspapers, television, radio, and other media services;
   vi. Gas stations and auto-supply, auto-repair, and related facilities;
   vii. Banks and related financial institutions;
   viii. Hardware stores;
   ix. Plumbers, electricians, exterminators, and other service providers who provide services that are necessary to maintaining the safety, sanitation, and essential operation of residences, Essential Activities, and Essential Businesses;
   x. Businesses providing mailing and shipping services, including post office boxes;
   xi. Educational institutions—including public and private K-12 schools, colleges, and universities—for purposes of facilitating distance learning or performing essential functions, provided that social distancing of six-feet per person is maintained to the greatest extent possible;
   xii. Laundromats, drycleaners, and laundry service providers;
   xiii. Restaurants and other facilities that prepare and serve food, but only for delivery or carry out. Schools and other entities that typically provide free food services to students or members of the public may continue to do so under this Order on the condition that the food is provided to students or members of the public on a pick-up and take-away basis only. Schools and other entities that provide food services under this exemption shall not permit the food to be eaten at the site where it is provided, or at any other gathering site;
   xiv. Businesses that supply products needed for people to work from home;
   xv. Businesses that supply other essential businesses with the support or supplies necessary to operate;

xvi. Businesses that ship or deliver groceries, food, goods or services directly to residences;

xvii. Airlines, taxis, and other private transportation providers providing transportation services necessary for Essential Activities and other purposes expressly authorized in this Order;

xviii. Home-based care for seniors, adults, or children;

xix. Residential facilities and shelters for seniors, adults, and children;

xx. Professional services, such as legal or accounting services, when necessary to assist in compliance with legally mandated activities;

xxi. Childcare facilities providing services that enable employees exempted in this Order to work as permitted. To the extent possible, childcare facilities must operate under the following mandatory conditions:

    1. Childcare must be carried out in stable groups of 12 or fewer ("stable" means that the same 12 or fewer children are in the same group each day).

    2. Children shall not change from one group to another.

    3. If more than one group of children is cared for at one facility, each group shall be in a separate room. Groups shall not mix with each other.

    4. Childcare providers shall remain solely with one group of children.

g. For the purposes of this Order, "Minimum Basic Operations" include the following, provided that employees comply with Social Distancing Requirements as defined this Section, to the extent possible, while carrying out such operations:

    i. The minimum necessary activities to maintain the value of the business's inventory, ensure security, process payroll and employee benefits, or for related functions.

    ii. The minimum necessary activities to facilitate employees of the business being able to continue to work remotely from their residences.

h. For the purposes of this Order, "Essential Travel" includes travel for any of the following purposes. Individuals engaged in any Essential Travel must comply with all Social Distancing Requirements as defined in this Section below.

    i. Any travel related to the provision of or access to Essential Activities, Essential Governmental Functions, Essential Businesses, or Minimum Basic Operations.

    ii. Travel to care for elderly, minors, dependents, persons with disabilities, or other vulnerable persons.

    iii. Travel to or from educational institutions for purposes of receiving materials for distance learning, for receiving meals, and any other related services.

    iv. Travel to return to a place of residence from outside the jurisdiction.

    v. Travel required by law enforcement or court order.

    vi. Travel required for non-residents to return to their place of residence outside the County. Individuals are strongly encouraged to verify that

their transportation out of the County remains available and functional prior to commencing such travel.

    i.  For purposes of this Order, residences include hotels, motels, shared rental units and similar facilities.

    j.  For purposes of this Order, "Social Distancing Requirements" includes maintaining at least six-foot social distancing from other individuals, washing hands with soap and water for at least twenty seconds as frequently as possible or using hand sanitizer, covering coughs or sneezes (into the sleeve or elbow, not hands), regularly cleaning high-touch surfaces, and not shaking hands.

11. Pursuant to Government Code sections 26602 and 41601 and Health and Safety Code section 101029, the Health Officer requests that the Sheriff and all chiefs of police in the County ensure compliance with and enforce this Order. The violation of any provision of this Order constitutes an imminent threat to public health.

12. This Order shall become effective at 12:01 a.m. on March 17, 2020 and will continue to be in effect until 11:59 p.m. on April 7, 2020, or until it is extended, rescinded, superseded, or amended in writing by the Health Officer.

13. Copies of this Order shall promptly be: (1) made available at the Bulletin Board adjacent to the entrance to the Chambers of the Board of Supervisors, Room 330, Administration Building, and in the display case in the center arch of the Hall of Justice, Marin County Civic Center, San Rafael, California; (2) posted on the County of Marin website (www.marincounty.org) as well as the County of Marin Department of Health and Human Services website (www.marinhhs.org); and (3) provided to any member of the public requesting a copy of this Order.

14. If any provision of this Order to the application thereof to any person or circumstance is held to be invalid, the reminder of the Order, including the application of such part or provision to other persons or circumstances, shall not be affected and shall continue in full force and effect. To this end, the provisions of this Order are severable.

IT IS SO ORDERED:

_____
Matt Willis, MD, MPH
Health Officer of the County of Marin

Dated: March 16, 2020

Order of the County Health Officer of the
County of Marin to Shelter in Place

COM000021

EXHIBIT 2

# EXHIBIT B

⚠ COVID-19 Status Update for 09/01/2020                                                                                                  ✕

The status update for September 1, 2020 includes a video update from Dr. Willis; a public health order enforcement update; new COVID-19 activity; and a
quick summary of other major events from the day. ... Read More

Translate

Home / Marin public health order may 15 2020

# Marin Public Health Order
# for May 15, 2020

### ORDER OF THE HEALTH OFFICER

### OF THE COUNTY OF MARIN DIRECTING

**ALL INDIVIDUALS IN THE COUNTY TO CONTINUE SHELTERING AT THEIR PLACE OF RESIDENCE EXCEPT
FOR IDENTIFIED NEEDS AND ACTIVITIES, IN COMPLIANCE WITH SPECIFIED REQUIREMENTS;
CONTINUING TO EXEMPT HOMELESS INDIVIDUALS FROM THE ORDER BUT URGING GOVERNMENT
AGENCIES TO PROVIDE THEM SHELTER; REQUIRING ALL BUSINESSES AND RECREATION FACILITIES
THAT ARE ALLOWED TO OPERATE TO IMPLEMENT SOCIAL DISTANCING, FACE COVERING, AND
CLEANING PROTOCOLS; AND DIRECTING ALL BUSINESSES, FACILITY OPERATORS, AND GOVERNMENTAL
AGENCIES TO CONTINUE THE TEMPORARY CLOSURE OF ALL OTHER OPERATIONS NOT ALLOWED
UNDER THIS ORDER**

### DATE OF ORDER: MAY 15, 2020

**Please read this Order carefully.  Violation of or failure to comply with this Order is a misdemeanor punishable by fine, imprisonment, or both.
(California Health and Safety Code § 120295, *et seq.*; Cal. Penal Code §§ 69, 148(a)(1) *et seq.*;)**

UNDER THE AUTHORITY OF CALIFORNIA HEALTH AND SAFETY CODE SECTIONS 101040, 101085, AND 120175, THE HEALTH
OFFICER OF THE COUNTY OF MARIN ("HEALTH OFFICER") ORDERS:

1.   This Order supersedes the April 29, 2020 Order of the Health Officer directing all individuals to shelter in place ("Prior Order").  This Order
amends, clarifies, and continues certain terms of the Prior Order to ensure continued social distancing and limit person-to-person contact to reduce
the rate of transmission of Novel Coronavirus Disease 2019 ("COVID-19").  This Order continues to restrict most activity, travel, and
governmental and business functions to essential needs and to the Outdoor Activities and Outdoor Businesses that the prior Order allowed to
resume.  But in light of progress achieved in slowing the spread of COVID-19 in the County of Marin (the "County") and neighboring counties,
the Order allows a limited number of Additional Businesses and Additional Activities (as defined in Section 15 below and described in Appendix

C-1 and C-2) to resume operating, subject to specified conditions and safety precautions to reduce associated risk of COVID-19 transmission. This gradual and measured resumption of activity is designed to manage the overall volume, duration, and intensity of person-to-person contact to prevent a surge in COVID-19 cases in the County and neighboring counties. As further provided in Section 11 below, the Health Officer will continue to monitor the risks of the activities and businesses allowed under this Order based on the COVID-19 Indicators (as defined in Section 11) and other data, and may, if conditions support doing so, incrementally add to the list of Additional Businesses and Additional Activities. The activities allowed by this Order will be assessed on an ongoing basis and these activities and others allowed by the Order may need to be modified (including, without limitation, temporarily restricted or prohibited) if the risk associated with COVID-19 increases in the future. As of the effective date and time of this Order set forth in Section 18 below, all individuals, businesses, and government agencies in the County are required to follow the provisions of this Order.

2.   The primary intent of this Order is to ensure that County residents continue to shelter in their places of residence to slow the spread of COVID-19 and mitigate the impact on delivery of critical healthcare services. This Order allows a limited number of Additional Businesses and Additional Activities to resume while the Health Officer continues to assess the transmissibility and clinical severity of COVID-19 and monitors indicators described in Section 11. All provisions of this Order must be interpreted to effectuate this intent. Failure to comply with any of the provisions of this Order constitutes an imminent threat and menace to public health, constitutes a public nuisance, and is punishable by fine, imprisonment, or both.

3.   All individuals currently living within the County are ordered to shelter at their place of residence. They may leave their residence only for Essential Activities as defined in Section 15.a, Outdoor Activities as defined in Section 15.m, and Additional Activities as defined in Section 15.X; Essential Governmental Functions as defined in Section 15.d; Essential Travel as defined in Section 15.i; to work for Essential Businesses as defined in Section 15.f, Outdoor Businesses as defined in Section 15.l, and Additional Businesses as defined in Section 15.X; or to perform Minimum Basic Operations for other businesses that must remain temporarily closed, as provided in Section 15.g. For clarity, individuals who do not currently reside in the County must comply with all applicable requirements of the Order when in the County. Individuals experiencing homelessness are exempt from this Section, but are strongly urged to obtain shelter, and governmental and other entities are strongly urged to, as soon as possible, make such shelter available and provide handwashing or hand sanitation facilities to persons who continue experiencing homelessness.

4.   When people need to leave their place of residence for the limited purposes allowed in this Order, they must strictly comply with Social Distancing Requirements as defined in Section 15.k, except as expressly provided in this Order, and must wear Face Coverings as provided in, and subject to the limited exceptions in, Health Officer Order Generally Requiring Members of the Public and Workers to Wear Face Coverings (the "Face Covering Order").

5.   All businesses with a facility in the County, except Essential Businesses, Outdoor Businesses, and Additional Businesses, as defined in Section 15, are required to cease all activities at facilities located within the County except Minimum Basic Operations, as defined in Section 15. For clarity, all businesses may continue operations consisting exclusively of owners, personnel, volunteers, or contractors performing activities at their own residences (i.e., working from home). All Essential Businesses are strongly encouraged to remain open. But all businesses are directed to maximize the number of personnel who work from home. Essential Businesses, Outdoor Businesses, and Additional Businesses may only assign those personnel who cannot perform their job duties from home to work outside the home. Outdoor Businesses must conduct all business and transactions involving members of the public outdoors.

6.   As a condition of operating under this Order, the operators of all businesses must prepare or update, post, implement, and distribute to their personnel a Site-Specific Protection Plan for each of their facilities in the County frequented by personnel or members of the public, as specified in Section 15.h. In addition to the Site-Specific Protection Plan, all businesses allowed to operate under this Order must follow any industry-specific guidance issued by the Health Officer related to COVID-19 and any conditions on operation specified in this Order, including those specified in Appendix C-1. Except as otherwise provided in Appendix C-1, businesses that include an Essential Business or Outdoor Business component at their facilities alongside other components must, to the extent feasible, scale down their operations to the Essential Business and Outdoor Business components only; provided, however, that otherwise allowed to operate under this Order may continue to stock and sell non-essential products.

7.   All public and private gatherings of any number of people occurring outside a single household or living unit are prohibited, except for the limited purposes expressly permitted in this Order. Nothing in this Order prohibits members of a single household or living unit from engaging in Essential Travel, Essential Activities, Outdoor Activities, or Additional Activities together.

8.  All travel, including, but not limited to, travel on foot, bicycle, scooter, motorcycle, automobile, or public transit, except Essential Travel, as defined below in Section 15.i, is prohibited. People may use public transit only for purposes of performing Essential Activities, Outdoor Activities, or Additional Activities, or to travel to and from Essential Businesses, Outdoor Businesses, or Additional Businesses, to maintain Essential Governmental Functions, or to perform Minimum Basic Operations at businesses that are not allowed to resume operations. Transit agencies and people riding on public transit must comply with Social Distancing Requirements, as defined in Section 15.k, to the greatest extent feasible, and personnel and passengers must wear Face Coverings as required by the Face Covering Order. This Order allows travel into or out of the County only to perform Essential Activities, Outdoor Activities, or Additional Activities; to operate, perform work for, or access a business allowed to operate under this Order; to perform Minimum Basic Operations at other businesses; or to maintain Essential Governmental Functions.

9.  This Order is issued based on evidence of continued significant community transmission of COVID-19 within the County and throughout the Bay Area; continued uncertainty regarding the degree of undetected asymptomatic transmission; scientific evidence and best practices regarding the most effective approaches to slow the transmission of communicable diseases generally and COVID-19 specifically; evidence that the age, condition, and health of a significant portion of the population of the County places it at risk for serious health complications, including death, from COVID-19; and further evidence that others, including younger and otherwise healthy people, are also at risk for serious outcomes. Due to the outbreak of the COVID-19 disease in the general public, which is now a pandemic according to the World Health Organization, there is a public health emergency throughout the County. Making the problem worse, some individuals who contract the virus causing the COVID-19 disease have no symptoms or have mild symptoms, which means they may not be aware they carry the virus and are transmitting it to others. Further, evidence shows that the virus can survive for hours to days on surfaces and may be indirectly transmitted between individuals. Because even people without symptoms can transmit the infection, and because evidence shows the infection is easily spread, gatherings and other direct or indirect interpersonal interactions can result in preventable transmission of the virus.

10. The collective efforts taken to date regarding this public health emergency have slowed the virus' trajectory, but the emergency and the attendant risk to public health remain significant. As of May 14, 2020, there have been 275 confirmed cases of COVID-19 in the County (up from 9 on March 15, 2020, just before the first shelter-in-place order), including 14 deaths.

11. The local health officers who jointly issued the Prior Order are monitoring several key indicators ("COVID-19 Indicators"), which are among the many factors informing their decisions whether to modify existing shelter-in-place restrictions. Progress on some of these COVID-19 Indicators —specifically related to hospital utilization and capacity—makes it appropriate, at this time, to allow certain Additional Businesses to resume operations and Additional Activities to take place under specified conditions, as set forth in Section 15.I. But the continued prevalence of the virus that causes COVID-19 requires most activities and business functions to remain restricted, and those activities that are allowed to occur must do so subject to social distancing and other infection control practices identified by the Health Officer. Evaluation of the COVID-19 Indicators will be critical to determinations by the local health officers regarding whether the restrictions imposed by this Order will be further modified to ease or tighten the restrictions imposed by this Order and augment, limit, or prohibit the Additional Businesses and Additional Activities allowed to resume. The Health Officer will continually review whether modifications to the Order are warranted based on (1) progress on the COVID-19 Indicators; (2) developments in epidemiological and diagnostic methods for tracing, diagnosing, treating, or testing for COVID-19; and (3) scientific understanding of the transmission dynamics and clinical impact of COVID-19. The COVID-19 Indicators include, but are not limited to, the following:

    a.  The capacity of hospitals and the health system in the County and region, including acute care beds and Intensive Care Unit beds, to provide care for COVID-19 patients and other patients, including during a surge in COVID-19 cases.

    b.  The supply of personal protective equipment (PPE) available for hospital staff and other healthcare providers and personnel who need PPE to safely respond to and treat COVID-19 patients.

    c.  The ability and capacity to quickly and accurately test persons to determine whether they are COVID-19 positive, especially those in vulnerable populations or high-risk settings or occupations.

    d.  The ability to conduct case investigation and contact tracing for the volume of cases and associated contacts that will continue to occur, isolating confirmed cases and quarantining persons who have had contact with confirmed cases.

12. The scientific evidence shows that at this stage of the emergency, it remains essential to continue to slow virus transmission to help (a) protect the most vulnerable; (b) prevent the health care system from being overwhelmed; (c) prevent long-term chronic health conditions, such as cardiovascular, kidney, and respiratory damage and loss of limbs from blood clotting; and (d) prevent deaths. Continuation of the Prior Order is necessary to slow the spread of the COVID-19 disease, preserving critical and limited healthcare capacity in the County and advancing toward a

point in the public health emergency where transmission can be controlled. At the same time, since the Prior Order was issued the County has continued to make progress in expanding health system capacity and healthcare resources and in slowing community transmission of COVID-19. In light of progress on these indicators, and subject to continued monitoring and potential public health-based responses, in addition to those already allowed to operate under the Prior Order as Essential Businesses and Outdoor Businesses, it is appropriate at this time to begin allowing operation of specified Additional Businesses. These businesses are identified based on health-related considerations and transmission risk factors including, but not limited to, the intensity and quantity of contacts and the ability to substantially mitigate transmission risks associated with the operations.

13. This Order is issued in accordance with, and incorporates by reference, the March 4, 2020 Proclamation of a State of Emergency issued by Governor Gavin Newsom, the March 3, 2020 Proclamation by the Assistant Director of Emergency Services Declaring the Existence of a Local Emergency in the County, the March 3, 2020 Declaration of Local Health Emergency Regarding Novel Coronavirus 2019 (COVID-19) issued by the Health Officer, and the March 10, 2020 Resolution of the Board of Supervisors of the County of Marin Ratifying and Extending the Proclamation of a Local Emergency.

14. This Order is also issued in light of the March 19, 2020 Order of the State Public Health Officer (the "State Shelter Order"), which set baseline statewide restrictions on non-residential business activities, effective until further notice, and the Governor's March 19, 2020 Executive Order N-33-20 directing California residents to follow the State Shelter Order. The May 4, 2020 Executive Order issued by Governor Newsom and May 7, 2020 Order of the State Public Health Officer permit certain businesses to reopen if a local health officer believes the conditions in that jurisdiction warrant it, but expressly acknowledge the authority of local health officers to establish and implement public health measures within their respective jurisdictions that are more restrictive than those implemented by the State Public Health Officer. This Order adopts in certain respects more stringent restrictions addressing the particular facts and circumstances in this County, which are necessary to control the public health emergency as it is evolving within the County and the Bay Area. Without this tailored set of restrictions that further reduces the number of interactions between persons, scientific evidence indicates that the public health crisis in the County will worsen to the point at which it may overtake available health care resources within the County and increase the death rate. Also, this Order enumerates additional restrictions on non-work-related travel not covered by the State Shelter Order; sets forth mandatory Social Distancing Requirements for all individuals in the County when engaged in activities outside their residences; and adds a mechanism to ensure that all businesses with facilities that are allowed to operate under the Order comply with the Social Distancing Requirements. Where a conflict exists between this Order and any state public health order related to the COVID-19 pandemic, the most restrictive provision controls. Consistent with California Health and Safety Code section 131080 and the Health Officer Practice Guide for Communicable Disease Control in California, except where the State Health Officer may issue an order expressly directed at this Order and based on a finding that a provision of this Order constitutes a menace to public health, any more restrictive measures in this Order continue to apply and control in this County. In addition, to the extent any federal guidelines allow activities that are not allowed by this Order, this Order controls and those activities are not allowed.

15. Definitions and Exemptions.

   a. For the purposes of this Order, individuals may leave their residence only to perform the following "Essential Activities." But people at high risk of severe illness from COVID-19 and people who are sick are strongly urged to stay in their residence to the extent possible, except as necessary to seek or provide medical care or Essential Governmental Functions. Essential Activities are:

      i. To engage in activities or perform tasks important to their health and safety, or to the health and safety of their family or household members (including pets), such as, by way of example only and without limitation, obtaining medical supplies or medication, or visiting a health care professional.

      ii. To obtain necessary services or supplies for themselves and their family or household members, or to deliver those services or supplies to others, such as, by way of example only and without limitation, canned food, dry goods, fresh fruits and vegetables, pet supply, fresh meats, fish, and poultry, and any other household consumer products, or products necessary to maintain the habitability, sanitation, and operation of residences.

      iii. To engage in outdoor recreation activity, including, by way of example and without limitation, walking, hiking, bicycling, and running, in compliance with Social Distancing Requirements and with the following limitations:

         1. Outdoor recreation activity at parks, beaches, and other open spaces must comply with any restrictions on access and use established by the Health Officer, government, or other entity that manages such area to reduce crowding and risk of transmission of COVID-19. Such restrictions may include, but are not limited to, restricting the number of entrants, closing the area to vehicular access and parking, or closure to all public access;

         2. Except as otherwise provided in Appendix C-2, use of outdoor recreational areas and facilities with high-touch equipment or

that encourage gathering, including, but not limited to, playgrounds, gym equipment, climbing walls, picnic areas, dog parks, pools, spas, and barbecue areas, is prohibited outside of residences, and all such areas shall be closed to public access including by signage and, as appropriate, by physical barriers;

    3.   Except as otherwise provided in Appendix C-2, sports or activities that include the use of shared equipment or physical contact between participants may only be engaged in by members of the same household or living unit.

    4.   Use of shared outdoor facilities for recreational activities that may occur outside of residences consistent with the restrictions set forth in subsections 1, 2, and 3, above, including, but not limited to, golf courses, skate parks, and athletic fields, must, before they may begin, comply with social distancing and health/safety protocols posted at the site and any other restrictions, including prohibitions, on access and use established by the Health Officer, government, or other entity that manages such area to reduce crowding and risk of transmission of COVID-19; and

    iv.   To perform work for or access an Essential Business, Outdoor Business, or Additional Business; or to otherwise carry out activities specifically permitted in this Order, including Minimum Basic Operations, as defined in this Section.

    v.   To provide necessary care for a family member or pet in another household who has no other source of care.

    vi.   To attend a funeral with no more than 10 individuals present.

    vii.   To move residences. When moving into or out of the Bay Area region, individuals are strongly urged to quarantine for 14 days. To quarantine, individuals should follow the guidance of the United States Centers for Disease Control and Prevention.

    viii.   To engage in Additional Activities, as specified in Appendix C-2.

b.   For the purposes of this Order, individuals may leave their residence to work for, volunteer at, or obtain services at "Healthcare Operations," including, without limitation, hospitals, clinics, COVID-19 testing locations, dentists, pharmacies, blood banks and blood drives, pharmaceutical and biotechnology companies, other healthcare facilities, healthcare suppliers, home healthcare services providers, mental health providers, or any related and/or ancillary healthcare services. "Healthcare Operations" also includes veterinary care and all healthcare services provided to animals. This exemption for Healthcare Operations shall be construed broadly to avoid any interference with the delivery of healthcare, broadly defined. "Healthcare Operations" excludes fitness and exercise gyms and similar facilities.

c.   For the purposes of this Order, individuals may leave their residence to provide any services or perform any work necessary to the operation and maintenance of "Essential Infrastructure," including airports, utilities (including water, sewer, gas, and electrical), oil refining, roads and highways, public transportation, solid waste facilities (including collection, removal, disposal, recycling, and processing facilities), cemeteries, mortuaries, crematoriums, and telecommunications systems (including the provision of essential global, national, and local infrastructure for internet, computing services, business infrastructure, communications, and web-based services).

d.   For the purposes of this Order, all first responders, emergency management personnel, emergency dispatchers, court personnel, and law enforcement personnel, and others who need to perform essential services are categorically exempt from this Order to the extent they are performing those essential services. Further, nothing in this Order shall prohibit any individual from performing or accessing "Essential Governmental Functions," as determined by the governmental entity performing those functions in the County. Each governmental entity shall identify and designate appropriate personnel, volunteers, or contractors to continue providing and carrying out any Essential Governmental Functions, including the hiring or retention of new personnel or contractors to perform such functions. Each governmental entity and its contractors must employ all necessary emergency protective measures to prevent, mitigate, respond to, and recover from the COVID-19 pandemic, and all Essential Governmental Functions shall be performed in compliance with Social Distancing Requirements to the greatest extent feasible.

e.   For the purposes of this Order, a "business" includes any for-profit, non-profit, or educational entity, whether a corporate entity, organization, partnership or sole proprietorship, and regardless of the nature of the service, the function it performs, or its corporate or entity structure.

f.   For the purposes of this Order, "Essential Businesses" are:

    i.   Healthcare Operations and businesses that operate, maintain, or repair Essential Infrastructure;

    ii.   Grocery stores, certified farmers' markets, farm and produce stands, supermarkets, food banks, convenience stores, and other establishments engaged in the retail sale of unprepared food, canned food, dry goods, non-alcoholic beverages, fresh fruits and vegetables, pet supply, fresh meats, fish, and poultry, as well as hygienic products and household consumer products necessary for personal hygiene or the habitability, sanitation, or operation of residences. The businesses included in this subparagraph (ii) include establishments that sell multiple categories of products provided that they sell a significant amount of essential products identified in

this subparagraph, such as liquor stores that also sell a significant amount of food.

iii.   Food cultivation, including farming, livestock, and fishing;

iv.   Businesses that provide food, shelter, and social services, and other necessities of life for economically disadvantaged or otherwise needy individuals;

v.   Construction, but only as permitted under the State Shelter Order and only pursuant to the Construction Safety Protocols listed in Appendix B and incorporated into this Order by this reference.  Public works projects shall also be subject to Appendix B, except if other protocols are specified by the Health Officer;

vi.   Newspapers, television, radio, and other media services;

vii.   Gas stations and auto-supply, auto-repair (including, but not limited to, for cars, trucks, motorcycles and motorized scooters), and automotive dealerships, but only for the purpose of providing auto-supply and auto-repair services.  This subparagraph (vii) does not restrict the on-line purchase of automobiles if they are delivered to a residence or Essential Business;

viii.   Bicycle repair and supply shops;

ix.   Banks and related financial institutions;

x.   Service providers that enable real estate transactions (including rentals, leases, and home sales), including, but not limited to, real estate agents, escrow agents, notaries, and title companies, provided that appointments and other residential real estate viewings must only occur virtually or, if a virtual viewing is not feasible, by appointment with no more than two visitors at a time residing within the same household or living unit and one individual showing the unit (except that in person visits are not allowed when the occupant is present in the residence);

xi.   Hardware stores;

xii.   Plumbers, electricians, exterminators, and other service providers who provide services that are necessary to maintaining the habitability, sanitation, or operation of residences and Essential Businesses;

xiii.   Businesses providing mailing and shipping services, including post office boxes;

xiv.   Educational institutions—including public and private K-12 schools, colleges, and universities—for purposes of facilitating distance learning or performing essential functions, or as allowed under subparagraph xxvi, provided that social distancing of six feet per person is maintained to the greatest extent possible;

xv.   Laundromats, drycleaners, and laundry service providers;

xvi.   Restaurants and other facilities that prepare and serve food, but only for delivery or carry out.  Schools and other entities that typically provide free food services to students or members of the public may continue to do so under this Order on the condition that the food is provided to students or members of the public on a pick-up and take-away basis only.  Schools and other entities that provide food services under this exemption shall not permit the food to be eaten at the site where it is provided, or at any other gathering site;

xvii.   Funeral home providers, mortuaries, cemeteries, and crematoriums, to the extent necessary for the transport, preparation, or processing of bodies or remains;

xviii.   Businesses that supply other Essential Businesses and Outdoor Businesses with the support or supplies necessary to operate, but only to the extent that they support or supply these businesses.  This exemption shall not be used as a basis for engaging in sales to the general public from retail storefronts;

xix.   Businesses that have the primary function of shipping or delivering groceries, food, or other goods directly to residences or businesses.  This exemption shall not be used to allow for manufacturing or assembly of non-essential products or for other functions besides those necessary to the delivery operation;

xx.   Airlines, taxis, rental car companies, rideshare services (including shared bicycles and scooters), and other private transportation providers providing transportation services necessary for Essential Activities and other purposes expressly authorized in this Order;

xxi.   Home-based care for seniors, adults, children, and pets;

xxii.   Residential facilities and shelters for seniors, adults, and children;

xxiii.   Professional services, such as legal, notary, or accounting services, when necessary to assist in compliance with non-elective, legally required activities or in relation to death or incapacity;

xxiv.   Services to assist individuals in finding employment with Essential Businesses;

xxv.   Moving services that facilitate residential or commercial moves that are allowed under this Order; and

xxvi.   Childcare establishments, summer camps, and other educational or recreational institutions or programs providing care or supervision for children of all ages that enable owners, employees, volunteers, and contractors for Essential Businesses, Essential Governmental

Functions, Outdoor Businesses, Additional Businesses, or Minimum Basic Operations to work as allowed under this Order.  To the extent possible, these operations must comply with the following conditions:

1. They must be carried out in stable groups of 12 or fewer children ("stable" means that the same 12 or fewer children are in the same group each day).

2. Children shall not change from one group to another.

3. If more than one group of children is at one facility, each group shall be in a separate room.  Groups shall not mix with each other.

4. Providers or educators shall remain solely with one group of children.

The Health Officer will carefully monitor the changing public health situation as well as any changes to the State Shelter Order.  In the event that the State relaxes restrictions on childcare and related institutions and programs, the Health Officer will consider whether to similarly relax the restrictions imposed by this Order.

g. For the purposes of this Order, "Minimum Basic Operations" means the following activities for businesses, provided that owners, personnel, and contractors comply with Social Distancing Requirements as defined this Section, to the extent possible, while carrying out such operations:

i. The minimum necessary activities to maintain and protect the value of the business's inventory and facilities; ensure security, safety, and sanitation; process payroll and employee benefits; provide for the delivery of existing inventory directly to residences or businesses; and related functions.  For clarity, this section does not permit businesses to provide curbside pickup to customers.

ii. The minimum necessary activities to facilitate owners, personnel, and contractors of the business being able to continue to work remotely from their residences, and to ensure that the business can deliver its service remotely.

h. For the purposes of this Order, all businesses that are operating at facilities in the County visited or used by the public or personnel must, as a condition of such operation, prepare and post a "Site-Specific Protection Plan" for each of these facilities; provided, however, that construction activities shall instead comply with the Construction Project Safety Protocols set forth in Appendix B and not the Site-Specific Protection Plan.  The Site-Specific Protection Plan must be substantially in the form attached to this Order as Appendix A, and it must be updated from prior versions to address new requirements listed in this Order or in related guidance or directives from the Health Officer. The Site-Specific Protection Plan must be posted at or near the entrance of the relevant facility, and shall be easily viewable by the public and personnel.  All businesses subject to this paragraph shall implement the Site-Specific Protection Plan and provide evidence of its implementation to any authority enforcing this Order upon demand.  The Site-Specific Protection Plan must explain how the business is achieving the following, as applicable:

i. Limiting the number of people who can enter into the facility at any one time to ensure that people in the facility can easily maintain a minimum six-foot distance from one another at all times, except as required to complete Essential Business activity;

ii. Requiring face coverings to be worn by all persons entering the facility, other than those exempted from face covering requirements (e.g. young children);

iii. Where lines may form at a facility, marking six-foot increments at a minimum, establishing where individuals should stand to maintain adequate social distancing;

iv. Providing hand sanitizer, soap and water, or effective disinfectant at or near the entrance of the facility and in other appropriate areas for use by the public and personnel, and in locations where there is high-frequency employee interaction with members of the public (e.g. cashiers);

v. Providing for contactless payment systems or, if not feasible to do so, the providing for disinfecting all payment portals, pens, and styluses after each use;

vi. Regularly disinfecting other high-touch surfaces;

vii. Posting a sign at the entrance of the facility informing all personnel and customers that they should: avoid entering the facility if they have any COVID-19 symptoms; maintain a minimum six-foot distance from one another; sneeze and cough into one's elbow; not shake hands or engage in any unnecessary physical contact; and

viii. Any additional social distancing measures being implemented (see the Centers for Disease Control and Prevention's guidance at: https://www.cdc.gov/coronavirus/2019-ncov/community/guidance-business-response.html).

i. For the purposes of this Order, "Essential Travel" means travel for any of the following purposes:

i. Travel related to the provision of or access to Essential Activities, Essential Governmental Functions, Essential Businesses, Minimum

Basic Operations, Outdoor Activities, Outdoor Businesses, Additional Activities, and Additional Businesses.

ii.  Travel to care for any elderly, minors, dependents, or persons with disabilities.

iii.  Travel to or from educational institutions for purposes of receiving materials for distance learning, for receiving meals, and any other related services.

iv.  Travel to return to a place of residence from outside the County.

v.  Travel required by law enforcement or court order.

vi.  Travel required for non-residents to return to their place of residence outside the County.  Individuals are strongly encouraged to verify that their transportation out of the County remains available and functional prior to commencing such travel.

vii.  Travel to manage after-death arrangements and burial.

viii.  Travel to arrange for shelter or avoid homelessness.

ix.  Travel to avoid domestic violence or child abuse.

x.  Travel for parental custody arrangements.

xi.  Travel to a place to temporarily reside in a residence or other facility to avoid potentially exposing others to COVID-19, such as a hotel or other facility provided by a governmental authority for such purposes.

j.  For purposes of this Order, "residences" include hotels, motels, shared rental units, and similar facilities.  Residences also include living structures and outdoor spaces associated with those living structures, such as patios, porches, backyards, and front yards that are only accessible to a single family or household unit.

k.  For purposes of this Order, "Social Distancing Requirements" means:

i.  Maintaining at least six-foot social distancing from individuals who are not part of the same household or living unit;

ii.  Frequently washing hands with soap and water for at least 20 seconds, or using hand sanitizer that is recognized by the Centers for Disease Control and Prevention as effective in combatting COVID-19;

iii.  Covering coughs and sneezes with a tissue or fabric or, if not possible, into the sleeve or elbow (but not into hands);

iv.  Wearing a face covering when out in public, consistent with the orders or guidance of the Health Officer; and

v.  Avoiding all social interaction outside the household when sick with a fever, cough, or other COVID-19 symptoms.

All individuals must strictly comply with Social Distancing Requirements, except to the limited extent necessary to provide care (including childcare, adult or senior care, care to individuals with special needs, and patient care); as necessary to carry out the work of Essential Businesses, Essential Governmental Functions, or provide for Minimum Basic Operations; or as otherwise expressly provided in this Order.  Outdoor Activities, Outdoor Businesses, Additional Activities, and Additional Businesses must strictly adhere to these Social Distancing Requirements.

ox.  For purposes of this Order, "Outdoor Businesses" means:

i.  The following businesses that normally operated primarily outdoors prior to March 16, 2020 and where there is the ability to fully maintain social distancing of at least six feet between all persons:

1.  Businesses primarily operated outdoors, such as wholesale and retail plant nurseries, agricultural operations, and garden centers.

2.  Service providers that primarily provide outdoor services, such as landscaping and gardening services, and environmental site remediation services.

For clarity, "Outdoor Businesses" do not include outdoor restaurants, cafes, or bars. Except as otherwise provided in Appendix C, they also do not include businesses that promote large, coordinated, and prolonged gatherings, such as outdoor concert venues and amusement parks.

oll.  For purposes of this Order, "Outdoor Activities" means:

i.  To obtain goods, services, or supplies from, or perform work for, an Outdoor Business.

ii.  To engage in outdoor recreation as permitted in Section 15.a.

n.  For purposes of this Order, "Additional Business" means any business, entity, or other organization identified as an Additional Business in Appendix C-1, which will be updated as warranted based on the Health Officer's ongoing evaluation of the COVID-19 Indicators and other data.  In addition to the other requirements in this Order, operation of those Additional Businesses is subject to any conditions and health

and safety requirements set forth in Appendix C-1 and in any industry-specific guidance issued by the Health Officer.

- For purposes of this Order, "Additional Activities" means:
  i.  To obtain goods, services, or supplies from, or perform work for, Additional Businesses identified in Appendix C-1, subject to requirements in this Order, and any conditions and health and safety requirements set forth in this Order or in any industry-specific guidance issued by the Health Officer.

  ii. To engage in outdoor recreation activities or other activities set forth in Appendix C-2, subject to any conditions and health and safety requirements set forth there.

16.  Government agencies and other entities operating shelters and other facilities that house or provide meals or other necessities of life for individuals experiencing homelessness must take appropriate steps to help ensure compliance with Social Distancing Requirements, including adequate provision of hand sanitizer.  Also, individuals experiencing homelessness who are unsheltered and living in encampments should, to the maximum extent feasible, abide by 12 foot by 12 foot distancing for the placement of tents, and government agencies should provide restroom and hand washing facilities for individuals in such encampments as set forth in Centers for Disease Control and Prevention Interim Guidance Responding to Coronavirus 2019 (COVID-19) Among People Experiencing Unsheltered Homelessness (https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/unsheltered-homelessness.html).

17.  Pursuant to Government Code sections 26602 and 41601 and Health and Safety Code section 101029, the Health Officer requests that the Sheriff and all chiefs of police in the County ensure compliance with and enforce this Order.  The violation of any provision of this Order constitutes an imminent threat and menace to public health, constitutes a public nuisance, and is punishable by fine, imprisonment, or both.

18.  This Order shall become effective at 11:59 p.m. on May 17, 2020 and will continue to be in effect until it is rescinded, superseded, or amended in writing by the Health Officer.

19.  Copies of this Order shall promptly be: (1) made available at the Bulletin Board adjacent to the entrance to the Chambers of the Board of Supervisors, Room 330, Administration Building, and in the display case in the center arch of the Hall of Justice, Marin County Civic Center, San Rafael, California; (2) posted on the County of Marin website (www.marincounty.org) as well as the County of Marin Department of Health and Human Services website (www.marinhhs.org); and (3) provided to any member of the public requesting a copy of this Order.

20.  If any provision of this Order or its application to any person or circumstance is held to be invalid, the remainder of the Order, including the application of such part or provision to other persons or circumstances, shall not be affected and shall continue in full force and effect.  To this end, the provisions of this Order are severable.

**IT IS SO ORDERED:**

_____

Matt Willis, MD, MPH                                   Dated: May 15, 2020

Health Officer of the County of Marin

Attachments:  Appendix A – Site-Specific Protection Plan (Fillable PDF)

Appendix B-1 – Small Construction Project Safety Protocol

Appendix B-2 – Large Construction Project Safety Protocol

Appendix C-1 – Additional Businesses

Appendix C-2 – Additional Activities



Accessibility                YouTube

Disclaimers                  Facebook

Terms of Use                 Twitter

Notice of                    Nextdoor
Nondiscrimination

Enter your email

Subscribe

Be the first to find out about updates and the latest
news in Marin County.

© 2020 County of Marin. All rights reserved.

If you are a person with a disability and require an accommodation to participate in a County program, service, or activity, requests may be made by calling (415) 473-4381 (Voice), Dial 711 for CA Relay, or by email at least five business days in advance of the event. We will do our best to fulfill requests received with less than five business days' notice. Copies of documents are available in alternative formats upon request.

EXHIBIT 3

**INDUSTRY-SPECIFIC GUIDANCE OF THE HEALTH OFFICER OF THE COUNTY OF MARIN REGARDING REQUIRED BEST PRACTICES FOR CHARTER BOAT OPERATORS**

This industry-specific guidance is being issued pursuant to the May 15, 2020 Order of the Health Officer of the County of Marin Directing All Individuals in the County to Continue Sheltering in their Place of Residence (the "Shelter in Place Order") and unless otherwise defined below, initially capitalized terms used in this guidance have the same meaning given them in that order. This guidance goes into effect on June 29, 2020.

This guidance remains in effect until suspended, superseded, or amended by the Health Officer, is supported by the justifications set forth in the Shelter in Place Order, and automatically incorporates any revisions to that order or other future orders issued by the Health Officer that supersede that order or reference this guidance. All businesses addressed herein and allowed to operate under the Shelter in Place Order are required to follow this industry-specific guidance and implement all Best Practices detailed below.

This guidance and its enumerated Best Practices may be revised by the Health Officer, through revision of this guidance or another future order, as conditions relating to COVID-19 require, at the discretion of the Health Officer. Each business identified herein must stay updated regarding any changes to the Shelter in Place Order, this guidance, and the Best Practices specifically applicable to it by checking the Marin Recovers website regularly.

**UNDER THE AUTHORITY OF CALIFORNIA HEALTH AND SAFETY CODE SECTIONS 101040, 101085, AND 120175, THE HEALTH OFFICER DIRECTS AS FOLLOWS:**

1. This guidance applies to all owners, operators, managers, or supervisors of any business that Shelter in Place Order permits to be open to the public in the County of Marin (the "County") and that consist of any of the following:

   1.1. a business or individual owning and offering to rent, or charter, a private boat for use by individuals wanting to engage in boating activities, including without limitation fishing, memorial services at sea, and sightseeing (a "Charter Boat Operator"). Ferry Boats and other vessels used exclusively for public transportation purposes do not fall within this definition and do not need to follow this Guidance and required Best Practices.

2. Each Charter Boat Operator must create, adopt, and implement a written COVID-19 Site-Specific Protection Plan (a Site-Specific Protection Plan template is available online at marinrecovers.com) that incorporates and addresses all applicable Best Practices included in this guidance.

3. Depending on the nature of the business covered by this guidance, there may be certain people associated with the business that are subject to this guidance. Collectively those people are referred to by this guidance and the Best Practices as "Personnel", and those people include all of the following who provide goods or services associated with the

business in the County: employees; contractors and sub-contractors (such as those who sell goods or perform services onsite or who deliver goods for the business); independent contractors (such as "gig workers" who perform work via the business' app or other online interface); vendors who are permitted to sell goods onsite (such as farmers or others who sell at stalls in farmers' markets); volunteers; and other individuals who regularly provide services onsite at the request of the business. This guidance requires the business to ensure that Personnel who perform work associated with the business are addressed by the COVID-19 Site-Specific Protection Plan and comply with those requirements.

4. Implementation of this guidance augments—but does not limit—the obligations of each Charter Boat Operator under all other existing Health Officer Orders, including, but not limited to, all requirements of the Facial Coverings Order and the obligation to prepare, post, and implement a Social Distancing Protocol as required by the Shelter in Place Order.

5. Best Practices for Charter Boat Operators:

   5.1. The total number of people aboard the boat must be limited to no more than 12 individuals, excluding Personnel, such that 6 feet spacing can be maintained. Up to 4 Personnel may be present.

   5.2. All individuals must wear face coverings at all times while waiting to board, at all times while on board, and at all times when disembarking from the vessel to the extent required by the Health Officer Order on Face Coverings.

   5.3. Operators must follow all applicable Industry-Specific Guidance of the Health Officer, including without limitation those for Outdoor Recreation Activity Businesses, Recreational Equipment Rental Businesses, and Childcare Establishments, Summer Camps and Sports Camps.

   5.4. For fishing, rod holders must be spaced at least 6 feet apart from each other.

   5.5. Bathrooms (if any) must be sanitized after each use following EPA guidelines.

   5.6. The boat and equipment must be washed and sanitized after each trip.

   5.7. Prohibit shared handling of fishing equipment or fish.

   5.8. Make sanitizer available throughout the boat and at each rod station.

   5.9. Before boarding, passengers shall wait on the dock at least six feet apart.

   5.10. Passengers shall not board the vessel until Personnel allow boarding.

   5.11. Encourage contactless means of payment; payment shall take place outdoors if payment occurs on site.

COM001453

5.12. Passengers shall not shake hands, share food or drinks, or engage in any unnecessary physical contact. The captain and crew shall instruct passengers in these requirements.

5.13. Charter Boat Operators may not sell or provide passengers with any food or drink; passengers must bring all of their own food or drink on board with them.

5.14. Passengers are permitted to bring a personal cooler for use by themselves or by members of their same household only; no sharing of coolers is otherwise allowed.

5.15. All employees and passengers are required to wear face coverings.

5.16. Rails, counters, and seating areas shall be sanitized as frequently as needed to maintain sanitary conditions and no less than after each trip.

5.17. Passengers shall disembark one at a time as instructed by Personnel.

6. This guidance is issued in furtherance of the purposes of the Shelter in Place Order. Where a conflict exists between this guidance and any state, local, or federal public health order related to the COVID-19 pandemic, including, without limitation, the Site-Specific Protection Plan, the most restrictive provision controls. Failure to carry out this guidance is a violation of the Shelter in Place Order, constitutes an imminent threat and menace to public health, constitutes a public nuisance, and is a misdemeanor punishable by fine, imprisonment, or both.

_____          Date: June 25, 2020
Matt Willis, MD, MPH
Health Officer of the County of Marin

EXHIBIT 4

**INDUSTRY-SPECIFIC GUIDANCE OF THE HEALTH OFFICER OF
THE COUNTY OF MARIN REGARDING REQUIRED BEST
PRACTICES FOR OUTDOOR RECREATION ACTIVITY
BUSINESSES**

This industry-specific guidance is being issued pursuant to the May 15, 2020 Order of the Health Officer of the County of Marin Directing All Individuals in the County to Continue Sheltering in their Place of Residence (the "Shelter in Place Order") and unless otherwise defined below, initially capitalized terms used in this guidance have the same meaning given them in that order. This guidance goes into effect on June 29, 2020.

This guidance remains in effect until suspended, superseded, or amended by the Health Officer, is supported by the justifications set forth in the Shelter in Place Order, and automatically incorporates any revisions to that order or other future orders issued by the Health Officer that supersede that order or reference this guidance. All businesses addressed herein and allowed to operate under the Shelter in Place Order are required to follow this industry-specific guidance and implement all Best Practices detailed below.

This guidance and its enumerated Best Practices may be revised by the Health Officer, through revision of this guidance or another future order, as conditions relating to COVID-19 require, in the discretion of the Health Officer. Each business identified herein must stay updated regarding any changes to the Shelter in Place Order, this guidance, and the Best Practices specifically applicable to it by checking the Marin Recovers website regularly.

**UNDER THE AUTHORITY OF CALIFORNIA HEALTH AND SAFETY CODE SECTIONS 101040, 101085, AND 120175, THE HEALTH OFFICER DIRECTS AS FOLLOWS:**

1. This guidance applies to all owners, operators, managers, or supervisors of any business that Shelter in Place Order permits to be open to the public in the County of Marin (the "County") and that consist of any of the following:

   1.1. A business able to provide its customers with recreational activities, opportunities and/or instruction occurring exclusively outside (and "Outdoor Recreation Activity Business"). Recreational activities, opportunities and/or instruction are activities such as recreation, arts and crafts, musical, dramatic and cultural.

2. Each Outdoor Recreation Activity Business must create, adopt, and implement a written COVID-19 Site-Specific Protection Plan (a Site-Specific Protection Plan template is available online at marinrecovers.com) that incorporates and addresses all applicable Best Practices included in this guidance.

3. Depending on the nature of the business covered by this guidance, there may be certain people associated with the business that are subject to this guidance. Collectively those people are referred to by this guidance and the Best Practices as "Personnel", and those people include all of the following who provide goods or services associated with the

business in the County: employees; contractors and sub-contractors (such as those who sell goods or perform services onsite or who deliver goods for the business); independent contractors (such as "gig workers" who perform work via the business' app or other online interface); vendors who are permitted to sell goods onsite (such as farmers or others who sell at stalls in farmers' markets); volunteers; and other individuals who regularly provide services onsite at the request of the business. This guidance requires the business to ensure that Personnel who perform work associated with the business are addressed by the COVID-19 Site-Specific Protection Plan and comply with those requirements.

4. Implementation of this guidance augments—but does not limit—the obligations of each recreational equipment rental business under all other existing Health Officer Orders, including, but not limited to, all requirements of the Facial Coverings Order and the obligation to prepare, post, and implement a COVID-19 Site-Specific Protection Plan as required by the Shelter in Place Order.

5. Best Practices for Outdoor Recreation Activity Businesses:

   5.1. Ensure all Personnel and clients comply with the Social Distancing Requirements detailed in the Shelter in Place Order.

   5.2. Conduct all business and transactions involving members of the public in outdoor spaces in accordance with the requirements for Outdoor Businesses detailed in the Shelter in Place Order.

   5.3. With permission from the local jurisdictions, Outdoor Recreation Activity Business may hold classes outdoors in clearly designated and marked locations. Local jurisdictions shall have flexibility to create outdoor space use solutions that work for their communities.

   5.4. Any indoor facilities related to Outdoor Recreation Activity Business must be closed to the public.

   5.5. Businesses offering classes or guided tours must track names and contact information for all activities and roll must be taken at each class or activity to enable potential tracking of transmission.

   5.6. Groups must be limited to a maximum of 12 individuals per group, excluding any instructors or other Personnel.  Up to 4 Personnel may be present.  Youth under 18 years of age must be accompanied by an adult.

   5.7. Participants will be encouraged to provide their own equipment to the greatest extent possible.  Any rental or business-provided equipment will be sanitized after each use and follow Industry-Specific Guidance of the Health Officer for Recreational Equipment Rental Businesses.

5.8. Equipment issued to a client will only be used by that client. Equipment will not be shared during a rental or activity.

5.9. Clients will provide their own transportation to and from the activity site.

5.10. No congregating will be permitted before or after class.

5.11. Clients will provide or purchase their own water bottles, sunscreen and personal food.

5.12. Whenever possible, businesses should use markers to designate spots for each participant, and throughout class remind participants to stay in their marked area.

5.13. Personnel shall screen all participants for symptoms before beginning any outdoor activity. The individual conducting the screening will avoid close contact with participants. Both screener and participant will wear face coverings during screening and throughout the remainder of activity as required by the Health Officer Order for Face Coverings.

6. This guidance is issued in furtherance of the purposes of the Shelter in Place Order. Where a conflict exists between this guidance and any state, local, or federal public health order related to the COVID-19 pandemic, including, without limitation, the Site-Specific Protection Plan, the most restrictive provision controls. Failure to carry out this guidance is a violation of the Shelter in Place Order, constitutes an imminent threat and menace to public health, constitutes a public nuisance, and is a misdemeanor punishable by fine, imprisonment, or both.

_____       Date: June 25, 2020
Matt Willis, MD, MPH
Health Officer of the County of Marin

EXHIBIT 5

## Appendix C-1: Additional Businesses Permitted to Operate

## [June 29, 2020]

## General Requirements

The "Additional Businesses" listed below may begin operating, subject to the requirements set forth in the Order and to any additional requirements set forth below or in separate industry-specific guidance by the Health Officer. These businesses were selected to implement an initial measured expansion of commercial activity based on health-related considerations including the risks of COVID-19 transmission associated with types and modes of business operations, the ability to substantially mitigate transmission risks associated with the operations, and related factors, such as the following:

- **Increase in mobility and volume of activity**—the overall impact the reopening will have on the number of people leaving their homes and traveling to work at or access the business;
- **Contact intensity**—the type (close or distant) and duration (brief or prolonged) of the contact involved in the business;
- **Number of contacts**—the approximate number of people that will be in the setting at the same time;
- **Modification potential**—the degree to which mitigation measures can decrease the risk of transmission.

To mitigate the risk of transmission to the greatest extent possible, before resuming operations, each Additional Businesses must:

a. Prepare, post, implement, and distribute to their Personnel a Site-Specific Protective Plan as specified in Section 15.h of the Order for each of their facilities in the County frequented by personnel or members of the public; and
b. Prepare, post, implement, and distribute to their Personnel a written health and safety plan that addresses all applicable best practices set forth in relevant Health Officer directives.

As used in this Appendix C-1, "Personnel" means the following people who provide goods or services associated with the Additional Business in the County: employees; contractors and sub-contractors (such as those who sell goods or perform services onsite or who deliver goods for the business); independent contractors (such as "gig workers" who perform work via the Additional Business's app or other online interface); vendors who are permitted to sell goods onsite; volunteers; and other individuals who regularly provide services onsite at the request of the Additional Business.

Also, each Additional Business must comply with Social Distancing Requirements as well as all relevant state guidance and local directives. Where a conflict exists between the state guidance and local public heath directives related to the COVID-19 pandemic, the most restrictive provision controls.

COM000111

**List of Additional Businesses**

For purposes of the Order, Additional Businesses include the following based on the summarized health risk related rationale:

**(1) Retail Stores and Retail Supply Chain Businesses**

    a. <u>Basis for Addition</u>. Curbside pickup and outdoor retail have low contact intensity and a moderate number of contacts where interaction between the businesses' Personnel (as defined below) and customers occur in the outdoors. Businesses that involve outdoor interactions carry a lower risk of transmission than most indoor businesses. Also, curbside pickup and outdoor retail at these stores should result in only a relatively modest increase in the number of people reentering the workforce and the overall volume of commercial activity and mitigation measures can meaningfully decrease the resulting public health risk. Indoor retail has been allowed by the State of California, and operating this service should result in a limited increase in the number of people reentering the workforce and mitigation measures can meaningfully decrease the resulting public health risk.

    b. <u>Description and Conditions to Operate</u>. The following businesses are permitted to operate, beginning at 7:00 a.m. on June 12, 2020, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Non-Essential Retailers, as well as the following stated limitations and conditions:

        i. Retail stores may operate subject to the following limitations:

            1. Retail stores may operate for curbside/outside pickup and may display merchandise or create an outdoor retail location with permission from the local jurisdiction;

            2. Retail stores must ensure that any curbside or outside retail activity does not block pedestrian access or cause pedestrian or vehicle congestion; and

            3. Retail stores, including stores in enclosed indoor shopping centers, may allow customers to enter their stores to engage in indoor shopping by appointment and/or on a first come first served basis so long as 50% or less of the maximum allowable occupancy of the store is utilized at any given time.

        ii. Businesses that manufacture the goods sold at retail stores covered in category (i) above and have no more than 50 Personnel on site in the facility at any time.

        iii. Businesses that provide warehousing and logistical support to the retail stores covered in category (i) above and have no more than 50 Personnel on site in the facility at any time.

**(2) Pet Grooming**

    a. <u>Basis for Addition</u>. The State of California has determined that it would be appropriate to allow these businesses to resume operation. In addition, such services have low contact intensity. Opening these services should result in a limited increase in the number of

COM000112

people reentering the workforce and the overall volume of commercial activity and mitigation measures can meaningfully decrease the resulting public health risk.

b. <u>Description and Conditions to Operate</u>. Pet grooming businesses are permitted to operate, beginning at 10:00 a.m. on May 22, 2020, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Pet Grooming Businesses.

**(3) Childcare Establishments, Summer Camps and Sports Camps**

a. <u>Change in Status</u>. Childcare establishments, summer camps, sports camps and other educational or recreational institutions or programs providing care or supervision for children of all ages are able to operate pursuant to this Appendix C-1. Such businesses are no longer limited to those that enable owners, employees, volunteers, and contractors for Essential Businesses, Essential Governmental Functions, Outdoor Businesses, Additional Businesses, or Minimum Basic Operations to work as allowed under the Shelter in Place Order, but rather such businesses many now serve children of any age regardless of the employment status of their parents or guardians.

b. <u>Basis for Addition</u>. As we mobilize the workforce, we realize adults that are working will require childcare. This addition will allow that to occur safely and in a manner that is consistent with other elements of the shelter in place order. During the summer months, childcare occurs in camp settings to allow children opportunities for recreation and play.

c. <u>Description and Conditions to Operate</u>. These businesses are permitted to operate, beginning at 7:00 a.m. on June 1, 2020, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Childcare Establishments, Summer Camps, and Sports Camps.

**(4) Office Space**

a. <u>Change in Status.</u> Office spaces are able to operate to the extent telecommute is not possible.

b. <u>Basis for Addition</u>. The State of California has determined that it would be appropriate to allow these businesses to resume operation where telework is not possible. Opening these services should result in a limited increase in the number of people reentering the workforce and the mitigation measures can meaningfully decrease the resulting public health risk.

c. <u>Description and Conditions to Operate</u>. Office spaces are permitted to operate, beginning at 7:00 a.m. on June 1, 2020, subject to the state limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Office Spaces.

**(5) Restaurants**

a. <u>Change in Status</u>. Restaurants, brewpubs, breweries, bars, pubs, craft distilleries, and wineries that provide sit-down food services themselves, or can contract with another vendor to do so, and where alcohol is only served with the order of a meal, are permitted

to operate for take-out/curbside pickup, outdoor dining, and indoor dining starting June 29, 2020.

b. <u>Basis for Addition</u>.  The State of California has determined that restaurants may operate and provide take-out, outdoor dining, and indoor dining services.

c. <u>Description and Conditions to Operate</u>.  These businesses are permitted to operate, beginning at 7:00 a.m. on June 29, 2020, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Restaurants.

## (6) **Library for Curbside Pickup**

a. <u>Basis for Addition</u>.  Curbside library services have low contact intensity and a moderate number of contacts where interaction between Personnel and customers occur in the outdoors.  Businesses that involve outdoor interactions carry a lower risk of transmission than most indoor businesses.  Also, curbside library services should result in only a relatively modest increase in the number of people reentering the workforce and mitigation measures can meaningfully decrease the resulting public health risk.

b. <u>Description and Conditions to Operate</u>.  These businesses are permitted to operate immediately upon issuance of this Appendix C-1, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Curbside Library Services.

## (7) **Outdoor Recreation Activity Businesses**

a. <u>Change in Status</u>.  A business able to provide its customers with recreational activities, opportunities and/or instruction occurring exclusively outside, as allowed by the local jurisdiction, are able to operate pursuant to this Appendix C-1.  Recreational activities, opportunities and/or instruction are activities such as recreation, arts and crafts, musical, dramatic and cultural.

b. <u>Basis for Addition</u>.  Businesses that involve outdoor interactions carry a lower risk of transmission than most indoor businesses.  Opening these services should result in a limited increase in the number of people reentering the workforce and mitigation measures can meaningfully decrease the resulting public health risk.

c. <u>Description and Conditions to Operate</u>.  These businesses are permitted to operate, beginning at 7:00 a.m. on June 5, 2020, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Outdoor Recreation Activity Businesses.

## (8) **Faith-Based and Cultural Ceremony Organizations**

a. <u>Change in Status</u>. Faith-based Organizations and Cultural Ceremony Organizations that are able to provide services, weddings – including similar commitment ceremonies – or funeral or wake services outdoors as allowed by the local jurisdictions are able to operate pursuant to this Appendix C-1.

b. <u>Basis for Addition</u>.  Businesses that involve outdoor interactions carry a lower risk of transmission than most indoor businesses.  Opening these services should result in a limited increase in the number of people reentering the workforce and mitigation measures can meaningfully decrease the resulting public health risk.

c. <u>Description and Conditions to Operate</u>.  These businesses are permitted to operate, beginning at 7:00 a.m. on June 5, 2020, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices For Organizations Or Individual Organizers Providing Outdoor Faith-Based Or Cultural Ceremonies.

**(9)** **Cleaning and Janitorial Services**

a. <u>Change in Status.</u> All businesses or individuals that provide cleaning or janitorial services for residential and/or commercial spaces are now able to operate pursuant to this Appendix C-1.

b. <u>Basis for Addition.</u> The State of California has determined that it would be appropriate to allow these businesses to resume operation. Opening these services should result in a limited increase in the number of people reentering the workforce and mitigation measures can meaningfully decrease the resulting public health risk.

c. <u>Description of Conditions to Operate</u>. Cleaning and Janitorial Services are permitted to operate, beginning at 7:00 a.m. on June 12, 2020, subject to the stated limitations and conditions:

   i. Cleaning and Janitorial Services shall follow all applicable state and federal guidelines, including the COVID-19 Industry Guidance: Limited Services and the safer cleaning methods set forth by the California Department of Public Health and all applicable recommendations for sanitizing, ventilating, cleaning and disinfecting spaces set forth by the Centers for Disease Control and Prevention;

   ii. Cleaning and Janitorial Services shall complete a COVID-19 Site-Specific Protection Plan ("SPP") and shall have a copy of the same with them whenever performing services. Cleaning and Janitorial Services shall show their SPP to any client upon request;

   iii. For residential properties, residents will not be present in the home during cleaning; and

   iv. For commercial properties, no tenant or member of the public will be present in the immediate office or space during cleaning.

**(10)** **Gyms and Fitness Centers**

a. <u>Basis for Addition.</u> The State of California has determined that gyms and fitness centers may resume in-person activities and operations under certain limitations.

b. <u>Description of Conditions to Operate</u>. Gyms and fitness centers are permitted to operate, beginning at 7:00 a.m. on June 29, 2020, subject to the applicable guidance issued by the State of California (https://covid19.ca.gov/pdf/guidance-fitness.pdf) and subject to the following conditions:

   i. All in-person exercise classes and must be limited to 12 individuals, excluding Personnel.

   ii. Youth under 18 years of age must be accompanied by an adult.

**(11)** **Hair Salons and Barbershops**

a. <u>Basis for Addition.</u> The State of California has determined hair salons and barbershops may resume operations under certain limitations.

b. <u>Description of Conditions to Operate</u>. These businesses are permitted to operate, beginning at 7:00 a.m. on June 29, 2020, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Hair Salons/Barbershops.

**(12)** **Personal Care Services**

a. <u>Basis for Addition.</u> The State of California has determined that personal care services may resume operations under certain limitations.

b. <u>Description of Conditions to Operate</u>. Personal care services are permitted to operate, beginning at 7:00 a.m. on June 29, 2020, subject to the applicable guidance issued by the State of California (https://covid19.ca.gov/pdf/expanded-personal-services.pdf).

**(13)** **Hotels and Short-Term Lodging**

a. <u>Change in Status.</u> Hotels and short-term lodging, beginning on June 29, 2020, are permitted to operate for purposes of tourism and individual travel. The enactment of this Appendix C-1 hereby rescinds the May 29, 2020 Order of the Health Officer of the County of Marin Continuing Restrictions on the Use of Short-Term Lodging Facilities.

b. <u>Basis for Addition.</u> The State of California has determined that hotels and short-term lodging facilities may operate for purposes of tourism and individual travel.

c. <u>Description of Conditions to Operate</u>. These businesses are permitted to operate, beginning at 7:00 a.m. on June 29, 2020, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Hotels, Lodging, and Short Term Rentals.

**(14)** **Music, Film, and TV Production**

a. <u>Basis for Addition.</u> The State of California has determined that music, film, and TV production may resume operations.

b. <u>Description of Conditions to Operate</u>. These businesses are permitted to operate, beginning at 7:00 a.m. on June 29, 2020, subject to the completion of a site-specific protection plan and the safety protocols agreed upon by labor and management. Back office staff and management should adhere to the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Office Spaces.

**(15)** **Campgrounds and Recreational Vehicle Parks**

a. <u>Basis for Addition.</u> The State of California has determined that campgrounds and recreational vehicle (RV) parks may operate. Camping and recreational vehicle (RV) parks are outdoor activities that can occur with members of one's own household without generating substantial risk of contact with other households. Risks associated with this activity can be mitigated through measures that provide for adequate social distancing.

b. <u>Description of Conditions to Operate</u>. Campgrounds and RV parks are permitted to operate, beginning at 7:00 a.m. on June 29, 2020, subject to the applicable guidance issued by the State of California (https://covid19.ca.gov/pdf/guidance-campgrounds.pdf).

In addition to following the applicable state guidance, these businesses must adhere to the following limitations:

    i. Only designated camping/RV spots may be used.

    ii. Each camping/RV spot may be occupied by only one household or living unit at a time.

    iii. If camping/RV spots are immediately adjacent to one another, there must be at least one closed camping spot between each open spot to maintain adequate distance between households or living units.

**(16)**    **Public Transit**

    a. <u>Basis for Addition.</u> The State of California issued guidance for public transit agencies on May 12, 2020.

    b. <u>Description of Conditions to Operate</u>. Notwithstanding Section 8 of the Order, public transit shall comply with the State of California COVID-19 Industry Guidance (https://covid19.ca.gov/pdf/guidance-transit-rail.pdf).

Updated June 25, 2020 by:

Matt Willis, MD, MPH
Health Officer of the County of Marin

EXHIBIT 6

## Appendix C-1: Additional Businesses Permitted to Operate

### [REVISED – July 7, 2020]

Please note that this Appendix C-1 supersedes and rescinds the Appendix C-1 signed June 26, 2020 that took effect June 29, 2020. On July 3, 2020, the State of California placed the County of Marin on its COVID-19 watchlist due to an outbreak at San Quentin Prison, increased community transmission among essential workers, and outbreaks in congregate settings and Latinx neighborhoods. The County has remained on the State watchlist for three consecutive days, and, pursuant to State directives, the County must now close certain indoor activities that were previously permitted. Accordingly, this Appendix C-1 rescinds the provisions related to Indoor Dining at Restaurants.

## General Requirements

The "Additional Businesses" listed below may begin operating, subject to the requirements set forth in the Order and to any additional requirements set forth below or in separate industry-specific guidance by the Health Officer. These businesses were selected to implement an initial measured expansion of commercial activity based on health-related considerations including the risks of COVID-19 transmission associated with types and modes of business operations, the ability to substantially mitigate transmission risks associated with the operations, and related factors, such as the following:

- **Increase in mobility and volume of activity**—the overall impact the reopening will have on the number of people leaving their homes and traveling to work at or access the business;
- **Contact intensity**—the type (close or distant) and duration (brief or prolonged) of the contact involved in the business;
- **Number of contacts**—the approximate number of people that will be in the setting at the same time;
- **Modification potential**—the degree to which mitigation measures can decrease the risk of transmission.

To mitigate the risk of transmission to the greatest extent possible, before resuming operations, each Additional Businesses must:

a. Prepare, post, implement, and distribute to their Personnel a Site-Specific Protective Plan as specified in Section 15.h of the Order for each of their facilities in the County frequented by personnel or members of the public; and
b. Prepare, post, implement, and distribute to their Personnel a written health and safety plan that addresses all applicable best practices set forth in relevant Health Officer directives.

As used in this Appendix C-1, "Personnel" means the following people who provide goods or services associated with the Additional Business in the County: employees; contractors and sub-contractors (such as those who sell goods or perform services onsite or who deliver goods for the

business); independent contractors (such as "gig workers" who perform work via the Additional Business's app or other online interface); vendors who are permitted to sell goods onsite; volunteers; and other individuals who regularly provide services onsite at the request of the Additional Business.

Also, each Additional Business must comply with Social Distancing Requirements as well as all relevant state guidance and local directives. Where a conflict exists between the state guidance and local public heath directives related to the COVID-19 pandemic, the most restrictive provision controls.

**List of Additional Businesses**

For purposes of the Order, Additional Businesses include the following based on the summarized health risk related rationale:

**(1) Retail Stores and Retail Supply Chain Businesses**

    a. <u>Basis for Addition</u>. Curbside pickup and outdoor retail have low contact intensity and a moderate number of contacts where interaction between the businesses' Personnel (as defined below) and customers occur in the outdoors. Businesses that involve outdoor interactions carry a lower risk of transmission than most indoor businesses. Also, curbside pickup and outdoor retail at these stores should result in only a relatively modest increase in the number of people reentering the workforce and the overall volume of commercial activity and mitigation measures can meaningfully decrease the resulting public health risk. Indoor retail has been allowed by the State of California, and operating this service should result in a limited increase in the number of people reentering the workforce and mitigation measures can meaningfully decrease the resulting public health risk.

    b. <u>Description and Conditions to Operate</u>. The following businesses are permitted to operate, beginning at 7:00 a.m. on June 12, 2020, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Non-Essential Retailers, as well as the following stated limitations and conditions:

        i. Retail stores may operate subject to the following limitations:

            1. Retail stores may operate for curbside/outside pickup and may display merchandise or create an outdoor retail location with permission from the local jurisdiction;

            2. Retail stores must ensure that any curbside or outside retail activity does not block pedestrian access or cause pedestrian or vehicle congestion; and

            3. Retail stores, including stores in enclosed indoor shopping centers, may allow customers to enter their stores to engage in indoor shopping by appointment and/or on a first come first served basis so long as 50% or less of the maximum allowable occupancy of the store is utilized at any given time.

ii.    Businesses that manufacture the goods sold at retail stores covered in category (i) above and have no more than 50 Personnel on site in the facility at any time.

iii.    Businesses that provide warehousing and logistical support to the retail stores covered in category (i) above and have no more than 50 Personnel on site in the facility at any time.

**(2) Pet Grooming**

a.    <u>Basis for Addition</u>. The State of California has determined that it would be appropriate to allow these businesses to resume operation.  In addition, such services have low contact intensity.  Opening these services should result in a limited increase in the number of people reentering the workforce and the overall volume of commercial activity and mitigation measures can meaningfully decrease the resulting public health risk.

b.    <u>Description and Conditions to Operate</u>.  Pet grooming businesses are permitted to operate, beginning at 10:00 a.m. on May 22, 2020, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Pet Grooming Businesses.

**(3) Childcare Establishments, Summer Camps and Sports Camps**

a.    <u>Change in Status</u>. Childcare establishments, summer camps, sports camps and other educational or recreational institutions or programs providing care or supervision for children of all ages are able to operate pursuant to this Appendix C-1. Such businesses are no longer limited to those that enable owners, employees, volunteers, and contractors for Essential Businesses, Essential Governmental Functions, Outdoor Businesses, Additional Businesses, or Minimum Basic Operations to work as allowed under the Shelter in Place Order, but rather such businesses many now serve children of any age regardless of the employment status of their parents or guardians.

b.    <u>Basis for Addition</u>.  As we mobilize the workforce, we realize adults that are working will require childcare.  This addition will allow that to occur safely and in a manner that is consistent with other elements of the shelter in place order.  During the summer months, childcare occurs in camp settings to allow children opportunities for recreation and play.

c.    <u>Description and Conditions to Operate</u>.  These businesses are permitted to operate, beginning at 7:00 a.m. on June 1, 2020, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Childcare Establishments, Summer Camps, and Sports Camps.

**(4) Office Space**

a.    <u>Change in Status.</u> Office spaces are able to operate to the extent telecommute is not possible.

b.    <u>Basis for Addition</u>. The State of California has determined that it would be appropriate to allow these businesses to resume operation where telework is not possible.  Opening

COM000009

these services should result in a limited increase in the number of people reentering the workforce and the mitigation measures can meaningfully decrease the resulting public health risk.

c. <u>Description and Conditions to Operate</u>. Office spaces are permitted to operate, beginning at 7:00 a.m. on June 1, 2020, subject to the state limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Office Spaces.

**(5) <u>Restaurants</u>**

**<u>INDOOR DINING RESCINDED PER STATE DIRECTIVE ON JULY 5, 2020 AND THIS APPENDIX C-1</u>**

a. <u>Change in Status</u>. Restaurants, brewpubs, breweries, bars, pubs, craft distilleries, and wineries that provide sit-down food services themselves, or can contract with another vendor to do so, and where alcohol is only served with the order of a meal, are permitted to operate for take-out/curbside pickup and outdoor dining only at this time. Indoor dining is not permitted.

b. <u>Basis for Addition</u>. The State of California has determined that restaurants may operate and provide take-out and outdoor dining. Indoor dining is currently prohibited due to the County's placement on the State's watchlist for three consecutive days.

c. <u>Description and Conditions to Operate</u>. These businesses are permitted to operate only for take-out/curbside pickup and outdoor dining, beginning at 11:59 p.m. on July 5, 2020, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Restaurants.

**(6) <u>Library for Curbside Pickup</u>**

a. <u>Basis for Addition</u>. Curbside library services have low contact intensity and a moderate number of contacts where interaction between Personnel and customers occur in the outdoors. Businesses that involve outdoor interactions carry a lower risk of transmission than most indoor businesses. Also, curbside library services should result in only a relatively modest increase in the number of people reentering the workforce and mitigation measures can meaningfully decrease the resulting public health risk.

b. <u>Description and Conditions to Operate</u>. These businesses are permitted to operate immediately upon issuance of this Appendix C-1, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Curbside Library Services.

**(7) <u>Outdoor Recreation Activity Businesses</u>**

a. <u>Change in Status</u>. A business able to provide its customers with recreational activities, opportunities and/or instruction occurring exclusively outside, as allowed by the local jurisdiction, are able to operate pursuant to this Appendix C-1. Recreational activities, opportunities and/or instruction are activities such as recreation, arts and crafts, musical, dramatic and cultural.

b. <u>Basis for Addition</u>.  Businesses that involve outdoor interactions carry a lower risk of transmission than most indoor businesses.  Opening these services should result in a limited increase in the number of people reentering the workforce and mitigation measures can meaningfully decrease the resulting public health risk.

c. <u>Description and Conditions to Operate</u>.  These businesses are permitted to operate, beginning at 7:00 a.m. on June 5, 2020, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Outdoor Recreation Activity Businesses.

## (8) <u>Faith-Based and Cultural Ceremony Organizations</u>

a. <u>Change in Status</u>. Faith-based Organizations and Cultural Ceremony Organizations that are able to provide services, weddings – including similar commitment ceremonies – or funeral or wake services outdoors as allowed by the local jurisdictions are able to operate pursuant to this Appendix C-1.

b. <u>Basis for Addition</u>.  Businesses that involve outdoor interactions carry a lower risk of transmission than most indoor businesses.  Opening these services should result in a limited increase in the number of people reentering the workforce and mitigation measures can meaningfully decrease the resulting public health risk.

c. <u>Description and Conditions to Operate</u>.  These businesses are permitted to operate, beginning at 7:00 a.m. on June 5, 2020, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices For Organizations Or Individual Organizers Providing Outdoor Faith-Based Or Cultural Ceremonies.

## (9) <u>Cleaning and Janitorial Services</u>

a. <u>Change in Status.</u> All businesses or individuals that provide cleaning or janitorial services for residential and/or commercial spaces are now able to operate pursuant to this Appendix C-1.

b. <u>Basis for Addition.</u> The State of California has determined that it would be appropriate to allow these businesses to resume operation. Opening these services should result in a limited increase in the number of people reentering the workforce and mitigation measures can meaningfully decrease the resulting public health risk.

c. <u>Description of Conditions to Operate</u>. Cleaning and Janitorial Services are permitted to operate, beginning at 7:00 a.m. on June 12, 2020, subject to the stated limitations and conditions:

   i. Cleaning and Janitorial Services shall follow all applicable state and federal guidelines, including the <u>COVID-19 Industry Guidance: Limited Services</u> and the <u>safer cleaning methods</u> set forth by the California Department of Public Health and all applicable recommendations for <u>sanitizing</u>, <u>ventilating</u>, <u>cleaning and disinfecting</u> spaces set forth by the Centers for Disease Control and Prevention;

   ii. Cleaning and Janitorial Services shall complete a COVID-19 Site-Specific Protection Plan ("SPP") and shall have a copy of the same with them whenever

performing services. Cleaning and Janitorial Services shall show their SPP to any client upon request;

    iii.    For residential properties, residents will not be present in the home during cleaning; and

    iv.    For commercial properties, no tenant or member of the public will be present in the immediate office or space during cleaning.

**(10)**    <u>Gyms and Fitness Centers – **RESCINDED JUNE 26, 2020 AND NOT CURRENTLY PERMITTED TO OPERATE**</u>

**(11)**    <u>Hair Salons and Barbershops</u>

    a.  <u>Basis for Addition.</u> The State of California has determined hair salons and barbershops may resume operations under certain limitations.

    b.  <u>Description of Conditions to Operate.</u> These businesses are permitted to operate, beginning at 7:00 a.m. on June 29, 2020, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Hair Salons/Barbershops.

**(12)**    <u>Personal Care Services - **RESCINDED JUNE 26, 2020 AND NOT CURRENTLY PERMITTED TO OPERATE**</u>

**(13)**    <u>Hotels and Short-Term Lodging – **RESCINDED JUNE 26, 2020**</u>

    The May 29, 2020 Order of the Health Officer of the County of Marin Continuing Restrictions on the Use of Short-Term Lodging Facilities remains in effect.

**(14)**    <u>Music, Film, and TV Production</u>

    a.  <u>Basis for Addition.</u> The State of California has determined that music, film, and TV production may resume operations.

    b.  <u>Description of Conditions to Operate.</u> These businesses are permitted to operate, beginning at 7:00 a.m. on June 29, 2020, subject to the completion of a site-specific protection plan and the safety protocols agreed upon by labor and management. Back office staff and management should adhere to the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Office Spaces.

**(15)**    <u>Campgrounds and Recreational Vehicle Parks</u>

    a.  <u>Basis for Addition.</u> The State of California has determined that campgrounds and recreational vehicle (RV) parks may operate. Camping and recreational vehicle (RV) parks are outdoor activities that can occur with members of one's own household without generating substantial risk of contact with other households. Risks associated with this activity can be mitigated through measures that provide for adequate social distancing.

    b.  <u>Description of Conditions to Operate.</u> Campgrounds and RV parks are permitted to operate, beginning at 7:00 a.m. on June 29, 2020, subject to the applicable guidance

issued by the State of California (https://covid19.ca.gov/pdf/guidance-campgrounds.pdf). In addition to following the applicable state guidance, these businesses must adhere to the following limitations:

    i. Only designated camping/RV spots may be used.

    ii. Each camping/RV spot may be occupied by only one household or living unit at a time.

    iii. If camping/RV spots are immediately adjacent to one another, there must be at least one closed camping spot between each open spot to maintain adequate distance between households or living units.

**(16)** **Public Transit**

  a. <u>Basis for Addition.</u> The State of California issued guidance for public transit agencies on May 12, 2020.

  b. <u>Description of Conditions to Operate</u>. Notwithstanding Section 8 of the Order, public transit shall comply with the State of California COVID-19 Industry Guidance (https://covid19.ca.gov/pdf/guidance-transit-rail.pdf).

Updated July 7, 2020 by:

_____

Matt Willis, MD, MPH
Health Officer of the County of Marin

EXHIBIT 7

## Appendix C-1: Additional Businesses Permitted to Operate

## [REVISED – August 31, 2020]

Please note that this Appendix C-1 supersedes and rescinds the Appendix C-1 issued August 24, 2020. On August 28, 2020, the State of California issued the Blueprint for a Safer Economy, a new tiered system, that provides that as of August 31, 2020, counties in the purple tier, which includes the County of Marin may open some businesses with modifications, including shopping centers and hair salons. This Appendix C-1 is revised to allow such additional businesses to operate in the County of Marin and also to allow for the operation of all aviation related services subject to the guidance set forth herein.

## General Requirements

The "Additional Businesses" listed below may begin operating, subject to the requirements set forth in the Order and to any additional requirements set forth below or in separate industry-specific guidance by the Health Officer. These businesses were selected to implement an initial measured expansion of commercial activity based on health-related considerations including the risks of COVID-19 transmission associated with types and modes of business operations, the ability to substantially mitigate transmission risks associated with the operations, and related factors, such as the following:

- **Increase in mobility and volume of activity**—the overall impact the reopening will have on the number of people leaving their homes and traveling to work at or access the business;
- **Contact intensity**—the type (close or distant) and duration (brief or prolonged) of the contact involved in the business;
- **Number of contacts**—the approximate number of people that will be in the setting at the same time;
- **Modification potential**—the degree to which mitigation measures can decrease the risk of transmission.

To mitigate the risk of transmission to the greatest extent possible, before resuming operations, each Additional Businesses must:

a. Prepare, post, implement, and distribute to their Personnel a Site-Specific Protective Plan as specified in Section 15.h of the Order for each of their facilities in the County frequented by personnel or members of the public; and
b. Prepare, post, implement, and distribute to their Personnel a written health and safety plan that addresses all applicable best practices set forth in relevant Health Officer directives.

As used in this Appendix C-1, "Personnel" means the following people who provide goods or services associated with the Additional Business in the County: employees; contractors and sub-contractors (such as those who sell goods or perform services onsite or who deliver goods for the business); independent contractors (such as "gig workers" who perform work via the Additional

Business's app or other online interface); vendors who are permitted to sell goods onsite; volunteers; and other individuals who regularly provide services onsite at the request of the Additional Business.

Also, each Additional Business must comply with Social Distancing Requirements as well as all relevant state guidance and local directives. Where a conflict exists between the state guidance and local public heath directives related to the COVID-19 pandemic, the most restrictive provision controls.

## List of Additional Businesses

For purposes of the Order, Additional Businesses include the following based on the summarized health risk related rationale:

**(1) Retail Businesses and Indoor Shopping Centers – UPDATED AUGUST 31, 2020**

    a. <u>Basis for Addition</u>. Curbside pickup and outdoor retail have low contact intensity and a moderate number of contacts where interaction between the businesses' Personnel (as defined below) and customers occur in the outdoors. Businesses that involve outdoor interactions carry a lower risk of transmission than most indoor businesses. Also, curbside pickup and outdoor retail at these stores should result in only a relatively modest increase in the number of people reentering the workforce and the overall volume of commercial activity and mitigation measures can meaningfully decrease the resulting public health risk. Indoor retail has been allowed by the State of California, and operating this service should result in a limited increase in the number of people reentering the workforce and mitigation measures can meaningfully decrease the resulting public health risk. As of August 31, 2020, the State of California permits indoor shopping centers to operate at 25% capacity, but common areas and food courts must remain closed.

    b. <u>Description and Conditions to Operate</u>. Effective July 13, 2020, the following businesses are permitted to operate, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Non-Essential Retailers, as well as the following stated limitations and conditions:

        i. Retail stores may operate subject to the following limitations:

            1. Retail stores may operate for curbside/outside pickup and may display merchandise or create an outdoor retail location with permission from the local jurisdiction;

            2. Retail stores must ensure that any curbside or outside retail activity does not block pedestrian access or cause pedestrian or vehicle congestion; and

            3. Retail stores may allow customers to enter their stores to engage in indoor shopping by appointment and/or on a first come first served basis so long as 50% or less of the maximum allowable occupancy of the store is utilized at any given time.

COM008312

4. **Effective August 31, 2020, indoor shopping centers are permitted to operate at 25% capacity, but common areas and food courts must remain closed pursuant to the State of California guidelines**.

ii. Businesses that manufacture the goods sold at retail stores covered in category (i) above and have no more than 50 Personnel on site in the facility at any time.

iii. Businesses that provide warehousing and logistical support to the retail stores covered in category (i) above and have no more than 50 Personnel on site in the facility at any time.

## (2) Pet Grooming

a. Basis for Addition. The State of California has determined that it would be appropriate to allow these businesses to resume operation. In addition, such services have low contact intensity. Opening these services should result in a limited increase in the number of people reentering the workforce and the overall volume of commercial activity and mitigation measures can meaningfully decrease the resulting public health risk.

b. Description and Conditions to Operate. Pet grooming businesses are permitted to operate, beginning at 10:00 a.m. on May 22, 2020, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Pet Grooming Businesses.

## (3) Childcare Establishments and Youth Programs – UPDATED AUGUST 31, 2020

Childcare Establishments and Youth Programs are permitted to operate consistent with State of California Guidance including the following: https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/contact-management-childcare-facilities.aspx and https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/small-groups-child-youth.aspx and https://files.covid19.ca.gov/pdf/guidance-youth-sports--en.pdf.

## (4) Office Space – UPDATED JULY 15, 2020

## OFFICES FOR NON-ESSENTIAL SECTORS ORDERED CLOSED PER STATE DIRECTIVE ON JULY 13, 2020 AND THIS APPENDIX C-1

a. Change in Status. Indoor office spaces for non-essential sectors are not permitted to operate. These offices may continue to engage in telework and minimum basic operations.

b. Basis for Change. Due to County's placement on the State Monitoring List for more than three consecutive days, the State has determined that indoor office spaces for non-essential sectors must close.

c. Description and Conditions to Operate. Effective July 13, 2020, indoor offices spaces for non-essential sectors are not able to operate. These offices may continue to engage in minimum basic operations, as specified in the May 15, 2020 Shelter-in-Place Order and

telework. The State's list of essential sectors is available at
https://covid19.ca.gov/img/EssentialCriticalInfrastructureWorkers.pdf.

Office spaces for essential sectors may continue to operate, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Office Spaces.

**(5) <u>Restaurants</u>**

<u>**OUTDOOR DINING, CURBSIDE PICK-UP, AND DELIVERY ONLY PERMITTED AT THIS TIME**</u>

    a. <u>Change in Status</u>. Restaurants, brewpubs, breweries, bars, pubs, craft distilleries, and wineries that provide sit-down food services themselves, or can contract with another vendor to do so, and where alcohol is only served with the order of a meal, are permitted to operate for take-out/curbside pickup and outdoor dining only at this time. Indoor dining at restaurants remains prohibited.

    b. <u>Basis for Addition</u>. The State of California has determined that restaurants may operate and provide take-out and outdoor dining. Indoor dining is currently prohibited due to the County's placement on the State Monitoring List for three consecutive days.

    c. <u>Description and Conditions to Operate</u>. These businesses are permitted to operate only for take-out/curbside pickup and outdoor dining, beginning at 11:59 p.m. on July 5, 2020, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Restaurants.

**(6) <u>Library for Curbside Pickup</u>**

    a. <u>Basis for Addition</u>. Curbside library services have low contact intensity and a moderate number of contacts where interaction between Personnel and customers occur in the outdoors. Businesses that involve outdoor interactions carry a lower risk of transmission than most indoor businesses. Also, curbside library services should result in only a relatively modest increase in the number of people reentering the workforce and mitigation measures can meaningfully decrease the resulting public health risk.

    b. <u>Description and Conditions to Operate</u>. These businesses are permitted to operate immediately upon issuance of this Appendix C-1, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Curbside Library Services.

**(7) <u>Outdoor Recreation Activity Businesses</u>**

    a. <u>Change in Status</u>. A business able to provide its customers with recreational activities, opportunities and/or instruction occurring exclusively outside, as allowed by the local jurisdiction, are able to operate pursuant to this Appendix C-1. Recreational activities, opportunities and/or instruction are activities such as recreation, arts and crafts, musical, dramatic and cultural.

COM008314

b. <u>Basis for Addition</u>. Businesses that involve outdoor interactions carry a lower risk of transmission than most indoor businesses. Opening these services should result in a limited increase in the number of people reentering the workforce and mitigation measures can meaningfully decrease the resulting public health risk.

c. <u>Description and Conditions to Operate</u>. These businesses are permitted to operate, beginning at 7:00 a.m. on June 5, 2020, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Outdoor Recreation Activity Businesses.

## (8) **Faith-Based and Cultural Ceremony Organizations – OUTDOOR OPERATIONS ONLY**

a. <u>Change in Status</u>. Faith-based Organizations and Cultural Ceremony Organizations that are able to provide services, weddings – including similar commitment ceremonies – or funeral or wake services outdoors as allowed by the local jurisdictions are able to operate pursuant to this Appendix C-1.

b. <u>Basis for Addition</u>. Businesses that involve outdoor interactions carry a lower risk of transmission than most indoor businesses. Opening these services should result in a limited increase in the number of people reentering the workforce and mitigation measures can meaningfully decrease the resulting public health risk.

c. <u>Description and Conditions to Operate</u>. These businesses are permitted to operate, beginning at 7:00 a.m. on June 5, 2020, subject to the stated limitations and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices For Organizations Or Individual Organizers Providing Outdoor Faith-Based Or Cultural Ceremonies.

## (9) **Cleaning and Janitorial Services**

a. <u>Change in Status.</u> All businesses or individuals that provide cleaning or janitorial services for residential and/or commercial spaces are now able to operate pursuant to this Appendix C-1.

b. <u>Basis for Addition.</u> The State of California has determined that it would be appropriate to allow these businesses to resume operation. Opening these services should result in a limited increase in the number of people reentering the workforce and mitigation measures can meaningfully decrease the resulting public health risk.

c. <u>Description of Conditions to Operate</u>. Cleaning and Janitorial Services are permitted to operate, beginning at 7:00 a.m. on June 12, 2020, subject to the stated limitations and conditions:

    i. Cleaning and Janitorial Services shall follow all applicable state and federal guidelines, including the <u>COVID-19 Industry Guidance: Limited Services</u> and the <u>safer cleaning methods</u> set forth by the California Department of Public Health and all applicable recommendations for <u>sanitizing</u>, <u>ventilating</u>, <u>cleaning and disinfecting</u> spaces set forth by the Centers for Disease Control and Prevention;

    ii. Cleaning and Janitorial Services shall complete a COVID-19 Site-Specific Protection Plan ("SPP") and shall have a copy of the same with them whenever

performing services. Cleaning and Janitorial Services shall show their SPP to any client upon request;

    iii.    For residential properties, residents will not be present in the home during cleaning; and

    iv.    For commercial properties, no tenant or member of the public will be present in the immediate office or space during cleaning.

**(10)    Gyms and Fitness Centers – OUTDOOR OPERATIONS ONLY**

    a.    <u>Basis for Addition.</u>  The State of California has determined that gyms and fitness centers may operate to the extent they can be modified to operate outdoors.

    b.    <u>Description of Conditions to Operate.</u>  To the extent businesses may shift their operations outdoors, these businesses are subject to the stated limitations and in strict compliance with the Health Officer of the County of Marin Public Health Order—Outdoor Recreation Activity and Best Practices—Outdoor Recreation Activity Businesses found at: https://marinrecovers.com/parks-outdoor-recreation/

**(11)    Hair Salons and Barbershops – UPDATED AUGUST 31, 2020**

    a.    <u>Change in Status.</u>  The State of California has determined that as of August 31, 2020, hair salons and barbershops may open indoors with modifications.

    b.    <u>Description of Conditions to Operate.</u> Hair Salons and Barbershops are permitted to operate indoors effective August 31, 2020 pursuant to the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Hair Salons/Barbershops and State of California Guidance located at https://files.covid19.ca.gov/pdf/guidance-hair-salons.pdf.

**(12)    Personal Care Services – OUTDOOR OPERATIONS ONLY**

    **Shops that offer tattoos, piercings and electrolysis may not be operated outdoors and must remain closed.**

    a.    <u>Basis for Addition.</u>  The State of California has determined that most personal care services may operate to the extent they can be modified to operate outdoors.

    b.    <u>Description of Conditions to Operate.</u>  To the extent businesses may shift their operations outdoors, these businesses are subject to the stated limitations and in strict compliance with State of California Covid-19 Industry Guidance: Expanded Personal Care Services Provided Outdoors  https://files.covid19.ca.gov/pdf/guidance-outdoor-personal-care--en.pdf.

**(13)    Hotels and Short-Term Lodging –UPDATED AUGUST 24, 2020**

    Hotels and Short-Term Lodging may operate, subject to and in strict compliance with the Industry-Specific Guidance of the Health Officer of the County of Marin Regarding Required Best Practices for Hotels, Lodging, and Short-Term Rentals.

**(14) Music, Film, and TV Production – UPDATED JULY 15, 2020**

    a. <u>Basis for Addition.</u> The State of California has determined that music, film, and TV production may resume operations.

    b. <u>Description of Conditions to Operate</u>. These businesses are permitted to operate, beginning at 7:00 a.m. on June 29, 2020, subject to the completion of a site-specific protection plan and the safety protocols agreed upon by labor and management. Back office operations must cease indoor operations. Please see Paragraph (4) "Office Space."

**(15) Campgrounds and Recreational Vehicle Parks – UPDATED JULY 15, 2020**

    a. <u>Basis for Addition.</u> The State of California has determined that campgrounds and recreational vehicle (RV) parks may operate. Camping and recreational vehicle (RV) parks are outdoor activities that can occur with members of one's own household without generating substantial risk of contact with other households. Risks associated with this activity can be mitigated through measures that provide for adequate social distancing.

    b. <u>Description of Conditions to Operate</u>. Campgrounds and RV parks are permitted to operate, beginning at 7:00 a.m. on June 29, 2020, subject to the applicable guidance issued by the State of California (https://covid19.ca.gov/pdf/guidance-campgrounds.pdf). In addition to following the applicable state guidance, these businesses must adhere to the following limitations:

        i. Only designated camping/RV spots may be used.

        ii. Camping/RV spots refer to empty parking spots and/or camping sites. Rentals of stationary RVs are not permitted at this time.

        iii. Each camping/RV spot may be occupied by only one household or living unit at a time.

        iv. If camping/RV spots are immediately adjacent to one another, there must be at least one closed camping spot between each open spot to maintain adequate distance between households or living units.

**(16) Public Transit**

    a. <u>Basis for Addition.</u> The State of California issued guidance for public transit agencies on May 12, 2020.

    b. <u>Description of Conditions to Operate</u>. Notwithstanding Section 8 of the Order, public transit shall comply with the State of California COVID-19 Industry Guidance (https://covid19.ca.gov/pdf/guidance-transit-rail.pdf).

**(17) Aviation Services**

    a. <u>Basis for Addition.</u> Such services have low contact intensity. Opening these services should result in a limited increase in the number of people reentering the workforce and the overall volume of commercial activity and mitigation measures can meaningfully decrease the resulting public health risk.

b.  <u>Description of Conditions to Operate</u>. Notwithstanding Sections 8 and 15.f.xx of the Order, aviation-based services are permitted to operate subject to the implementation of a Site-Specific Protection Plan and in compliance with any State of California industry guidelines.


Updated August 31, 2020 by:

Matt Willis, MD, MPH
Health Officer of the County of Marin

COM008318