1  John E. Sharp, Esq., SBN 085615
   Gillian Edmonds, Esq. (SBN 293109)
2  LAW OFFICES OF JOHN E. SHARP
   24 Professional Center Parkway, Suite 110
3  San Rafael, CA 94903
   Telephone: (415) 479-1645
4  Facsimile: (415) 295-7020

5  Attorneys for Plaintiff
6  SEAPLANE ADVENTURES, LLC

7

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10

11 SEAPLANE ADVENTURES, LLC, a          Case No. 3:20-cv-06222-WHA
   California Limited Liability Company,
12                                       PLAINTIFF SEAPLANE ADVENTURES,
          Plaintiff,                     LLC'S OPPOSITION TO MOTION FOR
13                                       SUMMARY JUDGMENT AND REQUEST FOR
       vs.                               ORAL ARGUMENT
14
   COUNTY OF MARIN, CALIFORNIA;          Complaint filed: September 2, 2020
15 AND DOES 1 THROUGH 10,                Trial Date: December 8, 2021
   INCLUSIVE,
16                                       DATE: October 7, 2021
          Defendants.                    TIME: 8:00AM
17                                       JUDGE: Honorable William Alsup
                                         DEPT: Courtroom 12, 19th Floor
18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES............................................................................iv

I.      INTRODUCTION...................................................................................1

II.     FACTUAL BACKGROUND......................................................................2

        A.      Evidence that Seaplane Adventures, LLC is Similarly Situated to Those
                Businesses in Marin County that are Air Carriers Certified Pursuant to
                14 CFR Part 135, and Regulated by the FAA.............................................3

        B.      Evidence that Plaintiff is Not Similarly Situated to the "Other Indoor
                Recreation or Recreational Travel Business Identified by Defendant.............5

        C.      There is Significant Evidence that the County's Differential Treatment
                of Plaintiff Was Intentional....................................................................6

        D.      Evidence that there Was No Rational Basis for the County Intentionally
                Treat Plaintiff Differently Than Other Similarly Situated Businesses.............9

III.    LEGAL STANDARDS............................................................................11

IV.     THE SUBSTANTIVE LAW:  THE COUNTY VIOLATED PLAINTIFF'S RIGHT
        TO EQUAL PROTECTION BY INTENTIONALLY TREATING PLAINTIFF
        DIFFERENTLY FROM OTHER SIMILARLY SITUATED BUSINESSES...........11

        A.      Plaintiff is an Air Carrier, Certified Under 14 CFR Part 135, and is
                Therefore Similarly Situated to Other Air Carriers Certified Under Part 135,
                Which Does Not Have a Category for "Recreational Air Travel"..................12

                1.      Plaintiff is sNot Similarly Situated to Skydive Golden Gate or
                        SF Helicopters......................................................................14

                2.      Even if Plaintiff is Similarly Situated to the Other "Indoor
                        Recreation" or "Recreational Travel" Business (Skydive Golden
                        Gate and SF Helicopters), the Number of Individuals in a Class is
                        Immaterial for Equal Protection Analysis.....................................15

        B.      There is Significant Evidence that the County Intentionally Treated
                Plaintiff Differently From Other Similarly Situated Businesses...................15

                1.      There is Significant Evidence that Defendant Intentionally
                        Treated Plaintiff Differently Than Other Part 135 Airlines in Marin
                        County – the County Never Shut Down any Airlines Operating Out
                        of the County-Owned Airport.....................................................16

ii

# TABLE OF CONTENTS (contd.)

2.  There is credible Evidence that Disputes the County's Allegation That it Had a "Process" by Which it Only "Enforced" the Health Orders if there Was a Public Complaint Regarding a Business...........18

3.  The County Allowed Other Sections to Reopen Based on California State Guidance – But Did Not Use the Same Standard For Plaintiff...............................................................................18

4.  There is Significant Evidence that the County's Shutdown of Seaplane Was Improperly Motivated.......................................19

C.  The County Had No Rational Basis for Treating Plaintiff Differently From Other Similarly Situated Businesses...........................................19

1.  The County Failed to Investigate Plaintiff's Business Before Arbitrarily Shutting it Down.................................................21

D.  Plaintiff Objects to Dr. Matt Willis' Declaration as He Was Not Designated As the PMK, and Was Not Disclosed as an Expert Witness, and to the Extent that His Declaration Fails to Comply with Local Rule 7-5(b)..............22

E.  Plaintiff Objects to Dan Jensen's Declaration and Requests that Portions Be Stricken...............................................................................23

F.  Plaintiff Anticipates Acquiring Further Evidence, as the County Has Improperly Failed to Produce Documents and Names of Potential Witnesses, Claiming Attorney-Client Privilege – This Issue Will be Dealt With Via a Motion in Limine Prior to Trial.......................................23

V.  CONCLUSION...............................................................................24

PLAINTIFF'S OPP. TO MOT. FOR SUMM. JDGMT. AND REQ. FOR ORAL ARGUMENT
Case No. 20-cv-06222-WHA

# TABLE OF AUTHORITIES

Page No.

*Anderson v. Liberty Lobby,* 477 U.S. 242, 248-249 (1986)...................................11

*Bowden v. Potter*, 308 F.Supp.2d 1108, 1117 (N.D. Cal. 2004)............................12

*Gerhart v. Lake County, Mont.,* 637 F.3d 1013, 1022 (9th Cir. 2011)......................11, 20

*North Pacifica, LLC v. City of Pacifica* (2003) 274 F.Sup.2d 1118........................24

*Sankovich v. Life Ins. Co. of N. Am.,* 638 F.2d 136 (9th Cir. 1981)...........................11

*Soremekun v. Thrifty Payless Inc.*, 509 F.3d 978, 984 (9th Cir. 2007)......................11

*U.S. v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008)...............................................14

*Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) ................................11, 15, 20

## Statutes

FRCP Rule 56(a)......................................................................................11

Government Code Section 54956.9(b)...........................................................23

N.D. Cal., Civil Local Rule 7-5(b)...............................................................23

49 U.S.C. § 1983....................................................................................11

49 U.S.C. § 44705, 44711.......................................................................3, 11

14 CFR Part 91.......................................................................................5

14 CFR Part 119....................................................................................3, 11

14 CFR Part 135................................................................................Passim

# I. INTRODUCTION

Plaintiff Seaplane Adventures, LLC ("Plaintiff" or "Seaplane") does not dispute that Defendant County of Marin ("Defendant" or "County") likely took action for a public purpose in issuing the Health Orders in an attempt to combat the COVID-19 pandemic. However, as set forth *infra,* triable issues of fact exist regarding: Seaplane having been treated differently than other similarly situated businesses throughout the COVID-19 shutdown; the County's specific application of the Health Orders to Plaintiff having been contrary to law; and the import, in an equal protection context, of having been effectively put out of business, while similar aviation businesses, which were tenants of the County at its own airport, Gnoss Field, were not subjected to enforcement by Defendant under the Health Orders.

Air carriers flying out of Gnoss Field Airport were operating, as does Plaintiff under 14 CFR Part 135 ("Part 135"). These airlines were never told by the County, via publications of the Health Orders or otherwise, that their operations were to be limited under the Health Orders, and were at all times permitted to operate for recreational charter flights and otherwise. Triable issues also exist insofar as the County also permitted other similarly situated businesses to open for sightseeing tours (i.e. charter boats).

Whether Seaplane and the Gnoss field carriers are "similarly-situated," and whether Seaplane is similarly situated to "indoor-recreation" or "recreational travel" businesses are questions of fact to be determined at trial. The County's attempt to distinguish Seaplane from other identically regulated and operating air carriers, while asserting that Seaplane is somehow like an indoor recreation business disingenuous and is not supported by any evidence, as Seaplane will demonstrate in this opposition and at trial.

Defendant further attempts to classify Plaintiff in the same category as a sky-diving company (Skydive Golden Gate) and SF Helicopters. Yet, Skydive Golden Gate is in no way comparable to Seaplane Adventures. Declaration of Patrick Scanlon ("Scanlon Dec.") at ¶10. Further, as shown below, SF Helicopters rents a landing pad, located adjacent to Seaplane's base, for occasional use, but its business is not located at Seaplane's location, nor is it based in Marin County. Declaration of Aaron Singer ("Singer Dec.") at ¶20. Seaplane, the **only** seaplane base in California, literally could

not operate in any other location. Evidence set forth herein, and at trial, will show that the County *admitted* that Plaintiff's operations could have opened safely under the Health Orders, but the County still prevented Plaintiff from doing so. Dkt. 55-7, 62: ¶17; Willis Decl. Ex. 7 (2020.08.31 Order re C-1 Update), ¶17.

As set forth in full *infra*, there is significant evidence proving that the County violated Plaintiff's 14th Amendment right to equal protection by manipulating the COVID-19 pandemic as a convenient means to shut down Plaintiff—something it had been trying, but failing, to do since at least 2017, in a pattern of attempting to quiet a handful of disgruntled neighbors.

In addition, Defendant states in its notice of motion that Plaintiff's "only pending claim is a claim for violation of the Equal Protection Clause." Dkt. 55 at 1:8-9. This ignores the fact that Plaintiff still has a pending claim for preemption; and that the Court has left open the possibility for a takings claim. Defendant also relies heavily on the Declaration of Dr. Matt Willis—Plaintiff objects to the use of Dr. Willis' Declaration, since he was neither disclosed as a non-retained expert, nor designated as the Person Most Knowledgeable. For these reasons, and the reasons set forth more fully *infra*, Defendant's Motion for Summary Judgment should be denied.

## II.    FACTUAL BACKGROUND[1]

Defendant County of Marin ("Defendant" or "County), in response to the novel coronavirus ("COVID-19" or "Coronavirus") pandemic, issued an Order of the Health Officer of the County of Marin on March 16, 2010 ("March Health Order"), which required all non-essential businesses in Marin County to cease all activities. Dkt. 55-7, Ex.1. Although the March Health Order defined aviation as an "essential business," Plaintiff voluntarily shut down its operations out of an abundance of caution. Dkt. 55-7, Ex. 1 at ¶10(f)(xvii).

On May 15, 2020, Defendant issued an Order of the Health Officer of the County of Marin ("Health Order" or "Marin Order") (collectively, the March Health Order and Health Order are referred to as the "Health Orders."). Dkt. 55-7, Ex.2. The Marin Order amended the prior health-

---

[1] It should be noted that the parties stipulated on the record to the authenticity of all bates-stamped documents produced by the County (roughly 8,000 pages). Declaration of John Sharp, Ex. A (Korten Dep. Tr.), 23:13-24:14.

PLAINTIFF'S OPP. TO MOT. FOR SUMM. JDGMT. AND REQ. FOR ORAL ARGUMENT
Case No. 20-cv-06222-WHA

orders, and allowed many businesses to reopen (or remain open)—including boat charters, and airlines. *Id.* at ¶¶15(f)(xx); Dkt. 55-7, Ex.3  As such, Plaintiff felt it safe to reopen for business, in compliance with the Health Orders, on June 5, 2020. Dkt. 21 at ¶¶7-8.  Although the Marin Health Order specifically states that airlines are an "essential business," the Marin County Sheriff ordered Plaintiff to close on July 3, 2020 under threat of fines. Dkt. 55-7, Ex. 2 at ¶¶15(f)(xx); Dkt. 55-3, Heilman Decl, at ¶4; Singer Dec. at ¶11.

**A. Evidence that Seaplane Adventures, LLC is Similarly Situated to those Businesses in Marin County that are Air Carriers Certified Pursuant to 14 CFR Part 135, and Regulated by the FAA**

Plaintiff Seaplane Adventures, LLC ("Plaintiff" or "Seaplane") is an airline business operating in Marin County, California, as an air carrier, certified pursuant to 14 CFR Part 135 and Part 91 of the Federal Aviation Administration ("FAA") regulations.  Singer Dec. at ¶2; Dkt. 43-1, Declaration of Lauralyn J. Remo Temprosa; Dkt. 43-2, Declaration of Dennis M. Thorpe.  The FAA grants the authority to operate on-demand, unscheduled air service (also known as charter-type services) in the form of Part 135 certificate.  Singer Dec. at ¶2; Dkt. 43-2 at 2:16-17; RJN, Exhibit C. 14 CFR Part 135 does not distinguish between "recreational charter flights" and other charter flights. Singer Dec. at ¶12; see also Dkt. 43-2 at ¶3.

As stated by Dennis M. Thorpe, the Manager of Oakland Flight Standards District Office ("FSDO") for the FAA: "[i]n order for an entity to operate as an air carrier, it must receive an air carrier certificate from the FAA. *See* 49 U.S.C. §§ 44705, 44711. The FAA grants such a certificate if it finds that the air carrier 'properly and adequately is equipped an able to operate safely under' aviation safety rules set out by statute and by FAA regulations. *Id.* § 44705; 14 CFR Part 119. San Francisco Seaplane Tours, Inc. ("SFST") has been granted an air carrier certificate (as noted below, SFST is authorized to do business as 'Seaplane Adventures'). SFST's certificate became effective in 2006..." Dkt. 43-2 at ¶2.

Plaintiff operates air tours, charter flights (including but not limited to flights to Tahoe and Clear Lake), and flight instruction.  Singer Dec. at ¶2.  The County of Marin at all pertinent times allowed all of these activities to continue elsewhere in Marin County. Scanlon Dec. at ¶9 ["I am

personally aware that other air carriers were operating out of Gnoss Field under Part 135 during the time the Health Orders were in effect, and that none of these air carriers were shut down by the County pursuant to the Health Orders."], ¶6; Singer Dec. at ¶¶14, 17.

Specifically, the County of Marin permitted all air carriers (other than Skydive Golden Gate) to continue operating out of Gnoss Field for charter flights ("recreational" or otherwise) and/or flight instruction, despite the Health Orders—these air carriers included but were not limited to: Scanlon Aviation, Ward Aviation, CB SkyShare, and Surf Air (hereinafter "Gnoss Field Airlines"). Scanlon Dec. at ¶9. The Gnoss Field air carriers are, like Plaintiff, airline businesses operating in Marin County, California, certified pursuant to 14 CFR Part 135 of the FAA regulations. Scanlon Dec. at ¶3, ¶9; Singer Dec. at ¶16. During the time the Health Orders were in effect, Scanlon Aviation operated (and operates) for all purposes it was/is permitted to under Part 135: booking and flying charter flights throughout the state and flight instruction for recreational purposes or otherwise. Scanlon Dec. at ¶4. Scanlon Aviation operates air tours, charter flights, and flight instruction. Scanlon Dec. at ¶5.

Other than the Skydive Golden Gate, which ran only a skydiving operation out of Gnoss Field Airport, the County of Marin did not force any air carriers operating out of Gnoss Field Airport to shut down operations pursuant to the Health Orders. Singer Dec. at ¶17; Scanlon Dec. at ¶¶6-10.

The State of California's Public Health Officer included (and includes) sea plane bases as part of the "essential critical infrastructure" and categorized sea planes as "aviation," along with commercial aviation services at *inter alia* civil airports: "[t]he Transportation Systems Sector consists of seven key subsectors, or modes…[a]viation includes aircraft, air traffic control systems, and airports, heliports, and landing strips. Commercial aviation services at civil and joint-use military airports, heliports, and **_sea plane bases_**. In addition, the aviation mode includes commercial and **recreational aircraft** (manned and unmanned) and a wide variety of support services, such as aircraft repair stations, fueling facilities, navigation aids, and flight schools." Plaintiff's Request for Judicial Notice ("RJN"), Exhibit A, p. 10: Section 6; emphasis added. The County of Marin still shut

down Plaintiff's operations, despite the guidance from the State regarding aviation. Singer Dec. at ¶11; Dkt. 55-3, Heilman Decl, at ¶4.

**B. Evidence that Plaintiff is Not Similarly Situated to the "Other Indoor Recreation or Recreational Travel Businesses" Identified by Defendant.**

Plaintiff is not similarly situated to businesses in the "indoor recreation or recreational travel business" categories, as argued by Defendant. As stated *supra,* Plaintiff is certified pursuant to 14 CFR Part 135. Dkt. 43-2 at ¶3; Singer Dec. at ¶2. Part 135 does not distinguish between "recreational charter flights" and other charter flights. Singer Dec. at ¶12; Scanlon Dec. at ¶4 ["Part 135 does not distinguish between 'recreational charter flights' and other charter flights."]; see also Dkt. 43-2 at ¶3.

Plaintiff is also certified pursuant to 14 CFR Part 91. Dkt. 43-2 at ¶4; Singer Dec. at ¶2. This certification authorizes Plaintiff to conduct nonstop passenger-carrying flights that begin and end at the same airport and are conducted within a 25-statute mile radius of the airport. Dkt. 43-2 at ¶4; Singer Dec. at ¶13. 14 CFR Part 91 does not distinguish between "scenic aircraft tours" or otherwise. Singer Dec. at ¶13; Dkt. 43-2 at ¶4.

Plaintiff is not similarly situated to the business Skydive Golden Gate—which operated a skydiving business at Gnoss Field Airport; as Plaintiff does not operate for tandem skydiving operations, or any skydiving operations. Singer Dec., at ¶2. Skydiving requires the customer to be physically strapped to the instructor with no more than an inch of room between them. Singer Dec. at ¶19. This is a unique attribute of tandem skydiving vs. Plaintiff, such that skydiving is more risky than chartering a flight in terms of spreading COVID-19.

In addition, Skydive Golden Gate was not in the business of providing charter flights; and was not a Part 135 air carrier., Sharp Dec., Ex. B, Skydive Golden Gate SPP, COM002593-COM002599; Scanlon Dec. at ¶10.–The County shut down Skydive Golden Gate's parachute operations, which are not regulated by the FAA—only the flights to take jumpers to altitude are regulated. Scanlon Dec. at ¶10.

Similarly, Seaplane Adventures, LLC is not similar to SF Helicopters in that Seaplane does not own any helicopters, and does not provide helicopter tours. Singer Dec. at ¶20. Although SF Helicopters operates out of the same base as Plaintiff; unlike Plaintiff, SF Helicopters has other bases

in separate counties, and was therefore able to continue operating throughout the COVID-19 shutdown orders. *Id.* As such, SF Helicopters was never shut down—it just started flying out of other bases, such as Oakland International Airport and San Francisco International Airport. *Id.* Seaplane, on the other hand, was completely shut down by the County, as it could not operate out of anywhere except where it is based in Sausalito, CA. *Id.* at ¶21.

### C. There is Significant Evidence that the County's Differential Treatment of Plaintiff was Intentional.

Even if there were no complaints regarding the Gnoss Field air carriers, the County was aware that they were continuing operations out of Gnoss Field Airport, despite the Health Orders, as it owns Gnoss-Field. RJN, Exhibit B; Scanlon Dec. at ¶9 ["Due to its [the County's] ownership of Gnoss Field, and the presence of its manager on site, the County was aware that these airlines were operating, but did not shut them down."]; Declaration of Andrew Wait ("Wait Dec.") at ¶7; see also Sharp Dec., Ex. G, Wait Depo Transcript, at 53:19-61:13.

The County did not shut down any air carriers at Gnoss-Field airport in any capacity, other than Skydive Golden Gate. Scanlon Dec. at ¶10; Wait Dec. at ¶¶3, 7; Singer Dec. at ¶17; see also Sharp Dec., Ex. G, Wait Depo Transcript, at 53:19-61:13. From March 2020 through September 2020, the Gnoss Field air carriers were fully operational for flight school, charter flights, etc. and the County did not limit their operations in any way—they flew for all purposes, including "recreation." Wait Dec. at ¶3; Scanlon Dec. at ¶¶4, 7, 9; see also Sharp Dec., Ex. G, Wait Depo Transcript, at 53:19-61:13.

The County also never informed any of the Gnoss Field airlines that they were required to shut down. Scanlon Dec. at ¶¶9, 7; Wait Dec. at ¶7. The County publicized the Health Orders. Dkt. 55-7 (Willis Decl.), ¶¶14-16. However, the Health Orders, on their face, do not state that aviation was not to operate for "indoor recreation activities or recreational charter flights." See Dkt. 55-7 (Willis Decl.), Exh. B (Marin Public Health Order for May 15, 2020) at section 15(f)(xx) [defining as Essential Businesses, "Airlines...providing transportation services necessary for Essential Activities and other purposes expressly authorized in this Order."].

///

The County was aware that Scanlon Aviation, an airline flying out of Gnoss Field Airport, was operational. Scanlon Dec. at ¶8. In addition, the County was emailed a copy of Scanlon's Site Specific Protection Plan ("SPP") on May 4, 2020. Scanlon Dec., Exhibit A (COM005162). As the Scanlon Aviation COVID-19 Mitigation Plan stated, "The Marin County 'shelter in place' and the California statewide lockdown as well as the Federal pandemic guidelines have deemed Flight School, air charter and aircraft maintenance as essential parts of the transportation infrastructure…" *Id.* at COM005163. The SPP does not say anything about limiting flights to "essential travel"—and the specific "Air Charter Procedures" section of the SPP for Scanlon does not state that "essential travel" was a prerequisite to chartering. *Id.* at COM005170. The County knew that Scanlon was operating for charter flights and flight school, as the SPP was emailed to the County on May 4, 2020. *Id.* at COM005162.

Further, as stated by Patrick Scanlon, the founder, current owner, and manager of Scanlon Aviation:

> "Part 135 does not distinguish between "recreational charter flights" and other charter flights. As such, during the time the Health Orders, with which I am familiar, were in effect, and continuing through today, Scanlon Aviation operated/operates for all purposes it was/is permitted to under Part 135. This includes, but is not limited to, booking and flying charter flights throughout the state and flight instruction for recreational purposes or otherwise. Scanlon Aviation did not limit these flights to any particular category or group of passengers and/or activity; and did not limit these flights to "essential workers," or "essential activities," as those terms are defined under the Health Orders."

Scanlon Dec. at ¶4. Mr. Scanlon goes on to say that the County was aware that Scanlon was operating during the time the Health Orders were in effect (*Id.* at ¶8), *and* that he was "…never told by the County of Marin, or anyone else, that Scanlon's operations were to be limited under the Health Orders, and Scanlon was at all times was permitted to fully operate, as a tenant of the County at Gnoss Field, including for charter flights and flight school. It was an [sic] is my understanding that airlines were deemed an 'essential business,' and therefore permitted to fully operate despite the Health Orders." Scanlon Dec. At ¶7.

Aeroclub Marin was also operating out of Gnoss Field during March-September 2020 for flight instruction and for rental of recreational aircraft. The aircraft took off from and landed at the

7

same airport (Gnoss Field). Wait Dec. at ¶6; see also Sharp Dec., Ex. G, Wait Depo Transcript, at 53:19-60:9.

According to Matt Willis, the County did not know if a business was violating a health order unless and until there was a public complaint. Dkt. 55-7, Willis Decl., 8:¶17 ["…County relied on reports from the public and/or businesses to identify potential violations of these orders]; 9:¶19. Yet, The County sent Sheriffs to Plaintiff's business to shut it down on July 3, 2020. Dkt. 55-3, Heilman Decl, at ¶4; Singer Dec. at ¶11. The Sheriff told Plaintiff, "…if you do take off with passengers on…your flight plans or whatever you have for your tours and whatnot. That each time you land, you will be cited. That's all I've been told to tell you…I am telling you now that if you take off with passengers in your plane and land, that you will be cited." Dkt. 55-2, Exhibit 16 (certified transcript of video recording of Body-worn Camera Footage July 3, 2020) at 8:14-24.

County emails show that it wasn't until the week *after* the Sheriff's shutdown Plaintiff's business that the County even established a reliable reporting mechanism for public complaints regarding businesses. Sharp Dec., Ex. C, July 15, 2020 Hendricks email COM007508-COM007510 ["…SIPViolation@marincounty.org was created last week and was advertised in our status updates…[t]he purpose of the email is really to track businesses that are in violation of current shelter in place or other public health orders…[w]e're asking for the public to help us identify those businesses that may be out of compliance…[w]e want to be able to fully reopen our local economy…so we're starting with enforcement at the business level."].

Except in the case of Plaintiff, the County allowed sectors to reopen based on guidance from the State of California allowing those sectors to reopen. See, e.g., Dkt. 55-7, Willis Decl. Ex. 7 (2020.08.31 Order re C-1 Update) (stating that the basis for addition of various industries (indoor retail businesses: ¶1; pet grooming: ¶2; takeout and outdoor dining: ¶5; cleaning/janitorial services: ¶9; gyms: ¶10; hair salons: ¶11; personal care services:¶12; hotels: ¶13; campgrounds: ¶15; ) was because the "State of California" permitted that industry to reopen). The County's Person Most Knowledgeable ("PMK") concerning this case, Max Korten, testified that "…as the State took on the lead of providing the guidance for businesses, I was working with our public information officer to

8

provide information to businesses about how to comply with the State's order." Dkt. 55-4, Decl. of Brandon Halter, Exhibit 9 (Korten Dep. Tr.) at 17:13-17.

The State of California, on April 28, 2020, via its Public Health Officer, specifically defined "sea plane bases" as "essential critical infrastructure," and therefore allowed Plaintiff to remain open throughout the COVID-19 shutdown orders. RJN, Exhibit A, p. 10: Section 6 (defining "sea plane bases" as essential critical infrastructure). The County still shut down Seaplane Adventures, LLC, a sea plane base, despite the fact that the State guidelines permitted it to remain open. Singer Dec. at ¶11; RJN, Exhibit A, p. 10: Section 6.

Demonstrating its pattern of biased conduct toward Seaplane, County has also been attempting to shut down Seaplane since at least 2017, to appease a handful of nearby homeowners and other residents that frequently complain about noise. Singer Dec. at ¶¶22-25 [describing the County's failed attempt to shutdown Plaintiff's business in 2017; and the 2017 Planning Commission's findings that the FAA has jurisdiction]. In 2017, the Planning Commission agreed with Seaplane that the County lacked jurisdiction over the airline—finding that Seaplane Adventures had not violated any conditions of its use permit, and that the County's jurisdiction is limited, as much of the business is regulated by the Federal Aviation Administration. See RJN, Ex. D, Marin County Planning Commission Resolution No. PC17-007. In fact, as reflected in the Resolution, the County abandoned 3 of its conditions in Seaplane's use permit, based on the preemption doctrine. RJN, Ex. D.

**D. Evidence that there Was No Rational Basis for the County to Intentionally Treat Plaintiff Differently Than Other Similarly-Situated Businesses**

The County was aware that the Gnoss Field airlines were operating for what the County deems "recreational travel." See *supra* section II(C). Plaintiff, like the Gnoss Field Airlines, was properly able to limit interactions and maintain social distance, and had a Site Specific Protection plan in place. Singer Dec. at ¶9. Seaplane only took groups from one household or social bubble, who were already interacting. *Id.* In addition, the County admitted that Aviation services "have low contact intensity" and that "…these services should result in a limited increase in the number of people reentering the workforce and the overall volume of commercial activity and mitigation

9

measures can meaningfully decrease the public health risk." Dkt. 55-7, 62: ¶17; Willis Decl. Ex. 7 (2020.08.31 Order re C-1 Update), ¶17.

The slides from Marin Recovers effort of the County similarly show that Aviation (or "Indoor recreation" and "recreational Travel") were never even considered an industry that required reopening. Sharp Dec., Ex. D, COM007445-COM007446. When the question or alleged "indoor recreation" or "recreational travel" was posed to the Marin Recovers group (i.e. Tony Williams from Gnoss Field Airport) on June 3, 2020, he stated "…in this case it is pretty straight-forward and YES they can resume per recent Health Orders." Dec. of Jenna Brady, Exhibit A, COM008011). It was only *after* Marin County Counsel and Matt Willis discussed the issue that the position was reversed. Brady Dec., Ex. A. There is no evidence that any of other industries were required to be cleared by county counsel and the public health director to remain open.

The Health Orders, on their face, allow aviation to operate, and did not distinguish between "indoor recreation" or "recreational travel." Willis Dec., DKT 55-7, at p.26, section 15(f)(xx).

The State of California Public Health Officer, on April 28, 2020, designated sea plane bases as "Essential Critical Infrastructure," stating that "[t]he Transportation Systems Sector consists of seven key subsectors, or modes…[a]viation includes aircraft, air traffic control systems, and airports, heliports, and landing strips. Commercial aviation services at civil and joint-use military airports, heliports, and *__sea plane bases__*. In addition, the aviation mode includes commercial and **recreational aircraft (manned and unmanned)** and a wide variety of support services, such as aircraft repair stations, fueling facilities, navigation aids, and flight schools." RJN, Exhibit A, p. 10: Section 6. The County has not provided any evidence for a rational basis for shutting down Plaintiff's operations— whether "recreational or otherwise"—and deviating from the State of California's designated "Essential Critical Infrastructure."

The FAA granted Plaintiff an air carrier certificate—finding that it was "properly and adequately…equipped and able to operate safely under" aviation safety rules. As stated by Dennis M. Thorpe, the Manager of Oakland Flight Standards District Office ("FSDO") for the FAA: "[i]n order for an entity to operate as an air carrier, it must receive an air carrier certificate from the FAA.

*See* 49 U.S.C. §§44705, 44711. The FAA grants such a certificate if it finds that the air carrier 'properly and adequately is equipped an able to operate safely under' aviation safety rules set out by statute and by FAA regulations. *Id.* §44705; 14 CFR Part 119. San Francisco Seaplane Tours, Inc. ("SFST") has been granted an air carrier certificate (as noted below, SFST is authorized to do business as 'Seaplane Adventures'). SFST's certificate became effective in 2006..." Dkt. 43-2 at ¶2.

## III.  <u>LEGAL STANDARD</u>

Summary judgment is appropriate only if there is no genuine dispute of material fact. FRCP Rule 56(a). A case is not suitable for summary judgment when there are undisputed facts from which different inferences might be drawn and as to which reasonable minds might differ. *Sankovich vs. Life Ins. Co. of N. Am.*, 638 F.2d 136 (9th Cir. 1981). A dispute about a material fact is genuine if the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248-249 (1986). Further, material facts are those "that might affect the outcome of the suit…[and] the substantive law's identification of which facts are critical and which facts are irrelevant…governs." *Id.* at 248. "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless Inc.,* 509 F.3d 978, 984 (9th Cir. 2007). "Rather, it draws all inferences in the light most favorable to the nonmoving party." *Id.*

## IV.  <u>THE SUBSTANTIVE LAW: THE COUNTY VIOLATED PLAINTIFF'S RIGHT TO EQUAL PROTECTION BY INTENTIONALLY TREATING PLAINTIFF DIFFERENTLY FROM OTHER SIMILARLY SITUATED BUSINESSES.</u>

To succeed on its "class of one" equal protection claim, under 42 U.S.C. § 1983 and the Fourteenth Amendment, Plaintiff must (and can) demonstrate that the County: (1) intentionally (2) treated Plaintiff differently than other similarly situated businesses; (3) without a rational basis. *See Gerhart v. Lake County, Mont.,* 637 F.3d 1013, 1022 (9th Cir. 2011) (citations omitted). Although Plaintiff can show that the County's decision was intentional, it "does not need to show that the County was motivated by subjective ill will." *Id.* citing to *Willowbrook Village v. Olech,* 528 U.S. at 565 [rejecting the interpretation that a plaintiff must allege that the governmental action was the result of subjective ill will in a "class of one" claim].

11

As set forth in full *infra* and *supra*, Plaintiff is alleging, and can prove: (1) that Marin County intentionally treated Plaintiff differently than other airlines certified under Part 135 of the FAA and operating out of Marin County (specifically those airlines operating out of the County-owned airport, Gnoss Field) when it shutdown Plaintiff's business pursuant to the Health Orders; but did not shut down any of these airlines; (2) that there was no rational basis for the County of Marin to create a distinction between application of the Health Orders to Plaintiff; and application of the Health Orders to the Gnoss Field airlines; and (3) in the alternative, the County intentionally treated Plaintiff differently than other similarly-situated businesses (such as charter boats), without a rational basis.

Defendant erroneously claims that Plaintiff's equal protection claim is based on two theories: "(1) that County intentionally enforced its health orders more strictly against Plaintiff than it did against other ***recreational air travel businesses*** that were classified the same way under the health orders; and (2) that County had no rational basis to classify Plaintiff's operations any differently than ***businesses in other industries***, such as charter boats." see Defendant's MP&As, 4:9-14 (emphasis added). As a result, Defendant's moving papers do not provide any evidence that the County had a rational basis for treating Plaintiff differently from the Gnoss Field airlines. Rather, the County only argues that it "…had a rational basis for treating other industries differently." see Dkt. 55 at 21:10-11. The fact that the County did not provide any evidence that the County had a rational basis for intentionally treating Plaintiff differently from the Gnoss Field Airlines should itself preclude summary judgment on the issue. However, as set forth in full *infra* and *supra,* Plaintiff has significant evidence that the County did not have a rational basis for treating it differently from the similarly-situated Gnoss Field airlines.

**A. Plaintiff is an Air Carrier, Certified Under 14 CFR Part 135; and Is Therefore Similarly Situated to Other Air Carriers Certified Under Part 135, Which Does Not Have a Category for "Recreational Air Travel"**

The question of who is similarly situated requires that all inferences be drawn in Plaintiffs' favor, and is generally an issue of fact for the jury. *Bowden v. Potter*, 308 F.Supp.2d 1108, 1117 (N.D. Cal. 2004), citations omitted (question of whether employee is similarly-situated to Plaintiff). Plaintiff has provided significant evidence that it is similarly situated to other Part 135 air carriers

12

operating in Marin County, CA—specifically to the other Gnoss Field air carriers. See detailed outline of evidence *supra* section II(A). Plaintiff's business is not at all comparable to the businesses that Defendant classifies as "other indoor recreation or recreational travel businesses"—namely a skydiving company and a helicopter company. See *supra* section II(B) and *infra* section IV(A)(1) for discussion of evidence distinguishing these companies from Plaintiff.

In its attempt to combat Plaintiff's allegations of similarity with the Gnoss Field air carriers, Defendant has fabricated a non-existent distinction between flying recreationally or otherwise. This is a misnomer; and completely disregards the rules and regulations applicable to the aviation industry by *inter alia* the FAA. As stated by Dennis M. Thorpe, the Manager of Oakland Flight Standards District Office ("FSDO") for the FAA:

> "San Francisco Seaplane Tours, Inc. ("SFST")…authorized to do business as 'Seaplane Adventures'…has also been issued operations specifications ("OpSpecs") describing the kinds of operations it can conduct and certain applicable authorizations, limitations, and procedures. *See* 14 CFR §§119.7, 119.33(a)(3)…The OpSpecs authorize SFST to provide on-demand operations in common carriage pursuant to 14 CRF § 119.21(a)(5) and in compliance with FAA safety regulations set forth in 14 CFR Part 135…"

Dkt. 43-2 at ¶¶2-3. An airline is categorized pursuant to how it is certified pursuant to FAA regulations. Singer Dec. at ¶2; Wait Dec. at ¶8.

As set forth in full *supra* section II(B), both Plaintiff and the Gnoss Field Airlines were (and are) certified under 14 CFR Part 135. Part 135 does not distinguish between "recreational charter flights" and other charter flights. Scanlon Dec. at ¶4; Wait Dec. at ¶8; Singer Dec. at ¶12; see also Dkt. 43-2 at ¶3. So, an airline is similar to another airline that is certified under Part 135, because if both airlines were certified pursuant to Part 135, that tells the FAA that both airlines are authorized to operate on-demand, unscheduled air service. Singer Dec. at ¶15; Wait Dec. at ¶8.

The Gnoss Field airlines are engaged in substantially the same business as Plaintiff—charter flights and flight instruction. Scanlon Dec. at ¶¶4, 9; Singer Dec. at ¶2, 16. For example, during the time the Health Orders were in effect, Scanlon Aviation operated (and operates) for all purposes it was/is permitted to under Part 135: booking and flying charter flights throughout the state and flight

instruction for recreational purposes or otherwise. Scanlon Dec. at ¶4. Scanlon Aviation operates air tours, charter flights, and flight instruction. Scanlon Dec. at ¶5.

1.      Plaintiff is Not Similarly Situated to Skydive Golden Gate or SF Helicopters

Defendant has not provided *any* evidence supporting its argument that Plaintiff is "similarly situated" to either Skydive Golden Gate or SF Helicopters. Rather, Defendant focuses on how enforcement against these three companies (Skydive Golden Gate; SF Helicopters; and Plaintiff) was substantially the same. See Defendant's MP&A, 11:12-14:20; 17:6-19:7). Yet, this is not the standard for evaluating whether a business is "similarly-situated." As Defendant states, "…the only businesses that can be considered 'similarly-situated' to Plaintiff…are those businesses that are 'prima facie identical in all relevant respects.' See *U.S. v. Moore,* 543 F.3d 891, 896 (7th Cir. 2008). Defendant's MP&A, 20:14-16.

Plaintiff is not similarly-situated to either Skydive Golden Gate or SF Helicopters (or other alleged "indoor recreation or recreational travel businesses"— as set forth in full *supra,* section II(B), Plaintiff's business and operations are not comparable to these businesses. Plaintiff does not operate for skydiving—which requires the customer to be physically strapped to the instructor. Singer Dec. at ¶2. Further, Skydive Golden Gate did not operate for air charter or flight instruction. Sharp Dec., Ex. B, Skydive Golden Gate Site Specific Protection Plan, COM002593-COM002599; Singer Dec. at ¶19. In fact, Skydive Golden Gate was not a Part 135 air carrier. Scanlon Dec. at ¶10. Most importantly, the County shut down Skydive Golden Gate's parachute operations, which are not regulated by the FAA—only the flights to take jumpers to altitude are regulated. Scanlon Dec. at ¶10.

Seaplane Adventures, LLC does not own any helicopters and does not provide helicopter tours. Singer Dec. at ¶20. SF Helicopters was also never shut down because it is not based in Marin County. After the Sheriff's Department's visit, it just started flying out of other bases, such as Oakland International Airport and San Francisco International Airport. *Id .* Seaplane, on the other hand, was completely shut down by the County, as it could not operate out of anywhere except where it is based in Sausalito, CA. *Id.* at ¶21.

2.  Even If Plaintiff Is Similarly-Situated to The other "Indoor Recreation" or "Recreational Travel" Businesses (Skydive Golden Gate and SF Helicopters), the Number of Individuals in a Class is Immaterial for Equal Protection Analysis

The County's argument that, because it also shut down two other businesses (SF Helicopters and Skydive Golden Gate), it didn't treat Plaintiff differently from other "similarly situated businesses" rests on the fundamental misconception that a "class of one" equal protection claim exists only when a *single* entity is being targeted by the government. However, the U.S. Supreme Court has categorically rejected such an unduly constricted approach to equal protection jurisprudence, and has explained that "class of one" is simply a term of art. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 , n* (2000) ["We note that the complaint in this case could be read to allege a class of five…[w]hether the complaint alleges a class of one or of five is of no consequence because we conclude that the number of individuals in a class is immaterial for equal protection analysis."].

There can be no dispute that the County's attempt to so narrowly define the types of operations that airlines could conduct such that only three airlines (all of which the County had a history of trying to shutdown/prevent from operating) were prevented from operating under the Health Order is entirely improper. As such, even if the Court does find that Seaplane is similarly situated to Skydive Golden Gate and/or SF Helicopters (which Plaintiff refutes), this still does not preclude an equal protection claim.

**B. There is Significant Evidence that the County Intentionally Treated Plaintiff Differently from other Similarly Situated Businesses.**

Defendant's motion does not address the fact that it clearly treated Plaintiff differently than other Part 135 airlines operating out of Gnoss Field. Rather, Defendant ignores the distinction between its treatment of Plaintiff and its treatment of the other Gnoss Field Airlines, and solely argues that Defendant did not treat other "indoor recreation or recreational travel" businesses [Skydive Golden Gate and SF Helicopters] differently than Plaintiff." (MSJ points and authorities, 19:9-10). Since there is undisputed evidence that proves that Plaintiff is similarly-situated to the Gnoss Field Airlines (see discussion *supra* sections II(A); IV(A)), at a minimum, the County's Motion for Summary Judgment should be denied on the grounds that it failed to present any

15

evidence that there is not a triable issue of fact as to whether the County intentionally treated Plaintiff differently from the other Gnoss Field Airlines. As set forth *infra,* there is significant evidence that the County intentionally treated Plaintiff differently than the Gnoss Field air carriers.

The County attempts to distract from the fact that it treated the Gnoss Field air carriers differently than Plaintiff by arguing that it did not treat Plaintiff differently from "other indoor recreation or recreational travel businesses" (specifically, Skydive Golden Gate and/or SF Helicopters) because it equally "applied and enforced" the health orders against Plaintiff and these companies in a three-step process. Dkt. 55 at 19: 9-18. Not only does this ignore the fact that the County *never* enforced the health orders against the Gnoss Field air carriers; but there is also a genuine issue of material fact as to whether the County actually had such a "three-step process," and as to whether the County used such a "three-step process" to shut down Plaintiff; or any of the other businesses that the County erroneously argues are similarly situated to Plaintiff

There is also ample evidence showing that the County's shutdown of Seaplane was improperly motivated by a desire to close Seaplane to appease a handful of neighbors in the Strawberry neighborhood. For these reasons, and the reasons set forth below, there is a genuine dispute of material fact such that summary judgment is improper and should be denied.

    1.   <u>There is Significant Evidence that Defendant Intentionally Treated Plaintiff Differently Than Other Part 135 Airlines in Marin County—the County Never Shut Down any Airlines Operating Out of the County-Owned Airport.</u>

Seaplane is similarly-situated to the Gnoss Field Airlines (see discussion *supra* section IV(A)); and the Gnoss Field Airlines were never shut down by the County in any capacity (other than the skydiving business—which, as discussed above, is not comparable to Plaintiff). Scanlon Dec. at ¶9, ¶10 ["SkyDive Golden Gate is in no way comparable to Seaplane Adventures."]; Wait Dec. at ¶¶3, 7; Singer Dec. at ¶17. From March 2020 through September 2020, the Gnoss Field airlines were fully operational for flight school, charter flights, etc. and the County did not limit their operations in any way—they flew for all purposes, including "recreation." Wait Dec. at ¶3; Scanlon Dec. at ¶¶4, 7, 9; see also Sharp Dec., Ex. G, Wait Depo Transcript, at 53:19-61:13.

The County argues that it did not receive any complaints about Gnoss Field Airlines operating, but it does not argue that it did not *know* that Gnoss Field Airlines were operating. Even if there were no complaints regarding the Gnoss Field Airlines, the County was aware that the Gnoss-Field airlines were continuing operations out of Gnoss Field Airport, despite the Health Orders, as the County owns Gnoss-Field airport, and has an airport manager on site. RJN, Exhibit B; Scanlon Dec. at ¶9; Wait Dec. at ¶7; see also Sharp Dec., Ex. G, Wait Depo Transcript, at 53:19-61:13.

The County told Plaintiff, but never told the Gnoss Field Airlines that their operations were to be limited under the Health Orders; or that their operations were required to shutdown. Scanlon Dec. at ¶¶7, 9; Wait Dec. at ¶7. Although the County publicized the Health Orders (Dkt. 55-7 (Willis Decl.), ¶¶14-16), the Health Orders, on their face, do not state that aviation was not to operate for "indoor recreation activities or recreational charter flights." See Dkt. 55-7 (Willis Decl.), Exh. B (Marin Public Health Order for May 15, 2020) at section 15(f)(xx) [defining as Essential Businesses, "Airlines...providing transportation services necessary for Essential Activities and other purposes expressly authorized in this Order."]. In contrast, the County sent Sheriffs to Plaintiff's business to shut it down on July 3, 2020—telling Plaintiff that each time it landed, it would be cited. Dkt. 55-3, Heilman Decl, at ¶4; Singer Dec. at ¶11; Dkt. 55-2, Exhibit 16 at 8:14-24. See *supra* section II(C) for a full discussion of this incident. Further, the County sent Plaintiff a detailed letter regarding what operations it could and could not allegedly conduct pursuant to the Health Orders. Sharp Dec., Ex. E. The Gnoss Field Airlines, on the other hand, were not aware of any impact on their operations due to the Health Orders. Scanlon Dec. at ¶¶6-7 ["...we are regulated by the FAA—which considered aviation part of essential infrastructure...[i]t was an [sic] is my understanding that airlines were deemed an 'essential business,' and therefore permitted to fully operate despite the Health Orders."

At a minimum, even though the County allegedly did not receive any complaints about the Gnoss Field Airlines, it was still aware that they were operating. The County knew, for example, that Scanlon Aviation, an airline flying out of Gnoss Field Airport, was operating for charter flights and flight instruction; and that they were not limiting their flights in any way. (see discussion of evidence regarding the County's knowledge of Scanlon Aviation set forth *supra* section II(C)). Aeroclub

Marin was also operating out of Gnoss Field during March-September 2020 for flight instruction and for rental of recreational aircraft—the aircraft would take off and land from the same airport (Gnoss Field). Wait Dec. at ¶6; see also Sharp Dec., Ex. G, Wait Depo Transcript, at 53:19-60:9.

### 2. There is Credible Evidence that Disputes the County's Allegation that it Had a "Process" by Which it Only "Enforced" the Health Orders if there Was a Public Complaint Regarding a Business.

According to Matt Willis, the County didn't know if a business was violating the health order unless and until there was a public complaint. Dkt. 55-7, Willis Dec., at ¶17. Allegedly, the County only initiated contact with businesses to inform them of the terms of the orders and confirm compliance if they received a public complaint about that business. *Id.* According to the County, this was the only way it knew whether or not a business was not complying in good faith with the Health Orders. *Id.* at ¶¶16, 17. Yet, the County did not produce the alleged public complaints regarding Skydive Golden Gate, SF Helicopters, or Plaintiff. Dr. Willis states that complaints were made—but the actual complaints were not produced.

Further, County emails show that it wasn't until the week *after* the Sheriff's shutdown of Plaintiff's business that the County even established a reliable reporting mechanism for public complaints regarding businesses. Sharp. Decl., Ex. C, July 15, 2020 Email from Laine Hendricks COM007508-COM007510 ["…SIPViolation@marincounty.org was created last week and was advertised in our status updates…[t]he purpose of the email is really to track businesses that are in violation of current shelter in place or other public health orders…[w]e're asking for the public to help us identify those businesses that may be out of compliance…[w]e want to be able to fully reopen our local economy…so we're starting with enforcement at the business level."]. The County sent Sheriffs to Plaintiff's business to shut it down on July 3, 2020. Dkt. 55-3, Heilman Decl, at ¶4; Singer Dec. at ¶11.

### 3. The County allowed other sectors to Reopen Based on California State Guidance—But Did Not Use the Same Standard for Plaintiff

The County also allowed sectors to reopen based on guidance from the State of California allowing those sectors to reopen. See, e.g., Dkt. 55-7, Willis Decl. Ex. 7 (2020.08.31 Order re C-1

18

Update) (stating that the basis for addition of various industries (indoor retail businesses: ¶1; pet grooming: ¶2; takeout and outdoor dining: ¶5; cleaning/janitorial services: ¶9; gyms: ¶10; hair salons: ¶11; personal care services:¶12; hotels: ¶13; campgrounds: ¶15; ) was because the "State of California" permitted that industry to reopen). The County's Person Most Knowledgeable ("PMK") concerning this case, Max Korten, testified that "...as the State took on the lead of providing the guidance for businesses, I was working with our public information officer to provide information to businesses about how to comply with the State's order." Dkt. 55-4, Decl. of Brandon Halter, Exhibit 9 (Korten Dep. Tr.) at 17:13-17.

The State of California, via its Public Health Officer, specifically defined "sea plane bases" as "essential critical infrastructure," and therefore allowed Plaintiff to remain open throughout the COVID-19 shutdown orders. RJN, Exhibit A, p. 10: Section 6 (defining "sea plane bases" as essential critical infrastructure). The County still shutdown Seaplane Adventures, LLC, a sea plane base, despite the fact that the State guidelines permitted it to remain open. Singer Dec. at ¶11; RJN, Exhibit A, p. 10: Section 6.

    4.    <u>There is Significant Evidence that the County's Shutdown of Seaplane Was Improperly Motivated</u>

The evidence at trial will show that the County has been attempting to shut down Seaplane since at least 2017, to appease a handful of residents in the Strawberry area that frequently complain about noise. Singer Dec. at ¶¶22-25 [describing the County's failed attempt to shutdown Plaintiff's business in 2017; and the 2017 Planning Commission's findings that the FAA has jurisdiction]. In 2017, the Planning Commission agreed with Seaplane that the County lacked jurisdiction over the airline—finding that Seaplane Adventures had not violated any conditions of its use permit, and that the County's jurisdiction is limited, as much of the business is regulated by the Federal Aviation Administration. See RJN, Ex. D, Marin County Planning Commission Resolution No. PC17-007.

**C.    The County had No Rational Basis for Treating Plaintiff Differently from Other Similarly-Situated Businesses**

Defendant's argument applying a rational basis review is unavailing, as it employs the wrong standard, fails to address Plaintiff's allegations, and contradicts the evidence. As a general matter,

Defendant's analysis erroneously focuses on whether any rational basis existed to reopen some business industries before others, rather than the relevant inquiry of whether there was a "rational basis for the difference in treatment" of Plaintiff. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000); *Gerhart v. Lake Cty., Mont.,* 637 F.3d 1013, 1023 (9th Cir. 2011) ["the rational basis prong of a 'class of one' claim turns on whether there is a rational basis for the *distinction* rather than the underlying government *action.*" (emphasis in original)]. The County did not have any rational basis for treating Plaintiff differently from the Gnoss Field Airlines.

At the outset, the County does not even address the issue of rational basis in this regard. The County does not provide any evidence supporting its decision to override the determinations the State of California and the FAA that Plaintiff was permitted to operate *for all purposes* as part of the "essential critical infrastructure." RJN, Ex. A, p. 10: Section 6 (defining "sea plane bases" as essential critical infrastructure); Thorpe Dec., Dkt. 43-2 at ¶2.

For example, the County does not present any evidence, scientific or otherwise, that chartering a private Seaplane was more likely to spread COVID-19 than chartering a private jet/airplane flying out of Gnoss Field airport. It would be difficult, if not impossible, to justify shutting down a private airplane that flies charters with small groups of no more than 6, from the same social bubble, when those same county residents could choose instead to fly on a large commercial flight out of a large airport; or, apparently, choose to fly via a private charter operated by an airline out of Gnoss Field Airport.

Defendant argues that it had a rational basis for allowing other business industries to reopen before it allowed Plaintiff to fully operate, because it phased reopening of industries out according to "scientific evidence and expert analysis." This completely ignores the fact that the County shut down Plaintiff, but permitted other similarly-situated businesses operating out of the *County-owned* airport to continue operations.

As the evidence shows, the other Gnoss Field air carriers were operating for what the County deems "recreational travel." See *supra* section II(C). The County attempts to distract from this basic fact by arguing that enforcement of the Health Order was the same across all businesses in Marin

PLAINTIFF'S OPP. TO MOT. FOR SUMM. JDGMT. AND REQ. FOR ORAL ARGUMENT
Case No. 20-cv-06222-WHA

County. But, as discussed above, the inquiry is not whether there was a rational basis for enforcement—but whether there was a rational basis for the *distinction* between Plaintiff and other similarly-situated businesses.

The slides from Marin Recovers effort of the County similarly show that Aviation (or "Indoor recreation" and "recreational Travel") were never even considered an industry that required reopening. Sharp Dec., Ex. D, COM007445-COM007446. See full discussion on evidence regarding same *supra* section II(D).

According to Dr. Willis, "The Marin Recovers group discussed the operations of each of these businesses [Seaplane, Skydive Golden Gate, and SF Helicopters] in June 2020, and reached the same conclusion as to each one. Specifically, that operations related to recreational travel inside an aircraft that did not meet the definition of Essential Travel were not allowable under the health orders in effect at that time..." (Willis Dec., 9:21-26). He added that "...County staff informed each business of the terms of the health orders as applied to these operations, and followed up as necessary to ensure compliance." (*Id.* at 9:26-28). Yet, the County *never informed* Gnoss Field air carriers that they were not permitted to operate for "recreational travel" or otherwise.

The County argues that it "publicized" the health orders, and never received any complaints regarding the Gnoss Field air carriers. Yet, this is, again, ignoring the fact that *the County owns the Gnoss Field airport and knows what air carriers operate out of that airport.* Further, the health orders themselves say nothing on their face about "recreational travel" vs. other travel. Rather the Health Orders, on their face, allow aviation to operate, and did not distinguish between "indoor recreation" or "recreational travel." Willis Dec., DKT 55-7, at p.26, section 15(f)(xx). As such, it was only *Plaintiff* who was instructed not to operate and only *Plaintiff* who was forced to shut down. There was no rational basis for the treatment of Plaintiff differently from these other similarly-situated businesses.

1.  The County Failed to Investigate Plaintiff's Business Before Arbitrarily Shutting it Down

The County states that even if these industries were similarly situated, the County's decision to treat these industries differently was based on an evaluation of the unique attributes of each

21

industry as they relate to COVID-19 transmission, according to "scientific evidence and expert analysis"—but there is no evidence that this "analysis" was done for Plaintiff or any other aviation-related business. Although Dr. Willis makes conclusory statements regarding Plaintiff (see Plaintiff's objection *infra* to Dr. Willis' declaration), Defendant has not proffered any concrete facts. In contrast, Plaintiff has significant evidence showing that it was able to safely reopen; and that there is no difference between Plaintiff's operations and those of the Gnoss Field Airlines. See *supra* Sections II(A)(1); II(D).

There is no evidence that the County evaluated: protective measures taken by Seaplane (who had its own SPP); preemption jurisdictional questions; what Seaplane was doing, etc. Plaintiff, like the Gnoss Field Airlines, was properly able to limit interactions and maintain social distance, and had a SPP in place. Singer Dec. at ¶9. Seaplane only took groups from one household or social bubble, who were already interacting. *Id.* In addition, the County *admitted that Aviation* services "have low contact intensity" and that "…these services should result in a limited increase in the number of people reentering the workforce and the overall volume of commercial activity and mitigation measures can meaningfully decrease the public health risk." Dkt. 55-7, 62: ¶17; Willis Decl. Ex. 7 (2020.08.31 Order re C-1 Update), ¶17.

### D. Plaintiff Objects to Dr. Matt Willis' Declaration as He Was Not Designated as the PMK, and Was Not Disclosed as an Expert Witness, and to the Extent That His Declaration Fails to Comply with Local rule 7-5(b).

Plaintiff objects to the use of Dr. Willis' testimony as he was not produced as the person most knowledgeable ("PMK"), and therefore Plaintiff did not have the opportunity to conduct his deposition as the PMK. Plaintiff duly noticed the deposition of the County's PMK FRCP Rule 30(b)(6). Sharp Dec., ¶6, Ex. F. In response, the County produced Max Korten, the Director of Marin County Parks and the General Manager of the Marin County Open Space District. Sharp Dec., Ex. A (Korten Depo Transcript) at 8:13-16. However, it appears that in actuality, Dr. Matt Willis is the PMK concerning "[k]nowledge of the documents, policies, or procedures adopted by the County of Marin with respect to the Marin Health Orders as applied to aviation-related businesses, charter boat businesses, and recreation-related businesses." Sharp Dec., ¶6, Exhibit F at 4:¶12. The County relies

heavily on Dr. Willis' declaration, but has no declaration from Mr. Korten at all—choosing instead to submit only 8 pages from Mr. Korten's deposition transcript (which it only cites to in one paragraph of its moving papers). Dkt. 55 at 9:21-10:2.

To the extent that Dr. Willis provides an expert opinion, Plaintiff objects, as he was not disclosed as an expert pursuant to FRCP Rule 26(a)(2). Plaintiff was not afforded an opportunity to rebut his expert opinions. See, e.g., Dkt. 55-7 at 6:15 ["Again, County's phased approach to allowing individual industries to reopen was at all times based on…my expert judgment and the expert judgment of other public health professionals…"].

Further, "…Any statement made upon information or belief must specify the basis therefore…" N.D. Cal., Civil Local Rule 7-5(b). Dr. Willis' Declaration is rife with statements Dr. based on "his understanding," but the basis for his "understanding" is not specified. Plaintiff objects on this basis, and requests that these portions be stricken. See, e.g., Dkt. 55-7 at 6:17-20; 9:13-15; 9:26

### E. Plaintiff Objects to Dan Jensen's Declaration and Requests that Portions be Stricken.

The Declaration of Dan Jensen submitted in support of Defendant's Motion for Summary Judgment contains many statements that begin with "I understand that…" See Dkt. 55-5 at ¶3; ¶4; ¶6. Mr. Jensen does not specify the basis for his "understanding," as required by Local rule 7-5(b) and, on this basis, Plaintiff objects to his declaration and requests that these portions be stricken.

### F. Plaintiff Anticipates Acquiring Further Evidence, as the County Has Improperly Failed to Produce Documents and Names of Potential Witnesses, Claiming Attorney-Client Privilege—This Issue Will be Dealt with Via a Motion in Limine Prior to Trial

The County has served plaintiff with a Privilege log (Sharp Dec., Ex. H) identifying virtually every and any county official having anything to do with the Health Orders as being unavailable to testify, due to having met, outside the closed session exception (see below), with County Counsel. This argument fails for at least 2 reasons, as will be addressed at prior to trial: (1) County Counsel publicly communicated with Seaplane's owner and counsel, thus waiving the privilege; (see Sharp Dec., Ex. E) and (2) The Ralph M. Brown Act, California's "daylight law", with respect to local government, provides, at Government Code Section 54956.9 (b) that: "For purposes of this chapter,

all expressions of the lawyer-client privilege other than those provided in this section are hereby abrogated. This section is the exclusive expression of the lawyer-client privilege for purposes of conducting closed-session meetings pursuant to this chapter".   Even if privilege attaches, it is overcome due to the federal interest in the enforcement of federal constitutional rights. The trial testimony Plaintiff will seek of the complaining parties, and the County's elected and appointed officials' responses thereto (hidden, to date), are central to the case, and relevant to the County's true motives in shutting down Seaplane. (*North Pacifica, LLC v. City of Pacifica* (2003) 274 F. Supp. 2d 1118).  Plaintiff will demonstrate at trial that County Counsel's meetings and communications with persons and entities seeking to shut down Seaplane for longstanding reasons unrelated to the pandemic constitutes part of the same back-channel pattern that lead to the closing down of Seaplane's business.

## V.    CONCLUSION

The County of Marin has, since at least 2017, engaged in a pattern of seeking to close Seaplane Adventures, for reasons unrelated to any public interest.  In continuation of this pattern, when Mr. Schneider et al, complained during the onset of the pandemic, the County opportunistically used the pandemic as another vehicle to again seek to close Seaplane.  In so doing, the County has violated principles of equal protection.  At minimum, the evidence cited herein compels full and fair adjudication at trial, Defendant County's motion should be denied.


Dated:  September 16, 2021                    LAW OFFICES OF JOHN E. SHARP


By:      _____/s/_____
         John E. Sharp

         Attorney for Plaintiff
         SEAPLANE ADVENTURES, LLC