John E. Sharp, Esq., SBN 085615
LAW OFFICES OF JOHN E. SHARP
24 Professional Center Parkway, Suite 110
San Rafael, CA 94903
Telephone: (415) 479-1645
Facsimile: (415) 295-7020

Attorneys for Plaintiff
SEAPLANE ADVENTURES, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAPLANE ADVENTURES, LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF MARIN, CALIFORNIA; AND DOES 1 THROUGH 10, INCLUSIVE,<br><br>Defendants. | Case No. 20-cv-06222-WHA<br><br>DECLARATION OF JOHN E. SHARP IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT<br><br>Complaint filed: September 2, 2020<br>Trial Date: December 8, 2021<br><br>DATE: October 7, 2021<br>TIME: 8:00AM<br>JUDGE: Honorable William Alsup<br>DEPT.: Courtroom 12, 19th Floor |

I, John E. Sharp, declare as follows:

1. I am an attorney admitted to practice in the Northern District of California. I am the sole proprietor of the Law Offices of John E. Sharp, counsel of record for Plaintiff, Seaplane Adventures, LLC ("Plaintiff" or "Seaplane"), in this matter. I am lead counsel in this matter.

2. This Declaration is being submitted in support of Plaintiff's Opposition to Motion for Summary Judgment. The statements made in this Declaration are based on my personal knowledge.

3. On August 9, 2021, during the deposition of Max Korten, Defendant's counsel, Brandon Halter, and I stipulated on the record to the authenticity of all the documents produced by Defendant during the course of discovery. ("Stipulation as to Authenticity"). Attached as

- 1 -

**Exhibit A** is a true and correct copy of selected excerpts of the transcript of the August 9, 2021 deposition of Max Korten ("Korten Depo. Trans."), who testified as a representative of the County in that deposition pursuant to FRCP Rule 30(b)(6). The Stipulation as to authenticity is located in the Korten Depo. Trans. at 23:13-24:23.

4. The documents produced by Plaintiff during the course of discovery, as to which the Stipulation as to Authenticity applies, are identified as COM000001-COM008378. Attached as exhibits to this declaration are the following documents from that production:

    a. Attached as **Exhibit B** is a true and correct copy of Skydive Golden Gate's Site Specific Protection Plan, identified as COM002593-COM002597.

    b. Attached as **Exhibit C** is a true and correct copy of July 15, 2020 email chain between Laine Hendricks at Marin County and Gloria Olivares at ABC7News Bay Area, identified as COM007508-COM007510.

    c. Attached hereto as **Exhibit D** are true and correct copies of slides from the Marin Recovers group at the County of Marin, identified as COM007445-COM007446.

5. Attached hereto as **Exhibit E** is a true and correct copy of a July 15, 2020 letter from Brian Case, Deputy County Counsel with the County of Marin, to me regarding what operations the County deemed Plaintiff could and could not allegedly conduct pursuant to the Health Orders.

6. Attached hereto as **Exhibit F** is a true and correct copy of Plaintiff's Notice of Deposition of Agent(s) of the County of Marin Pursuant to Federal Rule of Civil Procedure 30(b)(6) ("Notice of Deposition of Person Most Knowledgeable").

7. Attached hereto as **Exhibit G** is a true and correct copy of selected experts of the transcript of the August 25, 2021 deposition of Andrew Wait, who testified as one of Seaplane's retained experts pursuant to FRCP Rule 26. However, these excerpts are being provided as expert testimony but, rather, detail Mr. Wait's personal experience as a pilot who holds a hangar at Gnoss Field Airport.

///

///

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 16th day of September, 2021, at San Rafael, California.

_____

/s/

John E. Sharp

# EXHIBIT A

*CERTIFIED TRANSCRIPT OF:*

**Seaplane Adventures, LLC vs. County of Marin**

**MAX KORTEN - PMK**

**Volume 1**

**Date:  August 9, 2021**

**Reported by:  Amanda Kallas**



117 Paul Drive, Suite A  San Rafael, CA 94903-2010

Main Office:  415-472-2361
depos@westcoastreporters.net    www.westcoastreporters.net

```
 1              UNITED STATES DISTRICT COURT

 2             NORTHERN DISTRICT OF CALIFORNIA

 3

 4
     SEAPLANE ADVENTURES, LLC,        )
 5                                    )
                  Plaintiff,          )
 6                                    )
                  vs.                 )   No. 20-cv-06222-WHA
 7                                    )
     COUNTY OF MARIN, CALIFORNIA,     )
 8                                    )
                  Defendant.          )
 9   _____ )
                                      )
10                                    )
                                      )
11                                    )

12

13

14

15          ZOOM VIDEOCONFERENCE DEPOSITION OF

16                     MAX KORTEN

17            PMK OF COUNT OF MARIN

18             Monday, August 9, 2021

19

20

21

22   Stenographically Reported by:
     AMANDA J. KALLAS
23   CSR No. 13901

24   Job No. 1-M16133

25   PAGES 1 - 94
```

1                  UNITED STATES DISTRICT COURT

2               NORTHERN DISTRICT OF CALIFORNIA

3

4

    SEAPLANE ADVENTURES, LLC,          )

5                               )

                  Plaintiff,         )

6                               )

               vs.                 )    No. 20-cv-06222-WHA

7                               )

    COUNTY OF MARIN, CALIFORNIA,      )

8                               )

               Defendant.         )

9    ——————————————————————————— )

10

11

12

13

14

15      Zoom videoconference deposition of MAX KORTEN, COUNTY

16    OF MARIN, PMK, remotely taken on behalf of Defendant,

17    beginning at 10:01 A.M. and ending at 1:41 P.M. on Monday,

18    August 9, 2021, before Amanda J. Kallas, Certified

19    Shorthand Reporter No. 13901.

20

21

22

23

24

25

```
 1      APPEARANCES:

 2

 3      For Plaintiff:

 4         LAW OFFICES OF JOHN E. SHARP

 5         BY:  JOHN E. SHARP, ESQ.

 6         24 PROFESSIONAL CENTER PARKWAY

 7         SUITE 110

 8         SAN RAFAEL, CALIFORNIA 94903

 9         415-479-1645

10         JOHN@JOHNSHARPLAW.COM

11

12      For Defendant:

13         OFFICE OF COUNTY COUNSEL, COUNTY OF MARIN

14         BY:  BRANDON W. HALTER, DEPUTY, ESQ.

15         3501 CIVIC CENTER DRIVE

16         SUITE 275

17         SAN RAFAEL, CALIFORNIA 94903

18         415-573-6117

19         BHALTER@MARINCOUNTY.ORG

20

21

22

23

24

25
```

```
 1                            INDEX
 2    WITNESS                          EXAMINATION
 3    MAX KORTEN
 4                 (By Mr. Sharp)              6
 5
 6
 7            QUESTIONS INSTRUCTED NOT TO ANSWER
 8                        Page      Line
 9                         43        22
10
11
12
13                        EXHIBITS
14     NUMBER             DESCRIPTION           PAGE
15    Exhibit A      DOCUMENT PRODUCTION BY COUNTY OF    13
16                   MARIN
17
18
19
20
21
22
23
24
25
```

1      Q   And if -- please -- please give your full and

2   complete answers.   If I ask a question and you answer the

3   question, it will be presumed that you have understood the

4   question.

5          Fair enough?

6      A   Yes.

7      Q   Okay.   Is there any medical or other reason,

8   other than my asking a dumb question, that you are not

9   able to hear and respond to my questions here today?

10     A   No.

11     Q   Okay.   Thank you.

12         What is your position with the County of Marin?

13     A   I'm the director of Marin County Parks.

14     Q   Okay.   Does that include open space?

15     A   Correct.   I'm also the general manager of the

16  Marin County Open Space District.

17     Q   Okay.   You look like you're out there in open

18  space right now.   I assume that's a filter.   Making me

19  want to get out of here.

20     A   I wish I was.

21     Q   Yeah.   I'm sure that's true for all of us.

22         How long have you held the position of director

23  of parks and open space?

24     A   I think since 2016.

25     Q   Okay.   How long have you worked for the County of

```
 1        any representative of any business that flies airplanes

 2        out of Gnoss Field?

 3             A    I -- I don't believe so.

 4             Q    And -- excuse me.   Do you know who Aaron Singer

 5        is?

 6             A    Yes.

 7             Q    Okay.

 8             A    I mean, from -- from the documents here, yes.

 9             Q    Right.

10             Do you -- have you ever had any direct contact

11        with Aaron Singer, to the best of your recollection?

12             A    No, I have not.

13             MR. SHARP:   Okay.   And since you mentioned

14        documents, I'm going to take an out-of-context moment here

15        and say, Brandon, I -- I believe we have a stipulation

16        that the 8,000-some-odd documents that have been produced

17        and -- and supplemented, to redact some names, are true

18        and accurate copies of the County's records following a

19        diligent search.

20             Is that a fair characterization of our

21        stipulation?   I don't mean to be examining you, Brandon.

22        I'm just trying to authenticate on the record here.

23             MR. HALTER:   I would add very diligent search to

24        what you just said, but I think, yes.   So we've been

25        discussing through email that we are going to -- I am
```

1    agreeable to a mutual stipulation as to the authenticity

2    of the documents in each other's production.

3         I think I would add to that, John, a -- a request

4    that we discuss later a way to identify the individual

5    documents in your production, because I don't think they

6    were numbered.  And I know that's because a lot of them

7    were produced in native, but you and I can go into the

8    details.

9         I think for purposes of today and I think for the

10   purposes of what you're asking, I will stipulate to a

11   mutual agreement on the authenticity of documents with --

12   with both of us agreeing not -- that we are not waiving

13   any other -- you know, objections as to admissibility

14   beyond that.

15        MR. SHARP:  Sure enough.  Stipulation accepted.

16        MR. HALTER:  Okay.

17   BY MR. SHARP:

18        Q    So, Mr. Korten, apologies for the lawyer talk

19   just aside.  We're just agreeing that the documents that

20   I'm asking you about are authentic.

21        A    Yes.

22        Q    So thank you for your patience.

23        A    No problem.

24        Q    Do you have -- this is -- do you have knowledge

25   of whether there was, you know, an order by the County

**EXHIBIT B**



# COVID-19 Site-Specific Protection Plan (SPP)

**Business Name:**

Skydive Golden Gate

**Facility Address:**

351 Airport Road

This COVID-19 Site-Specific Protection Plan (SPP) was most recently updated on:

6/9/2020

**The person(s) responsible for implementation of this Plan is:**

**Name:**
Michael Knight

**Title:**
CEO

I, Michael Knight          certify that all employees have been provided a copy of it and have reviewed it and received training as required in this SPP.

**Name:**
Michael Knight

**Signature:**

## Individual Control Measures and Screenings

☑ Employees whose work duties can be conducted remotely are doing so and will continue to do so until the Shelter in Place Order is lifted, with particular consideration for employees above the age of 65 and others at increased risk for more severe disease if infected.

☑ All employees have been provided with temperature and/or symptom screenings at the beginning of their shift and all other employees entering the worksite at all times. The individual conducting the temperature/symptom screening will avoid close contact with employees to the extent possible. Both screeners and employees wear face coverings during each screening. Screening follows CDC Guidelines.

☑ Employees are provided with all required protective equipment (i.e., face coverings) and the employer ensures this equipment is worn properly at all times.

☑ Employees are provided with and use protective equipment when offloading and storing delivered goods.

☑ Employees inspect deliveries and perform disinfection measures prior to storing goods in warehouses and facilities.

☑ Face coverings are required when employees are in the vicinity of others. Face coverings are not shared at this worksite.

☑ Employees take reasonable measures to communicate with the public that they should use face coverings.

☑ Employees who are sick or exhibiting symptoms of COVID-19 are directed to stay home and Centers for Disease Control guidelines will be followed for when that employee can return to work.

Types of protective equipment provided to employees at this worksite location include:

Face coverings, hand sanitizer



# COVID-19 Site-Specific Protection Plan (SPP)

**Additional control measures you are implementing at this worksite include:**

Customers and staff will be required to wear face coverings that will not fly off during the skydive (ie buff/neck gaiter). If customer does not have one, they will be required to purchase one from us prior to the skydive. Staff will be provided with the proper equipment.

Signage will be displayed describing proper face coverings, coughing or sneezing into a tissue or your elbow, and proper social distancing.

Hand sanitizer stations will be made available to all customers and staff.

Staff will wear a new set of gloves when gearing up each passenger, and avoid any uncessary or prolonged close contact.

---

## Cleaning and Disinfecting Protocols

☑ Thorough cleaning in high traffic areas is performed regularly. Commonly used surfaces are frequently disinfected.

☑ All shared equipment and touchable surfaces are cleaned and sanitized between each use.

☑ Customer entrances and exits, and points of sale are equipped with proper sanitation products, including hand sanitizer and/or sanitizing wipes

☑ Hand washing facilities will be made available and will stay operational and stocked at all times and additional soap, paper towels, and hand sanitizer are supplied when needed.

☑ Hand sanitizer will be provided where businesses do not have indoor plumbing.

☑ Sanitizing supplies are provided to promote employees' personal hygiene. This may include tissues, no-touch trash cans, hand soap, adequate time for hand- washing, alcohol-based hand sanitizers, disinfectants, and disposable towels.

☑ Cleaning products are used that meet the Environmental Protection Agency (EPA)'s- approved for use against COVID-19 list.

☑ Business hours and/ or other procedures have been modified to provide adequate time for regular, thorough cleaning, product stocking, or other measures.

☑ Employees are provided adequate time to implement cleaning practices before and after shifts.

☑ Hands-free devices have been installed, if possible, including motion sensor lights, contact-less payment systems, automatic soap and paper towel dispensers, and timecard systems.

COM002594



# COVID-19 Site-Specific Protection Plan (SPP)

## Schedule for disinfecting high traffic areas and commonly used surfaces.

Fill in the fields below with the schedule for how often each area is disinfected.

Mark N/A for all that do not apply to your specific worksite and add any that are missing to "Other"

| | |
|---|---|
| Break rooms:<br>Daily | Scanners:<br>NA |
| Bathrooms:<br>Daily | Telephones:<br>Between use |
| Handrails/door handles/counters/shelving:<br>Multiple times per day | Time clocks:<br>NA |
| Shopping carts/baskets:<br>NA | Handwashing facilities:<br>Daily |
| Hand/held devices (payment portals, including ATM PIN pads, stylus):<br>Daily | Custom equipment and tools (i.e., pallet jacks, ladders, supply carts):<br>Between each use |
| Registers:<br>Daily | Conveyor belts:<br>NA |

Others:

Clipboards and pens for waivers will be sanitized between each use.



# COVID-19 Site-Specific Protection Plan (SPP)

**Description of specific operational procedures being implemented to ensure there is adequate time for cleaning/disinfecting:**

Staff will be asked to arrive early and/or stay late to clean appropriately. Customer bookings will be spaced so that adequate time is allowed for equipment sanitation between uses.

**Additional measures that have been taken at this business location:**

## Physical Distancing Guidelines

- ☑ Employee breaks and break rooms are managed to allow employees to eat on premises in designated areas where they can remain 6 feet apart.
- ☑ Customers are not permitted to bring their own bags, mugs, or other reusable items from home.
- ☑ Tape or other markings have been placed at least six feet apart in customer line areas on sidewalks or other walkways near public entrances with signs directing customers to use the markings to maintain distance.
- ☑ All desks or individual workstations are separated by at least six feet or employees otherwise maintain six feet if workspace is limited.

**The following per-person limits have been placed on goods that are selling out quickly to reduce crowds and lines. If not applicable mark as "N/A"**

NA

**Description of the layout of your worksite and how we accomplish physical distancing measures:**

All customer activity prior to and following the skydive will be moved outdoors. Benches will be placed six feet apart with markings and signs noting distance.
We will develop a gear up and training station outside for our staff to prepare the customers for their skydive.



# COVID-19 Site-Specific Protection Plan (SPP)

## Business/Industry (i.e., retail, restaurant) Best Practices

☑ Go to Marin Recovers website and find the list of specific best practices for your type of business and copy/paste them into the section .

☑ If you've implemented additional measures specific to your business type, include them here as well.

**Best Practices for:**

- Ensure all Personnel and clients comply with the Social Distancing Requirements detailed in the Shelter in Place Order.
- Conduct all business and transactions involving members of the public in outdoor spaces in accordance with the requirements for Outdoor Businesses detailed in the Shelter in Place Order.
- With permission from the local jurisdictions, Outdoor Recreation Activity Business may hold classes outdoors in clearly designated and marked locations. Local jurisdictions shall have flexibility to create outdoor space use solutions that work for their communities.
- Any indoor facilities related to Outdoor Recreation Activity Business must be closed to the public.
- Businesses offering classes or guided tours must track names and contact information for all activities and roll must be taken at each class or activity to enable potential tracking of transmission.
- Groups must be limited to a maximum of 10 individuals per group, including any instructors or other Personnel. Youth under 18 years of age must be accompanied by an adult.
- Participants will be encouraged to provide their own equipment to the greatest extent possible. Any rental or business-provided equipment will be sanitized after each use and follow Industry-Specific Guidance of the Health Officer for Recreational Equipment Rental Businesses.
- Equipment issued to a client will only be used by that client. Equipment will not be shared during a rental or activity.
- Clients will provide their own transportation to and from the activity site.
- No congregating will be permitted before or after class.
- Clients will provide or purchase their own water bottles, sunscreen and personal food.
- Whenever possible, businesses should use markers to designate spots for each participant, and throughout class remind participants to stay in their marked area.
- Personnel shall screen all participants for symptoms before beginning any outdoor activity. The individual conducting the screening will avoid close contact with participants. Both screener and participant will wear face coverings during screening and throughout the remainder of activity as required by the Health Officer Order for Face Coverings.

COM002597

# EXHIBIT  C

| From: | Hendricks, Laine |
|---|---|
| To: | TV ABC7 - Gloria Olivares; Ainsworth, Brent; Willis, Matthew; Nicholson, Angela |
| Cc: | #KGOTV Assignment Desk; Kabasakalis, Deborah |
| Subject: | RE: Good afternoon Re: Complaints - Please reply all, thank you |
| Date: | Wednesday, July 15, 2020 4:37:44 PM |
| Attachments: | image002.png |

Hello, Gloria:

Yes, that's true, and at this point, we've received about 80-90 submissions to the new reporting mechanism.

You asked about city level data and we're not at the point where we've crunched all the numbers to be able to say the worst offenders or located in Tiburon versus Corte Madera versus Novato. That's what I was referring to.

Forgive me: I thought you were looking for an interview, so I apologize for failing to respond with answers upfront:

- SIPViolation@marincounty.org was created last week and was advertised in our status updates. It was highlighted at yesterday's board of supervisors meeting, hence the Marin IJ article
- The purpose of the email is really to track businesses that are in violation of current shelter in place or other public health orders. This is not a mechanism for neighbors to rat-out other neighbors.
- We're asking for the public to help us identify those businesses that may be out of compliance so all areas of commerce are safe for both employees and customers. Marin County was added to the State's watch list on July 2 due to a rise in COVID-19 cases and hospitalizations, and community transmission is still high. We want to be able to fully reopen our local economy as well as provide a safe environment for residents to dine/shop/do business, and so we're starting with enforcement at the business level.

I hope this helps, Gloria! Sorry for the mix-up on my end. Let me know if you have any additional questions.
-Laine


From: Olivares, Gloria <Gloria.Olivares@abc.com>
Sent: Wednesday, July 15, 2020 4:09 PM
To: Hendricks, Laine <LHendricks@marincounty.org>; Ainsworth, Brent <BAinsworth@marincounty.org>; Willis, Matthew <MWillis@marincounty.org>; Nicholson, Angela <ANicholson@marincounty.org>
Cc: #KGOTV Assignment Desk <KGOTV.Desk@disney.com>; Kabasakalis, Deborah <Deborah.Kabasakalis@abc.com>
Subject: RE: Good afternoon Re: Complaints - Please reply all, thank you
Importance: High

Hi Laine,

Sorry for the late response, but we saw that Marin Independent Journal had a number quoted. Here is the 3 paragraphs from Marin Independent Journal By early afternoon Tuesday, 30 violations had been reported, said Marin County Assistant Administrator Angela Nicholson.

The violations cited included businesses not enforcing social distancing and mask wearing, short-term rentals operating without authorization and individuals not wearing masks while walking on outdoor paths, Nicholson said.

County officials will meet on Friday to discuss what type of action it will take if it confirms that violations have occurred. Nicholson said since the shelter-in-place order went into effect in March, the county has had the authority to fine people up to $1,000 per violation.

Seaplane Adventures, a Mill Valley sightseeing business, stopped flying over a week ago after the Marin County Sheriff's Office responded to citizen complaints by threatening to fine the business $1,000 per flight if it continued operations. Up until now, county officials had advised anyone seeing a violation to call the sheriff's department.

Here is the link to the story :
https://www.marinij.com/2020/07/14/state-prompts-marin-to-get-serious-about-covid-19-enforcement/

**From:** Hendricks, Laine [mailto:LHendricks@marincounty.org]
**Sent:** Wednesday, July 15, 2020 2:12 PM
**To:** Olivares, Gloria <Gloria.Olivares@abc.com>; Ainsworth, Brent <BAinsworth@marincounty.org>; Willis, Matthew <MWillis@marincounty.org>; Nicholson, Angela <ANicholson@marincounty.org>
**Cc:** #KGOTV Assignment Desk <KGOTV.Desk@disney.com>; Kabasakalis, Deborah <Deborah.Kabasakalis@abc.com>
**Subject:** RE: Good afternoon Re: Complaints - Please reply all, thank you

Hi, Gloria:

At this point, we're pretty early in the process of collecting reported violations via our new reporting mechanism, so we do not yet have a read on which towns or businesses are high violators. We could offer you high-level overview of the process thus far (when created, why, intended purpose, hopeful outcomes), but we don't yet have enough data to really dive into community specific questions.

If that works for you, I can answer those questions via phone or Zoom.  Just let me know what you have in mind.

**From:** Olivares, Gloria <Gloria.Olivares@abc.com>

**Sent:** Wednesday, July 15, 2020 2:06 PM
**To:** Hendricks, Laine <LHendricks@marincounty.org>; Ainsworth, Brent
<BAinsworth@marincounty.org>; Willis, Matthew <MWillis@marincounty.org>; Nicholson, Angela
<ANicholson@marincounty.org>
**Cc:** #KGOTV Assignment Desk <KGOTV.Desk@disney.com>; Kabasakalis, Deborah
<Deborah.Kabasakalis@abc.com>
**Subject:** RE: Good afternoon Re: Complaints - Please reply all, thank you
**Importance:** High

Good afternoon,

Hope all is well.  We wanted to find out who would we need to reach out to regarding violator complaints during the pandemic?  We wanted to see how many complaints Marin County has received at this time? What town or city has had the most complaints?  Which has received the least?  When was this complaint email introduced?  Any other information that might be of importance that you would like to inform us about?

Thank you for your time,

Gloria

GLORIA OLIVARES • ASSIGNMENT EDITOR
900 Front Street • San Francisco, CA 94111
W: (415) 954-7321 •
Follow Breaking News on Twitter: @ABC7NewsBayArea

Email Disclaimer: https://www.marincounty.org/main/disclaimers

**EXHIBIT D**

Based on the work of Marin Recovers over the last two weeks, one benefit of this process is that it uncovers different industry types that need to be considered. It appears most or all types are covered by Industry Advisor working groups or can be handled on a case by case basis.

*"Working with the retail industry group has been really smooth so far. It feels like they are doing everything they can to get us in a position to be able to open our stores to customers once the state allows for it. I like the mix of retailers they brought together, there's a nice diversity geographically, and from large to small. And they've been very responsive, which is especially appreciated right now given so much daily uncertainty."* - Will Hutchinson, Owner, Prooflab

## MARIN RECOVERS INDUSTRY ADVISORS WORK GROUP OVERVIEW

Below is a list of working group leads, breakdown of industries, and contact information.

| Work Group | Lead | Email |
|---|---|---|
| **Arts** (ex: music, dance and theater performance professionals, museums, art studios, and galleries) | Gabriella Calicchio & Libby Garrison | GCalicchio@marincounty.org & Lgarrison@marincounty.org |
| **Agriculture** (ex: farms, dairies, ranching, and agricultural regulators) | David Lewis | djllewis@ucanr.edu |
| **Construction** (ex: residential, commercial, public works projects) | Brian Crawford | bcrawford@marincounty.org |
| **Education** (ex: public and private schools and universities) | Mary Jane Burke | mjburke@marinschools.org |
| **Faith-based Organizations** (ex: churches, synagogues, Islamic centers, interfaith organizations, and meditation centers) | Chantel Walker | CWalker@marincounty.org |

COM007445

| | | |
|---|---|---|
| **General Office Space** (ex. office or communal work setting) | David Speer | DSpeer@marincounty.org |
| **Health/Dentistry** | Kat Knecht | KKnecht@marincounty.org |
| **Hotels/Motels/Hospitality** (ex. hotels, motels, and short-term rentals such as Airbnb) | Gabriella Calicchio & Christine Bohlke | GCalicchio@marincounty.org; christine@visitmarin.org |
| **Libraries** | Bonny White | bnwhite@marincounty.org |
| **Parks & Outdoor Activities** (ex. public parks, golf courses, tennis clubs, YMCA) | Ashley Howe | ahowe@tcmmail.org |
| **Personal Services** (ex. salons and barbershops, body art, tanning salons, dog training, massage therapy, small gyms and fitness studios, spas, hair removal services, and some types dog grooming) | Alex Porteshawver | APorteshawer@marincounty.org |
| **Real Estate** (ex. real estate agents, assessors and recorders, notary services, surveyors, and leasing offices) | Shelly Scott | sscott@marincounty.org |
| **Restaurants** (Ex. restaurants, cafes, cafeterias, and other food service venue | Rebecca Ng & Thomas Lai | RNg@marincounty.org; TLai@marincounty.org |
| **Retail** (Ex. clothing, jewelry, auto dealerships, gas stations) | Danielle O'Leary & Cristine Alilovich | Cristine.Alilovich@cityofsanrafael.org; danielle.oleary@cityofsanrafael.org |
| **Science & Technology** | Kevin Wright | Kwright@marincounty.org |

COM007446

# EXHIBIT E



COUNTY OF MARIN

Brian E. Washington
COUNTY COUNSEL

Renee Giacomini Brewer
ASSISTANT COUNTY COUNSEL

Jenna J. Brady
CHIEF DEPUTY COUNTY COUNSEL

Patrick M. K. Richardson
Stephen R. Raab
Steven M. Perl
Brian C. Case
Kerry L. Gerchow
Tarisha K. Bal
Deidre K. Smith
Brandon W. Halter
Sarah B. Anker
Jacy C. Dardine
Kate K. Stanford

DEPUTIES

Colleen McGrath
ADMINISTRATIVE SERVICES
OFFICER

Marin County Civic Center
3501 Civic Center Drive
Suite 275
San Rafael, CA 94903
415 473 6117 T
415 473 3796 F
415 473 2226 TTY
www.marincounty.org/cl

July 15, 2020

John Sharp
24 Professional Center Parkway, Suite 110
San Rafael, CA 94903
*Via email to john@johnsharplaw.com and US Mail*

Dear Mr. Sharp,

On behalf of the County of Marin, I am writing in response to your July 10, 2020 letter to County Counsel Brian Washington entitled "The County's Impermissible Shutdown of Seaplane Adventures." I write to (1) provide further context and background regarding the County's May 15, 2020 Shelter-in-Place Order (or "Order"); (2) clarify that the County hasn't entirely "shut down" Seaplane Adventures operations; (3) provide legal authority to refute your federal preemption argument; and (4) state the County's position that is irrelevant that Seaplane Adventures is registered with the FAA as an "airline."

### The Health Officer Order

I noticed that you refer to a "shutdown" of Seaplane Adventures three separate times in you July 10, 2020 letter. Based on my understanding of the enforcement history between Marin County Sheriff's Office and your client, there hasn't been any sort of complete "shutdown." Thus, I seek to clarify the enforcement history.

Rather, the Marin County Sheriff's Office issued a written warning to Mr. Singer on June 15, 2020. In that warning, the Sheriff's Office was clear that certain "essential travel" flights could continue under the order.

Specifically, Sgt. Brenton Schneider explained, "to the extent your business provides flights for limited, authorized travel purposes (i.e. not sightseeing or leisure travel to Lake Tahoe), you can provide passengers with flights that allow for 'essential travel' under the County's May 15, 2020 Shelter in place order." Here is the Order's definition of "essential travel," which Sgt. Schneider already supplied to your client:

    i.    Travel related to the provision of or access to Essential Activities, Essential Governmental Functions, Essential Businesses, Minimum Basic Operations, Outdoor Activities, Outdoor Businesses, Additional Activities, and Additional Businesses.

    ii.   Travel to care for any elderly, minors, dependents, or persons with disabilities.

iii. Travel to or from educational institutions for purposes of receiving materials for distance learning, for receiving meals, and any other related services.

iv. Travel to return to a place of residence from outside the County.

v. Travel required by law enforcement or court order.

vi. Travel required for non-residents to return to their place of residence outside the County. Individuals are strongly encouraged to verify that their transportation out of the County remains available and functional prior to commencing such travel.

vii. Travel to manage after-death arrangements and burial.

viii. Travel to arrange for shelter or avoid homelessness.

ix. Travel to avoid domestic violence or child abuse.

x. Travel for parental custody arrangements.

xi. Travel to a place to temporarily reside in a residence or other facility to avoid potentially exposing others to COVID-19, such as a hotel or other facility provided by a governmental authority for such purposes.

You mention in your letter that Seaplane Adventures operates "charter flights." I further observe that Seaplane Adventures website advertises charter service from Sausalito to Tahoe City. The screenshot below from your client's website (seaplane.com) was downloaded on July 13, 2020, advertising charter service from "Sausalito to Tahoe City":



As such, under the current Shelter in Place Order, Mr. Singer could fly doctors and health care professionals to Tahoe City to assist with treating the pandemic. That is just one hypothetical example of "essential travel." There are several other categories of "essential travel," set forth above.

You also state that "the County's suspension of Seaplane's use permit are [sic] without legal merit and should be withdrawn." As you know, no suspension of the Seaplane's use permit has occurred. The Sheriff has directed that the operator cease flights that violate the Public Health Officer's Order.

Furthermore, you mention that Seaplane Adventures conducts "fire spotting; search and rescue; bay conservation research support; marine conservation support; and emergency cargo transport to remote locations." From what I understand, Mr. Singer has never been told that he cannot do any of the items on this list. Mr. Singer was only told that he couldn't do "leisure travel" or sightseeing flights.

Finally, the fact that Mr. Singer may fly a number of allowed flights (hypothetically, for example, flying a group of doctors to Lake Tahoe) does not save his sightseeing operations. You have analogized to Target being allowed to sell video games. Your analogy is factually dissimilar and overlooks the text of the order. While Paragraph 15(f)(2) governs stores like Target, Paragraph 6 of the Order more generally requires businesses to "scale down" to their allowed operations.[1]

### The Federal Aviation Act and Preemption

In claiming that the Shelter in Place Order in question is aimed at the regulation of the federal government's "pervasive scheme to regulate an area of activity," you rely in great measure on the implied preemption holding of *City of Burbank v. Lockheed Air Terminal*, 411 U.S. 624 (1973). But, *City of Burbank* does not extend to local laws which, like the Shelter-in-Place Order, regulate the containment of a global pandemic and not the flight or noise of aircraft. In other, similar contexts, courts have limited the application of *City of Burbank*.

To name one, in *Gustafson v. City of Lake Angelus*, 76 F.3d 778 (6th Cir., 1996) the plaintiff claimed that ordinances which prohibited the operation of seaplanes on a lake near his home were preempted by the Federal Aviation Act. The district court agreed and granted summary judgment in favor of the plaintiff on the basis of *City of Burbank*. The Sixth Circuit reversed:

> *[I]n the present case, an examination of the Federal Aviation Act and regulations concerning seaplanes and aircraft landing sites indicates that*

---

[1] Establishments like Target that sell "multiple categories" of products are specifically addressed in Paragraph 15(f)(2) of the Order: "Grocery stores, certified farmers' markets, farm and produce stands, supermarkets, food banks, convenience stores, and other establishments engaged in the retail sale of unprepared food, canned food, dry goods, non-alcoholic beverages, fresh fruits and vegetables, pet supply, fresh meats, fish, and poultry, as well as hygienic products and household consumer products necessary for personal hygiene or the habitability, sanitation, or operation of residences. **The businesses included in this subparagraph (ii) include establishments that sell multiple categories of products provided that they sell a significant amount of essential products identified in this subparagraph, such as liquor stores that also sell a significant amount of food.**" Thus, as expressly authorized by the Order, a store like Target can sell video games. More generally, and as applicable to a business like Seaplane Adventures, Paragraph 6 of the Order requires businesses to scale down to their allowed components *only*: "Except as otherwise provided in Appendix C-1, businesses that include an Essential Business or Outdoor Business component at their facilities alongside other components must, to the extent feasible, scale down their operations to the Essential Business and Outdoor Business components only; provided, however, mixed retail businesses that are otherwise allowed to operate under this Order may continue to stock and sell non-essential products.

*the designation of plane landing sites is not pervasively regulated by federal law, but instead is a matter left primarily to local control.* In contrast to the pervasive scheme of federal regulation of aircraft noise found in *Burbank,* we fail to identify any language in the Act, the regulations promulgated pursuant to the Act, or the legislative history of the Act, which by implication preempts enforcement of the City's ordinances....

*Id.*, 76 F.3d at 784 (emphasis added).

Here too, just like the local regulation of seaplane landing sites in *Gustafson*, the local regulation of businesses to prevent the spread of COVID-19 is a "mater left primarily to local control." A California Public Health Officer has broad authority to order activities within the County to stop in order to prevent the spread of the pandemic. (Cal. Health and Safety Code Sections 101040, 101085, and 120175.) You cite the fact that the FAA has issued a number of exemptions and guidelines to facilitate air transportation during the COVID-19 pandemic. While true, this doesn't change the preemption analysis, which is mainly rooted in the text of the Federal Aviation Act itself. The Shelter-In-Place order has nothing to do with the pervasive scheme for regulating aircraft flight or noise found in *Burbank*.

### Seaplane Adventures as "Airline"

Even if Seaplane Adventures is considered an "airline" under the Order (which it is not), it wouldn't change the result here. Paragraph 15(f)(xx) allows for the continued operation of "Airlines, taxis, rental car companies, rideshare services (including shared bicycles and scooters), and other private transportation providers *providing transportation services* necessary for Essential Activities and other purposes expressly authorized in this Order [emphasis added]."

When running sightseeing tour flights above the Bay Area, Seaplane Adventures isn't providing "transportation services." Patrons return to the same place they took off from – Sausalito; they are not transported. Thus, the scenic tours aren't an allowed activity under the Order. To the extent Seaplane Adventures runs charter flights to Tahoe, those flights would be allowed so long as they are done for authorized purposes (i.e. for "essential travel").

Please contact me if you would like to further discuss this matter.

Sincerely,

Brian Case
Deputy County Counsel

# EXHIBIT F

John E. Sharp, Esq., SBN 085615
Gillian Edmonds, Esq. (SBN 293109)
LAW OFFICES OF JOHN E. SHARP
24 Professional Center Parkway, Suite 110
San Rafael, CA 94903
Telephone: (415) 479-1645
Facsimile: (415) 295-7020

Attorneys for Plaintiff
SEAPLANE ADVENTURES, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAPLANE ADVENTURES, LLC, a California Limited Liability Company,<br><br>          Plaintiff,<br><br>vs.<br><br>COUNTY OF MARIN, CALIFORNIA; AND DOES 1 THROUGH 10, INCLUSIVE,<br><br>          Defendants. | Case No. **20-06222 WHA**<br><br>PLAINTIFF SEAPLANE ADVENTURES, LLC NOTICE OF DEPOSITION OF COUNTY OF MARIN PERSON MOST KNOWLEDGEABLE PURSUANT TO RULE 30(b)(6) and RULE 34(a)(1) REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE<br><br>Date: July 15, 2021<br>Time: 10:00 a.m.<br>Location: Via Zoom<br><br>Complaint filed: September 2, 2020 |

TO DEFENDANT AND THEIR COUNSEL OF RECORD:

NOTICE IS HEREBY GIVEN THAT, pursuant to Rule 30(b)(6) of the Federal Rules of Court, you

are hereby commanded to produce for oral deposition the agent or agents of County of Marin, on

July 15, 2021, to testify on the subjects set forth below. The deposition will commence at 10:00 a.m.,

via remote videoconference at the following link:

**https://zoom.us/j/3309902008?pwd=ZkZlYlhYditDMTlnK2l4RzFVUnpWQT09, or another**

**location and/or link, if mutually agreed to in advance by counsel for the parties.**

- 1 -

PLAINTIFF SEAPLANE ADVENTURES, LLC NOTICE OF DEPOSITION OF COUNTY OF MARIN PERSON
MOST KNOWLEDGEABLE PURSUANT TO RULE 30(b)(6) and RULE 34(a)(1) REQUEST FOR
PRODUCTION OF DOCUMENTS, SET ONE

Case No. 20-cv-06222-WHA

The deposition will be taken remotely before a deposition officer, who is authorized by law to administer oaths, by stenographic means, and will continue from day to day, Sundays and holidays excluded, at the same place, until completed. Notice is further given that the deposition may be recorded by audio-visual means in addition to stenographically.

Please take further notice that Plaintiff hereby simultaneously demands that COUNTY OF MARIN produce any documents not already produced that are responsive to the requests set forth below.

## CATEGORIES OF EXAMINATION

Pursuant to Federal Rule of Civil Procedure 30(b)(6), the County of Marin shall designate and produce at the deposition one or more of its officers, directors, managing agents, employees, or agents ("agent") most qualified to testify on its behalf as to the matters described below. Examination of the designated agent or agents will be directed to, but not limited to, the person most knowledgeable regarding:

1. Knowledge of communications between the County (including, but not limited to, Supervisor Kate Sears) and anyone else (including but not limited to any resident of Marin County (including but not limited to: William/Bill Schneider, John Edgcomb, and Gusts Karlsons), or any representative of such resident) regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present.

2. Knowledge of communications between Supervisor Kate Sears and the Marin County Community Development Agency (including but not limited to: the Marin County Planning Department, Marin County Code Enforcement Division, and Marin County Environmental Health Services) regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present.

3. Knowledge of communications between the Marin County Community Development Agency (including but not limited to: the Marin County Planning Department, Marin County Code Enforcement Division, and Marin County Environmental Health Services)

PLAINTIFF SEAPLANE ADVENTURES, LLC NOTICE OF DEPOSITION OF COUNTY OF MARIN PERSON MOST KNOWLEDGEABLE PURSUANT TO RULE 30(b)(6) and RULE 34(a)(1) REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE

Case No. 20-cv-06222-WHA

and anyone else regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present.

4. Knowledge of communications between the Marin County Department of Public Works (including but not limited to: the Engineering Division, Land Use Division, Flood Control Division) and anyone else regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present.

5. Knowledge of communications between Supervisor Kate Sears and the Marin County Sheriff's Department regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present.

6. Knowledge of communications between the Marin County Sheriff's Department and anyone else regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present.

7. Knowledge of communications between Marin County and the Federal Aviation Administration regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present.

8. Knowledge of communications between Matt Willis and any department of the County of Marin regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present.

9. Knowledge of communications between Matt Willis and any anyone else (including but not limited to any resident of Marin County, or representative of a resident of Marin County) regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present.

10. Knowledge of communications between the County of Marin and any aviation-related business in the County of Marin regarding the Marin County Health Orders ("Marin County Health Orders" or "Marin Health Orders" means and refers to the health orders issued by the County of Marin that are referenced in the First Amended Complaint

- 3 -

PLAINTIFF SEAPLANE ADVENTURES, LLC NOTICE OF DEPOSITION OF COUNTY OF MARIN PERSON MOST KNOWLEDGEABLE PURSUANT TO RULE 30(b)(6) and RULE 34(a)(1) REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE

Case No. 20-cv-06222-WHA

("FAC"), including the March Health Order, Health Order, Health Orders, and Marin Order, as well as any and all appendices, attachments, exhibits, predecessors, or updates thereto).

11. Knowledge of internal communications (including but not limited to: Slack communications) within the County of Marin regarding the operations of Seaplane Adventures, LLC or any other aviation-related business from January 1, 2017 to the present.

12. Knowledge of the documents, policies, or procedures adopted by the County of Marin with respect to the Marin Health Orders as applied to aviation-related businesses, charter boat businesses, and recreation-related businesses.

13. Knowledge of the documents, policies, or procedures adopted by the County of Marin with respect to the Marin Health Orders as applied to the operations of Seaplane Adventures, LLC.

14. Knowledge of the basis, documents, policies, or procedures used by the County of Marin in determining that Seaplane Adventures, LLC's operations were limited under the Marin Health Orders, distinct from other aviation-related businesses, charter boats, and/or recreation-related businesses.

15. Knowledge of the basis, documents, policies, communications, or procedures (including but not limited to: text messages, memoranda, discussions) leading to the adoption of Appendix C-1 (adopted August 31, 2020) to the Marin Health Orders.

16. Knowledge of the events occurring at Seaplane Adventures, LLC on or between June 26, 2020 through July 5, 2020 in which a Marin County Sheriff's deputy was sent to Seaplane Adventures, LLC to inform the business (via it's CEO Aaron Singer) that it was not permitted to operate per the Marin Health Orders, and to threaten fines and/or imprisonment for any violation/s.

PLAINTIFF SEAPLANE ADVENTURES, LLC NOTICE OF DEPOSITION OF COUNTY OF MARIN PERSON MOST KNOWLEDGEABLE PURSUANT TO RULE 30(b)(6) and RULE 34(a)(1) REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE

Case No. 20-cv-06222-WHA

**17.** Knowledge of the legal or other authority, and any documents, basis, policies, communications, or procedures, leading to Marin County's decision to send a Marin County Sheriff's deputy, on or between June 26, 2020 through July 5, 2020, to Seaplane Adventures, LLC to inform the business (via it's CEO Aaron Singer) that it was not permitted to operated per the Marin Health Orders, and to threaten fines and/or imprisonment for any violation/s.

**18.** Knowledge of any complaints made to the County of Marin between January 1, 2017 through the present regarding the operations of Seaplane Adventures, LLC.

**19.** Knowledge of any information related to enforcement of the Marin Health Orders.

**20.** Knowledge of any information included in the County of Marin's January 29, 2021 initial disclosures.

**21.** Knowledge of any information included in the County of Marin's discovery responses in the present lawsuit.

## REQUESTS FOR PRODUCTION OF DOCUMENTS UNDER RULE 34 AT RULE 30(B)(6) DEPOSITION

## DEFINITIONS

22. The terms **"DOCUMENT"** or **"DOCUMENTS"** is defined to have the same meaning and to be equal in scope to the terms "documents" and "electronically stored information" as used in Federal Rule of Civil Procedure 34(a).

23. The terms **"YOU"** or **"YOUR"** means and refers to Defendant County of Marin, including but not limited to any of its elected officials, appointed officials, employees, agents, officers, employees, insurance companies, attorneys, sheriff, accountants, investigators, any person or entity acting on behalf of the County of Marin or subject to its direction or control.

24. The term **"MARIN COUNTY HEALTH ORDERS"** means and refers to the health orders issued by the County of Marin that are referenced in the First Amended Complaint

PLAINTIFF SEAPLANE ADVENTURES, LLC NOTICE OF DEPOSITION OF COUNTY OF MARIN PERSON MOST KNOWLEDGEABLE PURSUANT TO RULE 30(b)(6) and RULE 34(a)(1) REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE

Case No. 20-cv-06222-WHA

("FAC"), including the March Health Order, Health Order, Health Orders, and Marin Order, as well as any and all appendices, attachments, exhibits, predecessors, or updates thereto.

25. The terms **"MARIN COUNTY AIRPORT"** or **"GNOSS FIELD AIRPORT"** means and refers to the Marin County Airport, commonly known as Gnoss Field Airport, located at 451 Airport Road, Novato, CA 94945

## REQUEST FOR PRODUCTION NO. 1:

Any and all emails or other **DOCUMENTS** evidencing any communications between **YOU** and any resident of Marin County, California, or any representative of such resident, between January 1, 2017 and the present, regarding the operations of Seaplane Adventures, LLC.

## REQUEST FOR PRODUCTION NO. 2:

Any and all **DOCUMENTS** that **YOU** relied upon in determining that Charter Boats were permitted to operate, for sight-seeing tours or otherwise, under the June 2020 **MARIN HEALTH ORDER**.

## REQUEST FOR PRODUCTION NO. 3:

Any and all emails or other **DOCUMENTS** evidencing any communications between **YOU** and any Federal, State, or Local agency between January 1, 2017 and the present, regarding the operations of Seaplane Adventures, LLC.

## REQUEST FOR PRODUCTION NO. 4:

Any and all emails or other **DOCUMENTS** evidencing any communications between any personnel of the County of Marin (including but not limited to any Marin County elected official, appointed official and/or employee) and any other personnel of the County of Marin (including but not limited to any Marin County elected official, appointed official, and/or employee), between January 1, 2017 and the present regarding the operations of Seaplane Adventures, LLC.

- 6 -

PLAINTIFF SEAPLANE ADVENTURES, LLC NOTICE OF DEPOSITION OF COUNTY OF MARIN PERSON MOST KNOWLEDGEABLE PURSUANT TO RULE 30(b)(6) and RULE 34(a)(1) REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE

Case No. 20-cv-06222-WHA

**REQUEST FOR PRODUCTION NO. 5:**

Any and all emails or other **DOCUMENTS** evidencing any communications between **YOU** and the Marin County Community Development Agency (including but not limited to the Code Enforcement Division, Planning Department, Department of Public Works, Engineering Department, and/or Environmental Health Services) between January 1, 2017 and the present, regarding the operations of Seaplane Adventures, LLC.

**REQUEST FOR PRODUCTION NO. 6:**

Any and all emails or other **DOCUMENTS** evidencing any communications between **YOU** and the Marin County Counsel between January 1, 2017 and the present, regarding the operations of Seaplane Adventures, LLC.

**REQUEST FOR PRODUCTION NO. 7:**

Any and all emails or other **DOCUMENTS** evidencing any communications between **YOU** and the former Supervisor Kate Sears between January 1, 2017 and the present, regarding the operations of Seaplane Adventures, LLC.

**REQUEST FOR PRODUCTION NO. 8:**

Any and all emails or other **DOCUMENTS** evidencing any communications between **YOU** any entity or individual operating out of **GNOSS FIELD AIRPORT** between January 1, 2020 and the present regarding the **MARIN HEALTH ORDERS** (including, but not limited to, any **DOCUMENTS** regarding the impact of the **MARIN HEALTH ORDERS** on operations at **GNOSS FIELD AIRPORT**).

**REQUEST FOR PRODUCTION NO. 9:**

Any and all **DOCUMENTS YOU** relied upon, if any, in making the determination that the **MARIN HEALTH ORDERS** prevented Seaplane Adventures, LLC from fully operating.

**REQUEST FOR PRODUCTION NO. 10:**

Any and all **DOCUMENTS YOU** relied upon, if any, in amending the **MARIN HEALTH ORDERS** to include the "August 31, 2020 Appendix C-1: Additional Businesses

PLAINTIFF SEAPLANE ADVENTURES, LLC NOTICE OF DEPOSITION OF COUNTY OF MARIN PERSON MOST KNOWLEDGEABLE PURSUANT TO RULE 30(b)(6) AND RULE 34(a)(1) REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE

Case No. 20-cv-06222-WHA

Permitted to Operate" which expressly allowed for the operation of all aviation related services subject to the guidance set forth therein.

**REQUEST FOR PRODUCTION NO. 11:**

Any and all **DOCUMENTS** evidencing that the spread of COVID-19 was slowed by preventing **SEAPLANE ADVENTURES, LLC** from fully operating under the **MARIN HEALTH ORDERS.**

**REQUEST FOR PRODUCTION NO. 12:**

Any and all **DOCUMENTS** evidencing that **YOU** shutdown the operations (either fully or in a limited capacity) of any other aviation-related business, other than Plaintiff Seaplane Adventures, LLC, in the County of Marin, pursuant to the **MARIN HEALTH ORDERS.**

**REQUEST FOR PRODUCTION NO. 13:**

Any and all **DOCUMENTS** evidencing any complaints made to **YOU** between January 1, 2017 through the present regarding the operations of Seaplane Adventures, LLC.

**REQUEST FOR PRODUCTION NO. 14:**

Any and all **DOCUMENTS** evidencing any communications between the County (including, but not limited to, Supervisor Kate Sears) and anyone else (including but not limited to any resident of Marin County (including but not limited to: William/Bill Schneider, John Edgcomb, and Gusts Karlsons), or any representative of such resident) regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 15:**

Any and all **DOCUMENTS** evidencing any communications between Supervisor Kate Sears and the Marin County Community Development Agency (including but not limited to: the Marin County Planning Department, Marin County Code Enforcement Division, and Marin County Environmental Health Services) regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 16:**

- 8 -

PLAINTIFF SEAPLANE ADVENTURES, LLC NOTICE OF DEPOSITION OF COUNTY OF MARIN PERSON MOST KNOWLEDGEABLE PURSUANT TO RULE 30(b)(6) and RULE 34(a)(1) REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE

Case No. 20-cv-06222-WHA

Any and all **DOCUMENTS** evidencing any communications between Supervisor Kate Sears and the Marin County Sheriff's Department regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 17:**

Any and all **DOCUMENTS** evidencing any communications between the Marin County Sheriff's Department and anyone else regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 18:**

Any and all **DOCUMENTS** evidencing any communications between Marin County and the Federal Aviation Administration regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 19:**

Any and all **DOCUMENTS** evidencing any communications between Matt Willis and any department of the County of Marin regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 20:**

Any and all **DOCUMENTS** evidencing any communications between the County of Marin and any aviation-related business in the County of Marin regarding the Marin County Health Orders ("Marin County Health Orders" or "Marin Health Orders" means and refers to the health orders issued by the County of Marin that are referenced in the First Amended Complaint ("FAC"), including the March Health Order, Health Order, Health Orders, and Marin Order, as well as any and all appendices, attachments, exhibits, predecessors, or updates thereto).

**REQUEST FOR PRODUCTION NO. 21:**

Any and all **DOCUMENTS** evidencing any internal communications (including but not limited to: Slack communications) within the County of Marin regarding the operations of

PLAINTIFF SEAPLANE ADVENTURES, LLC NOTICE OF DEPOSITION OF COUNTY OF MARIN PERSON MOST KNOWLEDGEABLE PURSUANT TO RULE 30(b)(6) and RULE 34(a)(1) REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE

Case No. 20-cv-06222-WHA

Seaplane Adventures, LLC or any other aviation-related business from January 1, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 22:**

Any and all **DOCUMENTS** evidencing any documents, communications, policies, or procedures adopted by the County of Marin with respect to the Marin Health Orders as applied to aviation-related businesses, charter boat businesses, and recreation-related businesses.

**REQUEST FOR PRODUCTION NO. 23:**

Any and all **DOCUMENTS** evidencing any documents, communications, policies, or procedures adopted by the County of Marin with respect to the Marin Health Orders as applied to the operations of Seaplane Adventures, LLC.

**REQUEST FOR PRODUCTION NO. 24:**

Any and all **DOCUMENTS** evidencing the basis, documents, policies, or procedures used by the County of Marin in determining that Seaplane Adventures, LLC's operations were limited under the Marin Health Orders, distinct from other aviation-related businesses, charter boats, and/or recreation-related businesses.

**REQUEST FOR PRODUCTION NO. 25:**

Any and all **DOCUMENTS** evidencing the basis, documents, policies, communications, or procedures (including but not limited to: text messages, memoranda, discussions) leading to the adoption of Appendix C-1 (adopted August 31, 2020) to the Marin Health Orders.

**REQUEST FOR PRODUCTION NO. 26:**

Any and all **DOCUMENTS** evidencing the events occurring at Seaplane Adventures, LLC on or between June 26, 2020 through July 5, 2020 in which a Marin County Sheriff's deputy was sent to Seaplane Adventures, LLC to inform the business (via it's CEO Aaron Singer) that it was not permitted to operate per the Marin Health Orders, and to threaten fines and/or imprisonment for any violation/s.

**REQUEST FOR PRODUCTION NO. 27:**

PLAINTIFF SEAPLANE ADVENTURES, LLC NOTICE OF DEPOSITION OF COUNTY OF MARIN PERSON MOST KNOWLEDGEABLE PURSUANT TO RULE 30(b)(6) AND RULE 34(a)(1) REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE

Case No. 20-cv-06222-WHA

Any and all non-privileged **DOCUMENTS** evidencing the legal or other authority, and any documents, basis, policies, communications, or procedures, leading to Marin County's decision to send a Marin County Sheriff's deputy, on or between June 26, 2020 through July 5, 2020, to Seaplane Adventures, LLC to inform the business (via it's CEO Aaron Singer) that it was not permitted to operated per the Marin Health Orders, and to threaten fines and/or imprisonment for any violation/s.

**REQUEST FOR PRODUCTION NO. 28:**

Any and all **DOCUMENTS** evidencing any complaints made to the County of Marin between January 1, 2017 through the present regarding the operations of Seaplane Adventures, LLC.

**REQUEST FOR PRODUCTION NO. 29:**

Any and all **DOCUMENTS** evidencing any information related to enforcement of the Marin Health Orders.

**REQUEST FOR PRODUCTION NO. 30:**

Any and all non-privileged **DOCUMENTS** evidencing any information included in the County of Marin's January 29, 2021 initial disclosures.

**REQUEST FOR PRODUCTION NO. 31:**

Any and all **DOCUMENTS** evidencing any communications between Matt Willis and any anyone else (including but not limited to any resident of Marin County, or representative of a resident of Marin County) regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 32:**

Any and all **DOCUMENTS** evidencing any communications between the Marin County Community Development Agency (including but not limited to: the Marin County Planning Department, Marin County Code Enforcement Division, and Marin County Environmental

- 11 -

PLAINTIFF SEAPLANE ADVENTURES, LLC NOTICE OF DEPOSITION OF COUNTY OF MARIN PERSON MOST KNOWLEDGEABLE PURSUANT TO RULE 30(b)(6) and RULE 34(a)(1) REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE

Case No. 20-cv-06222-WHA

Health Services) and anyone else regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 33:**

Any and all **DOCUMENTS** evidencing any communications between the Marin County Department of Public Works (including but not limited to: the Engineering Division, Land Use Division, Flood Control Division) and anyone else regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present.


Dated: June 14, 2021                          LAW OFFICES OF JOHN E. SHARP

                                        By: _John E. Sharp_____
                                              John E. Sharp

                                              Attorney for Plaintiff
                                              SEAPLANE ADVENTURES, LLC

PLAINTIFF SEAPLANE ADVENTURES, LLC NOTICE OF DEPOSITION OF COUNTY OF MARIN PERSON MOST KNOWLEDGEABLE PURSUANT TO RULE 30(b)(6) and RULE 34(a)(1) REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE

Case No. 20-cv-06222-WHA

# EXHIBIT G

## CERTIFIED TRANSCRIPT OF:

## Seaplane Adventures, LLC vs. County of Marin

## ANDREW WAIT

## Date: August 25, 2021

## Reported by: Amanda Kallas



117 Paul Drive, Suite A San Rafael, CA 94903-2010

Main Office: 415-472-2361
depos@westcoastreporters.net    www.westcoastreporters.net

```
 1                    UNITED STATES DISTRICT COURT

 2                   NORTHERN DISTRICT OF CALIFORNIA

 3

 4
      SEAPLANE ADVENTURES, LLC,          )
 5                                       )
                     Plaintiff,          )
 6                                       )
                 vs.                     )    No. 20-cv-06222-WHA
 7                                       )
      COUNTY OF MARIN, CALIFORNIA,       )
 8                                       )
                     Defendant.          )
 9    _____)
                                         )
10                                       )
                                         )
11                                       )

12

13

14

15              ZOOM VIDEOCONFERENCE DEPOSITION OF

16                          ANDREW WAIT

17                 Wednesday, August 25, 2021

18

19

20

21      Stenographically Reported by:
        AMANDA J. KALLAS
22      CSR No. 13901

23      Job No. 1-M16171

24      PAGES 1 - 250

25
```

```
 1                UNITED STATES DISTRICT COURT

 2                NORTHERN DISTRICT OF CALIFORNIA

 3

 4    SEAPLANE ADVENTURES, LLC,          )

 5                     Plaintiff,        )

 6              vs.                      )   No. 20-cv-06222-WHA

 7                                       )

      COUNTY OF MARIN, CALIFORNIA,       )

 8                                       )

                       Defendant.        )

 9    _____   )

10

11

12

13

14

15         Zoom videoconference deposition of ANDREW WAIT,

16    remotely taken on behalf of Defendant, beginning at

17    9:17 A.M. and ending at 4:53 P.M. on Wednesday,

18    August 25, 2021, before Amanda J. Kallas, Certified

19    Shorthand Reporter No. 13901.

20

21

22

23

24

25
```

```
 1      APPEARANCES:

 2

 3      For Plaintiff:

 4        LAW OFFICES OF JOHN E. SHARP

 5        BY:  JOHN E. SHARP, ESQ.

 6        24 PROFESSIONAL CENTER PARKWAY

 7        SUITE 110

 8        SAN RAFAEL, CALIFORNIA 94903

 9        415-479-1645

10        JOHN@JOHNSHARPLAW.COM

11

12      For Defendant:

13        OFFICE OF COUNTY COUNSEL, COUNTY OF MARIN

14        BY:  BRANDON W. HALTER, DEPUTY, ESQ.

15        3501 CIVIC CENTER DRIVE

16        SUITE 275

17        SAN RAFAEL, CALIFORNIA 94903

18        415-573-6117

19        BHALTER@MARINCOUNTY.ORG

20

21

22

23

24

25
```

```
 1                            INDEX
      WITNESS                          EXAMINATION
 2    ANDREW WAIT
                    (By Mr. Halter)            6
 3

 4                          EXHIBITS
      NUMBER              DESCRIPTION              PAGE
 5    Exhibit 1    PLAINTIFF'S EXPERT WITNESS      20
                   DISCLOSURES
 6
      Exhibit 2    FIRST SUPPLEMENTAL EXPERT REPORT OF  26
 7                 ANDREW WAIT
                   22 PAGES
 8
      Exhibit 3    EXCEL SPREADSHEET: 2019 CONFIRMED    103
 9                 BOOKINGS

10    Exhibit 4    SEAPLANE ADVENTURES PROFIT AND       134
                   LOSS, JANUARY - DECEMBER 2020
11                 4 PAGES

12

13

14                 PREVIOUSLY MARKED EXHIBITS

15     NUMBER              DESCRIPTION              PAGE

16    Exhibit 11                                    128

17

18    Exhibit 13                                    156

19

20    Exhibit 14                                    175

21

22

23

24

25
```

1    haven't been in contact, and there's periods when we have.

2        Q   Can you generally describe the kinds of contacts

3    that you've had with him over the years, and then we'll

4    get more specific?

5        A   When we -- 20-plus years ago when our first --

6    our firstborns were born, very close, we were -- the two

7    families were quite close, and our children essentially

8    grew up their first two years of life together.

9            I don't really remember exactly when I moved to

10   Utah, in 2006, and then subsequently into the United

11   Kingdom in 2011, and I did not really see or hear from him

12   for the better part of a decade.

13           I heard from him again, I believe it was in 2016,

14   that his 16-year-old son at the time had died.  And I was

15   one of the people who had a connection to his son, through

16   my daughter, and when I -- he called me to just let me

17   know.

18       Q   What was the nature of your contact following

19   that in -- that contact in 2016 when you kind of

20   reestablished a connection?

21       A   Purely personal.  I went to his son's funeral,

22   obviously went to see Aaron to console him.  And it's -- I

23   think we kind of resumed a casual, you know, friendship,

24   that was really more around running into each other at the

25   airport.

1      Q    And when you say "airport" in reference to those

2    later years, meaning 2016 forward, which airport are you

3    talking about?

4      A    I -- I keep an airplane at Gnoss Field and/or --

5    yeah, Gnoss Field in Novato.

6      Q    Do you -- where do you keep the airplane in Gnoss

7    Field?

8      A    In a hangar.

9      Q    Do you lease the hangar?

10     A    I do.

11     Q    How long have you leased that hangar?

12     A    Well, I have -- the -- the first one, I started

13   leasing when we came back from the UK in 2014.  And then I

14   leased a second hangar, I believe, in 2000 -- I leased two

15   more hangars in 2019.

16     Q    So in 2019, did you have a total of three

17   hangars, or were these successive?

18     A    Three.

19     Q    So do you have more than one airplane?

20     A    Not anymore.  I -- I'm down to one airplane.

21     Q    So in 2019, did you have more than one airplane?

22     A    I did.

23     Q    How many did you have?

24     A    I have one that I own by myself.  I had two that

25   I owned by myself.  And I had one that I was a partner in.

```
 1      I subsequently sold my interest in the partnership and
 2      entirely sold another airplane, and I'm down to one
 3      airplane.
 4          Q    When did you sell the one in which you had a
 5      partnership?
 6          A    2019, I believe in May.
 7          Q    And when did you sell the one that you own?
 8          A    In March of this year.
 9          Q    2021?
10          A    Correct.
11          Q    I think you already answered this, but you've --
12      have you ever done any work for Mr. Singer?
13          A    I've done -- well, okay.  I did help him with his
14      campaign for Sausalito City Council.  But that was on a
15      volunteer basis, unpaid.
16          Q    When was that?
17          A    The last election cycle, which was November of
18      2020.
19          Q    And do your families remain in contact?
20          A    Not really.  My -- my daughter's close connection
21      to Aaron was his son, who passed away.  And we
22      occasionally see Aaron and his new wife very rarely.
23          Q    Would you nevertheless still characterize your
24      relationship as a friendship?
25          A    Yes.
```

```
 1                        It is my understanding that the
 2                shutdown was unqualified.
 3              And this goes back to that issue, and this is
 4      going to keep coming up again and again, can you give me
 5      any -- any more information about how your opinion would
 6      change, if at all, if the shutdown was not unqualified?
 7          A    No.
 8          Q    Do you have any understanding that the County
 9      treated Seaplane any differently than it did other
10      airplane -- or other air travel companies with respect to
11      the health orders?
12          A    So -- sorry, re- -- repeat that question.
13          Q    Are you aware that Seaplane -- sorry -- that the
14      County treated Seaplane differently with respect to the
15      health orders than it did other air travel companies?
16          A    I'm not aware of how Seaplane was treated
17      differently relative to other air travel companies that
18      operate out of the County.
19          Q    And I'm sorry, Mr. Wait, I just missed part of
20      what you said.  So did you say you're not aware of
21      Seaplane being treated differently than other air travel
22      companies within Marin County when it comes to the health
23      orders?
24          A    Let me restate my answer.
25              The air charter business that I'm aware of that
```

1    operates out of Gnoss Field was not shut down.  The flight

2    schools were not shut down.  The flight rental programs at

3    Gnoss Field and various other places were not shut down.

4    I'm not aware of any other aviation business that the

5    County shut down.

6        Q    Okay.  Do you have any understanding that the

7    County enforced its health orders against plaintiff any

8    more strictly than it did against other air travel

9    companies?

10       A    I'll refer to my previous answer, which is the

11   other air travel companies remained in operation.  Even

12   though there was no distinction between pleasure and

13   essential travel, they kept operating.

14       Q    Which aircraft -- which air travel companies did

15   you -- are you aware continued operating in the time

16   period between March and September 2020?

17       A    Scanlon Aviation, Wheels Up, the -- I've

18   forgotten their name now, but -- I'm sorry, I don't

19   remember.  But there's another flight school that remained

20   in operation; I think it's called AeroclubMarin.

21       Q    Any others?

22       A    That's all I can think of for right now.

23       Q    In terms of Scanlon's operations between March

24   and September 2020, what do you know of Scanlon's

25   operations?

```
 1          A    I'm at the airport a lot, and I -- and I know
 2    Pat, and his aircraft rental and charter operation
 3    continued.
 4          Q    What do you know of what kind of operations Pat
 5    at Scanlon conducted between March and September?
 6          MR. SHARP:   2020?
 7          MR. HALTER:   2020.
 8          MR. SHARP:   Sorry to be picky.
 9          THE WITNESS:   Yeah.   So I observed his aircraft
10    moving.   I observed him and his staff flying aircraft.   I
11    observed students taking lessons.   AeroclubMarin operated
12    the entire time and as a flight school.
13    BY MR. HALTER:
14          Q    Mr. Wait, I'm -- I'm -- I'm just going to have to
15    take this piece by piece, and I don't mean to interrupt
16    you, but we do have to go through this.   And I just want
17    to restrict the questioning to one company at a time.
18          When we're talking about Pat -- is it Pat Scanlon
19    that you're referring to?
20          A    Correct.
21          Q    And we're talking about Scanlon Aviation.   You
22    said you observed his aircraft moving; is that right?
23          A    Yes.
24          Q    Do you know where his aircraft were traveling?
25    Do you know anything about where his aircraft were
```

1    traveling from March to September 2020?

2        A    No.

3        Q    Do you know anything about whether his aircraft

4    had any passengers in them between March and

5    September 2020?

6        A    Yes.  I -- there were people in the aircraft.

7        Q    And you say you observed passengers in the

8    airplanes at the airport?

9        A    Correct.

10       Q    Do you know anything about what any of those

11   passengers were traveling for in terms of their purpose

12   for traveling from that March to September time frame for

13   Scanlon Aviation?

14       A    I know a lot of them are flight students that

15   were traveling nowhere.

16       Q    And how do you know that?

17       A    Because a couple of friends of mine are students

18   of Pat at Scanlon Aviation.

19       Q    Okay.  And you know for a fact that those

20   students took flight training flights between March and

21   September 2020?

22       A    Yes.

23       Q    Other than those flight training flights, do you

24   know -- do you have any information about what purpose any

25   other passengers would have had in any of those flights

```
 1    for Scanlon Aviation?
 2         A    Not specifically.
 3         Q    What about generally?
 4         A    A lot of the charter flights are to Tahoe, and
 5    that's about all I can tell you.  But Pat Scanlon --
 6         Q    Do you have --
 7         A    Pat Scanlon was not shut down.
 8         Q    And I'm not asking whether they were shut down,
 9    because as your testimony -- you have testified that you
10    have saw the airplanes traveling.  And what I what to know
11    is:
12              Do you know why they were traveling?
13         A    No.
14         Q    Do you know whether anyone ever reported to the
15    County that Scanlon was operating in violation of any
16    health orders?
17         A    I don't.
18         Q    Another company that you mentioned is Wheels Up.
19    What do you know about Wheels Up's operations between
20    March and September 2020?
21         A    I observed their aircraft moving to and from
22    Gnoss Field.
23         Q    Do you know whether any passengers were inside
24    any of those aircraft by -- flown by Wheels Up?
25         A    Yes.
```

1      Q    So you observed passengers inside those aircraft?

2      A    Yes.

3      Q    Do you know anything about the reasons for those

4   passengers traveling in those aircraft?

5      A    No.

6      Q    Do you know anything about where those passengers

7   were flying?

8      A    No.

9      Q    Do you know whether anyone ever reported to the

10  County that Wheels Up was operating in violation of any

11  health orders?

12     A    No.

13     Q    With respect to AeroclubMarin, what do you know

14  about their operations between March and September 2020?

15     A    A friend of mine is a flight instructor for them,

16  and they performed flight instruction flights regularly

17  throughout the -- the shutdown.

18     Q    Did you observe any flight instruction flights

19  conducted by AeroclubMarin in the time period between

20  March and September 2020?

21     A    Yes.

22     Q    When?

23     A    I don't have specifics.

24     Q    How did you know they were flight instruction

25  flights?

1    A   Because my friend who is -- is a flight

2   instructor -- two friends who are flight instructors were

3   conducting the flights, and they would tell me about them.

4    Q   Okay.  But when you were observing the flights

5   themselves, what did you observe that caused you to

6   believe that the flights were flight instruction flights?

7    A   That there was a student in one seat and the

8   instructor in the other.

9    Q   And does AeroclubMarin provide any other air

10  travel-related services?

11   A   I don't think so.  Well, they provide -- you can

12  rent aircraft for recreational flying.

13   Q   Do you know whether they rented any aircraft for

14  recreational flying in a time period between March and

15  September 2020?

16   A   I believe they did.

17   Q   Okay.  And what do you base that belief on?

18   A   I know the owners, and I know some of the pilots

19  that rent aircraft.

20   Q   Okay.  So you know some people, how does that

21  lead you to believe that the -- that AeroclubMarin was

22  leasing the aircraft for recreational flights?

23   A   Because they told me they went for a flight.

24   Q   Did you observe --

25   A   And I observed -- I observed the flights, yes.

```
 1         Q    Okay.  Which flights did you observe?

 2         A    I -- I didn't write this down, but I observed

 3    recreational flights departing Gnoss Field and returning

 4    Gnoss Field in their aircraft.

 5         Q    And how do you know they were recreational

 6    flights?

 7         A    It -- a -- a flight that takes off from one

 8    airfield and comes back.  If there's another purpose for

 9    it, it's hard to imagine what it would be.

10         Q    Okay.  But you -- as you sit here today, you

11    don't know anything about the purpose of any of those

12    flights?

13         A    Right, right.  Correct.

14              THE STENOGRAPHER:  Hang on.  You need to slow

15    down.  As you sit here today, you don't know what the

16    purpose?

17              MR. HALTER:  I don't remember what I said.

18    BY MR. HALTER:

19         Q    As you sit here today, you don't know anything

20    about the purpose of any of those AeroclubMarin flights,

21    where they were being flown by nonflight instructors; is

22    that right?

23         A    Correct.

24         Q    Do you -- are you aware of any information that

25    anyone ever reported -- sorry, scratch that.
```

1          Are you aware of any evidence that anyone ever

2    reported that AeroclubMarin was operating in violation of

3    the health orders to the County of Marin?

4          A    No.

5          Q    Are you aware of any other air travel operator

6    ever operating in violation of any health order in the

7    County of Marin between March and September 2020?

8          A    No.

9          Q    Are you aware of anyone ever reporting to the

10   County of Marin any violation of the health orders in

11   between September -- March and September 22 -- sorry --

12   March and September 2020?

13         A    No.

14         MR. HALTER:   Amanda, you've been soldiering on

15   for an hour and 40 minutes or so; how do you feel?

16         THE STENOGRAPHER:   I could take a break, if you

17   guys are ready for one.

18         MR. HALTER:   Gentlemen, do you mind five or ten

19   minutes?

20         MR. SHARP:   No.

21         MR. HALTER:   All right.   Let's -- if we can -- if

22   we come back at 11:00, I'd appreciate it.

23         MR. SHARP:   We can do that.

24         MR. HALTER:   Thanks -- thanks, all.

25              (Break in proceedings.)

# EXHIBIT H

# John Sharp

**From:** Halter, Brandon <BHalter@marincounty.org>
**Sent:** Friday, August 13, 2021 3:04 PM
**To:** John Sharp
**Cc:** Porter, Rachael
**Subject:** Seaplane v. COM: County Privilege Information

John,

Pursuant to Rule 26(b)(5), here is a description of the nature of the documents and/or specific information the County withheld from its production two weeks ago on the basis of privilege. Please let me know if you need additional information about any of these categories or would like to discuss further.

| Date(s) of Document(s) | Description | Recipient(s)/Sender(s) | Nature of Privilege |
|---|---|---|---|
| 2/24/2017-9/2/2021 | Names of individuals submitting communications regarding potential code enforcement and/or encroachment complaints were redacted from production | Code enforcement complainants | Informer's Privilege (*Roviaro v. U.S.*, 353 U.S. 53 (1957)); Evid. Code 1041 |
| 2/24/2017-10/27/2017 | Communications requesting, reflecting and/or regarding legal advice concerning issues raised by code enforcement complaints | Brian Case (Attorney), Brian Washington (Attorney), Maureen Parton, Jeremy Tejirian, Kathrin Sears, Brian Crawford, Thomas Lai | Attorney-Client, Attorney Work Product |
| 12/15/2019-12/16/2019 | Communications requesting, reflecting and/or regarding legal advice concerning issues raised by code enforcement and/or encroachment complaints | Brian Case (Attorney), Brian Washington (Attorney), Jenna Brady (Attorney), Tarisha Bal (Attorney), Kathrin Sears | Attorney-Client, Attorney Work Product |
| 01/27/2020-2/24/2020 | Communications requesting, reflecting and/or regarding legal advice concerning potential lease and/or code violations | Brian Case (Attorney), Brian Washington (Attorney), Jenna Brady (Attorney), Kathrin Sears, Maureen Parton | Attorney-Client, Attorney Work Product |
| 06/04/2020-08/28/2020 | Communications requesting, reflecting and/or regarding legal advice concerning development, implementation, and/or revision of health orders regarding COVID-19 | Jenna Brady (Attorney), Valorie Boughey (Attorney), Kate Stanford (Attorney), Brian Washington (Attorney), Tarisha Bal (Attorney), Diedre Smith (Attorney), Laine Hendricks, Matthew Willis, Max Korten, Angela Nicholson, Kevin Wright | Attorney-Client, Attorney Work Product |
| 06/05/2020-08/28/2020 | Communications requesting, reflecting and/or regarding legal advice concerning | Brian Washington (Attorney), Brian Case (Attorney), Kate Stanford (Attorney), Jenna Brady | Attorney-Client, Attorney Work Product |

| | enforcement of health orders regarding COVID-19 | (Attorney), Valorie Boughey (Attorney), Kerry Gerchow (Attorney), Renee Brewer (Attorney), Kathrin Sears, Sarah Estes-Smith, Maureen Parton, Brian Crawford, Matthew Willis, Judy Arnold, Rick Navarro, Brenton Schneider, Angela Nicholson | |
|---|---|---|---|
| 08/10/2020-08/18/2020 | Communications requesting, reflecting and/or regarding legal advice concerning transfer of lease at Gnoss Field | Jenna Brady (Attorney), Tanya Albert, Raul Rojas, Judy Arnold, Tony Williams | Attorney-Client, Attorney Work Product |
| 06/08/2020-07/16/2020 | Communications between and among law enforcement personnel regarding strategy for executing enforcement of health orders regarding COVID-19 | Rick Navarro, Brenton Schneider, Robert Doyle, Christopher Reilly, Gregory Garrett, Robert Heilman | Official Information Privilege; Deliberative Process Privilege; Government Investigatory Privilege |

Thanks,
Brandon

**Brandon W. Halter**
Deputy County Counsel
County of Marin
Office: 415-473-6117
Mobile: 707-328-9559

Email Disclaimer: https://www.marincounty.org/main/disclaimers