BRIAN E. WASHINGTON, COUNTY COUNSEL
Brandon W. Halter, Deputy, SBN 289687
3501 Civic Center Drive, Ste. 275
San Rafael, CA 94903
Tel.: (415) 473-6117
Fax: (415) 473-3796
bhalter@marincounty.org

Attorneys for Defendant
COUNTY OF MARIN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAPLANE ADVENTURES, LLC<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COUNTY OF MARIN, CALIFORNIA,<br><br>　　　　Defendant. | Case No.: 20-cv-06222-WHA<br><br>**DEFENDANT COUNTY OF MARIN'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>Complaint filed: September 2, 2020<br><br>Date:　　October 7, 2021<br>Time:　　8:00 AM<br>Judge:　　Honorable William Alsup<br>Dept:　　Courtroom 12, 19th Floor |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................................ii

I. INTRODUCTION ............................................................................................................................1

II. ARGUMENT .....................................................................................................................................3

    A. There Is No Evidence County Treated Plaintiff and Other Similarly-Situated Air Travel Businesses Differently ................................................................................................................3

        1. The Only Businesses to Which Plaintiff Is Similarly-Situated Are Those That Were Classified The Same Way Under the Health Orders .............................................................3

        2. There is No Dispute that County Used the Same Approach in Applying the Health Orders to Plaintiff and All Other Recreational Air Travel Businesses in Marin County ..... 6

        3. Plaintiff's Belated Discovery Of Evidence That Scanlon Aviation Was Operating Recreational Flights Is Irrelevant Because It Does Not Show That County Treated Plaintiff Differently ................................................................................................................8

        4. There is No Evidence That Any Other Air Travel Businesses Operated in Violation of the Health Orders, But Even if There Was, There is No Evidence County Treated Them Differently ................................................................................................................ 10

    B. Even if the Evidence Showed a Dispute of Fact Regarding Differential Treatment (It Does Not), There is No Evidence That Any Difference in Treatment Was Intentional ................... 12

    C. Plaintiff's Remaining Arguments Are Meritless ....................................................................... 13

        1. Plaintiff Has Abandoned Its Argument that County Lacked a Rational Basis For Treating Other Industries Differently ................................................................................. 13

        2. Plaintiff's Objections to Dr. Willis's Testimony Are Meritless ......................................... 14

        3. Plaintiff's Plan to Seek Additional Testimony At Trial Is Irrelevant ................................ 15

III. CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Kennedy v. Allied Mut. Ins. Co.*,
 952 F.2d 262 (9th Cir. 1991) .................................................................................................. 4, 11

*Warkentine v. Soria*,
 152 F. Supp. 3d 1269 (E.D. Cal. 2016) ......................................................................................... 3


**Statutes**

California Code of Civil Procedure Section 2025.230 ...................................................................... 14

Fed. R. Civ. P. 30(b)(6) .................................................................................................................... 14

## I. INTRODUCTION

In the FAC, Plaintiff[1] identified two different theories of liability in support of its equal protection claim: (1) that County applied the health orders more strictly against Plaintiff than it did against other recreational air travel businesses; and (2) that the health orders lacked a rational basis for treating recreational air travel businesses differently from other industries, such as charter boats. *See* Dkt. 21 ¶ 86. As established in County's opening papers, however, discovery has shown that there is no dispute of fact that County did not violate Plaintiff's right to equal protection under either of these theories. First, the evidence is undisputed that County implemented and enforced the health orders against all recreational air travel businesses the same way—it publicized the orders, relied on businesses to comply in good faith, and enforced the orders against any business about which it received a report of potential violation (*i.e.*, Plaintiff, Skydive Golden Gate, and SF Helicopters). Second, there is more than enough evidence to establish that any difference in the way the health orders treated recreational air travel versus other industries was supported by a rational basis.

In opposition to County's motion, Plaintiff abandons its theory that County lacked a rational basis for treating other industries differently. Plaintiff also abandons its theory that County treated other businesses about which County received reports of potential violations (*i.e.*, Skydive Golden Gate and SF Helicopters) more leniently. Instead, Plaintiff argues that County's motion must be denied for two basic reasons: (1) that it can only be considered to be "similarly-situated" for equal protection purposes to other "Part 135" airlines at the Marin County Airport ("Airport"), rather than Skydive Golden Gate and SF Helicopters; and (2) that County knew other Part 135 airlines at the Airport were operating, but did nothing about it. But both arguments are wrong.

As an initial matter, the only other businesses that can be considered similarly-situated to Plaintiff are those that conducted the same kinds of operations that County prohibited Plaintiff from conducting under the terms of the health orders (*i.e.*, recreational air travel). This is because Plaintiff's equal protection claim is based solely on its allegation that County enforced the health orders more strictly against Plaintiff than other businesses that the health orders classified the same way. And the evidence shows that SF Helicopters and Skydive Golden Gate meet this description. Each of these

---

[1] Capitalized terms herein have the meaning ascribed to them in County's opening papers, unless otherwise noted.

businesses offered recreational flights to paying customers inside an enclosed aircraft.  Each of these businesses were also the subject of reports to the County regarding violations (or potential violations) of the health orders, which triggered County's process for making contact with each business to ensure compliance (just like Plaintiff).  Indeed, Plaintiff itself alleged in the FAC (and then testified under oath) that it is similarly-situated to SF Helicopters; it is only once Plaintiff was shown evidence that County treated SF Helicopters just like it treated Plaintiff that Plaintiff decided SF Helicopters was incomparable.  Finally, how a given business was classified under other sources of law, such as "Part 135" of federal aviation regulations, makes no difference.  This is because the health orders imposed restrictions based on business activities and COVID-19 risk, not federal classification status.  Plaintiff's attempt to gerrymander a group of similarly-situated airlines to avoid comparison to those businesses against which County enforced the health orders should be denied.

Further, there is no evidence that County treated any other recreational air travel businesses differently.  In its opposition papers, Plaintiff submits declarations purporting to show that other airlines at the Airport (beyond SF Helicopters and Skydive Golden Gate) were also operating recreational flights, and that County knew about those flights but did nothing.  However, these declarations (from Patrick Scanlon of Scanlon Aviation, and Plaintiff's expert Andrew Wait) do not show what Plaintiff claims.  Mr. Scanlon's declaration, read in the light most favorable to Plaintiff, suggests that Scanlon Aviation conducted recreational flights during the period at issue.  But nowhere does it state that any other business was conducting recreational flights, nor does it provide any reason to infer that County received any reports about Scanlon Aviation's activities (or otherwise knew about them).  Indeed, only a few weeks prior to submitting Mr. Scanlon's declaration, Plaintiff's CEO and expert each testified that they were not aware of any other business operating recreational flights (including Scanlon Aviation).  And though Mr. Wait's declaration speculates that other businesses at the Airport beyond Scanlon Aviation were also operating recreational flights in violation of the health orders, he identifies no basis for that belief.  Moreover, even if he did, his declaration testimony is directly contrary to the sworn deposition testimony he gave only three weeks prior. Declaration of Brandon W. Halter in Support of Defendant County of Marin's Reply ("Halter Reply Decl.") Ex. 17 (2021.08.25 Deposition Transcript of Andrew Wait "Wait Dep. Tr.") at, *e.g.*, 61:5-8 ("Q:  Are you aware of any other air travel operator ever

operating in violation of any health order in the County of Marin between March and September 2020? A: No."). In summary, the evidence that County treated Plaintiff and all other similarly-situated businesses equally under the health orders is undisputed, and County respectfully submits that its motion should be granted.

## II. ARGUMENT

### A. There Is No Evidence County Treated Plaintiff and Other Similarly-Situated Air Travel Businesses Differently

#### 1. The Only Businesses to Which Plaintiff Is Similarly-Situated Are Those That Were Classified The Same Way Under the Health Orders

To "be considered similarly-situated, the class of one challenger and his comparators must be prima facie identical in all relevant respects or directly comparable in all material respects." *Warkentine v. Soria*, 152 F. Supp. 3d 1269, 1294 (E.D. Cal. 2016) (*quoting U.S. v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008)). Here, as County established in its opening papers, the only other businesses that could be considered "prima facie identical" to Plaintiff are those that were classified the same way under the health orders. In other words, businesses that provided the same type of indoor recreation and/or recreational travel operations as Plaintiff, and that similarly did not fall within some other exception to the restrictions in the health orders. Specifically, recreational air travel businesses such as SF Helicopters (which provides passengers with helicopter tours) and Skydive Golden Gate (which provides passengers with short flights from which they then skydive). See Dkt. 55 at 11-12, 14; Dkt. 55-1 Ex. 8; Dkt. 55-3 Ex. 13; Dkt. 55-2 Ex. 15.

In opposition, Plaintiff argues that it is not similarly-situated to these companies. See Dkt. 56 at 1, 5, 13; Dkt. 56-5 (Scanlon Decl.) ¶¶ 10, 20; Dkt. 56-3 (Singer Decl.) ¶¶ 18-20. It also argues (for the first time) that it can only be considered similarly-situated to other airlines regulated under "Part 135" of chapter 14 of the Code of Federal Regulations. Dkt. 56 at 12-13. But Plaintiff is wrong on both counts.

First, the evidence that Plaintiff is similarly-situated to SF Helicopters and Skydive Golden Gate for the purpose of its equal protection claim is undisputed. This is because it is undisputed that each of these three businesses offer services (*i.e.*, recreational air travel inside an enclosed aircraft) that were regulated the same way by the health orders about which Plaintiff complains (*i.e.*, the terms prohibiting indoor recreation and/or recreational travel). Each of these three businesses was also the subject of

reports to the County regarding violations (or potential violations) of the health orders, which triggered County's process for making contact with each business to ensure compliance. Dkt. 55 at 9-14; Dkt. 55-1 Ex. 8; Dkt. 55-3 Ex. 13, 14; Dkt. 55-7 ¶¶ 17, 19; Dkt. 55-2 Exs. 15, 16. Thus, each of these businesses was similarly-situated for purposes of Plaintiff's equal protection claim. Indeed, prior to its opposition to this motion, Plaintiff itself repeatedly claimed that SF Helicopters was similarly-situated. See Dkt. 21 (FAC) ¶ 86 (explicitly listing SF Helicopters as one of the "other similarly situated businesses in Marin County" that County allegedly permitted to operate); Halter Reply Decl. Ex. 18 at 3:3-13 (Plaintiff's verified interrogatory response incorporating and asserting allegations in FAC as true); *id.* Ex. 19 (2021.08.11 Singer Dep. Tr.)[2] at 261:3-6 ("Q: What do you know about SF Helicopters? A: They're a very similar business to us, Part 135 and air tours."). It was not until County filed its motion papers, proving that County treated SF Helicopters the same way it treated Plaintiff, that Plaintiff decided to take the position that SF Helicopters was not similarly-situated. *See* Dkt. 56-3 (Singer Decl.) ¶ 18. But Plaintiff cannot create an issue of fact by submitting an affidavit contradicting prior testimony. See *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.").

Nor does Plaintiff identify evidence of any material distinction between itself and Skydive Golden Gate. Plaintiff argues that Skydive Golden Gate's operations are distinguishable because they involve a customer physically strapped to an instructor. Dkt. 56 at 5, *citing* Dkt. 56-3 (Singer Decl.) ¶ 19. But the undisputed evidence shows that the reason County restricted Skydive Golden Gate's operations was not because of the nature of tandem skydiving. Rather, it was for the same reason County restricted Plaintiff's operations—*i.e.*, before skydiving, the customers are inside a plane with the pilot and traveling for recreational purposes. Dkt. 55-1 Ex. 8 (June 2020 email chain between County and Skydive Golden Gate) at 2 ("For businesses that have individuals inside the plane together and for recreational purposes, that is not yet permitted by the County.").

---

[2] Mr. Singer testified in deposition on August 4th and August 11th in his capacity as a corporate representative of Plaintiff, pursuant to Federal Rule of Civil Procedure 30(b)(6). Halter Reply Decl. ¶ 4, Ex. 24 (Notice), Ex. 25 (2021.08.04 Singer Dep. Tr.) at 18:14-18.

4

DEFENDANT COUNTY OF MARIN'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
USDC Case No.: 20-cv-06222-WHA

Second, a business's designation under other sources of law (such as Part 135, Part 91, or anything else) is irrelevant to whether it was similarly-situated to Plaintiff for the purpose of Plaintiff's equal protection claim. This is because Plaintiff's equal protection claim is premised on the theory that County applied the terms of its health orders more strictly against Plaintiff than against other businesses to which those health orders also applied. And the restrictions in the health orders about which Plaintiff complains concerned whether the business was operating recreational flights, not how the business was classified under federal aviation regulations.[3] Here, the evidence known to the parties at the time of County's opening brief showed that the only businesses that offered (or sought to offer) recreational air travel services from March-September 2020 were Plaintiff, SF Helicopters, and Skydive Golden Gate. *See* Dkt. 55 at 11-14; *see also* Dkt. 55-4 Ex. 11 (2021.08.11 Singer Dep. Tr.) at 249:9-250:7, 254:8-19, 255:19-256:13, 259:15-269:2 (acknowledging Plaintiff had no information about what kinds of flights other companies were offering); Halter Reply Decl. Ex. 17 (Wait Dep. Tr.) at 55:21-61:13 (Plaintiff's expert acknowledging that he was not aware of whether other flights that took place between March-September 2020 were recreational).

In opposition, Plaintiff submitted a declaration from the owner of another air travel operator at the Airport in which that operator—Patrick Scanlon of Scanlon Aviation—appears to state that his business conducted recreational travel flights in violation of the Health Orders. See Dkt. 56-5 ¶ 4.[4] Thus, taking all inferences in Plaintiff's favor, the evidence suggests that Scanlon Aviation could also be considered similarly-situated to Plaintiff with respect to its recreational travel flights.[5] However, neither

---

[3] Plaintiff's opposition papers also suggest that County lacked the authority to impose any restrictions on Part 135 carriers at all. *E.g.*, Dkt. 56-3 ¶ 12. However, to the extent Plaintiff makes this argument, it relates only to its preemption claim (regarding which County's motion to dismiss remains pending), and is irrelevant to Plaintiff's equal protection claim.
[4] As discussed further below, Mr. Scanlon's declaration is vague and ambiguous in several respects, and also contains objectionable, inadmissible assertions. However, taking all possible inferences in favor of Plaintiff's allegations in this case, Mr. Scanlon's declaration could be read to suggest that Scanlon Aviation conducted recreational travel flights in violation of the Health Orders, and as a result County addresses it as if it does so, while preserving all County's objections.
[5] Mr. Scanlon's declaration also asserts that he is "personally aware that other airlines were operating out of Gnoss Field under Part 135 (for charter flights, flight instruction, and otherwise) during the time the Health Orders were in effect." Dkt. 56-5 ¶ 9. This testimony lacks foundation (Plaintiff does not identify the basis of Mr. Scanlon's personal awareness). But in any event, Mr. Scanlon does not state that any of these other businesses were operating in violation of the health orders (by conducting recreational travel, or otherwise). Nor does Plaintiff identify any other evidence that other companies beyond Scanlon Aviation were offering recreational flights; indeed, Plaintiff's CEO testified he was not aware of any. Halter Reply Decl. Ex. 22 (2021.08.30 Singer Dep. Tr.) at 21:22-22:1. And, as discussed further below, even if other businesses *had* operated recreational flights in violation of the health orders, there is no evidence that County had any awareness of such violations and deliberately chose to ignore them.

Mr. Scanlon's declaration, nor any other evidence, suggests that SF Helicopters or Skydive Golden Gate should not. And as discussed further below, County treated all four of these businesses the same way.

### 2. There is No Dispute that County Used the Same Approach in Applying the Health Orders to Plaintiff and All Other Recreational Air Travel Businesses in Marin County

As County showed in its opening papers, the undisputed evidence shows that County followed the same process to publicize and enforce the health orders with respect to every business in Marin County. It published the health orders and conducted general community outreach to maximize community awareness, relied on businesses to comply in good faith (since it lacked the resources to individually inform and then monitor compliance by every person and business in the County), and relied on reports from the public to identify potential violations. Dkt. 55-7 (Willis Decl.) ¶¶ 14-16. When County received such reports, it made efforts to contact the individuals or businesses at issue and follow-up to confirm compliance. *Id.* ¶ 17. Here, the evidence is also undisputed that County followed this process with respect to recreational air travel businesses (like Plaintiff). First, County published the terms of the orders. Dkt. 55-7 (Willis Decl.) ¶¶ 14-16; *see also* Dkt. 56-5 (Scanlon Decl.) ¶ 4, 6 (acknowledging that Scanlon was aware of the health orders), Ex. A (Scanlon SPP) at COM005164 (same). Then, County relied on each business to comply in good faith. *See id.* Finally, County contacted the three recreational air travel businesses about which it received reports of violations (or potential violations)—Plaintiff, Skydive Golden Gate, and SF Helicopters[6]—and followed up as necessary to confirm compliance. Dkt. 55 at 19:19-20:6.

In opposition, Plaintiff claims that there are two pieces of "credible evidence" that County did not actually follow this process with respect to implementing and enforcing the health orders. Dkt. 56 at 18:4-5. But Plaintiff is wrong.

---

[6] Plaintiff argues that even if County did not receive a report about Scanlon Aviation, it at least knew Scanlon Aviation was conducting recreational flights, because Mr. Scanlon alleges in his declaration that County "knew that [he] was not limited [his] operations in any way pursuant to the Health Orders, other than as outlined in my Site Specific Protection Plan." Dkt. 56-5 ¶ 8. As discussed further below, however, this assertion is inadmissible because it is unsupported by foundation (Mr. Scanlon has no basis to testify to what County personnel knew). Moreover, none of the evidence that Mr. Scanlon cites as proof of the County's knowledge shows what Plaintiff claims. Indeed, not even Plaintiff knew that Scanlon Aviation had operated in violation of the health orders until it started preparing its opposition to this motion. Dkt. 55-4 Ex. 11 (2021.08.11 Singer Dep. Tr.) at 249:9-250:7, 254:8-19.

First, Plaintiff asserts that County "did not produce the alleged public complaints" regarding Skydive Golden Gate, SF Helicopters, or Plaintiff. Dkt. 56 at 18:10-14. Plaintiff's implication appears to be that Dr. Willis and Deputy Robert Heilman were lying when they testified about receiving reports of potential violations (Dkt. 55-7 ¶ 19; Dkt. 55-7 ¶ 2) to conceal the fact that County enforced against these three companies without having received any reports of potential violations first. This is nonsense. Plaintiff cannot create a dispute of fact by arguing that the evidence establishing County received reports of violations (*e.g.*, Dr. Willis's sworn testimony) is not sufficiently corroborated by other evidence (*i.e.*, the reports themselves). Moreover, the reports that Plaintiff accuses County of withholding have been produced—and discussed at length —in this case. For example, Plaintiff's counsel questioned County's representative witness (Max Korten) about documents County produced in this case, including the numerous complaints County received regarding Plaintiff, as well as County's responses to those complainants. Halter Reply Decl. Ex. 20 (2021.08.09 Korten Dep. Tr.) at 59:15-64:7 (discussing the complaints and responses County produced with Bates-range COM 383-447). County also previously produced to Plaintiff the report that County received regarding SF Helicopters that is referenced by Dr. Willis. Halter Reply Decl. Ex. 21 (COM 229). Finally, the report that County received regarding Skydive Golden Gate was also previously produced by County—and attached to County's opening papers for this motion. *See* Dkt. 55-1 Ex. 8.

Second, Plaintiff asserts that there is evidence that County did not set up a devoted email address for submitting reports of health order violations until after County had already enforced the health orders against Plaintiff, Skydive Golden Gate, and SF Helicopters. Dkt. 56 at 18:15-24. Again, Plaintiff's implication appears to be that this fact creates a dispute as to whether County followed the above-described process with respect to enforcing the health orders against these three businesses. But again, Plaintiff is wrong. The evidence regarding County's approach to implementing and enforcing the health orders does not state that County solely responded to reports submitted to a devoted email address. To the contrary, the evidence shows that County received reports of potential violations in several ways, such as via email from the business itself to representatives of the Department of Public Works or County Counsel (*i.e.*, Dkt. 55-1 Ex. 8 (report from Skydive Golden Gate)), and via email from private citizens directly to other County personnel (*i.e.*, Halter Reply Decl. Ex. 21 (report regarding Plaintiff and

SF Helicopters)). Regardless of how each report was submitted to County, the undisputed evidence shows that County followed the same process in responding.

### 3. Plaintiff's Belated Discovery Of Evidence That Scanlon Aviation Was Operating Recreational Flights Is Irrelevant Because It Does Not Show That County Treated Plaintiff Differently

As County established in its opening papers, the only reports of potential health order violations that County ever received regarding recreational air travel operations concerned Plaintiff, Skydive Golden Gate, and SF Helicopter—and County enforced against each of these businesses in the same way. *E.g.*, Dkt. 55-7 (Willis Decl.) ¶ 19; Dkt. 55 at 19:19-20:6. In opposition, Plaintiff argues that there is evidence that a fourth business—Scanlon Aviation—was also operating recreational flights. Dkt. 56 at 6. Plaintiff also argues that two pieces of evidence—County's ownership of the airport, and County's receipt of Scanlon Aviation's Site-Specific Protection Plan ("SPP")—show that County knew that Scanlon Aviation was operating such flights, and as a result, there is a dispute of fact regarding whether County treated Scanlon Aviation differently from Plaintiff (and Skydive Golden Gate and SF Helicopters) in violation of Plaintiff's right to equal protection. See Dkt. 56 at 6-7, 17. But even if the evidence suggests Scanlon Aviation was operating recreational flights (which is questionable[7]), Plaintiff is incorrect that it suggests County knew about such flights.

First, there is no evidence that County's ownership of the Airport would give it knowledge that any of the flights that took place during the period at issue violated the health orders. On the one hand, it is undisputed that County owns and operates the Airport, and that it employs an Airport Manager to manage operations at the Airport. Dkt. 55-5 ¶ 2. There is also evidence that individuals who were physically present at the Airport—including the Airport Manager, as well as Plaintiff's CEO and Plaintiff's expert[8]—observed aircraft periodically taking off and landing between March and September 2020. Dkt. 55-4 Ex. 11 (2021.08.11 Singer Dep. Tr.) at 249:6-8, 250:3-13; Halter Reply Decl. Ex. 17

---

[7] In relevant part, Mr. Scanlon's declaration states that Scanlon Aviation's activities included "booking and flying charter flights throughout the state and flight instruction for recreational purposes or otherwise." Dkt. 56-5 ¶ 4. As discussed in County's opening papers, County did not prohibit Plaintiff or any other operators from flying charter flights that related to essential travel—the health orders only restricted recreational charter flights. *E.g.*, Dkt. 55 at 12-13. In addition, County never restricted any flight instruction operations, for Plaintiff or anyone else. Thus, it is not clear from Mr. Scanlon's declaration whether he is asserting that Scanlon Aviation conducted any operations prohibited by the health orders. However, in light of the Court's obligation to make reasonable inferences in Plaintiff's favor in connection with this motion, County assumes that Mr. Scanlon's declaration makes that assertion.

[8] Halter Reply Decl. Ex. 17 (2021.08.25 Wait Dep. Tr.) at 14:23-25, 43:5-9.

(2021.08.25 Wait Dep. Tr.) at 54:23-55:10, 55:21-23. On the other hand, there is no evidence that it is possible to determine whether a flight violated the health orders just by observing it from the Airport. Indeed, before Plaintiff submitted its opposition papers to this motion, its witnesses testified that they knew nothing about the nature of any of the flights that they observed, such as the destination of any passengers, or whether the passengers' travel was essential or recreational under the health orders. *E.g.*, Dkt. 55-4 (2021.08.11 Singer Dep. Tr.) at 254: 16-19 ("Q: So you don't know anything about those flights other than observing that they had the markings of a Scanlon Aviation aircraft? A: That's correct."), 256:10-13 ("Q: Do you have any idea or any knowledge as to what purpose [passengers in CB Skyshare aircraft] … would be flying for? A: I do not."), 260:24-261:2 ("Q: [D]o you have any knowledge about the reasons any passengers in those aircraft [flown by Surf Air] may have had to be flying? A: I would not have that knowledge."); Halter Reply Decl. Ex. 22 (2021.08.30 Singer Dep. Tr.) at 21:22-22:1 ("Q: Mr. Singer, did you ever – are you aware of any evidence that any other business in Marin County violated any terms of the health orders between … March and September 2020? A: I am not."); *see also id.* Ex. 17 (2021.08.25 Wait Dep. Tr.) at 57:12-13, 58:3-8, 60:19-23, 61:5-8. Airport Manager Dan Jensen, for his part, also testified that he was not aware of any flights violating the health orders. Dkt. 55-5 ¶ 5. Thus, there is no evidence that County's ownership or operation of the Airport, by itself, would provide it with knowledge that any of the flight operations that took place from March to September 2020 violated the health orders.

Nor does Mr. Scanlon's testimony that he sent County a copy of Scanlon Aviation's SPP provide any evidence that County knew Scanlon Aviation was operating in violation of the health orders. In fact, just the opposite. Site-Specific Protection Plans were required by the health orders for any business that sought to operate in Marin County. Dkt. 55-7 Ex. 2, at ¶ 6. Thus, Scanlon Aviation's submission of an SPP to County, if anything, would have suggested to County that Scanlon Aviation was operating in compliance with the health orders, not in violation of them. In addition, nothing in the SPP that Scanlon Aviation submitted suggested that Scanlon Aviation planned to operate recreational flights in violation of the health orders. For example, the Scanlon Aviation's SPP states that County's health orders considered "Flight School, air charter, and aircraft maintenance as essential parts of the transportation infrastructure," but nothing in the SPP suggested that Scanlon Aviation interpreted "air charter" to

9

include recreational travel. Dkt. 56-5 Ex. A, at COM 5164. The "Air Charter Procedures" in Scanlon Aviation's SPP similarly made no mention of Scanlon Aviation's plans to offer recreational travel services. *Id.* at COM 5170. And, since Plaintiff offers no other evidence to suggest that County would have had any knowledge of any recreational flights conducted by Scanlon Aviation, there is no dispute of fact that County treated Scanlon Aviation the same way it treated every other recreational air travel business with respect to the health orders (*i.e.*, publish the orders, rely on businesses to comply in good faith, and respond to any reports of potential violations).

### 4. There is No Evidence That Any Other Air Travel Businesses Operated in Violation of the Health Orders, But Even if There Was, There is No Evidence County Treated Them Differently

In its opposition papers, Plaintiff also asserts that other businesses (beyond Scanlon Aviation, SF Helicopters, and Skydive Golden Gate) were also conducting operations at the Airport, and implies that such operations may have included recreational air travel operations. Dkt. 56 at 6, *citing* Dkt. 26-4 (Wait Decl.) ¶ 3; Dkt. 56-5 (Scanlon Decl.) ¶¶ 4, 7, 9. But the two pieces of evidence Plaintiff cites (the declarations of Mr. Scanlon and Mr. Wait) do not support its claim, and even if they did, there is no evidence that County received reports (or otherwise knew) that these other businesses were conducting recreational air travel operations. As a result, this evidence does not create a dispute of material fact.

First, neither Mr. Scanlon's nor Mr. Wait's declarations provides any evidence that other businesses were conducting recreational air travel. The relevant portion of Mr. Scanlon's declaration states that he is "personally aware that other airlines were operating out of Gnoss Field under Part 135 (for charter flights, flight instruction, and otherwise) during the time the Health Orders were in effect, and that none of these airlines were shut down by the County." Dkt. 56-5 ¶ 9. But Mr. Scanlon does not state whether any of these operations by other airlines included recreational flights (nor does Mr. Scanlon's declaration provide any foundation for him to make such a statement).

Mr. Wait, for his part, states because he keeps a hanger at the Airport, he "directly observed the comings and goings of air carriers" at the Airport. Dkt. 26-4 (Wait Decl.) ¶ 3. He further states that other airlines, including Wheels Up, and Aeroclub Marin, "were not shut down." *Id.* ¶¶ 3, 4. Though Mr. Wait does not state the basis for this assertion in his declaration, the only basis he has ever identified for this statement is Mr. Wait's deposition testimony that he personally observed aircraft taking off and

10

DEFENDANT COUNTY OF MARIN'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
USDC Case No.: 20-cv-06222-WHA

landing—just like Mr. Singer. Halter Reply Decl. Ex. 17 (2021.08.25 Wait Dep. Tr.) at, *e.g.*, 55:4-23. Then, Mr. Wait leaps to the conclusion that these other businesses "flew for all purposes, including 'recreation.'" Dkt. 56-4 ¶ 3. But Mr. Wait provides no foundation for his alleged knowledge of the nature of these other businesses' operations. And even if he did, Mr. Wait previously testified under oath at deposition that he did ***not*** know whether these other companies conducted recreational air travel operations. Halter Reply Decl. Ex. 17 (2021.08.25 Wait Dep. Tr.) at 57:12-13 ("Q: Do you know why [the passengers in Scanlon Aviation flights] were traveling? A: No."), 58:3-8 ("Q: Do you know anything about the reasons for those passengers [inside Wheels Up flights] traveling inside those aircraft? A: No. Do you know anything about where those passengers were flying? A: No."), 60:19-23 ("Q: [Y]ou don't know anything about the purpose of any of those AeroclubMarin flights, where they were being flown by non-flight instructors; is that right? A: Correct."), 61:5-8 ("Q: Are you aware of any other air travel operator ever operating in violation of any health order in the County of Marin between March and September 2020? A: No."). Again, Plaintiff cannot create a dispute of fact by submitting declarations that are directly contrary to prior deposition testimony.[9] *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).

Second, even if these declarations did provide evidence that other businesses provided recreational air travel operations at the Airport, they provide no evidence that County received reports of such operations (or otherwise knew about them). This is because the only fact they rely on for their assertion regarding County's knowledge is County's ownership and management of the Airport. Dkt. 56-5 ¶ 9; Dkt. 56-4 ¶ 7. As discussed above, there is no evidence that the County's ownership and management of the Airport gave it any knowledge of these operations other than the knowledge that aircraft were taking off and landing. And it is undisputed that the health orders never prohibited ***all***

---

[9] Mr. Wait also testifies that Aeroclub Marin conducted flight instruction operations and "rented aircraft" to private parties "for recreational flying." Dkt. 56-4 ¶ 6. As discussed, Mr. Wait's testimony on this subject must be disregarded because it lacks foundation, and also contradicts his prior deposition testimony. In addition, however, it is important to note that County never restricted any flight instruction operations (by Plaintiff or anyone else), nor did it restrict "aircraft rentals" (a service that Plaintiff does not even appear to offer and which in any event County never asserted as a basis to restrict Plaintiff's operations). As a result, even if there was evidence that Aeroclub Marin offered these services (there is not), and even if there was evidence that County received reports about such services (there is not), that could not be a basis to create a dispute of fact regarding Plaintiff's equal protection claim, because Aeroclub Marin is not similarly-situated to Plaintiff regarding these services.

11
DEFENDANT COUNTY OF MARIN'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
USDC Case No.: 20-cv-06222-WHA

flights—they only restricted recreational ones. *E.g.*, Dkt. 55-6 Ex. 12. In summary, there is no evidence to support Plaintiff's claim that County applied the health orders more strictly against Plaintiff.

### B. Even if the Evidence Showed a Dispute of Fact Regarding Differential Treatment (It Does Not), There is No Evidence That Any Difference in Treatment Was Intentional

Even if Plaintiff had identified evidence that County treated Plaintiff differently from other similarly-situated businesses (it did not), Plaintiff cannot establish its equal protection claim unless it shows that County *intended* to treat Plaintiff differently. *E.g.*, Dkt. 56 at 11: 21-28. In its opposition, Plaintiff argues that three pieces of evidence create a dispute of fact regarding whether County intentionally treated Plaintiff more strictly: (1) circumstances surrounding a 2017 proceeding in which County's Planning Commission ruled in Plaintiff's favor following neighboring residents' noise complaints (Dkt. 56 at 19:17-24); (2) the fact that the State of California's Public Health Officer defined seaplane bases as "essential critical infrastructure" (Dkt. 56 at 19:9-15); and (3) the fact that County did not enforce the health orders against similarly-situated businesses at the Airport (Dkt. 56 at 16-18). But Plaintiff is wrong on each count.

First, there is no evidence for Plaintiff's assertion that "County has been attempting to shut down Seaplane since at least 2017," when "the Planning Commission agreed with Seaplane that the County lacked jurisdiction over the airline." *See* Dkt. 56 at 19:17-24, citing Dkt. 56-3 (Singer Decl.) ¶¶ 22-25, Dkt. 56-1 (RFJN) Ex. B. As Plaintiff points out, the Planning Commission (an arm of County government) ruled in *favor* of Plaintiff, not against it. *Id.* Thus, if anything, the Planning Commission proceeding demonstrates County's willingness to defend Plaintiff against the complaints of its neighbors, not discriminate against it. And Plaintiff's argument in its brief that County continued "attempting to shut down Seaplane" since 2017 (Dkt. 56 at 19:17-19) is unsupported by any evidence, in recent history or otherwise. As a result, it should be disregarded.

Second, the State's classification of Plaintiff's operations and infrastructure is irrelevant to whether County intentionally treated Plaintiff differently. As an initial matter, County never took the position that Plaintiff could not use its seaplane base—the restrictions at issue in this case related only to Plaintiff's recreational travel operations, not its infrastructure. *E.g.*, Dkt. 55-6 Ex. 12. As a result, the State's decision to classify seaplane bases as critical infrastructure does not conflict with County's

12

restrictions in this case. However, even to the extent the State's emergency orders ever treated individual industries differently than the way they were treated by local authorities (including County), this is not evidence of County's intent to discriminate against Plaintiff. At most, it might demonstrate that County and State leadership made different decisions about the best ways to protect the community within each respective jurisdiction.

Third, and finally, there is no evidence that County enforced the health orders differently against recreational air travel businesses operating at the Airport. To the contrary, the evidence that County enforced the health orders against the only two other recreational travel businesses about which it received reports of potential health order violations—Skydive Golden Gate and SF Helicopters. *E.g.*, Dkt. 55 at 9-14. Both of these other businesses operated at the Airport. *See*, *e.g.*, Dkt. 55-7 ¶ 19; *see also* Dkt. 55-4 Ex. 11 (2021.08.11 Singer Dep. Tr.) at 261:11-14 (testifying that SF Helicopters operates out of both Sausalito and the Airport). As a result, there is no evidence that County gave businesses at the Airport preferential treatment or intentionally discriminated against Plaintiff because it operated elsewhere.

### C. Plaintiff's Remaining Arguments Are Meritless

#### 1. Plaintiff Has Abandoned Its Argument that County Lacked a Rational Basis For Treating Other Industries Differently

In the FAC, Plaintiff alleges that its equal protection claim is also based on the theory that County lacked a rational basis for its decision to treat businesses in other industries—such as charter boats—differently than recreational air travel operators like Plaintiff. Dkt. 21 ¶ 86.f-g. However, as County established in its opening papers, County's differential treatment other industries with respect to the health orders was at all times based on available evidence regarding best practices for limiting COVID-19 transmission in the community and the evaluation of public health experts including Dr. Willis. Dkt. 55 at 7-9; Dkt. 55-7 (Willis Decl.) ¶ 12. In opposition, Plaintiff argues that "[t]riable issues also exist insofar as the County also permitted other similarly-situated businesses to open for sightseeing tours (i.e. charter boats)." Dkt. 56 at 1:14-16. However, Plaintiff makes this assertion in only two sentences of its 24-page brief (*ibid*; *id.* at 12 1-9), and nowhere does it cite any supporting evidence. As a result, Plaintiff has effectively abandoned this theory of liability.

### 2. Plaintiff's Objections to Dr. Willis's Testimony Are Meritless

In opposition, Plaintiff makes several objections to Dr. Willis's declaration. Dkt. 56 at 22-23. All of them are meritless.

First, Plaintiff complains that County did not produce Dr. Willis to testify as the "person most knowledgeable" regarding the topics in Plaintiff's notice of deposition pursuant to Federal Rule of Civil Procedure 30(b)(6). Dkt. 56 at 22:20-25.[10] But nothing in Rule 30(b)(6) requires the testifying party to select one particular individual over another, nor does anything in Rule 30(b)(6) provide a mechanism for a party to avoid summary judgment just because the other side did not select the party's preferred person to testify. Plaintiff's argument should be disregarded on this basis alone. Moreover, Rule 30(b)(6)'s only requirement for the deponent is that they be informed sufficiently to "testify about information known" to the corporate entity regarding the noticed topics. County's deponent met this obligation.[11] Indeed, Plaintiff never raised a single concern or complaint about Mr. Korten's testimony until its opposition to this motion. Halter Reply Decl. ¶ 9. Finally, Plaintiff never sought to depose Dr. Willis in his individual capacity (Halter Reply Decl. ¶ 9), even though it has been aware of the potential relevance of his testimony since before it even filed this lawsuit (because Dr. Willis issued the health orders). *See also* Dkt. 21 (FAC) ¶ 97 (mentioning the "Marin County Public Health Officer" explicitly). County's motion cannot be denied just because Plaintiff now regrets that decision.

Second, Plaintiff complains that Dr. Willis was not disclosed as an expert witness, so it lacked an opportunity to "rebut" his opinions. Dkt. 56 at 23:4-9. But though Dr. Willis is an expert in public health, his testimony in support of this motion was largely percipient; *i.e.*, a description of the process used by he and others at the County developed, implemented, and applied the health orders at issue. *See generally* Dkt. 55-7. And nothing prevented Plaintiff from attempting to "rebut" this testimony, if it could. But it cannot. Moreover, Plaintiff has never challenged the public health justification for the

---

[10] As an initial matter, Plaintiff's argument confuses the California Code of Civil Procedure (Section 2025.230 of which requires a corporate defendant to produce the person "most qualified" to testify on the matters for which the deposition is requested) and the Federal Rules of Civil Procedure (Rule 30(b)(6) of which requires a corporate defendant to produce a person to testify about information known or reasonable available to the corporation regarding the noticed topics).

[11] After receiving Plaintiff's initial notice of deposition pursuant to Rule 30(b)(6), County initiated a meet and confer process regarding its objections to such notice. Halter Reply Decl. ¶ 8. Following that process, County served its objections as well as a list of the topics on which it agreed to produce a witness for deposition. *Ibid*; *id.* at Ex. 23 (objections/topics). Then, County produced Mr. Korten to testify regarding those topics. Halter Reply Decl. ¶ 8.

health orders; to the contrary, it explicitly alleged Dr. Willis issued the health orders to "slow the spread of COVID-19," which Plaintiff stated served "a well-recognized public purpose." Dkt. 21 ¶¶ 97-98. Finally, Plaintiff objects to three isolated statements in Dr. Willis's declaration that he makes based on his understanding. Dkt. 55 at 23:9-19. But two of these statements are limited to providing background—*i.e.*, Dr. Willis's understanding of Plaintiff's allegations (Dkt. 55-7 at 6:17-20, 9:13-15). And the other—Dr. Willis's understanding that other County staff informed relevant businesses of the terms of the health orders—was proven through declarations from other County employees. *See*, *e.g.*, Dkt. 55-1, 55-3. In summary, Plaintiff's objection should be overruled.

### 3. Plaintiff's Plan to Seek Additional Testimony At Trial Is Irrelevant

As a final argument against summary judgment, Plaintiff asserts that it plans to acquire privileged communications (Dkt. 56 at 23), as well as additional "trial testimony" regarding the complaints against Plaintiff that Plaintiff alleges County has "hidden" (Dkt. 56 at 24). Both arguments are nonsense. As discussed above, County has not "hidden" any relevant complaints or other reports, or County's responses thereto. *See* § II.A.2, *supra*. Moreover, while County withheld privileged communications from its production in this case, it has never refused to produce anyone for deposition, nor has Plaintiff ever asserted any objection or complaint about County's responses to discovery in this case (other than by "not waiving" its right to object to privilege assertions at Mr. Korten's deposition), until now. Halter Reply Decl. ¶ 9. Plaintiff's attempt to avoid summary judgment by inventing a cover-up where none exists should be denied.

## III. CONCLUSION

For the foregoing reasons, County respectfully requests that its motion be granted, and that judgment on Plaintiff's equal protection claim be entered in County's favor.

DATED: September 23, 2021

BRIAN E. WASHINGTON
COUNTY COUNSEL

By: _____

Brandon W. Halter
Attorneys for Defendant
COUNTY OF MARIN