BRIAN E. WASHINGTON, COUNTY COUNSEL
Brandon W. Halter, Deputy, SBN 289687
3501 Civic Center Drive, Ste. 275
San Rafael, CA 94903
Tel.: (415) 473-6117
Fax: (415) 473-3796
bhalter@marincounty.org

Attorneys for Defendant
COUNTY OF MARIN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAPLANE ADVENTURES, LLC, a California Limited Liability Company<br><br>               Plaintiff,<br><br>v.<br><br>COUNTY OF MARIN, CALIFORNIA; AND DOES 1 THROUGH 10, Inclusive,<br><br>               Defendant. | Case No.: 20-cv-06222-WHA<br><br>**DECLARATION OF BRANDON W. HALTER IN SUPPORT OF DEFENDANT COUNTY OF MARIN'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>Complaint filed: September 2, 2020<br><br>Date:      October 7, 2021<br>Time:     8:00 AM<br>Judge:    Honorable William Alsup<br>Dept:     Courtroom 12, 19th Floor |

I, BRANDON W. HALTER, declare as follows:

    1.    I am a Deputy County Counsel in the Office of the County Counsel, attorneys of record for Defendant County of Marin ("County"). I am licensed to practice law in the State of California and before this court, and submit this declaration in support of the County's motion for summary judgment. I have personal knowledge of the contents of this declaration. If called as a witness, I could and would competently testify to the matters set forth in this declaration.

    2.    Attached hereto as Exhibit 17 is a true and correct copy of excerpts of the transcript of the August 25, 2021 deposition of Andrew Wait, who testified in that deposition in his capacity as an expert retained by Plaintiff.

3.     Attached hereto as Exhibit 18 is a true and correct copy of excerpts of Plaintiff's answers to County's first set of interrogatories in this matter, as well as a true and correct copy of Plaintiff's verification page for such answers to interrogatories.

4.     Attached hereto as Exhibit 19 is a true and correct copy of excerpts of the transcript of the August 11, 2021 deposition of Aaron Singer, who testified in that deposition in his capacity as a representative witness of Plaintiff pursuant to Federal Rule of Civil Procedure 30(b)(6). A true and correct copy of the excerpts of the transcript of the August 4, 2021 deposition of Aaron Singer, who testified in that deposition in his capacity as a representative witness of Plaintiff pursuant to Federal Rule of Civil Procedure 30(b)(6) is attached hereto as Exhibit 25. A true and correct copy of County's notice of deposition for these days of Mr. Singer's deposition is attached hereto as Exhibit 24.

5.     Attached hereto as Exhibit 20 is a true and correct copy of excerpts of the transcript of the August 9, 2021 deposition of Max Korten, who testified in that deposition in his capacity as a representative witness of County pursuant to Federal Rule of Civil Procedure 30(b)(6).

6.     Attached hereto as Exhibit 21 is a true and correct copy of a document that County produced to Plaintiff on July 30, 2021 in connection with its production of documents in response to Plaintiff's Request for Production of Documents, Set One, bearing Bates-number COM 229.

7.     Attached hereto as Exhibit 22 is a true and correct copy of excerpts of the transcript of the August 30, 2021 deposition of Aaron Singer, who testified in that deposition in his capacity as a non-retained expert for Plaintiff.

8.     After receiving Plaintiff's original notice of deposition pursuant to Rule 30(b)(6) on or about June 14, 2021, I initiated a meet and confer process with counsel for Plaintiff (John Sharp) regarding County's objections to such notice. Following that process, County served its objections as well as a list of the topics on which it agreed to produce a witness for deposition, a true and correct copy of which objections and list of topics is attached hereto as Exhibit 23. County then produced Max Korten to testify as County's representative witness at that deposition, which was held on August 9, 2021.

9.     Plaintiff's counsel and I have communicated many times in connection with this matter, via both telephone and email. To the best of my recollection, Plaintiff's counsel never raised any

2

concern or objection with respect to County's designation of Mr. Korten to testify at deposition as County's representative witness before filing its opposition to County's motion for summary judgment. Nor did Plaintiff's counsel ever raise any concern or objection to County's responses to Plaintiff's written discovery (requests for production, interrogatories, and requests for admission), or its production of documents in response to Plaintiff's requests for production. Moreover, while Plaintiff objected during Mr. Korten's deposition to County's withholding of certain responsive documents from its production on the basis of privilege, the parties met and conferred during the deposition, and other than stating on the record that Plaintiff was not waiving its right to object to assertions of privilege in the future (*see* Ex. 20 at 43:9-17), Plaintiff did not raise the issue again. Finally, Plaintiff has never sought to depose County Public Health Officer Dr. Matthew Willis or any other County witness in this matter other than County's representative witness under Rule 30(b)(6).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and accurate to the best of my knowledge

Executed on September 23, 2021, in San Rafael, California.

By: _____

Brandon W. Halter

EXHIBIT 17

*CERTIFIED TRANSCRIPT OF:*

**Seaplane Adventures, LLC vs. County of Marin**

**ANDREW WAIT**

**Date:  August 25, 2021**

**Reported by:  Amanda Kallas**



117 Paul Drive, Suite A  San Rafael, CA 94903-2010

Main Office:  415-472-2361
depos@westcoastreporters.net    www.westcoastreporters.net

Page 1

1   UNITED STATES DISTRICT COURT
2   NORTHERN DISTRICT OF CALIFORNIA
3
4
5   SEAPLANE ADVENTURES, LLC,        )
6       Plaintiff,        )
7       vs.               ) No. 20-cv-06222-WHA
8   COUNTY OF MARIN, CALIFORNIA,     )
9       Defendant.        )
10                        )
11                        )
12
13
14
15      ZOOM VIDEOCONFERENCE DEPOSITION OF
16              ANDREW WAIT
17          Wednesday, August 25, 2021
18
19
20
21  Stenographically Reported by:
    AMANDA J. KALLAS
22  CSR No. 13901
23  Job No. 1-M16171
24  PAGES 1 - 250
25

Page 2

1   UNITED STATES DISTRICT COURT
2   NORTHERN DISTRICT OF CALIFORNIA
3
4
5   SEAPLANE ADVENTURES, LLC,        )
6       Plaintiff,        )
7       vs.               ) No. 20-cv-06222-WHA
8   COUNTY OF MARIN, CALIFORNIA,     )
9       Defendant.        )
10                        )
11
12
13
14
15      Zoom videoconference deposition of ANDREW WAIT,
16  remotely taken on behalf of Defendant, beginning at
17  9:17 A.M. and ending at 4:53 P.M. on Wednesday,
18  August 25, 2021, before Amanda J. Kallas, Certified
19  Shorthand Reporter No. 13901.
20
21
22
23
24
25

Page 3

1   APPEARANCES:
2
3   For Plaintiff:
4       LAW OFFICES OF JOHN E. SHARP
5       BY:  JOHN E. SHARP, ESQ.
6       24 PROFESSIONAL CENTER PARKWAY
7       SUITE 110
8       SAN RAFAEL, CALIFORNIA 94903
9       415-479-1645
10      JOHN@JOHNSHARPLAW.COM
11
12  For Defendant:
13      OFFICE OF COUNTY COUNSEL, COUNTY OF MARIN
14      BY:  BRANDON W. HALTER, DEPUTY, ESQ.
15      3501 CIVIC CENTER DRIVE
16      SUITE 275
17      SAN RAFAEL, CALIFORNIA 94903
18      415-573-6117
19      BHALTER@MARINCOUNTY.ORG
20
21
22
23
24
25

Page 4

1               INDEX
    WITNESS                 EXAMINATION
2   ANDREW WAIT
        (By Mr. Halter)         6
3
4               EXHIBITS
    NUMBER      DESCRIPTION             PAGE
5   Exhibit 1   PLAINTIFFS EXPERT WITNESS    20
                DISCLOSURES
6
    Exhibit 2   FIRST SUPPLEMENTAL EXPERT REPORT OF  26
7               ANDREW WAIT
                22 PAGES
8
    Exhibit 3   EXCEL SPREADSHEET: 2019 CONFIRMED   103
9               BOOKINGS
10  Exhibit 4   SEAPLANE ADVENTURES PROFIT AND     134
                LOSS, JANUARY - DECEMBER 2020
11              4 PAGES
12
13
14          PREVIOUSLY MARKED EXHIBITS
15  NUMBER          DESCRIPTION         PAGE
16  Exhibit 11                      128
17
18  Exhibit 13                      156
19
20  Exhibit 14                      175
21
22
23
24
25

Page 13

1    Q  And when you say "airport" in reference to those
2  later years, meaning 2016 forward, which airport are you
3  talking about?
4    A  I -- I keep an airplane at Gnoss Field and/or --
5  yeah, Gnoss Field in Novato.
6    Q  Do you -- where do you keep the airplane in Gnoss
7  Field?
8    A  In a hangar.
9    Q  Do you lease the hangar?
10    A  I do.
11    Q  How long have you leased that hangar?
12    A  Well, I have -- the -- the first one, I started
13  leasing when we came back from the UK in 2014. And then I
14  leased a second hangar, I believe, in 2000 -- I leased two
15  more hangars in 2019.
16    Q  So in 2019, did you have a total of three
17  hangars, or were these successive?
18    A  Three.
19    Q  So do you have more than one airplane?
20    A  Not anymore.  I -- I'm down to one airplane.
21    Q  So in 2019, did you have more than one airplane?
22    A  I did.
23    Q  How many did you have?
24    A  I have one that I own by myself. I had two that
25  I owned by myself. And I had one that I was a partner in.

Page 14

1  I subsequently sold my interest in the partnership and
2  entirely sold another airplane, and I'm down to one
3  airplane.
4    Q  When did you sell the one in which you had a
5  partnership?
6    A  2019, I believe in May.
7    Q  And when did you sell the one that you own?
8    A  In March of this year.
9    Q  2021?
10    A  Correct.
11    Q  I think you already answered this, but you've --
12  have you ever done any work for Mr. Singer?
13    A  I've done -- well, okay. I did help him with his
14  campaign for Sausalito City Council. But that was on a
15  volunteer basis, unpaid.
16    Q  When was that?
17    A  The last election cycle, which was November of
18  2020.
19    Q  And do your families remain in contact?
20    A  Not really.  My -- my daughter's close connection
21  to Aaron was his son, who passed away. And we
22  occasionally see Aaron and his new wife very rarely.
23    Q  Would you nevertheless still characterize your
24  relationship as a friendship?
25    A  Yes.

Page 15

1    Q  You've been retained in this matter by Seaplane
2  Adventures, the plaintiff; is that right?
3    A  Correct.
4    Q  When were you first contacted by plaintiff about
5  this case in particular?
6    A  I believe I heard that there was an intention to
7  do something, maybe eight or nine months ago. And then
8  Mr. Sharp contacted me about doing an analysis three weeks
9  ago, I believe.
10    Q  When you say contacted about something, and I
11  don't want to put words in your mouth, but I don't
12  remember exactly how you phrased it. You said that there
13  was some contact about eight to nine months ago. What was
14  the nature of that contact?
15    A  I think Aaron mentioned that he might be taking
16  action against the County, and that's it.
17    Q  And did he make any other explanation of what his
18  plans were or how you fit into them?
19    A  No.
20    Q  And so the next you heard about it, past that
21  contact with Aaron, was three weeks ago?
22    A  Correct.
23    Q  And that was from Mr. Sharp?
24    A  Correct.
25    Q  When were you actually retained?

Page 16

1    A  Last week, I believe. I can go back and look in
2  my email, but I think Saturday a week ago, I believe.
3    Q  And is there a retention agreement between you
4  and plaintiff?
5    A  There is.
6    Q  And that's not something I've seen yet. Do you
7  have access to it?
8    A  I don't know. I believe --
9      THE WITNESS: John, can you help me out here? I
10  think we...
11      No, I don't think I do.
12      MR. SHARP: We do -- just to clarify it, we do
13  not have a formal engagement letter. He is retained; you
14  can ask him about the terms. But if there had been a
15  formal engagement letter, I would -- I would produce it.
16      THE WITNESS: Yup.
17  BY MR. HALTER:
18    Q  Okay. So that's what I'm asking, Mr. Wait. I'm
19  just looking for -- I'm looking to find out whether
20  there's anything written down related to the terms of your
21  retention by plaintiff in this case.
22    A  Only in my first summary opinion that I think you
23  guys got a week ago. The terms of my engagement are on
24  there. But there is no letter of agreement or retainer
25  agreement between myself and the company.

Page 41

1  mentioned?

2  MR. SHARP: Brandon, before -- before he answers

3  that question, I want to suggest perhaps a stipulation. I

4  don't know whether any of this information regarding

5  Proponent is proprietary or not, and I don't think that

6  you're asking for proprietary information for any purpose

7  other than this litigation, but I -- I don't want to

8  interrupt the flow of -- of Andrew's answers.

9  But I do want to say if there is information that

10  is proprietary, I believe it ought to be subject to -- I

11  would hope a stipulation to appropriate protective orders

12  or some other stipulation that prevents it from being

13  disseminated beyond the -- the bounds of this litigation.

14  MR. HALTER: Yeah. Well, you and I can work out

15  the details on that. I have no interest in -- in harming

16  Proponent's business. I'm just interested in finding out

17  the basis for Mr. Wait's expert opinion. So I think that

18  we'll be able to work something out on that.

19  MR. SHARP: Understood. Thank you.

20  MR. HALTER: Amanda, do you mind reading back

21  that last question? I totally forgot what it is.

22  MR. SHARP: Sorry.

23  (Record read as follows:)

24  "Could you quantify me -- for

25  me the relative share of that impact on

Page 42

1  Proponent's financial performance that

2  could be attributed to those factors

3  that you mentioned?"

4  THE WITNESS: Are -- are you asking the question?

5  BY MR. HALTER:

6  Q  Yes.

7  A  Not without looking at the company's data.

8  Q  As you sit here today, what's your best estimate

9  of the proportion of that negative impact that could be

10  attributed to the reduction in aircraft movement?

11  A  That's a very complex question. I think we need

12  to actually sit down and go month by month. But a

13  reasonable guess would be, for the period of March through

14  May, 50 percent. For the period of June to date, there's

15  been a dramatic recovery. And I'd say that the June

16  through end of year 2020, probably 20 to 30 percent with

17  a -- with a -- with a long tail that's complex because it

18  has more to do with supply chain issues than it does with

19  aircraft movements.

20  Q  Okay. So subject to the caveats you just

21  mentioned, you quantified a 20 to 30 percent figure for

22  the period between approximately May and June and the end

23  of --

24  A  Right.

25  Q  -- 2020?

Page 43

1  A  Right.

2  THE STENOGRAPHER: The end of? You said 2020?

3  MR. HALTER: Yes.

4  BY MR. HALTER:

5  Q  Moving down to some later parts of this Page 1 of

6  Exhibit 2, you mention being a licensed private and

7  instrument pilot.

8  When did you become licensed as a pilot?

9  A  In 1986.

10  Q  What was the nature of that certification?

11  A  I'm a single-engined private pilot, which allows

12  me to fly aircraft under a certain weight with a

13  single-engine and a single-engine land. So essentially

14  aircraft whose movements have to begin and hopefully

15  terminate on land.

16  Q  Have you acquired any other certifications

17  related to flying airplanes since 1986?

18  A  I have acquired my instrument rating, which is

19  the next level up, which allows you to fly in inclement

20  weather. I have acquired my tail wheel certification,

21  which allows me to fly tail wheel aircraft. And I have --

22  I'm in the process of acquiring my commercial certificate.

23  Q  Any other certifications?

24  A  No.

25  Q  When did you start the process of acquiring your

Page 44

1  commercial pilot certification?

2  A  About six months ago.

3  Q  How long is the process?

4  A  It -- it varies. I mean, it could be extremely

5  short if you dedicate yourself full-time to it, or it can

6  take forever if you have a family and a career.

7  Q  Do you have any certifications related to

8  seaplane -- seaplanes?

9  A  No, I have about 20 hours of dual instruction in

10  seaplanes. And I completed all my requirements to take

11  the seaplane rating, but for reasons outside of my

12  control, I wasn't able to do it.

13  Q  When was that?

14  A  2002, I believe.

15  Q  Do you have any certifications related to

16  aircraft maintenance?

17  A  No.

18  Q  Any certifications related to inspections of

19  aircraft?

20  A  No.

21  Q  Let's go to Page 2 of this Exhibit 2, the section

22  titled Purpose of This Report.

23  The first section says:

24  (As read:)

25  I have been retained by

Page 53

1     It is my understanding that the
2         shutdown was unqualified.
3     And this goes back to that issue, and this is
4  going to keep coming up again and again, can you give me
5  any -- any more information about how your opinion would
6  change, if at all, if the shutdown was not unqualified?
7     A  No.
8     Q  Do you have any understanding that the County
9  treated Seaplane any differently than it did other
10 airplane -- or other air travel companies with respect to
11 the health orders?
12    A  So -- sorry, re- -- repeat that question.
13    Q  Are you aware that Seaplane -- sorry -- that the
14 County treated Seaplane differently with respect to the
15 health orders than it did other air travel companies?
16    A  I'm not aware of how Seaplane was treated
17 differently relative to other air travel companies that
18 operate out of the County.
19    Q  And I'm sorry, Mr. Wait, I just missed part of
20 what you said.  So did you say you're not aware of
21 Seaplane being treated differently than other air travel
22 companies within Marin County when it comes to the health
23 orders?
24    A  Let me restate my answer.
25    The air charter business that I'm aware of that

Page 54

1  operates out of Gnoss Field was not shut down.  The flight
2  schools were not shut down.  The flight rental programs at
3  Gnoss Field and various other places were not shut down.
4  I'm not aware of any other aviation business that the
5  County shut down.
6     Q  Okay.  Do you have any understanding that the
7  County enforced its health orders against plaintiff any
8  more strictly than it did against other air travel
9  companies?
10    A  I'll refer to my previous answer, which is the
11 other air travel companies remained in operation.  Even
12 though there was no distinction between pleasure and
13 essential travel, they kept operating.
14    Q  Which aircraft -- which air travel companies did
15 you -- are you aware continued operating in the time
16 period between March and September 2020?
17    A  Scanlon Aviation, Wheels Up, the -- I've
18 forgotten their name now, but -- I'm sorry, I don't
19 remember.  But there's another flight school that remained
20 in operation; I think it's called AeroclubMarin.
21    Q  Any others?
22    A  That's all I can think of for right now.
23    Q  In terms of Scanlon's operations between March
24 and September 2020, what do you know of Scanlon's
25 operations?

Page 55

1     A  I'm at the airport a lot, and I -- and I know
2  Pat, and his aircraft rental and charter operation
3  continued.
4     Q  What do you know of what kind of operations Pat
5  at Scanlon conducted between March and September?
6        MR. SHARP:  2020?
7        MR. HALTER:  2020.
8        MR. SHARP:  Sorry to be picky.
9        THE WITNESS:  Yeah.  So I observed his aircraft
10 moving.  I observed him and his staff flying aircraft.  I
11 observed students taking lessons.  AeroclubMarin operated
12 the entire time and as a flight school.
13 BY MR. HALTER:
14    Q  Mr. Wait, I'm -- I'm -- I'm just going to have to
15 take this piece by piece, and I don't mean to interrupt
16 you, but we do have to go through this.  And I just want
17 to restrict the questioning to one company at a time.
18    When we're talking about Pat -- is it Pat Scanlon
19 that you're referring to?
20    A  Correct.
21    Q  And we're talking about Scanlon Aviation.  You
22 said you observed his aircraft moving; is that right?
23    A  Yes.
24    Q  Do you know where his aircraft were traveling?
25 Do you know anything about where his aircraft were

Page 56

1  traveling from March to September 2020?
2     A  No.
3     Q  Do you know anything about whether his aircraft
4  had any passengers in them between March and
5  September 2020?
6     A  Yes.  I -- there were people in the aircraft.
7     Q  And you say you observed passengers in the
8  airplanes at the airport?
9     A  Correct.
10    Q  Do you know anything about what any of those
11 passengers were traveling for in terms of their purpose
12 for traveling from that March to September time frame for
13 Scanlon Aviation?
14    A  I know a lot of them are flight students that
15 were traveling nowhere.
16    Q  And how do you know that?
17    A  Because a couple of friends of mine are students
18 of Pat at Scanlon Aviation.
19    Q  Okay.  And you know for a fact that those
20 students took flight training flights between March and
21 September 2020?
22    A  Yes.
23    Q  Other than those flight training flights, do you
24 know -- do you have any information about what purpose any
25 other passengers would have had in any of those flights

Page 57

1   for Scanlon Aviation?
2       A   Not specifically.
3       Q   What about generally?
4       A   A lot of the charter flights are to Tahoe, and
5   that's about all I can tell you.  But Pat Scanlon --
6       Q   Do you have --
7       A   Pat Scanlon was not shut down.
8       Q   And I'm not asking whether they were shut down,
9   because as your testimony -- you have testified that you
10  have saw the airplanes traveling.  And what I what to know
11  is:
12          Do you know why they were traveling?
13      A   No.
14      Q   Do you know whether anyone ever reported to the
15  County that Scanlon was operating in violation of any
16  health orders?
17      A   I don't.
18      Q   Another company that you mentioned is Wheels Up.
19  What do you know about Wheels Up's operations between
20  March and September 2020?
21      A   I observed their aircraft moving to and from
22  Gnoss Field.
23      Q   Do you know whether any passengers were inside
24  any of those aircraft by -- flown by Wheels Up?
25      A   Yes.

Page 58

1       Q   So you observed passengers inside those aircraft?
2       A   Yes.
3       Q   Do you know anything about the reasons for those
4   passengers traveling in those aircraft?
5       A   No.
6       Q   Do you know anything about where those passengers
7   were flying?
8       A   No.
9       Q   Do you know whether anyone ever reported to the
10  County that Wheels Up was operating in violation of any
11  health orders?
12      A   No.
13      Q   With respect to AeroclubMarin, what do you know
14  about their operations between March and September 2020?
15      A   A friend of mine is a flight instructor for them,
16  and they performed flight instruction flights regularly
17  throughout the -- shutdown.
18      Q   Did you observe any flight instruction flights
19  conducted by AeroclubMarin in the time period between
20  March and September 2020?
21      A   Yes.
22      Q   When?
23      A   I don't have specifics.
24      Q   How did you know they were flight instruction
25  flights?

Page 59

1       A   Because my friend who is -- is a flight
2   instructor -- two friends who are flight instructors were
3   conducting the flights, and they would tell me about them.
4       Q   Okay.  But when you were observing the flights
5   themselves, what did you observe that caused you to
6   believe that the flights were flight instruction flights?
7       A   That there was a student in one seat and the
8   instructor in the other.
9       Q   And does AeroclubMarin provide any other air
10  travel-related services?
11      A   I don't think so.  Well, they provide -- you can
12  rent aircraft for recreational flying.
13      Q   Do you know whether they rented any aircraft for
14  recreational flying in a time period between March and
15  September 2020?
16      A   I believe they did.
17      Q   Okay.  And what do you base that belief on?
18      A   I know the owners, and I know some of the pilots
19  that rent aircraft.
20      Q   Okay.  So you know some people, how does that
21  lead you to believe that the -- that AeroclubMarin was
22  leasing the aircraft for recreational flights?
23      A   Because they told me they went for a flight.
24      Q   Did you observe --
25      A   And I observed -- I observed the flights, yes.

Page 60

1       Q   Okay.  Which flights did you observe?
2       A   I -- I didn't write this down, but I observed
3   recreational flights departing Gnoss Field and returning
4   Gnoss Field in their aircraft.
5       Q   And how do you know they were recreational
6   flights?
7       A   It -- a -- a flight that takes off from one
8   airfield and comes back.  If there's another purpose for
9   it, it's hard to imagine what it would be.
10      Q   Okay.  But you -- as you sit here today, you
11  don't know anything about the purpose of any of those
12  flights?
13      A   Right, right.  Correct.
14          THE STENOGRAPHER:  Hang on.  You need to slow
15  down.  As you sit here today, you don't know what the
16  purpose?
17          MR. HALTER:  I don't remember what I said.
18  BY MR. HALTER:
19      Q   As you sit here today, you don't know anything
20  about the purpose of any of those AeroclubMarin flights,
21  where they were being flown by nonflight instructors; is
22  that right?
23      A   Correct.
24      Q   Do you -- are you aware of any information that
25  anyone ever reported -- sorry, scratch that.

Page 61

1    Are you aware of any evidence that anyone ever
2  reported that AeroclubMarin was operating in violation of
3  the health orders to the County of Marin?
4      A  No.
5      Q  Are you aware of any other air travel operator
6  ever operating in violation of any health order in the
7  County of Marin between March and September 2020?
8      A  No.
9      Q  Are you aware of anyone ever reporting to the
10  County of Marin any violation of the health orders in
11  between September -- March and September 22 -- sorry --
12  March and September 2020?
13      A  No.
14      MR. HALTER:  Amanda, you've been soldiering on
15  for an hour and 40 minutes or so; how do you feel?
16      THE STENOGRAPHER:  I could take a break, if you
17  guys are ready for one.
18      MR. HALTER:  Gentlemen, do you mind five or ten
19  minutes?
20      MR. SHARP:  No.
21      MR. HALTER:  All right.  Let's -- if we can -- if
22  we come back at 11:00, I'd appreciate it.
23      MR. SHARP:  We can do that.
24      MR. HALTER:  Thanks -- thanks, all.
25      (Break in proceedings.)

Page 62

1      MR. HALTER:  Okay.  We're back on the record.
2  BY MR. HALTER:
3      Q  Mr. Wait, since this is your first deposition,
4  I'll just say this.  I think -- I suspect it's obvious to
5  you, the same rules that apply -- that I explained earlier
6  are going to apply all day.  Okay?  It doesn't matter if
7  we go on a break or not.
8      Do you understand that?
9      A  I do.
10      Q  All right.  Thank you.
11      Let's go to -- again, I will pull up Exhibit 2.
12  Under the Materials and Data Considered and Replied Upon,
13  in Section 2, the first numbered item there:
14      (As read:)
15          The list of operating
16          dashboards.
17      What is an operating dashboard?
18      A  An operating dashboard is an internet, usually
19  application that allows you to look at various
20  transactions and information about a business.  So you
21  could look at sales over time.  You can look -- look at
22  any of a number of operating measures of a business,
23  whether it's conversion and whatever -- whatever it is.
24  That's -- that's what a dashboard is.
25      Q  Okay.  And so that's not specific to any

Page 63

1  particular type of program.  It's just generally a -- a
2  type of a tool; is that a fair summary?
3      A  Correct.
4      Q  And what are the specific types of operating
5  dashboards that you relied on in this matter?
6      A  The main one is Rezdy -- well, the only one is
7  Rezdy, which is their reservation and sales system.
8      Q  And that list of items in that summary filing of
9  August 13th that I identified earlier as Exhibit 1, that
10  is a complete list of the documents, dashboards, and
11  financial records that you relied on for this case?
12      A  To the best of my recollection, yes.
13      Q  Let's go briefly back to that Exhibit 1.  I'm
14  looking at Page 6 of that PDF, Materials and Data
15  Considered and Relied Upon.  Under 2A, it says you:
16      (As read:)
17          Examined the complaint,
18          pleadings, initial disclosures, motions
19          and other such documents.
20      What is that reference to other such documents?
21      A  I don't know.
22      Q  So as you sit here today, you can't think of any
23  other particular documents?
24      A  I reviewed all of the documents that counsel sent
25  me.

Page 64

1      Q  Okay.  And as you sit here today, do you have any
2  recollection that he sent you anything other than the
3  documents that are specifically identified here, meaning
4  the pleadings, initial disclosures, and motions?
5      A  He sent me an example of -- of expert report, and
6  I believe that's it.
7      Q  The next item, B, the documentary record.
8  There's a reference in here to QuickBook [sic] records --
9  QuickBooks records for 2019 to 2021.  What is that?
10      A  That's the profit and loss statements generated
11  out of their accounting system.
12      Q  I see.  So did you review anything other than the
13  profit and loss statements themselves?
14      A  No.
15      Q  So is it your understanding that profit and loss
16  statements are developed using other more granular
17  underlying data?
18      A  Correct.
19      Q  In this case, do you have an understanding that
20  the profit and loss statements were created using other
21  more granular data?
22      A  It is my understanding that the documents were
23  created out of the QuickBooks reporting system, and
24  QuickBooks has uploaded to it data from lots of different
25  sources, including the reservation system, payroll system,

# EXHIBIT 18

John E. Sharp. Esq. (SBN 085615)
Gillian Edmonds. Esq. (SBN 293109)
LAW OFFICES OF JOHN E. SHARP
24 Professional Center Parkway, Suite 110
San Rafael, CA 94903
Telephone:    (415) 479-1645
Facsimile:    (415) 295-7020

Attorneys for Plaintiff
SEAPLANE ADVENTURES, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SEAPLANE ADVENTURES, LLC, | ) | Case No. 20-cv-06222-WHA |
| | ) | |
| Plaintiff, | ) | **PLAINTIFF'S ANSWERS TO** |
| | ) | **DEFENDANT'S FIRST SET OF** |
| v. | ) | **INTERROGATORIES** |
| | ) | |
| COUNTY OF MARIN, CALIFORNIA, | ) | |
| | ) | Complaint filed: |
| Defendant. | ) | |
| _____ | ) | |

PROPOUNDING PARTY:        Defendant COUNTY OF MARIN, CALIFORNIA

RESPONDING PARTY:         Plaintiff SEAPLANE ADVENTURES, LLC

SET NUMBER:               One

    Plaintiff SEAPLANE ADVENTURES, LLC (hereinafter "Plaintiff" or "Responding Party")
hereby responds to the First Set of Interrogatories of Defendant COUNTY OF MARIN, CALIFORNIA
(hereinafter "Defendant") as follows:

### PRELIMINARY OBJECTIONS

    Responding Party provides these responses subject to all objections as to competence, relevance,
materiality, propriety, and admissibility that would require the exclusion of any response hereto at the
time of trial. Responding Party has not fully completed its investigation of the facts relating to this case,

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify all facts supporting YOUR allegation at paragraph 28 of the FAC that YOU have "been intentionally treated differently from others similarly situated, and there is no rational basis, or otherwise, for the difference in treatment."

**ANSWER TO INTERROGATORY NO. 1:**

Plaintiff OBJECTS to this interrogatory to the extent that it calls for a legal opinion. Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

In addition to the facts/allegations provided in the First Amended Complaint, which are incorporated herein by reference, Defendant owned/owns the Marin County Airport, known as Gnoss Field Airport, and permitted all operations to continue at that airport, despite the Marin County Health Orders. Gnoss Field Part 135 charter companies and Part 91 companies were allowed and permitted to operate and were never forced to shut down. This was acknowledged by the Marin County Sheriff.

**INTERROGATORY NO. 2:**

Identify all dates on which any of YOUR operations were restricted by the HEALTH ORDERS, and for each such date, identify which operations were restricted.

**ANSWER TO INTERROGATORY NO. 2:**

On July 3, 2020, Plaintiff was forcibly shut down with threats of $10,000 per flight fines, and arrest. All flights were restricted at this time. The County made no distinction. Prior to July 3, 2020, Plaintiff voluntarily shut down out of an abundance of caution, pursuant to the March 16, 2020 Health Order. Although Plaintiff did not believe the March Health Order required it to cease operations, it did so any way out of an abundance of caution. On May 15, 2020 the County of Marin issued another Health Order, allowing many businesses to remain open or reopen. As such, and in compliance with the Health Order, Plaintiff reopened for business on June 5, 2020.

On or about July 15, 2020, via a letter from Brian Case, Deputy County Counsel, the County informed Plaintiff *inter alia* that, allegedly, Plaintiff "…was only told that he couldn't do 'leisure travel' or sightseeing flights." The County went on to explain that an "allowed flight" would supposedly be "flying a group of doctors to Lake Tahoe." July 15, 2020 was the first time Plaintiff had any indication

OBJECTS to this interrogatory to the extent that it calls for a legal opinion. Plaintiff OBJECTS to this interrogatory to the extent that the statute, 42 U.S.C. §41713(a)(5), cited by Defendant does not exist.

Subject to the foregoing objections, Plaintiff responds as follows: Plaintiff is a designated Part 135 Air Carrier by the Federal Aviation Administration—02QA052Y

Dated: May ___, 2021                          LAW OFFICES OF JOHN E. SHARP

By:     _____
        John E. Sharp, Esq.
        Attorney for Plaintiff
        SEAPLANE ADVENTURES, LLC

## **VERIFICATION OF INTERROGATORY ANSWERS**

I, Aaron Singer, am the Chief Executive Officer of Seaplane Adventures, LLC. I believe, based on reasonable inquiry, that the foregoing answers to Defendant's First Set of Interrogatories are true and correct to the best of my knowledge, information and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: May ___, 2021

By:     _____ /s
        Aaron Singer
        CEO
        SEAPLANE ADVENTURES, LLC

PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

OBJECTS to this interrogatory to the extent that it calls for a legal opinion. Plaintiff OBJECTS to this interrogatory to the extent that the statute, 42 U.S.C. §41713(a)(5), cited by Defendant does not exist.

Subject to the foregoing objections, Plaintiff responds as follows: Plaintiff is a designated Part 135 Air Carrier by the Federal Aviation Administration—02QA052Y

Dated: May 5, 2021                           LAW OFFICES OF JOHN E. SHARP

                                  By: _____
                                      John E. Sharp, Esq.
                                      Attorney for Plaintiff
                                      SEAPLANE ADVENTURES, LLC

## VERIFICATION OF INTERROGATORY ANSWERS

I, Aaron Singer, am the Chief Executive Officer of Seaplane Adventures, LLC. I believe, based on reasonable inquiry, that the foregoing answers to Defendant's First Set of Interrogatories are true and correct to the best of my knowledge, information and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: May 5, 2021

                                  By: _____  /s
                                      Aaron Singer
                                      CEO
                                      SEAPLANE ADVENTURES, LLC

13

# EXHIBIT 19

*CERTIFIED TRANSCRIPT OF:*

**Seaplane Adventures, LLC vs. County of Marin**

**SAUL AARON SINGER**

**Volume 2**

**Date: August 11, 2021**

**Reported by: Amanda Kallas**



117 Paul Drive, Suite A San Rafael, CA 94903-2010

Main Office: 415-472-2361
depos@westcoastreporters.net    www.westcoastreporters.net

Page 236

1  UNITED STATES DISTRICT COURT
2  NORTHERN DISTRICT OF CALIFORNIA
3
4
5  SEAPLANE ADVENTURES, LLC,        )
6      Plaintiff,     )
7      vs.            ) No. 20-cv-06222-WHA
8  COUNTY OF MARIN, CALIFORNIA,    )
9      Defendant.     )
10                    )
11                    )
12
13
14
15      ZOOM VIDEOCONFERENCE DEPOSITION OF
16          SAUL AARON SINGER
17      Wednesday, August 11, 2021
18              Volume II
19
20
21
22  Stenographically Reported by:
23  AMANDA J. KALLAS
    CSR No. 13901
24  Job No. 1-M16136
25  PAGES 236 - 352

Page 237

1  UNITED STATES DISTRICT COURT
2  NORTHERN DISTRICT OF CALIFORNIA
3
4
5  SEAPLANE ADVENTURES, LLC,        )
6      Plaintiff,     )
7      vs.            ) No. 20-cv-06222-WHA
8  COUNTY OF MARIN, CALIFORNIA,    )
9      Defendant.     )
10                    )
11
12
13
14
15      Zoom videoconference deposition of SAUL AARON SINGER,
16  Volume II, remotely taken on behalf of Defendant,
17  beginning at 10:04 A.M. and ending at 5:03 P.M. on
18  Wednesday, August 11, 2021, before Amanda J. Kallas,
19  Certified Shorthand Reporter No. 13901.
20
21
22
23
24
25

Page 238

1  APPEARANCES:
2
3  For Plaintiff:
4      LAW OFFICES OF JOHN E. SHARP
5      BY: JOHN E. SHARP, ESQ.
6      24 PROFESSIONAL CENTER PARKWAY
7      SUITE 110
8      SAN RAFAEL, CALIFORNIA 94903
9      415-479-1645
10     JOHN@JOHNSHARPLAW.COM
11
12  For Defendant:
13     OFFICE OF COUNTY COUNSEL, COUNTY OF MARIN
14     BY: BRANDON W. HALTER, DEPUTY, ESQ.
15     3501 CIVIC CENTER DRIVE
16     SUITE 275
17     SAN RAFAEL, CALIFORNIA 94903
18     415-573-6117
19     BHALTER@MARINCOUNTY.ORG
20
21
22
23
24
25

Page 239

1              INDEX
2  WITNESS              EXAMINATION
3  SAUL AARON SINGER
4      (By Mr. Halter)      241
5
6              EXHIBITS
7  NUMBER       DESCRIPTION        PAGE
8  Exhibit 8    PLAINTIFF SEAPLANE ADVENTURES,   275
9               LLC'S ORIGINAL INITIAL DISCLOSURES
10 Exhibit 13   SEAPLANE ADVENTURES FACEBOOK     320
11              SCREENSHOTS
12              8 PAGES
13 Exhibit 13A  EMAIL LETTER           322
14              3 PAGES
15 Exhibit 14   BANK OF MARIN TRANSACTION DETAILS  311
16              1 PAGE
17 Exhibit 15   EMAILS RE: "SUCCESSFUL CREDIT CARD  338
18              SETTLEMENT REPORT:
19              4 PAGES
20
21          PREVIOUSLY MARKED EXHIBITS
22 NUMBER       DESCRIPTION        PAGE
23 Exhibit 10                      241
24 Exhibit 11                      297
25

Page 260

1 more specific, that means between 10 and 20 flights
2 approximately per week?
3    A  It may have been that, yes.
4    Q  Is that your best estimate?
5    A  It's my best guess.
6    Q  In terms of Surf Air's operations, the -- the
7 charter flights -- so same set of questions about
8 destinations and occupants. Could you tell -- or do you
9 know, if anything, where those flights were taking off to?
10    A  I don't.
11    Q  I'm sorry, that was a mess of a question. I -- I
12 shudder to think how it appears on a transcript.
13      But I think --
14    A  I know Surf Air does a lot of charter to Tahoe.
15    Q  But it -- as you sit here today, you don't know
16 where Surf Air was flying when it was taking those flights
17 between March and September 2020?
18    A  I don't know.
19    Q  And you -- do you know anything about how many
20 passengers Surf Air's flights were carrying during that
21 time period?
22    A  I don't know. Similar to CB Skyshare, they fly
23 larger aircraft.
24    Q  And do you have any knowledge about the reasons
25 any passengers in those aircraft may have had to be

Page 261

1 flying?
2    A  I would not have that knowledge.
3    Q  Let's move on to SF Helicopters. What do you
4 know about SF Helicopters?
5    A  They're a very similar business to us, Part 135
6 and air tours.
7    Q  So they do charter flights and also air tours; is
8 that right?
9    A  That -- they -- that's correct, as Part 135
10 operator.
11    Q  And where does SF Helicopters operate out of?
12 Where are they based?
13    A  They are based in Oakland. And they operate out
14 of Oakland, SFO, Sausalito, and Gnoss.
15    Q  Can you -- and I realize this is a very
16 generalized question, and I'll try to get more specific.
17      But can you give me an understanding of what
18 their activities are in a general sense at each of those
19 locations?
20    A  I couldn't.
21    Q  So do they --
22      (Stenographer requested clarification.)
23 BY MR. HALTER:
24    Q  And, Mr. Singer, I'm sorry I started talking
25 before you had finished answering. So I will let you

Page 262

1 answer.
2    A  My understanding is that they perform Part 135
3 operations out of all locations.
4    Q  Do you know where they keep the helicopters when
5 they are not operating?
6    A  I don't know. I believe Oakland, but I -- I
7 can't be for sure.
8    Q  At Gnoss, have you observed them have any, like,
9 physical location there in terms of office space or hangar
10 space?
11    A  No, they just operate out of Gnoss.
12    Q  So when you say "operate," that means they take
13 off and land?
14    A  Take off, land, refuel.
15    Q  And then same question as to Sausalito. Do they
16 have office space in Sausalito?
17    A  They do have office space in Sausalito. It's
18 more of a counter.
19    Q  Let's break down their activities a little bit --
20 with a little bit more detail.
21      What do you remember about -- or what do you know
22 about SF -- SF Helicopters's operations from March to
23 July 2020?
24    A  They were operating.
25    Q  And is it fair to say you saw -- you observed

Page 263

1 them operating both in Sausalito and at Gnoss --
2    A  Yes.
3    Q  -- in that time period?
4    A  That is correct.
5    Q  How many flights, approximately speaking, per
6 week did you observe SF Helicopters taking in that time
7 period, March through July 2020?
8    A  I -- I -- I would have to say, I can't be precise
9 about that. They generally do six flights a day out of
10 Sausalito. And as to their operations of other locations,
11 I wouldn't have knowledge of that.
12    Q  So let's break that down.
13      You don't have any recollection of any specific
14 number of flights from -- in or out of Gnoss Field from
15 March to July 2020 by SF Helicopters?
16    A  We see their pilots here in Sausalito on a daily
17 basis, and I do know that they were running charters to
18 and out of Gnoss.
19    Q  And how do you know that?
20    A  From the pilots themselves.
21    Q  So they would -- they told you that they were
22 running flights to and from Gnoss Field from the March
23 through July 2020 time frame?
24    A  Pilots talk to each other, where are you going?
25 What are you up to? So yes, we did know that they were

EXHIBIT 20

*CERTIFIED TRANSCRIPT OF:*

**Seaplane Adventures, LLC vs. County of Marin**

**MAX KORTEN - PMK**

**Volume 1**

**Date: August 9, 2021**

**Reported by: Amanda Kallas**



117 Paul Drive, Suite A San Rafael, CA 94903-2010

Main Office: 415-472-2361

depos@westcoastreporters.net   www.westcoastreporters.net

Page 1

1       UNITED STATES DISTRICT COURT
2       NORTHERN DISTRICT OF CALIFORNIA
3
4
5   SEAPLANE ADVENTURES, LLC,        )
6         Plaintiff,        )
7       vs.        ) No. 20-cv-06222-WHA
8   COUNTY OF MARIN, CALIFORNIA,        )
9   _____ Defendant.        )
10                              )
11                              )
12
13
14
15       ZOOM VIDEOCONFERENCE DEPOSITION OF
16             MAX KORTEN
17         PMK OF COUNT OF MARIN
18         Monday, August 9, 2021
19
20
21
22  Stenographically Reported by:
    AMANDA J. KALLAS
23  CSR No. 13901
24  Job No. 1-M16133
25  PAGES 1 - 94

Page 2

1       UNITED STATES DISTRICT COURT
2       NORTHERN DISTRICT OF CALIFORNIA
3
4
5   SEAPLANE ADVENTURES, LLC,        )
6         Plaintiff,        )
7       vs.        ) No. 20-cv-06222-WHA
8   COUNTY OF MARIN, CALIFORNIA,        )
9   _____ Defendant.        )
10
11
12
13
14
15       Zoom videoconference deposition of MAX KORTEN, COUNTY
16  OF MARIN, PMK, remotely taken on behalf of Defendant,
17  beginning at 10:01 A.M. and ending at 1:41 P.M. on Monday,
18  August 9, 2021, before Amanda J. Kallas, Certified
19  Shorthand Reporter No. 13901.
20
21
22
23
24
25

Page 3

1   APPEARANCES:
2
3   For Plaintiff:
4       LAW OFFICES OF JOHN E. SHARP
5       BY:  JOHN E. SHARP, ESQ.
6       24 PROFESSIONAL CENTER PARKWAY
7       SUITE 110
8       SAN RAFAEL, CALIFORNIA 94903
9       415-479-1645
10      JOHN@JOHNSHARPLAW.COM
11
12  For Defendant:
13      OFFICE OF COUNTY COUNSEL, COUNTY OF MARIN
14      BY:  BRANDON W. HALTER, DEPUTY, ESQ.
15      3501 CIVIC CENTER DRIVE
16      SUITE 275
17      SAN RAFAEL, CALIFORNIA 94903
18      415-573-6117
19      BHALTER@MARINCOUNTY.ORG
20
21
22
23
24
25

Page 4

1                   INDEX
2   WITNESS                 EXAMINATION
3   MAX KORTEN
4       (By Mr. Sharp)           6
5
6
7       QUESTIONS INSTRUCTED NOT TO ANSWER
8           Page    Line
9           43      22
10
11
12
13               EXHIBITS
14  NUMBER          DESCRIPTION          PAGE
15  Exhibit A    DOCUMENT PRODUCTION BY COUNTY OF    13
16      MARIN
17
18
19
20
21
22
23
24
25

Page 41

1  think we need to reach it today.
2      MR. HALTER:  Okay.
3      MR. SHARP:  Okay.
4      So, Amanda, could you read back the last
5  question, please.
6      (Record read as follows:)
7      THE STENOGRAPHER:  By Mr. Sharp:
8          Q  Before --
9  Oh, no.  Excuse me.  Right before that.
10         Q  What do you remember about
11     Seaplane from those conversations?
12     MR. SHARP:  I don't even know what I was asking
13  about.
14     (Record read as follows:)
15     THE STENOGRAPHER:
16         Q  Okay.  Let me ask it a
17     different way.
18         When was the first time you
19     became aware that there was some
20     disagreement between Seaplane and -- and
21     the County of Marin in -- in the context
22     of CoVid?
23     A  Man, I -- I'm not sure whether
24     I was aware of a disagreement
25     until this -- you know, these records

Page 42

1  came up.  I -- you know, I was aware
2  from -- again, from my meetings with
3  Dr. Willis and County counsel in 2020 of
4  discussing Seaplane, among other items
5  related to what -- you know, what should
6  be allowed in the health order.  But I
7  don't remember specifically whether
8  there was a disagreement included in
9  those conversations.
10         Q  What do you remember about
11     Seaplane from those conversations?
12     MR. SHARP:  Okay.
13  BY MR. SHARP:
14     Q  Excluding -- what you have described as those
15  conversations, excluding from them anything where County
16  counsel was involved in giving advice, what do you
17  remember from those conversations, if anything?
18     A  And I'd look to Brandon, I -- County counsel was
19  involved in all of the -- those conversations.  We would
20  have, you know, regular meetings to talk about potential
21  changes to the health order or -- or points that needed
22  clarification, and all those meetings included myself,
23  Dr. Willis, and County counsel.
24     THE WITNESS:  Could -- Brandon, is it -- describe
25  that -- those meetings or not?

Page 43

1      MR. HALTER:  So, John, this might take a -- a
2  moment, but I think you and I should have a discussion
3  about this.  Do you want to do it on the record, or do you
4  want to do it on the record afterwards?
5      MR. SHARP:  I don't need to do it on the record.
6      MR. HALTER:  Okay.  Amanda, let's go off for a
7  second.
8      (Break in proceedings.)
9      MR. HALTER:  All right.  Amanda, we're back on
10  the record.
11     So after meeting and conferring with opposing
12  counsel, I explained that the County's position is that
13  there were attorneys present during a number of meetings
14  between Mr. Korten or other members of the -- and
15  Mr. Willis and other members of -- Dr. Willis, I'm
16  sorry -- and other members of the Marin Recovers team.
17     The County is asserting privilege and instructing
18  the witness not to answer as to communications and
19  information learned as a result of communications with the
20  lawyers on issues relating to legal advice during those
21  conversations.
22     (Witness instructed not to answer.)
23     MR. HALTER:  But without waiving the privilege as
24  to those types of privileged communications, the County
25  will allow discovery into nonprivileged communications

Page 44

1  between Dr. Willis and Mr. Korten and other nonlawyers
2  related to nonlegal issues such as, you know, the
3  scientific basis for the CoVid orders, things like that,
4  as long as they don't, you know, include a -- a legal
5  advice angle.
6      I realize that is somewhat vague and -- and
7  obviously we're going to have to work with it in terms of
8  moving forward because we haven't really heard a lot of
9  questions yet, but that's the general contours of the
10  County's position, as Mr. Sharp and I have discussed.
11     Mr. Sharp, I understand you are not waiving your
12  right to object to my assertion of this privilege today.
13  And let me know if you disagree with anything I've just
14  said.
15     MR. SHARP:  I do not.  Thank you for the summary.
16  And I will try to reframe my question so that we leave the
17  privilege issues alone for the moment.
18     Fair enough?
19     MR. HALTER:  Fair.
20     MR. SHARP:  Okay.
21  BY MR. SHARP:
22     Q  So, Mr. Korten, I don't have in mind the last
23  question anymore, so I'm just going to try to ask you a
24  new hopefully clarifying question.
25     I'm interested in knowing about discussions you

Page 57

1  A  Correct, yeah.  It -- at some point, it was -- I
2  think that that was specifically allowed in the
3  C-1 Appendix.
4  Q  Okay.
5  A  And there was a discussion that led to that.
6  Q  Okay.  So it -- independent of the complaint
7  process that we've talked about so far -- this is going to
8  be a bad pun -- Seaplane was not on the County's radar
9  with CoVid compliance in June of 2020; is that an accurate
10  statement?  I don't mean to put words in your mouth.  I'm
11  just trying to understand.
12      MR. HALTER:  Objection.  Vague.
13      But go ahead, if you can.
14      THE WITNESS:  I guess I'd just say I -- I'm not
15  sure how the Seaplane came to our discussions.  What I
16  know is that County counsel brought it to the discussion.
17  I don't know if it came to County counsel's awareness
18  through a complaint or otherwise.
19  BY MR. SHARP:
20  Q  Okay.  Did you -- in June of 2020, did you have
21  any direct discussions with Maureen Parton -- let me back
22  up.
23      Do you know who Maureen Parton is?
24  A  Yes.
25  Q  Did you have any direct discussions with her in

Page 58

1  June of 2020 regarding Seaplane Adventures?
2  A  I don't -- I don't think so, no.
3  Q  Okay.  And I -- pardon me if I already asked you
4  this, but same question as to Sarah Estes.  And I'm sorry,
5  without looking at it, I don't remember the rest of her
6  name.  Do you know who I'm talking about, Sarah --
7  A  I -- I do and --
8  Q  -- Supervisor Sears's other aide; correct?
9  A  Yeah.  I don't remember having conversations
10  about Seaplane with Sarah, Supervisor Sears's aide, in
11  June of 2020.
12      (Stenographer requested clarification.)
13      THE WITNESS:  I do not remember.
14  BY MR. SHARP:
15  Q  Do you remember talking to anybody else at -- at
16  the County -- again, County counsel excluded -- in June of
17  2020 about Seaplane in the -- in the context of CoVid and
18  the health orders?
19  A  The only context I remember having discussions
20  around Seaplane was in our Marin Recovers meeting.  And
21  again, it was -- attendees of that meeting were County
22  counsel, Dr. Willis, myself, and a couple others, our --
23  our EOC director and our public information --
24      (Stenographer requested clarification.)
25      THE WITNESS:  -- officer.

Page 59

1  Can you hold on one second?  There's somebody at
2  my door.
3      MR. SHARP:  Sure.  Do you want to go off the
4  record for a minute?
5      MR. HALTER:  Sure.
6      (Break in proceedings.)
7      MR. SHARP:  Back on the record.
8      Brandon, again with thanks, would you mind
9  putting up 000383 and 384?
10      MR. HALTER:  All right.  It's now displayed on --
11  oh, shoot, did I just...
12      It's now displayed on my end.  Hopefully Amanda
13  can take pity on me and not put in the "oh, shoot" in the
14  written record, but you never know.
15      So here we are showing COM383 through 447, which
16  is what I had understood you wanted, John.  But we can
17  certainly just go through the -- the first couple as you
18  like.
19      MR. SHARP:  Okay.  Well, you can -- you can leave
20  that all up because I think I have something at 447 as
21  well, so... my -- I recognize you're carrying some of my
22  weight here for me, Brandon.  So again, I appreciate it.
23      MR. HALTER:  No problem.
24  BY MR. SHARP:
25  Q  So, Max, I'm looking at an email -- let's see...

Page 60

1  I got to get them chronologically fixed in my -- in my
2  brain here reading from the bottom up.
3      Go -- looking at Sarah Estes-Smith's email of
4  June 15th at 1:42 p.m. to redacted, you see that, right in
5  the middle of the page?
6  A  Yes.
7  Q  So the -- we can skip the introductory, but she
8  says (reading):
9          The sheriff has contacted the
10      operator.
11      You understand that to be Seaplane Adventures.
12      MR. HALTER:  Object -- or sorry, objection.
13  Calls for speculation.
14      MR. SHARP:  It does.
15  BY MR. SHARP:
16  Q  But if you have an understanding.
17  A  Yeah, that makes sense.
18  Q  Okay.
19  A  Based on previous -- based on her response to the
20  previous email.
21  Q  Right.  Thank you.
22      (Reading):
23          Contacted the owner to advise
24      them that sightseeing and pleasure
25      flights violate the County's order.

Page 61

1    My question to you is:

2         In your capacity as director of parks and a

3    department head participating in the meetings that you've

4    described earlier with regard to various sectors of the

5    community, do you know what the definition of sightseeing

6    and pleasure flights means in the context of

7    Ms. Estes-Smith's email to the complaining party?

8         MR. HALTER: Also calls for speculation.

9         Go ahead, Max.

10        THE WITNESS: Yeah, I'm -- I mean, I'm not sure

11   what her definition of sightseeing and pleasure flights

12   are. Like I -- I guess I have an understanding of what

13   sightseeing or a pleasure flight might be.

14   BY MR. SHARP:

15        Q   We -- we missed the words right before

16   "understanding."

17        A   Oh, sorry. I guess I have general understanding

18   of what sightseeing/pleasure flights might entail. Is

19   that -- what -- related to Seaplane... I -- yeah, I'm not

20   I -- I -- I wouldn't speculate exactly what she -- she

21   means.

22        Q   Do you have an understanding as of June 15th of

23   2020, why reference to sightseeing and pleasure flights

24   might be important within the context of the health

25   orders?

Page 62

1         MR. HALTER: Same objection.

2         THE WITNESS: Do I understand how sightseeing and

3    pleasure flights might be important in relation to the

4    health orders?

5    BY MR. SHARP:

6         Q   Correct.

7         A   I -- I guess, yeah. I mean, I can understand

8    that this email was about this business in relation to the

9    health order. Yeah. I'm sorry, I just feel like I'm not

10   quite following where you're going here, but...

11        Q   Well, fair to say -- look at the next email up

12   the page, July 1, 3:03 p.m.

13        A   Yeah.

14        Q   Subject line (reading):

15             No response to requests from

16             Kate Sears.

17        And then some grumbling about Sarah's mailbox is

18   full and she can't take a message. And this document

19   speaks for itself, but I'm going to say it for the record

20   anyway (reading continued):

21             Can you explain why Seaplane

22             Adventures is still, all caps, booking

23             sightseeing flights for this weekend?

24   Is it your understanding that whoever's writing

25   this stuff is trying to get the County to shut Seaplane

Page 63

1    down?

2         MR. HALTER: Objection. Calls for speculation.

3         THE WITNESS: Yeah. I -- I couldn't tell you

4    that.

5    BY MR. SHARP:

6         Q   Well, let -- let me restate that.

7         So during all of the County's meetings that you

8    participated in or heard about or -- from March of 2020

9    until July of 2020, where Seaplane was the subject, do you

10   have an understanding of whether the complaining parties

11   were trying to get the County to shut Seaplane down?

12        MR. HALTER: Excluding conversations with counsel

13   on legal issues?

14        MR. SHARP: Yes.

15        THE WITNESS: No. And I -- I mean, I -- I guess

16   I just -- you know, say those -- again, like, you know,

17   there were many businesses that got brought to our

18   attention in those meetings to discuss whether they

19   might -- how they might be positioned within the existing

20   health orders or how we ought to consider modifying the

21   health order when considering a business like that one.

22        And that those businesses were brought to our

23   attention -- some -- a lot of times it was because the

24   business reached out themselves, or somebody else reached

25   out about them or, you know, it could have come to our

Page 64

1    attention through complaints or some other -- other forum.

2         But, you know, the subject of those conversations

3    was to try to see how we could allow businesses to reopen

4    safely, you know, and it's hard to -- to -- I wouldn't

5    speculate whether somebody was trying to actually shut the

6    business down. You know, typically I see our efforts as

7    trying to help businesses be open in a safe way.

8    BY MR. SHARP:

9         Q   But you don't dispute that on July 3rd, a

10   sheriff's deputy went to Seaplane and said shut down or be

11   cited; correct?

12        A   I didn't hear him say that.

13        Q   Did you hear him say that we're going to issue

14   you a citation every time you land or words to that

15   effect?

16        A   I heard him say that if they were take -- if they

17   witnessed them taking off on a sightseeing flight, that

18   they could issue them a citation.

19        Q   Thank you.

20        So what is your understanding of how a

21   sightseeing flight, as you've stated it, violated the

22   health orders?

23        MR. HALTER: I'm going to object to

24   mischaracterizing testimony -- prior testimony. I think

25   he talked about the deputy saying that.

EXHIBIT 21

Redacted would like information about:

Judy,

This is pretty absurd. Seaplane Adventures continues to operate tourist sightseeing flights in violation of the County's COVID-19 health order. Now SF Helicopter Tours, emboldened by watching Seaplane Adventures flaunt the order, is also operating tourist sightseeing flights and shuttle buses from the Sausalito seaplane base. What does it say about a county government that mandates continued closure of faith-based indoor services for the local community and yet refuses to enforce the order against a seaplane business that provides sightseeing flights to non-resident tourists, despite warnings from the Sheriff and the County Council that they are violating the COVID-19 order? The Sheriff and Supervisors were alerted to this violation nearly three weeks ago and yet there has been no enforcement.

Apparently in Marin it's now OK to take a sightseeing ride inside a seaplane or helicopter with no social distancing possible, but I can't worship inside my church. WOW!

Redacted

EXHIBIT 22

*CERTIFIED TRANSCRIPT OF:*

**Seaplane Adventures, LLC vs. County of Marin**

**AARON SINGER**

**Volume 1**

**Date: August 30, 2021**

**Reported by: Amanda Kallas**



117 Paul Drive, Suite A San Rafael, CA 94903-2010

Main Office: 415-472-2361
depos@westcoastreporters.net   www.westcoastreporters.net

Page 1

1 UNITED STATES DISTRICT COURT
2 NORTHERN DISTRICT OF CALIFORNIA
3
4
5 SEAPLANE ADVENTURES, LLC,      )
       Plaintiff,      )  )
6                                )
7    vs.              ) No. 20-cv-06222-WHA
8 COUNTY OF MARIN, CALIFORNIA,   )
       Defendant.      )  )
9 _____)
10
11
12
13       ZOOM VIDEOCONFERENCE DEPOSITION OF
14             SAUL AARON SINGER
15       EXPERT WITNESS AND INDIVIDUALLY
16          Monday, August 30, 2021
17                Volume I
18
19
20
21
22 Stenographically Reported by:
23 AMANDA J. KALLAS
   CSR No. 13901
24 Job No. 1-M16177
25 PAGES 1 - 106

Page 2

1 UNITED STATES DISTRICT COURT
2 NORTHERN DISTRICT OF CALIFORNIA
3
4
5 SEAPLANE ADVENTURES, LLC,      )
       Plaintiff,      )  )
6                                )
7    vs.              ) No. 20-cv-06222-WHA
8 COUNTY OF MARIN, CALIFORNIA,   )
       Defendant.      )  )
9 _____)
10
11
12
13
14
15    Zoom videoconference deposition of SAUL AARON SINGER,
16 Expert witness and individually, Volume I, remotely taken
17 on behalf of Defendant, beginning at 10:03 A.M. and ending
18 at 5:03 P.M. on Monday, August 30, 2021, before Amanda J.
19 Kallas, Certified Shorthand Reporter No. 13901.
20
21
22
23
24
25

Page 3

1 APPEARANCES:
2
3 For Plaintiff:
4    LAW OFFICES OF JOHN E. SHARP
5    BY: JOHN E. SHARP, ESQ.
6    24 PROFESSIONAL CENTER PARKWAY
7    SUITE 110
8    SAN RAFAEL, CALIFORNIA 94903
9    415-479-1645
10   JOHN@JOHNSHARPLAW.COM
11
12 For Defendant:
13   OFFICE OF COUNTY COUNSEL, COUNTY OF MARIN
14   BY: BRANDON W. HALTER, DEPUTY, ESQ.
15   3501 CIVIC CENTER DRIVE
16   SUITE 275
17   SAN RAFAEL, CALIFORNIA 94903
18   415-573-6117
19   BHALTER@MARINCOUNTY.ORG
20
21
22
23
24
25

Page 4

1                INDEX
2 WITNESS                    EXAMINATION
3 SAUL AARON SINGER
4      (By Mr. Halter)          6
5
6               EXHIBITS
7 NUMBER        DESCRIPTION         PAGE
8 Exhibit 20   OTA'S SALES EXCEL SPREADSHEET    67
9
10 Exhibit 21   EMAIL CHAIN RE: "MAINT COSTS"    78
11    2 PAGES
12
13 Exhibit 22   EMAIL CHAIN RE: "MAINT COSTS"    93
14    4 PAGES
15
16
17
18       PREVIOUSLY MARKED EXHIBITS
19 NUMBER        DESCRIPTION         PAGE
20 Exhibit 1                  6
21
22 Exhibit 2                  94
23
24 Exhibit 4                  58
25

Page 21

1  BY MR. HALTER:
2     Q  Okay.  And what about other aviation-related
3  businesses?
4     A  To the extent of my knowledge, yes, I can offer
5  that understanding as well.
6     Q  Okay.  And what is your understanding of how the
7  Marin health orders applied to other aviation-related
8  businesses?
9     A  That it did not.  That it was applied --
10    Q  As you --
11    A  -- that it was applied differently to Seaplane
12 Adventures than it was to other businesses operating out
13 of the County's own airport.
14    Q  And what's that based on?
15    A  That's based on knowledge of those businesses and
16 observation.
17    Q  Okay.  What observations?
18    A  As I've testified before in the previous
19 deposition, of which there is extensive testimony, I
20 spend -- spent, especially during that period, a lot of
21 time at Gnoss airport and made a lot of observations.
22    Q  Mr. Singer, did you ever -- are you aware of any
23 evidence that any other business in Marin County violated
24 any terms of the health orders between September -- March
25 and September 2020?

Page 22

1     A  I am not.
2        MR. HALTER:  Can we go off the record real quick?
3        MR. SHARP:  Sure.
4        (Break in proceedings.)
5        MR. HALTER:  Let's go back on the record.  Thank
6  you, everyone, for your patience.  I just had to have that
7  question read back.
8  BY MR. HALTER:
9     Q  I think what -- since we seem to be going around
10 in circles a little bit, Mr. Singer, it seems like it
11 might be better for both of our benefits to -- to ground
12 this in -- little bit more of the information that's
13 disclosed later in this report.
14       Why don't we move down to these numbered
15 paragraphs beginning on the latter half of Page 23 of the
16 PDF of Exhibit 1.  It says:
17       (As read:)
18          The following facts are known
19       by Mr. Singer or were learned during the
20       course of Mr. Singer's examination of
21       this claim and form the basis for his
22       opinions, and he is expected to so
23       testify.
24          No. 1, plaintiff has incurred
25       compensatory damages in the amount of

Page 23

1     approximately $1 million.
2        Let's start with that sentence, Mr. Singer.
3        What does that figure represent?
4     A  Well, that figure was a snapshot in time, and
5  that was a time that is in the past, so that figure is --
6  is a changing figure.  It's based on lost sales from being
7  shut down.  It's based on lost value of sunk costs for
8  managing this business.  It's lost on -- or it's based on
9  the loss of key personnel that required years of training
10 and hundreds of thousands of dollars of investment.  And
11 it's -- and it's based on losses from maintenance issues
12 that are continuing to accrue.
13    Q  Okay.  At what point in time was the amount of
14 money that plaintiff had incurred in compensatory damages
15 approximately $1 million?
16    A  I believe that was a year ago.  But I -- I can't
17 be certain of that date.
18    Q  So in approximately late August 2020, in your
19 opinion, Seaplane had incurred approximately $1 million in
20 compensatory damages?
21    A  No, I think it was beyond that.  Certainly it was
22 beyond that.
23    Q  Okay.  How much was it?
24    A  How much was what?
25    Q  How much was the amount of compensatory damages

Page 24

1  that Seaplane had incurred at the end of August 2020?
2     A  I don't know, and I'm not sure why you're picking
3  the end of August.  I don't think this was hit -- hitched
4  to an August date.
5     Q  I don't know.
6     A  The shutdown lasted until the end of September,
7  and the -- the losses extended into October and beyond.
8  So that date is probably more hitched to an October --
9  October end-of-year timeframe in 2020.
10    Q  To be clear --
11    A  And we're --
12    Q  -- Mr. Singer, I didn't pick a year ago.  I was
13 using your answer and trying to get more detail.
14    A  Okay.  Well, I just cleared it up for you.
15    Q  Okay.  So what -- scratch that.
16       Are you saying that plaintiff had incurred
17 compensatory damages in the amount of a million dollars as
18 of October 2020?  Is that what you're saying?
19    A  Around that timeframe.
20    Q  Okay.  What -- well, scratch that.
21       So what different categories of damages had you
22 included within this $1 million in October 2020?
23    A  I believe I just answered that question, but I'm
24 happy to answer it again.
25    Q  Thank you.

EXHIBIT 23

1  BRIAN E. WASHINGTON. COUNTY COUNSEL
   Brandon W. Halter. Deputy. SBN 289687
2  OFFICE OF THE COUNTY COUNSEL
   COUNTY OF MARIN
3  3501 Civic Center Drive. Ste. 275
   San Rafael. CA 94903
4  Tel.: (415) 473-6117
   Fax: (415) 473-3796
5  bhalter@marincounty.org

6  Attorneys for Defendant
   COUNTY OF MARIN
7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11  SEAPLANE ADVENTURES. LLC.          Case No.: 20-cv-06222-WHA

12              Plaintiff.              **DEFENDANT COUNTY OF MARIN'S**
                                       **OBJECTIONS AND RESPONSES TO**
13       v.                            **PLAINTIFF'S NOTICE OF DEPOSITION**
                                       **OF COUNTY OF MARIN'S PERSON**
14  COUNTY OF MARIN. CALIFORNIA.       **MOST KNOWLEDGEABLE PURSUANT**
                                       **TO RULE 30(b)(6) and RULE 34(a)(1)**
15              Defendant.             **REQUEST FOR PRODUCTION OF**
                                       **DOCUMENTS, SET ONE**
16
                                       Complaint Filed:  September 2. 2020
17                                     FAC Filed:        December 2. 2020

18                                     Trial Date:       December 8. 2021
                                       Date:             July 15. 2021
19                                     Time:             10:00 a.m.
                                       Location:         Via Zoom
20

21

22

23

24

25

26

27

28

1
2
3      Pursuant to Federal Rules of Civil Procedure 30 and 34. Defendant County of Marin

4  ("Defendant" or "County" or "Responding Party") hereby objects to Plaintiff's June 14. 2021 Notice

5  ("Notice") of Deposition of County of Marin Person Most Knowledgeable Pursuant to Rule 30(b)(6) and

6  Rule 34(a)(1) Request for Production of Documents. Set One and each of the categories of examination

7  ("Topics") and requests for production of documents therein ("Requests"). as follows:

8                          **TOPICS FOR EXAMINATION**

9      After receiving Plaintiff's Notice on June 14. 2021. County promptly met and conferred with

10  Plaintiff regarding County's objections to such Notice. and sent Plaintiff correspondence regarding its

11  objections and proposed alternative Topics on June 30. 2021.  To date. Plaintiff has not proposed

12  additional Topics or objected to County's alternative Topics. County attaches such correspondence

13  including the objections therein as Exhibit A to these responses and objections. and incorporates them

14  by reference as if fully set forth herein.

15      As County noted in its correspondence. County will produce a witness to testify at deposition on

16  August 9. 2021 regarding the alternative Topics it proposed. with the caveat (per County's recent

17  conference with Plaintiff's counsel) that County's reference to providing testimony regarding issues in

18  2020 or "to date" refers to the period through September 2. 2020 (i.e.. the date Plaintiff filed its

19  complaint in this matter) rather than through the end of 2020.

20      County further notes that by responding herein that it will produce a witness to testify regarding

21  a particular Topic. it does not represent that County or its witness has any knowledge regarding the

22  referenced Topic. or otherwise concede or waive any objection it may have to the admissibility of any

23  such testimony regarding a particular Topic.

24                          **REQUESTS FOR PRODUCTION**

25                          **GENERAL OBJECTIONS**

26      Discovery in this matter is ongoing. and Responding Party has not fully completed its

27  investigation of the relevant facts. discovery. or preparation for trial.  The following responses are based

28  on a reasonable inquiry of facts and information presently known to Responding Party.  As this matter

2

1  proceeds. Responding Party anticipates that further, additional, or different facts, witnesses, and
2  documents will be discovered and identified. Therefore, Responding Party makes the following
3  responses without prejudice to its right to alter, supplement, amend, or otherwise modify these responses
4  in any way at any time, or its right to provide further or different information or documents in response
5  to these Requests. Also, Responding Party makes the following responses without waiving its right to
6  later use or rely on subsequently-discovered facts or documents, facts or documents that are currently
7  known of which the relevance, significance, or applicability has not yet been ascertained, or facts or
8  documents that are omitted from these responses or related production of documents because of error or
9  oversight.

10      By responding that it will produce responsive documents in response to a Request, Responding
11  Party does not represent that any such responsive documents actually exist, but rather that it will
12  produce any responsive documents in its possession, custody, or control that it locates following a
13  reasonable inquiry. These responses are not an admission by Responding Party regarding the relevance
14  or admissibility of any document sought by, or produced in response to, a Request. Responding Party
15  does not waive, and expressly reserves, any right to object to the admissibility of any document it
16  produces in response to a Request at trial.

17      Responding Party generally objects to the definitions and instructions contained in the Requests
18  to the extent they purport to enlarge, expand, or alter Responding Party's obligations under the Federal
19  Rules of Civil Procedure, the Federal Rules of Evidence, or any other applicable authority.

20      Responding Party generally objects to these Requests to the extent that they seek documents or
21  information protected from disclosure by the attorney-client privilege, the attorney work-product
22  doctrine, or any other applicable privilege, doctrine, or immunity. Responding Party further generally
23  objects to each Request to the extent that it calls for expert witness information.

24      Responding Party objects to these Requests to the extent they either lack a relevant timeframe, or
25  specify a timeframe that is overbroad and disproportionate to the needs of the case because it includes
26  time periods that have no relevance to the parties' claims or defenses in this matter.

27      Responding Party objects to the Definitions that Plaintiff applied to these Requests as overbroad
28  and therefore unduly burdensome and disproportionate to the needs of the case.

3

1  Responding Party incorporates by reference these general objections into the following responses
2  as if fully set forth therein.

3  **REQUEST FOR PRODUCTION NO. 1:**

4  Any and all emails or other DOCUMENTS evidencing any communications between YOU and
5  any resident of Marin County, California, or any representative of such resident, between January 1,
6  2017 and the present, regarding the operations of Seaplane Adventures, LLC.

7  **RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

8  County objects to this Request because, following the Court's order on County's motion to
9  dismiss (Dkt. 36), it seeks information with no conceivable relevance to any party's claims or defenses,
10 and is overbroad, and purports to impose a burden on County that far outweighs whatever limited
11 probative value any responsive information might have. County will construe this Request as seeking
12 documents related to (1) communications regarding complaints County received regarding Plaintiff from
13 January 1, 2017 to September 2, 2020; (2) documents regarding County's enforcement of the terms of its
14 COVID-19 related health orders through September 2, 2020 against Seaplane Adventures, other
15 aviation-related businesses, and charter boat businesses; and (3) documents regarding the basis for the
16 County's treatment of aviation-related business and charter boat business in connection with its COVID-
17 19-related health orders through September 2, 2020.

18 Subject to and without waiving the foregoing objections, County will produce all responsive, non-
19 privileged documents that it is able to locate following a reasonable search that have not already been
20 produced in this litigation.

21 **REQUEST FOR PRODUCTION NO. 2:**

22 Any and all DOCUMENTS that YOU relied upon in determining that Charter Boats were
23 permitted to operate, for sight-seeing tours or otherwise, under the June 2020 MARIN HEALTH
24 ORDERS.

25 **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

26 Subject to and without waiving the foregoing objections, County will produce all responsive, non-
27 privileged documents that it is able to locate following a reasonable search that have not already been
28 produced in this litigation.

4

1   **REQUEST FOR PRODUCTION NO. 3:**

2       Any and all emails or other DOCUMENTS evidencing any communications between YOU and

3   any Federal, State, or Local agency between January 1, 2017 and the present, regarding the operations of

4   Seaplane Adventures, LLC.

5   **RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

6       County objects to this Request because, following the Court's order on County's motion to

7   dismiss (Dkt. 36), it seeks information with no conceivable relevance to any party's claims or defenses,

8   and is overbroad, and purports to impose a burden on County that far outweighs whatever limited

9   probative value any responsive information might have. County will construe this Request as seeking

10   documents related to (1) communications regarding complaints County received regarding Plaintiff from

11   January 1, 2017 to September 2, 2020; (2) documents regarding County's enforcement of the terms of its

12   COVID-19 related health orders through September 2, 2020 against Seaplane Adventures, other

13   aviation-related businesses, and charter boat businesses; and (3) documents regarding the basis for the

14   County's treatment of aviation-related business and charter boat business in connection with its COVID-

15   19-related health orders through September 2, 2020.

16       Subject to and without waiving the foregoing objections, County will produce all responsive, non-

17   privileged documents that it is able to locate following a reasonable search that have not already been

18   produced in this litigation.

19   **REQUEST FOR PRODUCTION NO. 4:**

20       Any and all emails or other DOCUMENTS evidencing any communications between any

21   personnel of the County of Marin (including but not limited to any Marin County elected official,

22   appointed official and/or employee) and any other personnel of the County of Marin (including but not

23   limited to any Marin County elected official, appointed official, and/or employee), between January 1,

24   2017 and the present, regarding the operations of Seaplane Adventures, LLC.

25   **RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

26       County objects to this Request because, following the Court's order on County's motion to

27   dismiss (Dkt. 36), it seeks information with no conceivable relevance to any party's claims or defenses,

28   and is overbroad, and purports to impose a burden on County that far outweighs whatever limited

5

1 probative value any responsive information might have. County will construe this Request as seeking

2 documents related to (1) communications regarding complaints County received regarding Plaintiff from

3 January 1, 2017 to September 2, 2020: (2) documents regarding County's enforcement of the terms of its

4 COVID-19 related health orders through September 2, 2020 against Seaplane Adventures, other

5 aviation-related businesses, and charter boat businesses: and (3) documents regarding the basis for the

6 County's treatment of aviation-related business and charter boat business in connection with its COVID-

7 19-related health orders through September 2, 2020.

8       Subject to and without waiving the foregoing objections. County will produce all responsive,

9 non-privileged documents that it is able to locate following a reasonable search that have not already

10 been produced in this litigation.

11 **REQUEST FOR PRODUCTION NO. 5:**

12       Any and all emails or other DOCUMENTS evidencing any communications between YOU and

13 any the Marin County Community Development Agency (including but not limited to the Code

14 Enforcement Division, Planning Department, Department of Public Works. Engineering Department.

15 and/or Environmental Health Services) between January 1, 2017 and the present, regarding the

16 operations of Seaplane Adventures. LLC.

17 **RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

18       County objects to this Request because, following the Court's order on County's motion to

19 dismiss (Dkt. 36), it seeks information with no conceivable relevance to any party's claims or defenses,

20 and is overbroad, and purports to impose a burden on County that far outweighs whatever limited

21 probative value any responsive information might have. County will construe this Request as seeking

22 documents related to (1) communications regarding complaints County received regarding Plaintiff from

23 January 1, 2017 to September 2, 2020: (2) documents regarding County's enforcement of the terms of its

24 COVID-19 related health orders through September 2, 2020 against Seaplane Adventures, other

25 aviation-related businesses, and charter boat businesses: and (3) documents regarding the basis for the

26 County's treatment of aviation-related business and charter boat business in connection with its COVID-

27 19-related health orders through September 2, 2020.

28       Subject to and without waiving the foregoing objections. County will produce all responsive, non-

6

1 privileged documents that it is able to locate following a reasonable search that have not already been
2 produced in this litigation.

3 **REQUEST FOR PRODUCTION NO. 6:**

4     Any and all emails or other DOCUMENTS evidencing any communications between YOU and
5 the Marin County Counsel between January 1, 2017 and the present, regarding the operations of
6 Seaplane Adventures, LLC.

7 **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

8     County objects to this Request because, following the Court's order on County's motion to dismiss
9 (Dkt. 36), it seeks information with no conceivable relevance to any party's claims or defenses, and is
10 overbroad, and purports to impose a burden on County that far outweighs whatever limited probative value
11 any responsive information might have. County further objects that this Request seeks information
12 protected from disclosure by the attorney-client privilege and attorney work-product doctrine.

13 **REQUEST FOR PRODUCTION NO. 7:**

14     Any and all emails or other DOCUMENTS evidencing any communications between YOU and
15 the former Supervisor Kate Sears between January 1, 2017 and the present, regarding the operations of
16 Seaplane Adventures, LLC.

17 **RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

18     County objects to this Request because, following the Court's order on County's motion to
19 dismiss (Dkt. 36), it seeks information with no conceivable relevance to any party's claims or defenses,
20 and is overbroad, and purports to impose a burden on County that far outweighs whatever limited
21 probative value any responsive information might have. County will construe this Request as seeking
22 documents related to (1) communications regarding complaints County received regarding Plaintiff from
23 January 1, 2017 to September 2, 2020; (2) documents regarding County's enforcement of the terms of its
24 COVID-19 related health orders through September 2, 2020 against Seaplane Adventures, other
25 aviation-related businesses, and charter boat businesses; and (3) documents regarding the basis for the
26 County's treatment of aviation-related business and charter boat business in connection with its COVID-
27 19-related health orders through September 2, 2020.

28     Subject to and without waiving the foregoing objections, County will produce all responsive, non-

7

1   privileged documents that it is able to locate following a reasonable search that have not already been
2   produced in this litigation.

3   **REQUEST FOR PRODUCTION NO. 8:**

4        Any and all emails or other DOCUMENTS evidencing any communications between YOU and
5   any entity or individual operating out of GNOSS FIELD AIRPORT between January 1, 2020 and the
6   present regarding the MARIN HEALTH ORDERS (including but not limited to, any DOCUMENTS
7   regarding the impact of the MARIN HEALTH ORDERS on operations at GNOSS FILED AIRPORT).

8   **RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

9        County objects to this Request because, following the Court's order on County's motion to
10  dismiss (Dkt. 36), it seeks information with no conceivable relevance to any party's claims or defenses,
11  and is overbroad, and purports to impose a burden on County that far outweighs whatever limited
12  probative value any responsive information might have. County will construe this Request as seeking
13  documents related to (1) communications regarding complaints County received regarding Plaintiff from
14  January 1, 2017 to September 2, 2020; (2) documents regarding County's enforcement of the terms of its
15  COVID-19 related health orders through September 2, 2020 against Seaplane Adventures, other
16  aviation-related businesses, and charter boat businesses; and (3) documents regarding the basis for the
17  County's treatment of aviation-related business and charter boat business in connection with its COVID-
18  19-related health orders through September 2, 2020.

19       Subject to and without waiving the foregoing objections, County will produce all responsive, non-
20  privileged documents that it is able to locate following a reasonable search that have not already been
21  produced in this litigation.

22  **REQUEST FOR PRODUCTION NO. 9:**

23       Any and all emails or other DOCUMENTS relied upon, if any, in making the determination that
24  the MARIN HEALTH ORDERS prevented Seaplane Adventures, LLC from fully operating.

25  **RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

26       County objects to this Request because, following the Court's order on County's motion to
27  dismiss (Dkt. 36), it seeks information with no conceivable relevance to any party's claims or defenses,
28  and is overbroad, and purports to impose a burden on County that far outweighs whatever limited

8

1 probative value any responsive information might have. County will construe this Request as seeking
2 documents related to (1) communications regarding complaints County received regarding Plaintiff from
3 January 1, 2017 to September 2, 2020; (2) documents regarding County's enforcement of the terms of its
4 COVID-19 related health orders through September 2, 2020 against Seaplane Adventures, other
5 aviation-related businesses, and charter boat businesses; and (3) documents regarding the basis for the
6 County's treatment of aviation-related business and charter boat business in connection with its COVID-
7 19-related health orders through September 2, 2020.

8         Subject to and without waiving the foregoing objections. County will produce all responsive, non-
9 privileged documents that it is able to locate following a reasonable search that have not already been
10 produced in this litigation.

11 **REQUEST FOR PRODUCTION NO. 10:**

12         Any and all DOCUMENTS YOU relied upon, if any, in amending the MARIN HEALTH
13 ORDERS to include the "August 31, 2020 Appendix C-1: Additional Businesses Permitted to Operate"
14 which expressly allowed for the operation of all aviation related services subject to the guidance set
15 forth therein.

16 **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

17         County objects to this Request because, following the Court's order on County's motion to
18 dismiss (Dkt. 36), it seeks information with no conceivable relevance to any party's claims or defenses,
19 and is overbroad, and purports to impose a burden on County that far outweighs whatever limited
20 probative value any responsive information might have. County will construe this Request as seeking
21 documents related to (1) communications regarding complaints County received regarding Plaintiff from
22 January 1, 2017 to September 2, 2020; (2) documents regarding County's enforcement of the terms of its
23 COVID-19 related health orders through September 2, 2020 against Seaplane Adventures, other
24 aviation-related businesses, and charter boat businesses; and (3) documents regarding the basis for the
25 County's treatment of aviation-related business and charter boat business in connection with its COVID-
26 19-related health orders through September 2, 2020.

27         Subject to and without waiving the foregoing objections. County will produce all responsive, non-
28 privileged documents that it is able to locate following a reasonable search that have not already been

9

1 | produced in this litigation.

2 | **REQUEST FOR PRODUCTION NO. 11:**

3 | Any and all DOCUMENTS evidencing that the spread of COVID-19 was slowed by preventing
4 | SEAPLANE ADVENTURES, LLC from fully operating under the MARIN HEALTH ORDERS.

5 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

6 | County objects to this Request because, following the Court's order on County's motion to dismiss
7 | (Dkt. 36), it seeks information with no conceivable relevance to any party's claims or defenses, and is
8 | overbroad, and purports to impose a burden on County that far outweighs whatever limited probative value
9 | any responsive information might have.

10 | **REQUEST FOR PRODUCTION NO. 12:**

11 | Any and DOCUMENTS evidencing YOU shutdown the operations (either fully or in a limited
12 | capacity) of any other aviation-related business, other than Plaintiff Seaplane Adventures, LLC in the
13 | County of Marin, pursuant to the MARIN HEALTH ORDERS.

14 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

15 | County objects to this Request because, following the Court's order on County's motion to
16 | dismiss (Dkt. 36), it seeks information with no conceivable relevance to any party's claims or defenses,
17 | and is overbroad, and purports to impose a burden on County that far outweighs whatever limited
18 | probative value any responsive information might have.  County will construe this Request as seeking
19 | documents related to (1) communications regarding complaints County received regarding Plaintiff from
20 | January 1, 2017 to September 2, 2020; (2) documents regarding County's enforcement of the terms of its
21 | COVID-19 related health orders through September 2, 2020 against Seaplane Adventures, other
22 | aviation-related businesses, and charter boat businesses; and (3) documents regarding the basis for the
23 | County's treatment of aviation-related business and charter boat business in connection with its COVID-
24 | 19-related health orders through September 2, 2020.

25 | Subject to and without waiving the foregoing objections, County will produce all responsive,
26 | non-privileged documents that it is able to locate following a reasonable search that have not already
27 | been produced in this litigation.

28 |

10

**REQUEST FOR PRODUCTION NO. 13:**

Any and all DOCUMENTS evidencing any complaints made to YOU between January 1, 2017 through the present regarding the operations of Seaplane Adventures, LLC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Subject to and without waiving the foregoing objections, County will produce all responsive, non-privileged documents that it is able to locate following a reasonable search that have not already been produced in this litigation.

**REQUEST FOR PRODUCTION NO. 14:**

Any and all DOCUMENTS evidencing any communications between the County (including but not limited to, Supervisor Kate Sears) and anyone else (including but not limited to any resident of Marin County (including but not limited to: William/Bill Schneider, John Edgcomb, and Gusts Karlsons), or any representative of such resident) regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

County objects to this Request because, following the Court's order on County's motion to dismiss (Dkt. 36), it seeks information with no conceivable relevance to any party's claims or defenses, and is overbroad, and purports to impose a burden on County that far outweighs whatever limited probative value any responsive information might have. County will construe this Request as seeking documents related to (1) communications regarding complaints County received regarding Plaintiff from January 1, 2017 to September 2, 2020; (2) documents regarding County's enforcement of the terms of its COVID-19 related health orders through September 2, 2020 against Seaplane Adventures, other aviation-related businesses, and charter boat businesses; and (3) documents regarding the basis for the County's treatment of aviation-related business and charter boat business in connection with its COVID-19-related health orders through September 2, 2020.

Subject to and without waiving the foregoing objections, County will produce all responsive, non-privileged documents that it is able to locate following a reasonable search that have not already been produced in this litigation.

11

1 **REQUEST FOR PRODUCTION NO. 15:**

2     Any and all DOCUMENTS evidencing any communications between Supervisor Kate Sears and

3 the Marin County Community Development Agency (including but not limited to: the Marin County

4 Planning Department, Marin County Code Enforcement Division, and Marin County Environmental

5 Health Services) regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the

6 present.

7 **RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

8     County objects to this Request because, following the Court's order on County's motion to

9 dismiss (Dkt. 36), it seeks information with no conceivable relevance to any party's claims or defenses,

10 and is overbroad, and purports to impose a burden on County that far outweighs whatever limited

11 probative value any responsive information might have. County will construe this Request as seeking

12 documents related to (1) communications regarding complaints County received regarding Plaintiff from

13 January 1, 2017 to September 2, 2020; (2) documents regarding County's enforcement of the terms of its

14 COVID-19 related health orders through September 2, 2020 against Seaplane Adventures, other

15 aviation-related businesses, and charter boat businesses; and (3) documents regarding the basis for the

16 County's treatment of aviation-related business and charter boat business in connection with its COVID-

17 19-related health orders through September 2, 2020.

18     Subject to and without waiving the foregoing objections, County will produce all responsive, non-

19 privileged documents that it is able to locate following a reasonable search that have not already been

20 produced in this litigation.

21 **REQUEST FOR PRODUCTION NO. 16:**

22     Any and all DOCUMENTS evidencing any communications between Supervisor Kate Sears and

23 the Marin County Sheriff's Department regarding the operations of Seaplane Adventures, LLC from

24 January 1, 2017 to the present.

25 **RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

26     County objects to this Request because, following the Court's order on County's motion to

27 dismiss (Dkt. 36), it seeks information with no conceivable relevance to any party's claims or defenses,

28 and is overbroad, and purports to impose a burden on County that far outweighs whatever limited

12

1   probative value any responsive information might have. County will construe this Request as seeking

2   documents related to (1) communications regarding complaints County received regarding Plaintiff from

3   January 1, 2017 to September 2, 2020: (2) documents regarding County's enforcement of the terms of its

4   COVID-19 related health orders through September 2, 2020 against Seaplane Adventures, other

5   aviation-related businesses, and charter boat businesses: and (3) documents regarding the basis for the

6   County's treatment of aviation-related business and charter boat business in connection with its COVID-

7   19-related health orders through September 2, 2020.

8        Subject to and without waiving the foregoing objections. County will produce all responsive, non-

9   privileged documents that it is able to locate following a reasonable search that have not already been

10   produced in this litigation.

11   **REQUEST FOR PRODUCTION NO. 17:**

12        Any and all DOCUMENTS evidencing any communications between the Marin County

13   Sheriff's Department and anyone else regarding the operations of Seaplane Adventures. LLC from

14   January 1, 2017 to the present.

15   **RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

16        County objects to this Request because, following the Court's order on County's motion to

17   dismiss (Dkt. 36), it seeks information with no conceivable relevance to any party's claims or defenses,

18   and is overbroad, and purports to impose a burden on County that far outweighs whatever limited

19   probative value any responsive information might have. County will construe this Request as seeking

20   documents related to (1) communications regarding complaints County received regarding Plaintiff from

21   January 1, 2017 to September 2, 2020: (2) documents regarding County's enforcement of the terms of its

22   COVID-19 related health orders through September 2, 2020 against Seaplane Adventures, other

23   aviation-related businesses, and charter boat businesses: and (3) documents regarding the basis for the

24   County's treatment of aviation-related business and charter boat business in connection with its COVID-

25   19-related health orders through September 2, 2020.

26        Subject to and without waiving the foregoing objections. County will produce all responsive, non-

27   privileged documents that it is able to locate following a reasonable search that have not already been

28   produced in this litigation.

1 **REQUEST FOR PRODUCTION NO. 18:**

2     Any and all DOCUMENTS evidencing any communications between Marin County and the

3 Federal Aviation Administration regarding the operations of Seaplane Adventures. LLC from January 1.

4 2017 to the present

5 **RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

6     County objects to this Request because. following the Court's order on County's motion to

7 dismiss (Dkt. 36). it seeks information with no conceivable relevance to any party's claims or defenses.

8 and is overbroad. and purports to impose a burden on County that far outweighs whatever limited

9 probative value any responsive information might have. County will construe this Request as seeking

10 documents related to (1) communications regarding complaints County received regarding Plaintiff from

11 January 1. 2017 to September 2. 2020: (2) documents regarding County's enforcement of the terms of its

12 COVID-19 related health orders through September 2. 2020 against Seaplane Adventures. other

13 aviation-related businesses. and charter boat businesses: and (3) documents regarding the basis for the

14 County's treatment of aviation-related business and charter boat business in connection with its COVID-

15 19-related health orders through September 2. 2020.

16     Subject to and without waiving the foregoing objections. County will produce all responsive. non-

17 privileged documents that it is able to locate following a reasonable search that have not already been

18 produced in this litigation.

19 **REQUEST FOR PRODUCTION NO. 19:**

20     Any and all DOCUMENTS evidencing any communications between Matt Willis and any

21 department of the County of Marin regarding the operations of Seaplane Adventures. LLC from January

22 1. 2017 to the present.

23 **RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

24     County objects to this Request because. following the Court's order on County's motion to

25 dismiss (Dkt. 36). it seeks information with no conceivable relevance to any party's claims or defenses.

26 and is overbroad. and purports to impose a burden on County that far outweighs whatever limited

27 probative value any responsive information might have. County will construe this Request as seeking

28 documents related to (1) communications regarding complaints County received regarding Plaintiff from

14

1    January 1. 2017 to September 2. 2020: (2) documents regarding County's enforcement of the terms of its

2    COVID-19 related health orders through September 2. 2020 against Seaplane Adventures. other

3    aviation-related businesses. and charter boat businesses: and (3) documents regarding the basis for the

4    County's treatment of aviation-related business and charter boat business in connection with its COVID-

5    19-related health orders through September 2. 2020.

6          Subject to and without waiving the foregoing objections. County will produce all responsive. non-

7    privileged documents that it is able to locate following a reasonable search that have not already been

8    produced in this litigation.

9    **REQUEST FOR PRODUCTION NO. 20:**

10          Any and all DOCUMENTS evidencing any communications between the County of Marin and

11    any aviation-related business in the County of Marin regarding the Marin County Health Orders ("Marin

12    County Health Orders" or "Marin Health Orders" means and refers to the health orders issued by the

13    County of Marin that are referenced in the First Amended Complaint ("FAC"). including the March

14    Health Order. Health Order. Health Orders. and Marin Order. as well as any and all appendices.

15    attachments. exhibits. predecessors. or updates thereto).

16    **RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

17          Subject to and without waiving the foregoing objections. County will produce all responsive. non-

18    privileged documents that it is able to locate following a reasonable search that have not already been

19    produced in this litigation.

20    **REQUEST FOR PRODUCTION NO. 21:**

21          Any and all DOCUMENTS evidencing any internal communications (including but not limited

22    to: Slack communications) within the County of Marin regarding the operations of Seaplane Adventures.

23    LLC or any other aviation-related business from January 1. 201 7 to the present.

24    **RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

25          County objects to this Request because. following the Court's order on County's motion to

26    dismiss (Dkt. 36). it seeks information with no conceivable relevance to any party's claims or defenses.

27    and is overbroad. and purports to impose a burden on County that far outweighs whatever limited

28    probative value any responsive information might have. County will construe this Request as seeking

15

1   documents related to (1) communications regarding complaints County received regarding Plaintiff from

2   January 1, 2017 to September 2, 2020; (2) documents regarding County's enforcement of the terms of its

3   COVID-19 related health orders through September 2, 2020 against Seaplane Adventures, other

4   aviation-related businesses, and charter boat businesses; and (3) documents regarding the basis for the

5   County's treatment of aviation-related business and charter boat business in connection with its COVID-

6   19-related health orders through September 2, 2020.

7         Subject to and without waiving the foregoing objections, County will produce all responsive, non-

8   privileged documents that it is able to locate following a reasonable search that have not already been

9   produced in this litigation.

10   **REQUEST FOR PRODUCTION NO. 22:**

11         Any and all DOCUMENTS evidencing any documents, communications, policies, or procedures

12   adopted by the County of Marin with respect to the Marin Health Orders as applied to aviation-related

13   businesses, charter boat businesses, and recreation-related businesses.

14   **RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

15         County objects to this Request because, following the Court's order on County's motion to

16   dismiss (Dkt. 36), it seeks information with no conceivable relevance to any party's claims or defenses,

17   and is overbroad, and purports to impose a burden on County that far outweighs whatever limited

18   probative value any responsive information might have. County will construe this Request as seeking

19   documents related to (1) communications regarding complaints County received regarding Plaintiff from

20   January 1, 2017 to September 2, 2020; (2) documents regarding County's enforcement of the terms of its

21   COVID-19 related health orders through September 2, 2020 against Seaplane Adventures, other

22   aviation-related businesses, and charter boat businesses; and (3) documents regarding the basis for the

23   County's treatment of aviation-related business and charter boat business in connection with its COVID-

24   19-related health orders through September 2, 2020.

25         Subject to and without waiving the foregoing objections, County will produce all responsive, non-

26   privileged documents that it is able to locate following a reasonable search that have not already been

27   produced in this litigation.

28

16

**REQUEST FOR PRODUCTION NO. 23:**

Any and all DOCUMENTS evidencing any documents. communications. policies. or procedures adopted by the County of Marin with respect to the Marin Health Orders as applied to the operations of Seaplane Adventures. LLC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

County objects to this Request because. following the Court's order on County's motion to dismiss (Dkt. 36). it seeks information with no conceivable relevance to any party's claims or defenses. and is overbroad. and purports to impose a burden on County that far outweighs whatever limited probative value any responsive information might have. County will construe this Request as seeking documents related to (1) communications regarding complaints County received regarding Plaintiff from January 1. 2017 to September 2. 2020: (2) documents regarding County's enforcement of the terms of its COVID-19 related health orders through September 2. 2020 against Seaplane Adventures. other aviation-related businesses. and charter boat businesses: and (3) documents regarding the basis for the County's treatment of aviation-related business and charter boat business in connection with its COVID-19-related health orders through September 2. 2020.

Subject to and without waiving the foregoing objections. County will produce all responsive. non-privileged documents that it is able to locate following a reasonable search that have not already been produced in this litigation.

**REQUEST FOR PRODUCTION NO. 24:**

Any and all DOCUMENTS evidencing the basis. documents. policies. or procedures used by the County of Marin in determining that Seaplane Adventures. LLC's operations were limited under the Marin Health Orders. distinct from other aviation-related businesses. charter boats. and/or recreation-related businesses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

County objects to this Request because. following the Court's order on County's motion to dismiss (Dkt. 36). it seeks information with no conceivable relevance to any party's claims or defenses. and is overbroad. and purports to impose a burden on County that far outweighs whatever limited probative value any responsive information might have. County will construe this Request as seeking

17

1  documents related to (1) communications regarding complaints County received regarding Plaintiff from
2  January 1, 2017 to September 2, 2020; (2) documents regarding County's enforcement of the terms of its
3  COVID-19 related health orders through September 2, 2020 against Seaplane Adventures, other
4  aviation-related businesses, and charter boat businesses; and (3) documents regarding the basis for the
5  County's treatment of aviation-related business and charter boat business in connection with its COVID-
6  19-related health orders through September 2, 2020.

7          Subject to and without waiving the foregoing objections, County will produce all responsive, non-
8  privileged documents that it is able to locate following a reasonable search that have not already been
9  produced in this litigation.

10 **REQUEST FOR PRODUCTION NO. 25:**

11         Any and all DOCUMENTS evidencing the basis, documents, policies, communications, or
12 procedures (including but not limited to: text messages, memoranda, discussions) leading to the
13 adoption of Appendix C-1 ( adopted August 31, 2020) to the Marin Health Orders.

14 **RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

15         County objects to this Request because, following the Court's order on County's motion to
16 dismiss (Dkt. 36), it seeks information with no conceivable relevance to any party's claims or defenses,
17 and is overbroad, and purports to impose a burden on County that far outweighs whatever limited
18 probative value any responsive information might have. County will construe this Request as seeking
19 documents related to (1) communications regarding complaints County received regarding Plaintiff from
20 January 1, 2017 to September 2, 2020; (2) documents regarding County's enforcement of the terms of its
21 COVID-19 related health orders through September 2, 2020 against Seaplane Adventures, other
22 aviation-related businesses, and charter boat businesses; and (3) documents regarding the basis for the
23 County's treatment of aviation-related business and charter boat business in connection with its COVID-
24 19-related health orders through September 2, 2020.

25         Subject to and without waiving the foregoing objections, County will produce all responsive, non-
26 privileged documents that it is able to locate following a reasonable search that have not already been
27 produced in this litigation.

28

18

1 **REQUEST FOR PRODUCTION NO. 26:**

2     Any and all DOCUMENTS evidencing the events occurring at Seaplane Adventures. LLC on or

3 between June 26. 2020 through July 5. 2020 in which a Marin County Sheriff's deputy was sent to

4 Seaplane Adventures. LLC to inform the business (via it's CEO Aaron Singer) that it was not permitted

5 to operate per the Marin Health Orders. and to threaten fines and/or imprisonment for any violation/s.

6 **RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

7     Subject to and without waiving the foregoing objections. County will produce all responsive. non-

8 privileged documents that it is able to locate following a reasonable search that have not already been

9 produced in this litigation.

10 **REQUEST FOR PRODUCTION NO. 27:**

11     Any and all non-privileged DOCUMENTS evidencing the legal or other authority. and any

12 documents. basis. policies. communications. or procedures. leading to Marin County's decision to send a

13 Marin County Sheriff's deputy. on or between June 26. 2020 through July 5. 2020. to Seaplane

14 Adventures. LLC to inform the business (via it's CEO Aaron Singer) that it was not permitted to operate

15 per the Marin Health Orders. and to threaten fines and/or imprisonment for any violation/s.

16 **RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

17     County objects to this Request because. following the Court's order on County's motion to

18 dismiss (Dkt. 36). it seeks information with no conceivable relevance to any party's claims or defenses.

19 and is overbroad. and purports to impose a burden on County that far outweighs whatever limited

20 probative value any responsive information might have. County will construe this Request as seeking

21 documents related to (1) communications regarding complaints County received regarding Plaintiff from

22 January 1. 2017 to September 2. 2020: (2) documents regarding County's enforcement of the terms of its

23 COVID-19 related health orders through September 2. 2020 against Seaplane Adventures. other

24 aviation-related businesses. and charter boat businesses: and (3) documents regarding the basis for the

25 County's treatment of aviation-related business and charter boat business in connection with its COVID-

26 19-related health orders through September 2. 2020.

27     Subject to and without waiving the foregoing objections. County will produce all responsive. non-

28 privileged documents that it is able to locate following a reasonable search that have not already been

19

1 produced in this litigation.

2 **REQUEST FOR PRODUCTION NO. 28:**

3     Any and all DOCUMENTS evidencing any complaints made to the County of Marin between
4 January 1, 2017 through the present regarding the operations of Seaplane Adventures, LLC.

5 **RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

6     County objects to this Request because, following the Court's order on County's motion to
7 dismiss (Dkt. 36), it seeks information with no conceivable relevance to any party's claims or defenses,
8 and is overbroad, and purports to impose a burden on County that far outweighs whatever limited
9 probative value any responsive information might have. County will construe this Request as seeking
10 documents related to (1) communications regarding complaints County received regarding Plaintiff from
11 January 1, 2017 to September 2, 2020; (2) documents regarding County's enforcement of the terms of its
12 COVID-19 related health orders through September 2, 2020 against Seaplane Adventures, other
13 aviation-related businesses, and charter boat businesses; and (3) documents regarding the basis for the
14 County's treatment of aviation-related business and charter boat business in connection with its COVID-
15 19-related health orders through September 2, 2020.

16     Subject to and without waiving the foregoing objections, County will produce all responsive, non-
17 privileged documents that it is able to locate following a reasonable search that have not already been
18 produced in this litigation.

19 **REQUEST FOR PRODUCTION NO. 29:**

20     Any and all DOCUMENTS evidencing any information related to enforcement of the Marin
21 Health Orders.

22 **RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

23     County objects to this Request because, following the Court's order on County's motion to
24 dismiss (Dkt. 36), it seeks information with no conceivable relevance to any party's claims or defenses,
25 and is overbroad, and purports to impose a burden on County that far outweighs whatever limited
26 probative value any responsive information might have. County will construe this Request as seeking
27 documents related to (1) communications regarding complaints County received regarding Plaintiff from
28 January 1, 2017 to September 2, 2020; (2) documents regarding County's enforcement of the terms of its

1   COVID-19 related health orders through September 2, 2020 against Seaplane Adventures, other

2   aviation-related businesses, and charter boat businesses; and (3) documents regarding the basis for the

3   County's treatment of aviation-related business and charter boat business in connection with its COVID-

4   19-related health orders through September 2, 2020.

5       Subject to and without waiving the foregoing objections, County will produce all responsive, non-

6   privileged documents that it is able to locate following a reasonable search that have not already been

7   produced in this litigation.

8   **REQUEST FOR PRODUCTION NO. 30:**

9       Any and all non-privileged DOCUMENTS evidencing any information included in the County

10  of Marin's January 29, 2021 initial disclosures.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

12      County objects to this Request because, following the Court's order on County's motion to

13  dismiss (Dkt. 36), it seeks information with no conceivable relevance to any party's claims or defenses,

14  and is overbroad, and purports to impose a burden on County that far outweighs whatever limited

15  probative value any responsive information might have. County will construe this Request as seeking

16  documents related to (1) communications regarding complaints County received regarding Plaintiff from

17  January 1, 2017 to September 2, 2020; (2) documents regarding County's enforcement of the terms of its

18  COVID-19 related health orders through September 2, 2020 against Seaplane Adventures, other

19  aviation-related businesses, and charter boat businesses; and (3) documents regarding the basis for the

20  County's treatment of aviation-related business and charter boat business in connection with its COVID-

21  19-related health orders through September 2, 2020.

22      Subject to and without waiving the foregoing objections, County will produce all responsive, non-

23  privileged documents that it is able to locate following a reasonable search that have not already been

24  produced in this litigation.

25  **REQUEST FOR PRODUCTION NO. 31:**

26      Any and all DOCUMENTS evidencing any communications between Matt Willis and any

27  anyone else (including but not limited to any resident of Marin County, or representative of a resident of

28

21

1  Marin County) regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the
2  present.

3  **RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

4          County objects to this Request because, following the Court's order on County's motion to
5  dismiss (Dkt. 36), it seeks information with no conceivable relevance to any party's claims or defenses,
6  and is overbroad, and purports to impose a burden on County that far outweighs whatever limited
7  probative value any responsive information might have. County will construe this Request as seeking
8  documents related to (1) communications regarding complaints County received regarding Plaintiff from
9  January 1, 2017 to September 2, 2020; (2) documents regarding County's enforcement of the terms of its
10 COVID-19 related health orders through September 2, 2020 against Seaplane Adventures, other
11 aviation-related businesses, and charter boat businesses; and (3) documents regarding the basis for the
12 County's treatment of aviation-related business and charter boat business in connection with its COVID-
13 19-related health orders through September 2, 2020.

14         Subject to and without waiving the foregoing objections, County will produce all responsive, non-
15 privileged documents that it is able to locate following a reasonable search that have not already been
16 produced in this litigation.

17 **REQUEST FOR PRODUCTION NO. 32:**

18         Any and all DOCUMENTS evidencing any communications between the Marin County
19 Community Development Agency (including but not limited to: the Marin County Planning Department,
20 Marin County Code Enforcement Division, and Marin County Environmental Health Services) and
21 anyone else regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present.

22 **RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

23         County objects to this Request because, following the Court's order on County's motion to
24 dismiss (Dkt. 36), it seeks information with no conceivable relevance to any party's claims or defenses,
25 and is overbroad, and purports to impose a burden on County that far outweighs whatever limited
26 probative value any responsive information might have. County will construe this Request as seeking
27 documents related to (1) communications regarding complaints County received regarding Plaintiff from
28 January 1, 2017 to September 2, 2020; (2) documents regarding County's enforcement of the terms of its

22

1 COVID-19 related health orders through September 2, 2020 against Seaplane Adventures, other

2 aviation-related businesses, and charter boat businesses; and (3) documents regarding the basis for the

3 County's treatment of aviation-related business and charter boat business in connection with its COVID-

4 19-related health orders through September 2, 2020.

5      Subject to and without waiving the foregoing objections, County will produce all responsive, non-

6 privileged documents that it is able to locate following a reasonable search that have not already been

7 produced in this litigation.

8 **REQUEST FOR PRODUCTION NO. 33:**

9      Any and all DOCUMENTS evidencing any communications between the Marin County

10 Department of Public Works (including but not limited to: the Engineering Division, Land Use Division,

11 Flood Control Division) and anyone else regarding the operations of Seaplane Adventures, LLC from

12 January 1, 2017 to the present.

13 **RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

14      County objects to this Request because, following the Court's order on County's motion to

15 dismiss (Dkt. 36), it seeks information with no conceivable relevance to any party's claims or defenses,

16 and is overbroad, and purports to impose a burden on County that far outweighs whatever limited

17 probative value any responsive information might have. County will construe this Request as seeking

18 documents related to (1) communications regarding complaints County received regarding Plaintiff from

19 January 1, 2017 to September 2, 2020; (2) documents regarding County's enforcement of the terms of its

20 COVID-19 related health orders through September 2, 2020 against Seaplane Adventures, other

21 aviation-related businesses, and charter boat businesses; and (3) documents regarding the basis for the

22 County's treatment of aviation-related business and charter boat business in connection with its COVID-

23 19-related health orders through September 2, 2020.

24      Subject to and without waiving the foregoing objections, County will produce all responsive, non-

25 privileged documents that it is able to locate following a reasonable search that have not already been

26 produced in this litigation.

27

28

23

Dated: July 30, 2021

BRIAN E. WASHINGTON
COUNTY COUNSEL

By: _____
Brandon W. Halter

Attorney for Defendant
COUNTY OF MARIN

24

# PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is County Counsel of Marin County, Suite 275, Civic Center, San Rafael, CA 94903. On July 30, 2021, I served the within documents:

## DEFENDANT COUNTY OF MARIN'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S NOTICE OF DEPOSITION OF COUNTY OF MARIN'S PERSON MOST KNOWLEDGEABLE PURSUANT TO RULE 30(b)(6) and RULE 34(a)(1) REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE

☐ by electronic Transmission. Based on a court order or an agreement of the parties to accept electronic service, I caused the documents to be sent on the date shown below to the persons at the electronic service address listed below. I did not receive within a reasonable time after the transmission any electronic message or other indication that the transmission was unsuccessful.

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒ by placing the document(s) listed above in a sealed envelope for collection and mailing on that date following ordinary business practices. I am readily familiar with the County's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U. S. postal service on that same day with postage thereon fully prepaid in the ordinary course of business.

☐ by overnight delivery to an overnight delivery carrier with delivery fees provided for, addressed to the person(s) set forth below.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

> John E. Sharp
> Gillian Edmonds
> Law Offices of John E. Sharp
> 24 Professional Center Parkway, Suite 110
> San Rafael, CA 94903
>
> *Attorney for Plaintiff*
> *Seaplane Adventures, LLC*

☒ I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on July 30, 2021, at San Rafael, California.

_____
Rachael Porter

EXHIBIT A

John,

I write to continue to meet and confer with Plaintiff regarding the County of Marin's objections to the notice of deposition Plaintiff served pursuant to Rule 30(b)(6) ("Notice"), and further to our telephone conversation on this subject a two weeks ago. Below, I describe in general terms the County's objections to the categories of examination in the Notice (which we discussed previously), as well as proposals for alternative categories of examination on which the County would agree to produce a witness. I plan to prepare the County's witness to testify at deposition on July 14th (as we discussed) as to the alternative categories of examination that I propose, rather than the categories in the Notice that the County finds objectionable. However, I am willing to continue to meet and confer with you regarding these alternative categories if you have concerns.

At the outset, I note that a few of the terms and concepts to which the County objects are repeated frequently enough in the Notice that they are worth mentioning separately. For example, nearly all the categories purport to demand the County designate a witness to testify regarding the County's knowledge of types of documents or communications that are described in broad or general terms, often without reference to specific documents or specific individuals. But, as you know, the Federal rules require specificity as well as proportionality. These broad categories of documents and communications do not give the County sufficient information on which to base its preparation of its witness, and even if they did, requiring the County to prepare a witness to testify regarding "all communications" or "all documents" related to a general subject area over a three year period would impose a burden on the County that far outweighs whatever probative value such information might have, especially given the somewhat limited scope of Plaintiff's sole pending claim in this case. Moreover, Plaintiff's inclusion of the phrase "regarding the operations of Seaplane" in certain of these categories, by itself, does not render them sufficiently specific; they potentially still include a significant volume of communications and documents with little to no conceivable relevance to Plaintiff's claim.

With that said, here is a table with a general summary of the County's objections (all of which it reserves, whether stated here or not) as well as our proposal for a set of categories regarding which the County plans to prepare its witness for testimony on 7/14.

| Category in Notice | County's Basis for Objection | County's Counter-Proposal |
|---|---|---|
| 1. Knowledge of communications between the County (including, but not limited to, Supervisor Kate Sears) and anyone else (including but not limited to | Vague, overbroad and non-specific as to timeframe and subject matter, imposes a burden that is disproportionate to the value of the information | Non-privileged communications regarding complaints the County has received about Seaplane Adventures since January 1, 2017. |

| | | |
|---|---|---|
| any resident of Marin County (including but not limited to: William/Bill Schneider, John Edgcomb, and Gusts Karlsons), or any representative of such resident) regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present. | sought | |
| 2. Knowledge of communications between Supervisor Kate Sears and the Marin County Community Development Agency (including but not limited to: the Marin County Planning Department, Marin County Code Enforcement Division, and Marin County Environmental Health Services) regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present. | Vague, overbroad and non-specific as to timeframe and subject matter, imposes a burden that is disproportionate to the value of the information sought | Non-privileged communications regarding complaints the County has received about Seaplane Adventures since January 1, 2017. |
| 3. Knowledge of communications between the Marin County Community Development Agency (including but not limited to: the Marin County Planning Department, Marin County Code Enforcement Division, and Marin County Environmental Health Services) and anyone else regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present. | Vague, overbroad and non-specific as to timeframe and subject matter, imposes a burden that is disproportionate to the value of the information sought | Non-privileged communications regarding complaints the County has received about Seaplane Adventures since January 1, 2017. |
| 4. Knowledge of | Vague, overbroad and non- | Non-privileged |

| | | |
|---|---|---|
| communications between Marin County Department of Public Works (including but not limited to: the Engineering Division, Land Use Division, Flood Control Division) and anyone else regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present. | specific as to timeframe and subject matter, imposes a burden that is disproportionate to the value of the information sought | communications regarding complaints the County has received about Seaplane Adventures since January 1, 2017. |
| 5. Knowledge of communications between Supervisor Kate Sears and the Marin County Sheriff's Department regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present. | Vague, overbroad and non-specific as to timeframe and subject matter, imposes a burden that is disproportionate to the value of the information sought | Non-privileged communications regarding complaints the County has received about Seaplane Adventures since January 1, 2017.<br><br>Non-privileged documents, communications, and policies regarding the County's enforcement of the terms of its COVID-19-related health orders in 2020 against Seaplane Adventures, other aviation-related businesses, and charter boat businesses. |
| 6. Knowledge of communications between the Marin County Sheriff's Department and anyone else regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present. | Vague, overbroad and non-specific as to timeframe and subject matter, imposes a burden that is disproportionate to the value of the information sought | Non-privileged documents, communications, and policies regarding the County's enforcement of the terms of its COVID-19-related health orders in 2020 against Seaplane Adventures, other aviation-related businesses, and charter boat businesses. |
| 7. Knowledge of communications between Marin County and the Federal Aviation Administration regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present. | Not relevant to any party's claims or defenses; the County's motion to dismiss Plaintiff's preemption claim remains pending. | None |

| | | |
|---|---|---|
| 8. Knowledge of communications between Matt Willis and any department of the County of Marin regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present. | Vague, overbroad and non-specific as to timeframe and subject matter, imposes a burden that is disproportionate to the value of the information sought | Non-privileged documents, communications, and policies regarding the County's enforcement of the terms of its COVID-19-related health orders in 2020 against Seaplane Adventures, other aviation-related businesses, and charter boat businesses. |
| 9. Knowledge of communications between Matt Willis and anyone else (including but not limited to any resident of Marin County, or representative of a resident of Marin County) regarding the operations of Seaplane Adventures, LLC from January 1, 2017 to the present. | Vague, overbroad and non-specific as to timeframe and subject matter, imposes a burden that is disproportionate to the value of the information sought | Non-privileged documents, communications, and policies regarding the County's enforcement of the terms of its COVID-19-related health orders in 2020 against Seaplane Adventures, other aviation-related businesses, and charter boat businesses. |
| 10. Knowledge of communications between the County of Marin and any aviation-related business in the County of Marin regarding the Marin County Health Orders ("Marin County Health Orders" or "Marin Health Orders" means and refers to the health orders issued by the County of Marin that are referenced in the First Amended Complaint, including the March Health Order, Health Order, Health Orders, and Marin Order, as well as any and all appendices, attachments, exhibits, predecessors, or updates thereto). | Vague, overbroad and non-specific as to timeframe and subject matter, imposes a burden that is disproportionate to the value of the information sought | Non-privileged documents, communications, and policies regarding the County's enforcement of the terms of its COVID-19-related health orders in 2020 against Seaplane Adventures, other aviation-related businesses, and charter boat businesses. |
| 11. Knowledge of internal communications (including but not limited to: Slack | Vague, overbroad and non-specific as to timeframe and subject matter, imposes a | Non-privileged documents, communications, and policies regarding the County's |

| | | |
|---|---|---|
| communications) within the County of Marin regarding the operations of Seaplane Adventures, LLC or any other aviation-related business from January 1, 2017 to the present. | burden that is disproportionate to the value of the information sought | enforcement of the terms of its COVID-19-related health orders in 2020 against Seaplane Adventures, other aviation-related businesses, and charter boat businesses. |
| 12. Knowledge of the documents, policies, or procedures adopted by the County of Marin with respect to the Marin Health Orders as applied to aviation-related businesses, charter boat businesses, and recreation-related businesses. | Vague, overbroad and non-specific as to timeframe and subject matter, imposes a burden that is disproportionate to the value of the information sought | Non-privileged documents, communications, and policies regarding the County's enforcement of the terms of its COVID-19-related health orders in 2020 against Seaplane Adventures, other aviation-related businesses, and charter boat businesses. |
| 13. Knowledge of the documents, policies, or procedures adopted by the County of Marin with respect to the Marin Health Orders as applied to the operations of Seaplane Adventures, LLC. | Vague, overbroad and non-specific as to timeframe and subject matter, imposes a burden that is disproportionate to the value of the information sought | Non-privileged documents, communications, and policies regarding the County's enforcement of the terms of its COVID-19-related health orders in 2020 against Seaplane Adventures, other aviation-related businesses, and charter boat businesses. |
| 14. Knowledge of the basis, documents, policies, or procedures used by the County of Marin in determining that Seaplane Adventures, LLC's operations were limited under the Marin Health Orders, distinct from other aviation-related businesses, charter boats, and/or recreation-related businesses. | Vague, overbroad and non-specific as to timeframe and subject matter, imposes a burden that is disproportionate to the value of the information sought | Non-privileged documents, communications, and policies regarding the basis for the County's treatment of aviation-related business and charter boat business in connection with its COVID-19-related health orders in 2020. |
| 15. Knowledge of the basis, documents, policies, communications, or procedures (including but not limited to: text | Vague, overbroad and non-specific as to timeframe and subject matter, imposes a burden that is disproportionate to the | Non-privileged documents, communications, and policies regarding the basis for the County's treatment of aviation-related business and |

| | | |
|---|---|---|
| messages, memoranda, discussions) leading to the adoption of Appendix C-1 (adopted August 31, 2020) to the Marin Health Orders. | value of the information sought | charter boat business in connection with its COVID-19-related health orders in 2020 |
| 16. Knowledge of the events occurring at Seaplane Adventures, LLC on or between June 26, 2020 through July 5, 2020 in which a Marin County Sheriff's deputy was sent to Seaplane Adventures, LLC to inform the business (via its CEO Aaron Singer) that it was not permitted to operate per the Marin Health Orders, and to threaten fines and/or imprisonment for any violation/s. | Vague, overbroad and non-specific as to timeframe and subject matter, imposes a burden that is disproportionate to the value of the information sought | Non-privileged communications regarding complaints the County has received about Seaplane Adventures since January 1, 2017.<br><br>Non-privileged documents, communications, and policies regarding the County's enforcement of the terms of its COVID-19-related health orders in 2020 against Seaplane Adventures, other aviation-related businesses, and charter boat businesses. |
| 17. Knowledge of the legal or other authority, and any documents, basis, policies, communications, or procedures, leading to Marin County's decision to send a Marin County Sheriff's deputy, on or between June 26, 2020 through July 5, 2020, to Seaplane Adventures, LLC to inform the business (via its CEO Aaron Singer) that it was not permitted to operate per the Marin Health Orders, and to threaten fines and/or imprisonment for any violation/s. | Vague, overbroad and non-specific as to timeframe and subject matter, imposes a burden that is disproportionate to the value of the information sought | Non-privileged communications regarding complaints the County has received about Seaplane Adventures since January 1, 2017.<br><br>Non-privileged documents, communications, and policies regarding the County's enforcement of the terms of its COVID-19-related health orders in 2020 against Seaplane Adventures, other aviation-related businesses, and charter boat businesses. |
| 18. Knowledge of any complaints made to the County of Marin between January 1, 2017 through the present regarding the | Vague, overbroad and non-specific as to timeframe and subject matter, imposes a burden that is disproportionate to the | Non-privileged communications regarding complaints the County has received about Seaplane Adventures since January 1, |

| | value of the information sought | 2017. |
|---|---|---|
| operations of Seaplane Adventures, LLC | value of the information sought | 2017. |
| 19. Knowledge of any information related to enforcement of the Marin Health Orders. | Vague, overbroad and non-specific as to timeframe and subject matter, imposes a burden that is disproportionate to the value of the information sought | None |
| 20. Knowledge of any information included in the County of Marin's January 29, 2021 initial disclosures. | Vague, overbroad and non-specific as to timeframe and subject matter, imposes a burden that is disproportionate to the value of the information sought, especially given the Court's ruling regarding the County's motion to dismiss | None |
| 21. Knowledge of any information included in the County of Marin's discovery responses in the present lawsuit. | Overbroad and non-specific as to timeframe and subject matter, imposes a burden that is disproportionate to the value of the information sought, especially given the County's discovery responses have not yet been prepared or served | None |

Please let me know if you would like to set up a time to discuss this. Otherwise, I will assume you agree to the topics of examination I have proposed for the upcoming deposition.

Thanks,
Brandon

**Brandon W. Halter**
Deputy County Counsel
County of Marin
Office: 415-473-6117
Mobile: 707-328-9559

EXHIBIT 24

BRIAN E. WASHINGTON, COUNTY COUNSEL
Brandon W. Halter, Deputy, SBN 289687
OFFICE OF THE COUNTY COUNSEL
COUNTY OF MARIN
3501 Civic Center Drive, Ste. 275
San Rafael, CA 94903
Tel.: (415) 473-6117
Fax: (415) 473-3796
bhalter@marincounty.org

Attorneys for Defendant
COUNTY OF MARIN

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| SEAPLANE ADVENTURES, LLC, | Case No.: 20-cv-06222-WHA |
|---|---|
| Plaintiff, | **DEFENDANT COUNTY OF MARIN'S FOURTH AMENDED NOTICE OF DEPOSITION OF SEAPLANE ADVENTURES, LLC'S PERSON MOST KNOWLEDGEABLE PURSUANT TO RULE 30(b)(6) and RULE 34(a)(1) REQUEST FOR PRODUCTION OF DOCUMENTS, SET TWO** |
| v. | |
| COUNTY OF MARIN, CALIFORNIA, | |
| Defendant. | |
| | Date: August 4, 2021 |
| | Time: 10:00 a.m. |
| | Location: Via Zoom |
| | Complaint filed: September 2, 2020 |

TO PLAINTIFF AND THEIR COUNSEL OF RECORD:

NOTICE IS HEREBY GIVEN THAT, pursuant to Rule 30(b)(6) of the Federal Rules of Plaintiff,

you are hereby commanded to produce for oral deposition the agent or agents of Seaplane Adventures,

LLC, on August 4, 2021, to testify on the subjects set forth below. The deposition will commence at 10:00

a.m., via remote videoconference at the following link:

https://us02web.zoom.us/j/88213076019?pwd=N0IYSWNPS1FXRFNSYVRDTXFiMWA1dz09, or

**another location and/or link, if mutually agreed to in advance by counsel for the parties.**

1       The deposition will be taken remotely before a deposition officer, who is authorized by law to
2 administer oaths, by stenographic means, and will continue from day to day, Sundays and holidays
3 excluded, at the same place, until completed. Notice is further given that the deposition may be recorded
4 by audio-visual means in addition to stenographically.

5       Please take further notice that Defendant hereby simultaneously demands that SEAPLANE
6 ADVENTURES, LLC produce any documents not already produced that are responsive to the requests set
7 forth below, in Section II.

8      **I.    DESCRIPTION OF MATTERS FOR EXAMINATION**

9       SEAPLANE ADVENTURES, LLC must designate, in accordance with Rule 30(b)(6), a **person**
10 or **persons** that are most knowledgeable and who will testify on Seaplane's behalf about the information
11 known **or reasonably available to** SEAPLANE ADVENTURES, LLC concerning the matters for
12 examination that are set forth below; please take notice that, as contemplated by Rule 30(b)(6), in order for
13 Defendant to conduct an examination on all of the subjects and issues set forth below, SEAPLANE
14 ADVENTURES, LLC **may need to designate more than one person,** and Defendant specifically
15 requests that, if necessary, counsel for SEAPLANE ADVENTURES, LLC do so and, as stated in Rule
16 30(b)(6), then set forth the matters on which each person designated will testify:

17         1.  All facts related to Plaintiff's claim against County based on a violation of the Equal
18            Protection Clause of the Fourteenth Amendment.

19         2.  The topics addressed by County's Special Interrogatories to Plaintiff, Nos. 1-17, and
20            Plaintiff's responses thereto.

21      **II.   REQUEST FOR PRODUCTION OF DOCUMENTS, SET TWO**

22       Defendant further demands, pursuant to Federal Rule of Civil Procedure 34 and Defendant's initial
23 Notice of Deposition of Plaintiff's Person Most Knowledgeable Pursuant to Rule 30(b)(6) and Request for
24 Production of Documents and Things ("Request"), Plaintiff produce for inspection and copying all of the
25 items or categories of items responsive to such Request (which is reprinted herein for convenience) in their
26 possession, custody, or control, no later than the beginning of the deposition that is noticed herein,
27 electronically to undersigned counsel or, if such items or categories of items are not deliverable via

28

1   electronic transmission. then to the Marin County Counsel's Office at 3501 Civic Center Drive. Suite 275.

2   San Rafael. CA 94903. The production and copying shall continue from day to day until completed.

3       As an alternative to producing the originals of the documents requested herein for inspection and

4   copying by Defendant at Defendant's attorney's office. Defendant would accept legible copies of the

5   documents. However. Defendant reserves the right to request inspection of the originals at any time

6   thereafter upon request of Plaintiff's counsel. Further. Defendant requests that a written response as to each

7   item or category of item be served pursuant to Federal Rule of Civil Procedure 34(b ).

8       Privilege: If any document is withheld under a claim of privilege. provide a privilege log.

9   including. but not limited to. a list identifying each document. the date. the author or person responsible for

10   creating the document. the recipient of the document. the subject matter of the document. the privilege

11   claimed. the number of pages of any document. and the length of any recording.

12       Missing documents: If any document is not currently in your possession. custody. or control. state

13   whether it is missing or lost: has been destroyed. and if so. in what manner: has been involuntarily or

14   voluntarily transferred to others. and if so. to whom: has otherwise been disposed of. and if so. how.

15   Describe in detail the nature of. circumstances surrounding. and date of disposition of the document.

16                       **DEFINITIONS AND INSTRUCTIONS**

17       **"DOCUMENTS" or "DOCUMENTATION"** (whether written in upper or lower case) includes

18   all things permitted under Federal Rule of Civil Procedure 34(a): handwriting. typewriting. printing.

19   photostating. photocopying. recording. and every other means of recording upon any tangible thing. any

20   form or communication or representation. including letters. words. pictures. sounds or symbols. or

21   combinations thereof. as defined by California Evidence Code Section 250. and Federal Rule of Evidence

22   1001. and includes. but is not limited to. audio and video recordings. letters. drafts. notebooks. diaries.

23   calendars. notes. correspondence of any kind. records. reports of any kind. quality control reports.

24   investigation reports. inspection reports. insurance policies. insurance claims forms. forms of any kind.

25   statements. invoices. bills. bills of lading. bills of sale. permits. licenses. memoranda. minutes of meetings

26   of any kind. telephone messages. directives. court orders. court documents of any kind. maintenance

27   records. maintenance reports. inspection forms. inspection reports. inspection data. research data. studies.

28   analyses. reports of analyses. experiments. cost surveys. tests. test data. checklists. data sheets.

specifications, sales brochures, owners' manuals, operations' manuals, maintenance manuals, instruction manuals, procedures' manuals, manuals of any kind, itemizations, agendas, compliance orders, notices to abate, contracts, agreements, bids, computer printouts, e-mails, computer files, notebooks, diaries, tallies, receipts, photographs, videos, transcripts, statements, minutes, and information data summaries, and any and all electronic data, including but not limited to emails, logs, notes, reports, drafts, and Computer Assisted Dispatch (CAD) information.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 33:

All documents responsive to Requests for Production of Documents Nos. 1-32 previously propounded by County that Plaintiff has not already produced.

### REQUEST FOR PRODUCTION NO. 34:

All documents related to your responses to County's Special Interrogatories Nos. 1-17 that Plaintiff has not already produced.

Dated: July 30, 2021                    BRIAN E. WASHINGTON
                                        COUNTY COUNSEL

                        By:     _____
                                Brandon W. Halter

                                Attorney for Defendant
                                COUNTY OF MARIN

1

2

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within

3

action. My business address is County Counsel of Marin County, Suite 275, Civic Center, San Rafael, CA

4

94903. On July 30, 2021, I served the within documents:

5

6 **DEFENDANT COUNTY OF MARIN'S FOURTH AMENDED NOTICE OF DEPOSITION**
**OF SEAPLANE ADVENTURES, LLC'S PERSON MOST KNOWLEDGEABLE**

7 **PURSUANT TO RULE 30(b)(6) and RULE 34(a)(1) REQUEST FOR PRODUCTION OF**
**DOCUMENTS, SET TWO**

8

9 ☐ by electronic Transmission. Based on a court order or an agreement of the parties to accept electronic service, I caused the documents to be sent on the date shown below to the persons at the electronic service address listed below. I did not receive within a reasonable time after the transmission any

10 electronic message or other indication that the transmission was unsuccessful.

11 ☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

12

13 ☒ by placing the document(s) listed above in a sealed envelope for collection and mailing on that date following ordinary business practices. I am readily familiar with the County's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U. S.

14 postal service on that same day with postage thereon fully prepaid in the ordinary course of business.

15 ☐ by overnight delivery to an overnight delivery carrier with delivery fees provided for, addressed to the person(s) set forth below.

16

17 ☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

18

19 John E. Sharp
Gillian Edmonds

20 Law Offices of John E. Sharp
24 Professional Center Parkway, Suite 110
San Rafael, CA 94903

21

22 *Attorney for Plaintiff*
*Seaplane Adventures, LLC*

23

24 ☒ I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

25

26 Executed on July 30, 2021, at San Rafael, California.

27

28 Rachael Porter

20-cv-06222-WHA
PROOF OF SERVICE

EXHIBIT 25

## CERTIFIED TRANSCRIPT OF:

## Seaplane Adventures, LLC vs. County of Marin

## SAUL AARON SINGER

## Date: August 4, 2021

## Reported by: Amanda Kallas



117 Paul Drive, Suite A  San Rafael, CA 94903-2010

Main Office:  415-472-2361
depos@westcoastreporters.net    www.westcoastreporters.net

Page 1

1       UNITED STATES DISTRICT COURT
2       NORTHERN DISTRICT OF CALIFORNIA
3
4
5   SEAPLANE ADVENTURES, LLC,        )
6       Plaintiff,                   )
                                     )
7       vs.                          ) No. 20-cv-06222-WHA
8   COUNTY OF MARIN, CALIFORNIA,     )
        Defendant.                   )
9   _____  )
10                                   )
11                                   )
12
13
14
15      ZOOM VIDEOCONFERENCE DEPOSITION OF
16          SAUL AARON SINGER
17      PMK OF SEAPLANE ADVENTURE, LLC
18          Wednesday, August 4, 2021
19              Volume I
20
21
22  Stenographically Reported by:
    AMANDA J. KALLAS
23  CSR No. 13901
24  Job No. 1-M16123
25  PAGES 1 - 235

Page 2

1       UNITED STATES DISTRICT COURT
2       NORTHERN DISTRICT OF CALIFORNIA
3
4
5   SEAPLANE ADVENTURES, LLC,        )
6       Plaintiff,                   )
                                     )
7       vs.                          ) No. 20-cv-06222-WHA
8   COUNTY OF MARIN, CALIFORNIA,     )
        Defendant.                   )
9   _____  )
10
11
12
13
14
15      Zoom videoconference deposition of SAUL AARON SINGER,
16  SEAPLANE ADVENTURES, LLC, PMK, Volume I, remotely taken on
17  behalf of Defendant, beginning at 10:04 A.M. and ending at
18  5:03 P.M. on Wednesday, August 4, 2021, before Amanda J.
19  Kallas, Certified Shorthand Reporter No. 13901.
20
21
22
23
24
25

Page 3

1   APPEARANCES:
2
3   For Plaintiff:
4       LAW OFFICES OF JOHN E. SHARP
5       BY: JOHN E. SHARP, ESQ.
6       24 PROFESSIONAL CENTER PARKWAY
7       SUITE 110
8       SAN RAFAEL, CALIFORNIA 94903
9       415-479-1645
10      JOHN@JOHNSHARPLAW.COM
11
12  For Defendant:
13      OFFICE OF COUNTY COUNSEL, COUNTY OF MARIN
14      BY: BRANDON W. HALTER, DEPUTY, ESQ.
15      3501 CIVIC CENTER DRIVE
16      SUITE 275
17      SAN RAFAEL, CALIFORNIA 94903
18      415-573-6117
19      BHALTER@MARINCOUNTY.ORG
20
21
22
23
24
25

Page 4

1                   INDEX
2   WITNESS                  EXAMINATION
3   SAUL AARON SINGER
4       (By Mr. Halter)          8
5
6
7                   EXHIBITS
8   NUMBER          DESCRIPTION          PAGE
9   Exhibit 1   DEFENDANT COUNTY OF MARIN'S FOURTH   12
10      AMENDED NOTICE OF DEPOSITION OF
11      SEAPLANE ADVENTURES, LLC'S PERSON MOST
12      KNOWLEDGEABLE PURSUANT TO RULE
13      30(b)(6) AND RULE 34(a)(1) REQUEST FOR
14      PRODUCTION OF DOCUMENTS, SET TWO
15
16  Exhibit 2   PLAINTIFF'S ANSWERS TO DEFENDANT'S   13
17      FIRST SET OF INTERROGATORIES
18
19  Exhibit 3   PLAINTIFF'S SUPPLEMENTAL ANSWERS TO   14
20      DEFENDANT'S FIRST SET OF
21      INTERROGATORIES
22
23
24
25

Page 17

1 reviewed Seaplane's responses to the County's discovery
2 request; is that a fair summary?
3  A  Yes.
4  Q  Did you review any other documents in preparation
5 for your testimony here today?
6  A  Not that I wasn't furnished with by that email.
7  Q  Okay. Which email are you talking about?
8  A  There was an email with the -- the documents that
9 you furnished for this meeting.
10  Q  I see.
11     You're talking about the email that I sent this
12 morning containing the exhibits to this deposition?
13  A  Correct.
14  Q  Did you review any other documents in connection
15 with your preparation for this deposition?
16  A  No, I didn't.
17  Q  Did you ever meet with anyone to prepare for your
18 deposition today?
19  A  Other than general discussion with my attorney.
20  Q  And when did you meet with your attorney? And
21 not -- and don't tell me anything that you guys talked
22 about, but when did you meet with your attorney?
23  A  We have met -- we met via phone last week, and we
24 talked yesterday.
25  Q  And about -- you said you talked -- oh, you met

Page 18

1 last week; is that what you said?
2  A  Well, we talked; I was out of town.
3  Q  And about how long was that conversation?
4  A  I'm not sure. Not very long.
5  Q  Can you give me your best estimate?
6  A  Maybe 15, 20 minutes.
7  Q  And then you spoke again, you said yesterday?
8  A  Yesterday.
9  Q  And how long was that conversation?
10  A  About an hour.
11  Q  And did you review any documents in that
12 conversation yesterday?
13  A  We discussed documents.
14  Q  Okay. And, Mr. Singer, I realize that I
15 neglected to mention this earlier, but do you understand
16 you're testifying today as a representative witness for
17 Seaplane Adventures, LLC, the business entity?
18  A  Yes, I do.
19  Q  And you didn't review any documents during your
20 conversation last week with counsel either; is that right?
21  A  No, I was at a -- a work event in Wisconsin.
22  Q  Did you ever --
23  A  I -- the documents that we discussed are the
24 documents that we had previously disclosed to you. So
25 it's nothing new.

Page 19

1  Q  Mr. Singer, let's -- let's pivot a little bit to
2 talk more about your background. Maybe -- we'll -- we'll
3 start from the beginning.
4     Did you graduate from high school, Mr. Singer?
5  A  I did.
6  Q  And what did you do in terms of education after
7 high school?
8  A  I have a bachelor's degree and a master's degree.
9  Q  And where's the bachelor's from?
10  A  Colorado College.
11  Q  And what's the discipline?
12  A  I'm not sure how this is material to -- this
13 sounds personal.
14     MR. SHARP:  He's entitled to some background,
15 Aaron. I'll...
16     THE WITNESS:  Could you repeat the question?
17 BY MR. HALTER:
18  Q  I'm wondering what your -- you said you graduated
19 from Colorado College, I believe. And I'm wondering what
20 the -- what the discipline was that you --
21  A  Liberal arts.
22  Q  -- had. And was there any specification other
23 than that?
24  A  No.
25  Q  And then you said you went and -- what year was

Page 20

1 that you graduated?
2  A  1989.
3  Q  And then you said there was a master's degree.
4 Where was that from?
5  A  California College of the Arts.
6  Q  And what was the discipline there?
7  A  Architecture.
8  Q  And when was that?
9  A  2007.
10  Q  Are you a pilot, Mr. Singer?
11  A  I am.
12  Q  When did you first become a -- well --
13  A  On my 17th birthday.
14  Q  Yeah. I guess it's pretty obvious where I'm
15 headed.
16     So there -- my understanding is that there is a
17 process involved in becoming a pilot.
18  A  That's correct.
19  Q  And -- and I want you to help me understand what
20 the various parts of that process are, from the beginning
21 to where we are now, and -- and sort of where in time you
22 went through those parts of the process.
23  A  I've been flying since I was 16 years old. I
24 earned a scholarship in high school to learn how to fly.
25 I earned my private -- private pilot's license on my 17th